

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number:

March 18, 2022

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

<u>**VIA CM/ECF**</u>

The Honorable Lewis A. Kaplan
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   <u>***Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK**</u>

Dear Judge Kaplan:

Pursuant to Federal Rule of Civil Procedure 42(a), plaintiff Marvel Characters, Inc. ("MCI") hereby moves this Court to consolidate three recently filed—and related—cases for all purposes or, in the alternative, for pretrial purposes.[1]  In these three cases, MCI seeks to defend itself against claims by Lawrence D. Lieber, Stephen J. Ditko, and Donald L. Heck (the "defendants") that they can "recapture" rights in comics published by Marvel between 1962 and 1975.  Each defendant claims to be exercising purported termination rights under the 1976 Copyright Act. But, as explained in MCI's complaints, the defendants' work was all "made for hire" within the meaning of the 1909 Copyright Act,[2] and no termination rights exist for such works.  *See* 17 U.S.C. § 304(c).

To confirm MCI's claim that the defendants' work was work made for hire, this Court will evaluate the creative control MCI, or its predecessors (collectively, "Marvel"), exercised over its contributors, as well as the manner in which it commissioned, edited, and paid for their work. *See, e.g.*, *Marvel Worldwide Inc. v. Kirby*, 777 F. Supp. 2d 720, 738 (S.D.N.Y. 2011), *aff'd in relevant part*, 726 F.3d 119 (2d Cir. 2013).  Because the defendants worked for Marvel during roughly the same period and the works at issue were published over roughly the same time period, each case will require the Court to answer substantially similar legal and factual questions and will require the parties to obtain discovery of substantially similar witness

---

[1] *See* Compl. for Decl. Relief, ECF No. 1, *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955 (Sept. 24, 2021) ("Lieber Compl."); Compl. for Decl. Relief, ECF No. 1, *Marvel Characters, Inc. v. Ditko*, No. 21-cv-07957 (Sept. 24, 2021) ("Ditko Compl."); Compl. for Decl. Relief, ECF No. 1, *Marvel Characters, Inc. v. Dettwiler*, No. 21-cv-07959 (Sept. 24, 2021) ("Dettwiler Compl.").

[2] While the termination rights defendants seek to exercise were created by the 1976 Act, whether their works were made for hire is governed by the 1909 Act.  *See Archie Comic Pubs. Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 328 (S.D.N.Y. 2003) ("Works created before January 1, 1978, the effective date of the Copyright Act of 1976 . . . are governed by the Copyright Act of 1909[.]").

testimony and documents. Indeed, the defendants all worked on many of the very same characters and comic book issues, including iconic characters such as Iron Man, Thor, Wasp, and Doctor Doom. MCI accordingly asks this Court to consolidate the actions under Rule 42(a), which will unquestionably serve Rule 42's overarching purpose of conserving time, effort, and judicial resources.

## STATEMENT OF FACTS

Over its long history, Marvel has engaged numerous individuals to contribute to its comics, including Lawrence D. Lieber, Stephen J. Ditko, and Donald L. Heck. Lieber, Ditko, and Heck all began writing and illustrating comic-book stories for Marvel during the 1950s. Lieber Compl. ¶ 1; Ditko Compl. ¶ 1; Dettwiler Compl. ¶ 1. Marvel paid each of them a per-page rate for their contributions, had the right to exercise creative control over those contributions, and registered copyrights in and to the works they created. Lieber Compl. ¶¶ 12, 14; Ditko Compl. ¶¶ 12, 14; Dettwiler Compl. ¶¶ 12, 14. And Lieber, Ditko, and Heck all made their contributions with the expectation that Marvel would pay them. Lieber Compl. ¶ 12; Ditko Compl. ¶ 12; Dettwiler Compl. ¶ 12. As a result, all three defendants' contributions were at Marvel's instance and expense, rendering them work made for hire. Lieber Compl. ¶¶ 22-24; Ditko Compl. ¶¶ 22-24; Dettwiler Compl. ¶¶ 22-24.

