# **TOBEROFF & ASSOCIATES, P.C.**

A PROFESSIONAL CORPORATION

23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265

Tel: (310) 246-3333 / Fax: (310) 246-3101
mtoberoff@toberoffandassociates.com

March 24, 2022

Via CM/ECF

The Honorable Lewis A. Kaplan
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

  RE: *Marvel Characters, Inc. v. Ditko, No. 1:21-cv-07957-LAK*

Dear Judge Kaplan:

Defendant Patrick S. Ditko hereby opposes Marvel Characters, Inc.'s ("Marvel") motion to consolidate three distinct cases: *Marvel Characters, Inc. v. Ditko*, No. 21-cv-07957 (Sept. 24, 2021); *Marvel Characters, Inc. v. Dettwiler*, No. 21-cv-07959 (Sept. 24, 2021); and *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955 (Sept. 24, 2021).[1]

While each of these cases involves the exercise of an author's termination rights under the Copyright Act by defendants Patrick S. Ditko, Lawrence D. Lieber ("Lieber"), and Keith A. Dettwiler, each case involves different relevant facts, including but not limited to, distinctive literary works, different publishing entities and original copyright registrants, differing professional histories and working relationships, under which each creator sold his works. While serving Marvel's revisionism, it contravenes the truth-seeking function of Federal jurisprudence, to paint the artists/writers Steve Ditko ("Ditko"), Don Heck ("Heck"), and Lieber (collectively hereinafter, the "Creator(s)") with a broad brush and lump each of their unique situations together. Neither they, their many different works at issue, nor the circumstances of the works' origination and implementation are fungible. Its motion notwithstanding, Marvel must also believe that these three cases are distinct and should be treated as such because it was Marvel which voluntarily chose to file separate actions as to each Creator in this district in the first place.

Consolidation of these three distinct legal actions is inappropriate for several evident reasons. *First*, while there may exist some similar questions, the individual issues of fact in each case predominate. Each case presents significant differences, both obvious and subtle, that Marvel hopes to obscure in the shuffle. *Second*, consolidation would lead to unfair results for each defendant because the risk of prejudice and confusion between these cases is considerable. *Third*, consolidation is inappropriate because it would

---

[1] Marvel's motion incorrectly named Stephen J. Ditko and Donald L. Heck as "defendants" in the *Ditko* and *Dettwiler* cases, respectively. Ditko and Heck are not defendants, rather, they are the deceased creators whose work is in question in these matters. This mistake is glaring given Marvel's argument that consolidation will not result in any confusion. To the contrary, it is emblematic of the confusion and imprecision this Court can come to expect should these distinct cases be consolidated.

curtail and adversely affect each defendant's substantive and procedural rights.

Notwithstanding the above, defendants are in favor of the efficient use of evidence and depositions across the cases and of course would agree to minimize redundancies whenever it reasonably makes sense to do so. For instance, the parties have discussed and defendants are amenable to an agreement whereby any deposition taken in any case will be available for use in the other cases. Defendants also believe that redundant depositions of the same witness in the different cases should be avoided.

For these reasons and those that follow, this Court should not consolidate these three cases.

## STATEMENT OF FACTS

As stated, each of these cases involves different facts, including, but not limited to, different Creators, distinctive works, differing professional histories, relationships and circumstances under which each Creator authored his material.

The Marvel of today is not the "Marvel" of the 1960s and 1970s, when the works in question were created by freelancers at home and then sold for publication.[2] In the early 1960s Marvel's failing comic book business was nearly insolvent and on the brink of dissolution. For much of the 1960s, for instance, Marvel's predecessor consisted of one employee, until 1966 when it expanded to two employees, working from a miniscule office. Ditko Countercl., ¶ 27. Notwithstanding this, its showman-editor Stan Lee ("Lee"), repeatedly promoted a non-existent Marvel "Bull-Pen" of employees, and the "Marvel Method," which many view as a method to avoid paying artists writing fees for the stories *they* plotted.

Indeed, while Marvel may be the named plaintiff in each of the three distinct cases, Marvel is a mere alleged successor to the numerous different shell companies used for the publication and/or original copyright registrations of the works in question. Such entities include without limitation Vista Publications, Inc., Inc., Cadence Industries Corp., Marvel Comics Group, Non-Pareil Publishing Corp., Canam Publishers Sales Corp., Magazine Management Co. and Atlas Magazines, Inc.[3] To further complicate matters, the works produced by the Creators were sometimes purchased by one entity, published by a second entity, and registered with the United States Copyright Office by a third shell company. Ditko Countercl., ¶¶ 28-29.

