


|  |  |  |
|---|---|---|
| O'Melveny & Myers LLP<br>1999 Avenue of the Stars<br>8th Floor<br>Los Angeles, CA 90067-6035 | T: +1 310 553 6700<br>F: +1 310 246 6779<br>omm.com | File Number: |

July 27, 2022

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

Via ECF

The Honorable Lewis A. Kaplan
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Marvel Characters, Inc. v. Lieber*, No. 21-cv-07955;
and consolidated cases
21-cv-7957 and 21-cv-7959

Dear Judge Kaplan:

We represent Plaintiff Marvel Characters, Inc. ("MCI") in these cases, which your Honor consolidated for pre-trial purposes over Defendants' objection,[1] and write in response to Defendants' July 25, 2022 letter motion to compel. Defendants' motion should be summarily denied for two independent reasons: (1) it seeks to compel the production of documents that MCI has agreed to produce; and (2) it is based entirely on Defendants' unwarranted speculation that MCI may have additional documents—even though Defendants know, based on MCI's discovery responses here and from their counsel's significant involvement in *Kirby*, that MCI does not have certain categories of documents from more than roughly sixty years ago.

In each of these cases, MCI seeks a declaration that the purported copyright termination notices served on MCI by its former comic book writers and artists (the "Defendant Contributors") and their heirs are invalid because the Defendant Contributors provided their services on a work-made-for-hire basis. The Second Circuit previously affirmed summary judgment for MCI on substantially similar claims by the estate of Jack Kirby, who contributed to Marvel during essentially the same time period as at issue in these cases (the 1960s and 1970s), including on many of the same comics at issue in these cases. *See Marvel Worldwide, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) (affirming grant of summary judgment where evidence established Kirby's services on a work-made-for-hire basis). Counsel for defendants is the same attorney who represented the Kirby estate and is completely familiar with the record in that case.

---

[1]  Two other closely related actions were concurrently filed and remain pending: (1) *Marvel Characters. Inc. v. Solo*, No. 1:21-cv-05316-DG-TAM (E.D.N.Y.); and (2) *Marvel Characters, Inc. v. Hart-Rico*, No. 2:21-cv-07624-DMG-KES (C.D. Cal.). Defendants, however, refused to stipulate to consolidation of all five cases (and opposed consolidation of the three S.D.N.Y. cases).

MCI has made several substantial document productions in response to Defendants' requests. To date, MCI has produced over 6,500 documents, comprising more than 60,000 pages.[2] Without warning, and without justification, Defendants filed Monday night's motion, apparently seeking to manufacture a dispute.[3] But Defendants do not (and cannot) complain that MCI has refused to produce *any* category of responsive documents. To the contrary, Defendants admit that they are asking this Court to compel MCI to produce categories of documents that MCI has already agreed to produce. *See* Mot. at 2 (MCI has "agree[d] to produce documents in these critical categories"). For this reason alone, Defendants' motion should be rejected. *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2017 WL 404500, at *1 (S.D.N.Y. Jan. 27, 2017) (request to compel production denied as moot because party had agreed to produce responsive documents); *Funai Elec. Co. v. Orion Elec. Co.*, 2002 WL 1808419, at *4 (S.D.N.Y. Aug. 7, 2002) (same); *Carey v. Berisford Metals Corp.*, 1991 WL 120260, at *4 (S.D.N.Y. June 26, 1991) (order to produce documents "unnecessary" where party had already agreed to produce responsive documents).

A separate ground for denying Defendants' motion is that it is based entirely on their unfounded speculation that MCI may have additional responsive documents. *See* Mot. at 2–3. But "[m]ere speculation as to the existence of additional documents is insufficient to warrant an order to compel." *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 436 (S.D.N.Y. 2011); *see also Carling v. Peters*, 2011 WL 3678839, at *4 (S.D.N.Y. Aug. 19, 2011) (denying application to compel because "[o]ther than speculation . . . [the defendant] offers no evidence that [the plaintiff] possesses [the requested] documents"). And "[t]he burden is on the party seeking to compel discovery to cast doubt on the responding party's assertion that it does not have the requested information." *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011).