The Copyright Act's termination provisions do not apply to works made for hire. *See* 17 U.S.C. § 304(c). Nevertheless, the defendants—all represented by the same counsel of record—served notices of termination on Marvel, purporting to "'terminate all pre-January 1, 1978 exclusive or non-exclusive grants of the transfer or license of the renewal copyright(s) in and to' certain 'illustrated comic book stor[ies]' that were allegedly 'authored or co-authored'" by Lieber, Ditko, or Heck and published by Marvel during the 1960s and 1970s. Lieber Compl. ¶¶ 15-16; Ditko Compl. ¶¶ 15-16; Dettwiler Compl. ¶¶ 15-16. Defense counsel also served similar termination notices on behalf of the heirs of two other Marvel contributors—Donato F. Rico and Eugene L. Colan—who worked for Marvel during the same general time period as the defendants here.[3]

On September 24, 2021, Marvel commenced three declaratory relief actions against the defendants—as well as declaratory relief actions against the Rico and Colan heirs in other jurisdictions—pursuant to 28 U.S.C. § 2201, in response to their improper attempts to acquire Marvel's intellectual property. The Court related these actions on October 13, 20201. *See Ditko*, No. 21-cv-07957 (Oct. 13, 2021); *Dettwiler*, No. 21-cv-07959 (Oct. 13, 2021). On December 7, 2021, all defendants answered and asserted mirror-image counterclaims, contending that their purported termination notices were valid and effective.[4]

---

[3] *See* Compl., *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316 (E.D.N.Y. Sept. 24, 2021); Compl., *Marvel Characters, Inc. v. Hart-Rico*, No. 2:21-cv-07624 (C.D. Cal. Sept. 24, 2021).

[4] *See* Answer & Counterclaim, ECF No. 32, *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955 (Dec. 7, 2021); Answer & Counterclaim, ECF No. 24, *Marvel Characters, Inc. v. Ditko*, No. 21-cv-07957 (Dec. 7, 2021); Answer & Counterclaim, ECF No. 29, *Marvel Characters, Inc. v. Dettwiler*, No. 21-cv-07959 (Dec. 7, 2021).

Over many months, MCI met and conferred with defense counsel about consolidation. The parties initially discussed first transferring a similar case from the Eastern District of New York, *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316 (E.D.N.Y.), to this Court and then jointly moving to consolidate all four cases. Defense counsel, however, later refused to consent to the transfer of the Eastern District case. After that, the parties continued to discuss consolidating the three cases before this Court. Defense counsel then refused to consolidate those three cases for purposes of discovery. This motion followed.

## LEGAL STANDARD

Under Rule 42(a), a court may consolidate actions if they involve "a common question of law or fact." Fed. R. Civ. P. 42. If a common question of fact or law exists, courts then ask whether consolidation would "avoid unnecessary costs or delay, such as suits that bring virtually identical claims based on virtually identical factual allegations," "expedite trial and eliminate unnecessary repetition and confusion," or conserve "judicial resources . . . , thereby advancing judicial economy." *McDaniel v. New York*, 2021 WL 1222417, at *1 (S.D.N.Y. Apr. 1, 2021) (citation and internal quotation marks omitted). Consolidation is appropriate as long as these benefits— that is, a reduced "risk of inconsistent adjudications of common factual and legal issues," reduced "burden on parties, witnesses, and available judicial resources posed by multiple lawsuits," a shorter "length of time required to conclude multiple suits as against a single one," and reduced "expense to all concerned"—are greater than any "'specific risks of prejudice and possible confusion' that could arise from consolidation." *Glavan v. Revolution Lighting Techs., Inc.*, 2019 WL 3406582, at *2 (S.D.N.Y. July 29, 2019) (quoting *Barkley v. Olympia Morg. Co.*, 557 F. App'x 22, 25 (2d Cir. 2014)).