The Creators thus worked with varying publishing entities at different times. For example, Heck began selling his work in or around 1954 until at least 1975.[4] Heck worked on his own premises with his own materials and only sold his material once it was completed. *Id*., ¶ 34. Heck worked this way in an on-

---

[2] Answer & Countercl., ECF No. 24, *Marvel Characters, Inc. v. Ditko*, No. 21-cv-07957 (Dec. 7, 2021) ("Ditko Countercl."), ¶¶ 26-27.

[3] *See* Compl. For Decl. Relief, Exs. 2-6, ECF No. 1, *Marvel Characters, Inc. v. Ditko*, No. 21-cv-07957 (Sept. 24, 2021); Compl. For Decl. Relief, Exs. 2-4, ECF No. 1, *Marvel Characters, Inc. v. Dettwiler*, No. 21-cv-07959 (Sept. 24, 2021); Compl. For Decl. Relief, Exs. 2-9, ECF No. 1, *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955 (Sept. 24, 2021).

[4] Answer & Countercl., ECF No. 29, *Marvel Characters, Inc. v. Dettwiler*, No. 21-cv-07959 (Dec. 7, 2021) ("Dettwiler Countercl."), ¶ 23.

again-off-again manner, leaving and returning, while also selling his work to Marvel's chief competitor, DC Comics.

Ditko began selling his work to "Marvel" in 1957 until 1966. Ditko Countercl., ¶ 23. Ditko was known to work very independently, often rejecting any attempts by others to modify his work. *Id.*, ¶¶ 42-44. For instance, it is well known that Ditko independently created the character/work, *Doctor Strange*, and submitted it to Marvel for publication. *Id.*, ¶¶ 40-41. While Ditko was selling his work to "Marvel," he and Lee, an editor for one of the entities, were regularly at odds. Their quarrelling continued until Ditko refused to communicate with Lee any longer and would only submit his work for publication to "Marvel" by mail. *Id.*, ¶ 44. Indeed, in a very public row, Ditko refused to sell any further work to Marvel because Marvel failed to pay Ditko the royalties Martin Goodman ("Goodman"), its founder, had promised Ditko for his creation of *Spider-Man*. Howe, Sean, *Marvel Comics: The Untold Story*, 54 (Harper Perennial, 2013).

Lieber, Lee's brother and Goodman's cousin, began selling his work to "Marvel" in 1958 until 1974 when he became an editor for a competitor. Far from the professional and contentious relationships Heck and Ditko, respectively, had with "Marvel," Lieber's was a more informal and amicable one. Lieber never entered into any employment or any other engagement agreement with Marvel's predecessors.[5] Lieber began to work with Marvel with very little experience and built many of his skills under the tutelage of other artists and writers. Lieber was not guaranteed a salary, wage, or compensation for his time or work. *Id.*, ¶ 33. Lieber created his work at home, on his own time, and at his own expense. *Id.*, ¶¶ 33-34.

Marvel would never waive any of its rights or remedies though it continues to pressure defendants to do so. It is critical to a just resolution of each of these three cases that they not be consolidated.

## LEGAL STANDARD

While a trial court pursuant to F.R.C.P. 42(a) has discretion to determine whether consolidation is appropriate, "the discretion to consolidate is not unfettered. Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)).

"Before a court orders consolidation, it must consider several factors and determine, *inter alia*, whether the gains in efficiency and economy are outweighed by the risks of prejudice and possible confusion." *Rodriguez v. Draftkings Inc.*, 2021 WL 5282006, 2021 U.S. Dist. LEXIS 219489, at *8-9 (S.D.N.Y. Nov. 12, 2021) (citing *Johnson*, 899 F.2d at 1284.); *see also Malcolm*, 995 F.2d at 350 ("The benefits of efficiency can never be purchased at the cost of fairness."). Furthermore, "[u]nder Second Circuit law, a party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 592 (S.D.N.Y. 2012) (internal quotations omitted).

In all instances, including the copyright termination context, the work-for-hire analysis is a fact-intensive

---

[5] Answer & Countercl., ECF No. 32, *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955 (Dec. 7, 2021) ("Lieber Countercl."), ¶ 31.

inquiry requiring the Court to review the individual working relationships and circumstances of creation of differing works by Heck, Lieber, and Ditko, respectively. *See Urbont v. Sony Music Entm't*, 831 F.3d 80, 90 (2d Cir. 2016) ("Ultimately, our case law counsels against rigid application of these [work for hire] principles. Whether the instance and expense test is satisfied turns on the parties' creative and financial arrangement as revealed by the record in each case.") (internal quotation marks omitted); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 140 (2d Cir. 2013) (same).