Defendants posit that "[p]art of the problem may be" that MCI conducted inadequate searches. Mot. at 2. No facts support their theory. MCI has conducted diligent searches for responsive documents and expects its production of documents to be substantially complete by the end of

---

[2]   MCI has also answered more than 50 interrogatories, just in the cases pending in this Court, even though the cases have been consolidated for pre-trial purposes and the vast majority of the interrogatories violated Local Rule 33.3. *Compare, e.g.*, Interrogatory 2, Lieber's First Set of Interrogatories, dated May 6, 2022 [Ex. 1] ("State whether MARVEL paid Stan Lee as a freelancer for his writing services on those WORKS for which he received writing credit."), *with Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez*, 2020 WL 7695712, at *5 (S.D.N.Y. Dec. 28, 2020) ("Interrogatory No. 11 [asking *whether* something occurred] is in the nature of a contention interrogatory, which is not proper until the conclusion of discovery."). MCI's discovery efforts stand in stark contrast to Defendants'. On July 15, MCI sent a 12-page letter to Defendants, outlining their discovery deficiencies. Dkt. 43-23 (Defs' Ex. 22). For example, to date, Dettwiler has produced just five documents—*only one of which relates to Don Heck's work for Marvel*. Faced with a potential motion by MCI, Defendants filed their surprise "defensive" motion two days ago. In fact, as their own filing demonstrates, Defendants had not raised *any* issues with MCI's productions for well over a month. Dkt. 43-20 (Defs' Ex. 19).

[3]   "As many courts have held, the failure to meet and confer in good faith with opposing counsel is 'sufficient reason by itself to deny [a party's] motion to compel.'" *Kaye v. New York City Health & Hosps. Corp.*, 2020 WL 7237901, at *10 (S.D.N.Y. Dec. 9, 2020) (quoting *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (collecting cases)).

the month.[4]  But MCI obviously cannot produce documents that do not exist.  *See Roundtree v. City of New York*, 2020 WL 4735196, at *1 (S.D.N.Y. Aug. 14, 2020) (denying motion to compel because the responding party "cannot produce documents that do not exist"); *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, 2014 WL 3747160, at *8 (S.D.N.Y. July 3, 2014) ("The Court cannot compel production of documents the plaintiff represented do not exist, without any evidence to the contrary."); *Barnes v. Smith*, 2013 WL 4447897, at *3 (S.D.N.Y. Aug. 19, 2013) (denying request to compel production because the responding party "cannot be ordered to produce reports that do not exist").

Defendants filed their motion knowing full well that MCI lacks certain of the documents they seek.  For example, while Defendants suggest that MCI's search for vouchers was somehow inadequate, Defendants omit that the parties expressly agreed on the scope of MCI's search for vouchers (and that such agreement reflects that MCI does not have hard copy voucher files from the relevant time period).  *See, e.g.*, Dkt. 43-3 at ¶ 26 (Defs' Ex. 2).[5]  Similarly, Defendants incorrectly insinuate that MCI has refused to collect responsive documents from related entities.  To the contrary, MCI has confirmed that "to the extent that MCI determines through a reasonably diligent inquiry that another Marvel entity, such as Marvel Entertainment, LLC, has responsive documents, MCI will similarly produce such documents."  *See* Dkt. 43-3 at ¶ 28 (Defs' Ex. 2).  And MCI disclosed long ago that it does not possess other records about which Defendants now feign ignorance.  *See, e.g.*, Response to Request for Admission No. 4 (Response to Defendants' First Set of Requests for Admission, dated December 20, 2010, *Marvel Worldwide, Inc. v. Kirby*, No. 1:10-cv-00141-CM-KNF (S.D.N.Y.)) [Ex. 2] ("Admitted that MARVEL does not possess copies of any checks issued to any freelance artists from MARVEL between January 1, 1950-January 1, 1964.").

What is more, *tomorrow* MCI is scheduled to respond to Defendants' pending interrogatory in the E.D.N.Y. action on its "efforts to identify, obtain, and/or collect" responsive documents.  *See* Nanci Solo's Second Set of Interrogatories, dated June 26, 2022, *Marvel Characters. Inc. v. Solo*, No. 1:21-cv-05316-DG-TAM (E.D.N.Y.)  [Ex. 3].  Had Defendants waited just a couple of days for MCI's verified response, rather than racing to the courthouse in an attempt to beat MCI's contemplated motion to compel, Defendants would have been further reassured that MCI is surpassing its obligation to undertake a reasonably diligent search for documents.  As MCI's forthcoming interrogatory responses will confirm, MCI has not only searched its own repositories but has also obtained documents from related entities, third-parties within its control,

---

[4]     While MCI has consistently updated Defendants on the timing of its productions, Defendants have refused to answer MCI's inquiry about the timing of their productions.  *Compare, e.g.*, Dkt. 43-22 (Defs' Ex. 21) at 1 n.1 *with* Dkt. 43-23 (Defs' Ex. 22).