"The standard for consolidation 'is an expansive one, allowing consolidation of the broad range of cases brought in federal court.'" *McDaniel*, 2021 WL 1222417, at *1 (quoting 8 Moore's Federal Practice § 42.10(1)(a) (3d ed. 1998)). Even where such consolidation is contested, courts in this district routinely consolidate cases that "involve a common question of law or fact," *Galindo v. UBS Int'l Inc.*, 2010 WL 675699, at *3 (S.D.N.Y. Feb. 24, 2010), including in copyright cases, *see, e.g.*, *Everglory Co. v. Shaw Creations, Inc.*, 2008 WL 709831, at *2 (S.D.N.Y. Mar. 14, 2008) (consolidating two actions over payments for umbrellas featuring allegedly copyrighted art even though the actions involved "different sets of allegedly unpaid invoices" because, among other factors, "both cases stem from [a] failure to pay for shipments . . . delivered by essentially the same plaintiffs to the same defendant over roughly the same period of time" and "discovery on the claims will be substantially the same"); *Maruzen Int'l Co. v. Bridgeport Merch., Inc.*, 1991 WL 130170, at *1 (S.D.N.Y. July 10, 1991) (granting consolidation of actions involving the copyrights, trademarks, trade dress, and patents to a novelty coin box where, among other factors, "the same plaintiff brought parallel claims against two sets of defendants" and "[c]ommon questions—such as ownership of patent and trademark rights—predominate"); *see also Tee Vee Toons, Inc. v. Rep Sales, Inc.*, 2009 WL 1422610 (S.D.N.Y. May 20, 2009) (denying motion to sever "actions [that] were consolidated for discovery" because "[t]here is a substantial overlap in the witnesses, parties and evidence" and consolidation would serve "[t]he convenience of the witnesses and the parties").

## THE COURT SHOULD CONSOLIDATE THE THREE RELATED ACTIONS

Consolidating *Lieber*, *Ditko*, and *Dettwiler* would fulfill Rule 42(a)'s purpose by saving time, effort, and judicial resources.

*First*, a common set of factual and legal questions is central to the resolution of all three actions. Lieber, Ditko, and Heck created the relevant works for Marvel during a similar time period. *See* Lieber Compl. ¶ 1 (Lieber began working for Marvel in or around 1958, and the works in question were published between 1962 and 1964); Ditko Compl. ¶ 1 (Ditko began working for Marvel in or around 1957, and the works in question were published between 1962 and 1966); Dettwiler Compl. ¶ 1 (Heck began working for Marvel in or around 1954, and the works in question were published between 1962 and 1975). Marvel also alleges that the works were created under similar circumstances—in particular, that Marvel's editorial staff had the right to exercise creative control over these contributors' work, that each was paid a per-page rate for his contributions, and that each created his work with the understanding that Marvel would pay for it. *See supra* p.2. Marvel will demonstrate that Lieber, Ditko, and Heck all worked under the supervision of Marvel editors, including Stan Lee (Lieber's brother) according to a particular work arrangement called the "Marvel Method." *See Lieber*, No. 21-cv-07955, ECF No. 5 (Sept. 24, 2021); *Ditko*, No. 21-cv-07957, ECF No. 10 (Sept. 27, 2021); *Dettwiler*, No. 21-cv-07959, ECF No. 10 (Sept. 27, 2021); *see also Kirby*, 777 F. Supp. 2d at 731 (discussing Marvel Method, under which "[a]ll of Marvel's artists and writers reported to Lee").

Each of these facts is relevant to the central issue in these cases: whether the works at issue are works "made for hire," to which the Copyright Act's termination provisions do not apply. *See* Lieber Compl. ¶¶ 1, 21-22; Ditko Compl. ¶¶ 1, 21-22; Dettwiler Compl. ¶¶ 1, 21-22; 17 U.S.C. § 304(c). Under the 1909 Copyright Act, a work is "made for hire" if it is done at the hiring party's "instance and expense." *Archie Comic Pubs. Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 328 (S.D.N.Y. 2003); *see also, e.g.*, *Marvel Worldwide Inc. v. Kirby*, 726 F.3d 119, 139 (2d Cir. 2013); *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 635 (2d Cir. 2004). Factors relevant to this determination include whether "the putative employer was the motivating factor that induced the creation of the work," "the right of the hiring party to control and supervise the manner in which the work was created," and whether the hiring party paid "a sum certain for" the work. *Archie Comic Pubs.*, 258 F. Supp. 2d at 328; *see Kirby*, 726 F.3d at 139-40.