The risk of confusion is greatest when, as here, the relevant facts applicable to the respective parties differ. 8 Moore's Federal Practice - Civil § 42.10 (2022) (citing *Seguro de Servicio de Salud v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 9 (1st Cir. 1989)). Thus, consolidation is improper when the evidence is specific and unique to each party and individual issues of fact predominate. *Webb v. Goord*, 197 F.R.D. 98, 100-01 (S.D.N.Y. 2000); *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) ("Even where cases involve some common issues of law or fact, consolidation may be inappropriate where individual issues predominate.").

Fairness and the truth-seeking function of Federal jurisprudence are paramount in determining the propriety of consolidation. *In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.)*, 971 F.2d 831, 853 (2d Cir. 1992) (stating that the urge to aggregate litigation must not be allowed to trump the court's dedication to individual justice).

### THE COURT SHOULD NOT CONSOLIDATE THESE THREE DISTINCT CASES

Consolidating *Ditko*, *Lieber*, and *Dettwiler* would cause confusion, be unfair, and impair defendants' Federal substantive and procedural rights.

*First*, consolidation of these cases is inappropriate because individual questions of fact predominate. It is well settled that whether a work is "made for hire" under the 1909 Act presents a highly fact-intensive inquiry because the issue turns on the "intent of the parties" when the works were created. *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 634 n.17 (2d Cir. 2004); 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §5.03[B][2][c] at 5-56.1("work for hire" under the 1909 Act "always turn[s] on the intention of the parties.").

When cases involve some common facts but individual issues predominate, consolidation should be denied. *Webb*, 197 F.R.D. at 100-01; *see also Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993) (refusing to consolidate actions by car dealers against one car manufacturer based on manufacturer's warranty reimbursement policy because "liability must be determined on a Dealer-by-Dealer, part-by-part, sale-by-sale basis, with consideration of facts that are highly specific to individual dealers"); *In re Consol. Parlodel Litig.*, 182 F.R.D. at 445-46 (refusing to consolidate similar cases against one defendant-drug company because evidence of injury was specific to each plaintiff's case and "[t]hus it was clear that individual issues in these cases will predominate."). Here, while Ditko, Lieber, and Heck may have sold their work to Marvel's varying predecessors for publication and may have been paid per page, scrutiny of each of their situations reveals few other similarities.

With respect to the distinct works and Creators at issue in these different cases, Ditko plotted his own stories and characters and notoriously refused to take editing notes from Lee. Ditko Countercl., ¶¶ 42-44. Lieber, on the other hand, worked more informally with family members Lee and Goodman, in producing his work for publication. Lieber Countercl., ¶¶ 31, 33. Heck sold his works to Marvel in an on-again-off-

again fashion over the span of more than two decades (Dettwiler Countercl., ¶ 23), and also worked with Marvel's chief competitor, DC Comics.

Due to the fact-specific inquiry and minimal overlap between these three cases, the Court will need to engage in a detailed analysis of the personal and professional histories and situations of each Creator to determine whether Marvel has any rights to any of the hundreds of characters and comics books each produced. Viewed individually, these three cases are involved, if not complex; taken together, they become unmanageable.

Even to the extent some facts may coincide, they are not the same. Indeed, any similarity between the cases actually militates *against* consolidation as it increases the risk of confusion and misapprehension. *See Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 465 (S.D.N.Y. 1977) (noting, in refusing to consolidate cases, that although the "two [cement plants] use[d] a common process and technology and the deficiencies at both plants were failures of conception and design[,] these failure[s] manifested themselves in different ways at each plant" and thus, consolidation would cause confusion).

*Second*, the interests of justice weigh against consolidation because consolidation would impair each defendant's rights and thereby prejudice their cases. While important, "efficiency cannot be permitted to prevail at the expense of justice -- consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Devlin v. Transp. Communs. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotations omitted); *see also Flintkote*, 73 F.R.D. at 464 ("consolidation should not be ordered if it would prejudice defendant"). In these cases, Ditko, Lieber, and Heck each had their own distinct working relationships with Lee and Marvel's various alleged predecessors. Ditko Countercl., ¶¶ 23, 26-29, 40-44; Dettwiler Countercl., ¶¶ 23, 26-29, 34; Lieber Countercl., ¶¶ 23, 26-29, 31, 33-34. In pushing for consolidation under the guise of "efficiency," Marvel is actively seeking to whitewash these distinctions in service of Marvel's revisionist goals.