[5]     *See also* Defendants' April 28, 2022 Letter to M. Lens, Dkt. 43-12 (Defs' Ex. 11) at 1 (confirming Defendants' understanding that "Marvel would make a physical, as well as electronic, search for checks and/or other payment documents from the relevant time period, but would not, as the parties have agreed, search boxes containing payment documents solely dated from the 1980s, 1990s, or later.").

and publicly available sources.[6] In addition, and again contrary to Defendants' speculation, MCI has searched for and reviewed both electronic and hard copy documents.

To be clear, while MCI disagrees that it bears the burden to show that the Defendant Contributors' work was done at Marvel's instance and expense, MCI agrees with Defendants that it is in MCI's interest to produce responsive information. After all, as in *Kirby*, the evidence here—including in Defendants' six categories—proves that the Defendant Contributors worked at Marvel's instance and expense, thereby rendering the purported termination notices invalid. Similarly here, MCI has diligently worked to produce—and has produced—evidence confirming that the Defendant Contributors worked at Marvel's instance and expense.[7]

MCI respectfully requests that the Court summarily deny Defendants' improper motion. And, so as to discourage further gamesmanship by Defendants, MCI respectfully requests that the Court order that Lieber, Dettwiler, and Ditko each reimburse MCI $1,500, which is considerably less than the fees that MCI incurred in responding to their unnecessary motion. *See* Fed. R. Civ. Pro. 37(a)(5)(B); *see also Shin v. Lee*, 550 F. Supp. 3d 313, 321 (E.D. Va. 2021) (affirming award of attorney's fees and costs after denying motion to compel because motion "sought information . . . that [the responding party] had already provided").

Respectfully submitted,

Daniel M. Petrocelli
of O'Melveny & Myers LLP

cc: Marc Toberoff (via EFC)

---

[6] For months, MCI has pushed Defendants to confirm that they, too, are collecting documents within their control. *See, e.g.*, Keith A. Dettwiler's Responses to MCI's Second Set of Interrogatories, dated June 29, 2022 [Ex. 4]. Defendants' recent interrogatory responses, coupled with their paltry productions, indicate that Defendants—unlike MCI—have failed to do so. *See, e.g.*, Dkt. 43-22 (Defs' Ex. 21) at 8-12 (describing these deficiencies).

[7] MCI has already produced documents pertaining to the six categories that Defendants purport to seek in their motion. *See, e.g.*, 1978 work-made-for-hire agreements with Lieber and Steve Ditko (2021MARVEL-0033712; 2021MARVEL-0033530) (" . . . SUPPLIER acknowledges, agrees and confirms that any and all work, writing, art work material . . . is expressly agreed to be considered a work made for hire."); assorted vouchers with and payments to contributors from 1969 to 1975 (2021MARVEL-0054700; 2021MARVEL-0023916) (demonstrating the system of work assignments and payments employed during the relevant time period); Stan Lee May 13, 2010 Dep. Tr., *Marvel Worldwide, Inc. v. Kirby*, Case No. 1:10-cv-00141-CM-KNF (S.D.N.Y.), at 22:11-16; 34:5-7; 35:11-22 (2021MARVEL-0044725) (testifying that as Marvel's editor, Lee would "come up with the idea" for a story or character, maintain the "ability to edit and make changes or reject what the other writers or artists had created," and receive material for his approval or rejection); Larry Lieber Jan. 7, 2011 Dep. Tr., *Marvel Worldwide, Inc. v. Kirby*, Case No. 1:10-cv-00141-CM-KNF (S.D.N.Y.), at 12:22-28:9 (2021MARVEL-0042359) (testifying that all story and character ideas came from Stan Lee, who would convey the plot or synopsis to Lieber to be fleshed out into a full script);; Stan Lee's 1961 comic book synopsis and layout (detailing the plot and arrangement of various "Fantastic Four" issues to be carried out by contributors pursuant to the "Marvel Method") (2021MARVEL-0050287; 2021MARVEL-003663). To avoid overburdening the Court with additional material, copies of these documents have not been filed as exhibits but are available at the Court's request.