Evidence relevant to these factors will relate to Marvel's general employment practices during the period at issue, which will be the same for each of the defendants. In considering whether the contributions of Jack Kirby—another Marvel artist working during a similar period—were works made for hire, a different court in this district previously determined (as confirmed by the Second Circuit) that Marvel created its comics during the relevant time period under the so-called "Marvel-Method," pursuant to which Lee "maintain[ed] the ability to edit and make changes or reject what the other writers or artists had created." *Kirby*, 726 F.3d at 126 (quoting Stan Lee). As that court explained:

> As [Marvel's] art director and editor, [Stan] Lee was responsible
> for the "creative editorial aspects" of the comic books published by

> Timely Comics—which eventually became Marvel . . . As editor, Lee developed the ideas and stories for all of Marvel's comic books. . . . All of Marvel's artists and writers reported to Lee. . . . Lee assigned artists to work on comic books, edited or changed their work, set deadlines for the submission of work, and even gave artists direction and guidance about the stories they were assigned to draw.

*Kirby*, 777 F. Supp. 2d at 731; *see Kirby*, 726 F.3d at 126-27, 141-43 (similar). Contributors to Marvel during the relevant period—including Kirby and the defendants here—worked according to this method and were paid a per-page rate, in keeping with Marvel's standard payment practices during the relevant time. *See supra* p.2; *Kirby*, 726 F.3d at 126, 142. Whether Lieber, Ditko, and Heck worked at Marvel's "instance and expense" will thus be governed by much of the same factual evidence.

Much of the evidence in these cases will involve the very same works and characters. The termination notices in *all three actions* purport to implicate rights in the Marvel characters Iron Man, Thor, Odin, Giant-Man, Wasp, The Human Torch, Invisible Girl, Mister Fantastic, the Thing, and Doctor Doom. *See* Lieber Compl. Exs. 3, 5, 6, 8, 9; Ditko Compl. Exs. 1, 5, 6; Dettwiler Compl. Exs. 2, 4. The notices in the *Lieber* and *Dettwiler* actions additionally purport to implicate rights in the characters Professor Ho Yinsen, Wong-Chu, Thaddeus Ross, Namor, and Jane Foster, *see* Lieber Compl. Exs. 7, 8, 9; Dettwiler Compl. Exs. 2, 4, while the *Dettwiler* and *Ditko* actions purport to involve an overlap of an additional 25 characters, *see* Exs. to Dettwiler and Ditko Compls. The parties and the Court will thus be focused on the same factual evidence regarding the creation of these characters and the comics in which they featured.

Either factual *or* legal overlap is sufficient to support consolidation—and both are present here. *See Sec. & Exch. Comm'n v. Waldman*, 2018 WL 3104622, at *1-2 (S.D.N.Y. April 27, 2018) (consolidating insider-trading cases against different defendants where they involved the same announcement and tipster and made the same claims, such that "if separate trials were held the jury instructions would be the same with the exception of the names of the defendants involved"); *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838, at *7 (S.D.N.Y. May 15, 2012) (where cases "all concern[ed] the *exact same movie . . . with the exact same copyright*" and "allege[d] the same causes of action," they "should have been consolidated"); *Liegey v. Ellen Figg, Inc.*, 2003 WL 21688242, at *1 (S.D.N.Y. July 18, 2003) (consolidating two hostile work environment cases where both plaintiffs were employed by same defendant, answered to same supervisor, and allegedly received similar treatment, even though they were employed at different times); *Shane v. Tokai Bank, Ltd.*, 1997 WL 257480, at *2-3 (S.D.N.Y. May 15, 1997) (consolidating employment discrimination cases brought by different plaintiffs against same defendant because the complaints alleged the same causes of action and discriminatory treatment and defendant's "policies and practices" regarding certain types of employees were "central to each case").

*Second* and relatedly, the actions involve similar discovery issues and overlapping witnesses. The parties in all three actions will likely attempt to rely on testimony from the same individuals who worked for Marvel during the period in question, including Lee, who was deposed in the