In addition, each of the defendants would be prejudiced by the procedural limitations of consolidation. Specifically, all defendants would be forced to have their entire cases crammed into one summary judgment motion and/or be crowded into a single trial. Consolidation thus creates two likely prejudicial outcomes. *First*, if defendants were required to discuss the details of each Creator's working relationship with "Marvel," and to address the creation of numerous separate comic books and characters over the span of decades in one document or trial, the likelihood of confusion as to who did what, when and how, would be considerable. *Second*, to address such confusion, the temptation will be to genericize distinct facts, losing details critical to the analysis of each case. Both would be prejudicial. *Malcolm*, 995 F.2d at 350 ("The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's -- and defendant's -- cause not be lost. . . .").

As work for hire is the sole exemption to an author's statutory termination rights under the Copyright Act, 17 U.S.C. § 304(c), Marvel as the "party claiming [this] exception," "bear[s] the burden of proof" on it. *Woods v. Bourne Co.*, 60 F.3d 978, 993-94 (2d Cir. 1995) (discussing exception to the termination right). It is also a fundamental principle of copyright law that a putative employer's authorship of "work for hire" adheres at the time of its creation—the focal point of this inquiry. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 547, 105 S. Ct. 2218, 2224 (1985). Thus, the "instance" prong of the "instance and expense test" for work for hire, advocated by Marvel, examines a publisher's putative control over each Creator's artistic creation of each work, not control over money, the assembling or publication of artistic material *after* creation. "Instance" also does not refer to a publisher's purchasing

power or the ultimate control *every* publisher has over whether to accept and publish a work; it refers to the much more specific actual creative process. *See* 2 W. Patry, *Patry on Copyright* § 5:54 (Every publisher "ultimately has the ability to 'control' the work in the sense of accepting or rejecting it."); *see also Donaldson Publ'g Co. v. Bregman*, 375 F.2d 639, 643 (2d Cir. 1967).

Marvel therefore has the hefty burden of demonstrating that each Creator's specific works were *created* at the "instance and expense" of a revolving door of varying shell companies that registered the copyrights in such works, when the evidence points to the purchase of freelance material for publication *after* its completion. Considering the dozens of different characters and comic books in question, coupled with the varying working relationships of each Creator, and the disorganized shoddy recordkeeping of Marvel's predecessors from the 1960s and 1970s, Marvel's burden of proof in these cases is daunting. It is for this reason that Marvel seeks to treat these cases as one so as to paint with a broad brush and gloss over the factual complexities that these cases actually present. This Court should decline Marvel's request for a thumb on the scale and deny its motion to consolidate. *Johnson*, 899 F.2d at 1285 ("considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.").

*Third*, there is no risk of inconsistent results because the outcomes of each defendant's case will be guided by each case's differing facts. An important part of the consolidation inquiry asks whether the specific risks of prejudice and confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues. *Johnson*, 899 F.2d at 1284-85. Here, there is no risk of inconsistent adjudications. As stated, work-for-hire is a fact-intensive inquiry determined by the specific circumstances of a work's creation. *Urbont*, 831 F.3d at 90. As such, any difference in the outcome in the *Ditko*, *Lieber* or *Dettwiler* cases will merely be a result of the differing factual scenarios the Court is presented with. *Dashnaw v. Usen*, 2006 WL 1742174, 2006 U.S. Dist. LEXIS 41498, at *13 (N.D.N.Y. June 21, 2006) (refusing to consolidate, reasoning that "there is virtually no threat of inconsistent verdicts if we did not consolidate these cases inasmuch as it appears that each case is likely to have independent, and possibly contrary, outcomes based upon their own unique facts and circumstances."). There is no risk of inconsistent adjudication in these matters and for these reasons, the Court should not consolidate these distinct cases.

## CONCLUSION

For the foregoing reasons, Defendant Patrick S. Ditko respectfully requests that the Court deny Marvel's motion to consolidate the *Ditko*, *Lieber*, and *Dettwiler* actions.

Respectfully submitted,

*/s/ Marc Toberoff*
Marc Toberoff
Toberoff & Associates, P.C.
Attorneys for Patrick S. Ditko

cc (via ECF):
Daniel M. Petrocelli
Molly M. Lens
Allen W. Burton
Danielle Feuer
Kendall Turner