*Kirby* matter before he passed away.  *See Kirby*, 777 F. Supp. 2d at 726.  In addition, defendants listed Larry Lieber himself (who is still alive and who was also deposed in *Kirby*) in their Rule 26(a) disclosures in all three cases.  *See* Initial Disclosures, Part I, *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-7955 (S.D.N.Y. Dec. 10, 2021); Initial Disclosures, Part I, *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-7957 (S.D.N.Y. Dec. 10, 2021); Initial Disclosures, Part I, *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-7959 (S.D.N.Y. Dec. 10, 2021).  The cases are also likely to involve the same documentary evidence of Marvel's employment policies, as reflected by the considerable overlap in defendants' Rule 26(a) disclosures as to documents across all three cases, including the record evidence from *Kirby* and *Marvel Characters, Inc. v. Simon*, No. 00-cv-1393 (S.D.N.Y. Feb. 27, 2002).  *See* Initial Disclosures, Part II, *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-7955 (S.D.N.Y. Dec. 10, 2021); Initial Disclosures, Part II, *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-7957 (S.D.N.Y. Dec. 10, 2021); Initial Disclosures, Part II, *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-7959 (S.D.N.Y. Dec. 10, 2021).  Reliance on similar witnesses and evidence weighs in favor of consolidation.  *See Tee Vee Toons*, 2009 WL 1422610, at *1 ("There is a substantial overlap in the witnesses, parties and evidence relating to the two actions.  The convenience of the witnesses and the parties argues strongly for a consolidated trial[.]"); *Liegey*, 2003 WL 21688242, at *1 (consolidating cases where they "rel[ied] on the same witnesses, including witnesses employed by and doing business with defendants during both plaintiffs' employment periods"); *Shane*, 1997 WL 257480, at *3 (granting consolidation motion partly because "[t]he same practices and policies of defendant will be on trial, many of the witnesses will be the same and will be giving the same testimony, and the jury will be instructed on the same causes of action").

*Third*, if these cases are not consolidated, the parties will be subject to potentially inconsistent rulings about when creative contributions constitute work made for hire and whether Marvel owns the relevant comic-book stories and illustrations.  For example, if one defendant's contributions to Iron Man are deemed work made for hire while another defendant's contributions are not—even though both worked under the very same Marvel Method—Marvel will be uncertain what circumstances render work "made for hire" within the meaning of the federal copyright laws.  Similarly, litigating these cases separately could subject the parties to a host of inconsistent evidentiary rulings, especially given that much of the relevant evidence comes from now-deceased witnesses and half-century-old documents.  This "possible risk of inconsistent rulings" counsels in favor of consolidation.  *Darezzo v. 200 Ninth Rest. LLC*, 2015 WL 195852, at *3 (S.D.N.Y. 2015); *see McDaniel*, 2021 WL 1222417, at *2.

*Fourth*, the potential gains in efficiency and the risk of inconsistent adjudications outweigh any concerns about prejudice or confusion.  *See Glavan*, 2019 WL 3406582, at *2.  Requiring each case "to proceed separately through trial would engender a needless consumption of time, energy, cost and resources by each party and the court," *Shane*, 1997 WL 257480, at *3, even beyond the risk of inconsistent adjudications just discussed.  And consolidation does not prejudice the defendants, all of whom are represented by the same counsel of record—a fact that courts have found mitigates any prejudice and weighs in favor of consolidation.  *See Liegey*, 2003 WL 21688242, at *1; *Everglory*, 2008 WL 709831, at *2.  The cases—all filed on the same day—are also in identical procedural postures, such that consolidation would not impose an unfair delay on any party.  *See Shane*, 1997 WL 257480, at *3.  In addition, the parties submitted the exact same proposed schedule in all three cases.  *See* Rule 26(f) Report, ECF No. 28, *Marvel*

*Characters, Inc. v. Lieber*, No. 1:21-cv-7955 (S.D.N.Y. Nov. 3, 2021); Rule 26(f) Report, ECF No. 20, *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-7957 (S.D.N.Y. Nov. 3, 2021); ); Rule 26(f) Report, ECF No. 24, *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-7959 (S.D.N.Y. Nov. 3, 2021). Even further still, the three cases are already related. In these circumstances, the benefits of allowing these cases to proceed together—including reduced expenses for all parties, faster resolution of the claims, decreased redundancy of motion practice and discovery, and reduced risk of inconsistent rulings—patently outweigh any conceivable downsides, rendering consolidation appropriate here.

## CONCLUSION

For the foregoing reasons, Marvel respectfully requests that the Court grant its motion to consolidate the Lieber, Ditko, and Dettwiler actions for all purposes or, in the alternative, for pretrial purposes.


Respectfully submitted,


*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli
of O'Melveny & Myers LLP

cc: Marc Toberoff (via EFC)