# EXHIBIT 8

OFFICE RECORD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

CADENCE INDUSTRIES CORPORATION, and      :
MAGAZINE MANAGEMENT CO., INC.,
                                         :
                    Plaintiffs,          :

          v.                             :    Civil Action No.

BARBARA RINGER, THE REGISTER OF          :    76 Civ. 339 (WCC)
COPYRIGHTS, AND THE COPYRIGHT
OFFICE OF THE UNITED STATES,             :

                    Defendants.          :

----------------------------------------x

U. S. DISTRICT COURT
FILED
APR 27 1976
R. D. OF N.Y.

MICROFILM
APR 27 1978

### FINAL JUDGMENT

          This action having been duly presented to this Court

for decision upon a Joint Stipulation of Facts (which is annexed

hereto and incorporated herein) and upon briefs submitted by

all parties, and the exhibits attached thereto, and this Court

having rendered its decision in its Memorandum and Order dated

March 13, 1978 (as amended) incorporating its finding of fact

and conclusions of law;

          NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND

DECREED, that Final Judgment in favor of Plaintiffs and against

Defendants be granted and entered in this action as follows:

          1.   That this Court has jurisdiction over the subject

matter of this action and over the parties hereto.

          2.   That for each claim for renewal and extension of

copyright in each work for which either of the Plaintiffs, as *(or any predecessor or successor of either of them claiming)*

~~present~~ owner of copyright at the time renewal is filed, has

heretofore filed an application for such renewal as referred

to in the foreoging papers, or for which they or either of

them hereafter timely files an application for such renewal

describing such claimant as "proprietor of copyright in a

composite work made for hire" (or as both "proprietor of copy-

right in a composite work" and "proprietor of copyright in

a work made for hire"), and provided that such claim is

wcc
wcc

*incompliance with law,* *respects*
~~acceptable~~ in all ~~areas~~ other than the bases of claim; ~~and that~~

~~such claim  does not require correspondence.~~

*(or the predecessor or successor of such*
*Plaintiff)*

    (a)  Such Plaintiff is entitled to the

registration of such claim, and to the issuance

by Defendants of an official certificate evidencing

such registration, for the single statutory renewal

fee for such work in effect at the time such

application was or is filed;

*and all persons acting under their direction*

    (b)  Defendants shall, and are hereby ordered

to, grant such registration and issue an official

certificate in evidence thereof, for the single

statutory renewal fee for such work in effect at

the time such application was or is filed.

    3.  That this Court retains jurisdiction of the parties

hereto for the purposes of any proceedings to enforce this

Judgment.

    4.  That, ~~in accordance with Section 116 of the~~

~~Copyright Act of 1909, 88 Stat. 1873 (current version at 17~~

~~U.S.C. Section 505, 90 Stat. 2541 (1976))~~ neither costs nor

attorney's fees will be awarded against the Defendant in this

action.

ENTERED this   *25th*   day of *April* , 1978.


*William C. Conner*
WILLIAM C. CONNER
UNITED STATES DISTRICT JUDGE


Dated:  New York, New York

JDGMENT ENTERED - 4/27/28

*Raymond F. Burghardt*
CLERK

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
FILED
MAR 14 1976
S. D. OF N. Y.

- - - - - - - - - - - - - - - - - - X

CADENCE INDUSTRIES CORPORATION
and MAGAZINE MANAGEMENT CO., INC.,

               Plaintiffs,

     - against -

BARBARA RINGER, Register of
Copyrights, and THE COPYRIGHT
OFFICE OF THE UNITED STATES,

               Defendants.

- - - - - - - - - - - - - - - - - - X

                 76 Civ. 339
                    (WCC)

                MEMORANDUM
                AND ORDER

A P P E A R A N C E S :

                    KENYON & KENYON REILLY CARR
                     & CHAPIN, ESQS.
                    Attorneys for Plaintiffs
                    59 Maiden Lane
                    New York, New York  10038

CHARLES R. BRAINARD, ESQ.,
STUART J. SINDER, ESQ.,
       Of Counsel

                    HON. ROBERT B. FISKE, JR.,
                    United States Attorney for the
                     Southern District of New York
                    Attorney for Defendants
                    One St. Andrew's Plaza
                    New York, New York  10007

JOHN M. O'CONNOR, ESQ.,
Assistant United States Attorney

RICHARD E. GLASKOW, ESQ.,
Assistant General Counsel,
Copyright Office

      Of Counsel

2021MARVEL-0039413

CONNER, D. J.:

This action to compel the Register of Copyrights and the Copyright Office to register plaintiffs' claims to renewal and extension of the copyright in each of a series of comic books published by plaintiffs' predecessors, is the culmination of a ten-year struggle.

The controversy centers upon a question of first impression concerning the construction of the copyright renewal statute, 17 U.S.C. § 24,[1/] specifically whether a copyright proprietor may, in its renewal application, identify the copyrighted work as both a "periodical, cyclo-pedic or other composite work" and as a "work made for hire," or whether these categories are mutually exclusive and contradictory and, if so, whether the Register has the authority to refuse registration.

There being no dispute as to the controlling facts, the action was submitted for decision on a stipulation of facts and on legal memoranda.

The factual background

The following brief factual summary, incorporating the Court's findings of fact, will suffice:

Beginning in 1940, the predecessors of the plaintiffs, a group of commonly owned and controlled corporations

2021MARVEL-0039414

collectively known as the Marvel Comics Group (the "Group") published various periodical magazines, including comic books. Each comic book issue featured at least one fictitious cartoon character, but the issues frequently included material concerning characters featured in other publications of the Group. However, all of the writers, artists and editors involved in the creation of every issue were salaried employees of one or more corporations in the Group.

The copyright in each issue was initially secured by publication with an appropriate copyright notice, and the claim to copyright was duly registered by the Copyright Office as a "periodical" in Class B, in the name of the publishing corporation as proprietor.

Beginning in September 1967 (within the last year of the respective 28-year terms of the original copyrights, as required by 17 U.S.C. § 24), the successor plaintiff filed an application for registration of its claim to renewal and extension of the copyright in each issue, the application being filed on the appropriate renewal application, Form R, identifying the renewal applicant as "Proprietor of copyright in a composite work made for hire," and being accompanied by the statutory fee of $4.00.

The Copyright Office rejected the application on the ground that the characterizations of the publication as a

2021MARVEL-0039415

composite work" and as a "work made for hire" were contra-
dictory.  The Office indicated that it would accept an
application which identified the publication as either one
or the other, but not both.  It also indicated that it would
accept two applications for each issue, one identifying
the publication as a "composite work" and the other as a
"work made for hire," provided each application was ac-
companied by a $4.00 fee.  Plaintiffs offered to submit two
such applications with a single $4.00 fee, but the Office
insisted upon a $4.00 fee for each application.

After a lengthy exchange of correspondence, and at
least one meeting between plaintiffs' counsel and officials
of the office, without resolution of the controversy, on
May 14, 1971 the Librarian of Congress wrote the President
and asked that the Attorney General be directed to render
an opinion on the question "whether the Register of Copy-
rights may refuse to make registration of a claim to renewal
copyright when the application states that the claim is
founded on two bases that the Register considers to be
contradictory."  The letter was accompanied by a memorandum
prepared by the Copyright Office setting forth the rele-
vant facts and summarizing the contentions of the parties.

Three years elapsed before the Attorney General on
June 10, 1974 rendered a 16-page written opinion concluding
that the categories "composite work" and "work made for

-4-

2021MARVEL-0039416

hire" were mutually exclusive and that the Register of
Copyright had the authority to decline registration of
a renewal claim asserting these inconsistent bases.   The
present action followed a year and a half later.

## The relevant statutes

Under Section 24, [2/] a copyright has an initial term
of 28 years from the date of first publication, and may be
renewed for an additional term of 28 years, upon the appli-
cation of specified persons.  The first proviso of Section
24 permits renewal by a proprietor who initially copyrighted
the work, provided the work falls within at least one of the
following four categories:

(1)  a posthumous work; [3/]

(2)  a periodical, cyclopedic or other composite
     work upon which the copyright was originally
     secured by the proprietor thereof;

(3)  a work copyrighted by a corporate body (other-
     wise than as assignee or licensee of the
     individual author);

(4)  a work copyrighted by an employer for whom such
     work is made for hire.

As to all other types of work, the second proviso of
Section 24 permits renewal by the author or his designated

2021MARVEL-0039417

Case 1:21-cv-07957-LAK     Document 203     Filed 05/29/24     Page 9 of 24

heirs or representatives.[4/]

None of the terms used in the first proviso is
defined in the Copyright Act, although 17 U.S.C. § 26
defines "author" as including an employer in the case
of a work made for hire.

In the case of a "work made for hire," only the
employer or its successor may renew the copyright. Shapiro,
Bernstein & Co., Inc. v. Bryan, 123 F.2d 697 (2d Cir. 1941).
In the case of a "composite work," the second proviso of
Section 24 specifically provides for renewal by the author
or his successors, assuming, of course, that the author was
not an employee and that his contribution is distinguishable
from the rest.[5/]

It was this important difference in consequences as
between a "composite work" and a "work made for hire" which
led the Attorney General to conclude that the two categories
must be mutually exclusive.

The contentions of the parties

Plaintiffs' argument may be summarized as follows:

1. Plaintiffs have complied with every statutory
requirement for renewal registration; they are the proprietors
of the copyrights involved; they submitted applications for re-
newal which were complete and accurate in all respects and
were accompanied by the statutory fee.

2021MARVEL-0039418

2.   The works in question are concededly periodicals; the first category of the first proviso includes all periodicals, whether or not they are composite works.  Moreover, they are composite works, since each includes the contributions of several authors. They are also works made for hire by salaried employees of plaintiffs' predecessors.

3.   There is no inconsistency in denominating the works in question as both "composite works" and "works made for hire."  To designate them as only one or the other would be a misleading half truth.

4.   The Copyright Office has no authority to rule on the validity of a claim to copyright or to renewal thereof. It merely registers the claim as a ministerial act.  Even if the two categories named were mutually exclusive and inconsistent, the Register of Copyright has no power to deny registration of the claim.   Bouve v. Twentieth Century-Fox Film Corp., 122 F.2d 51 (D.C. Cir. 1941).

5.   The mere fact that the Copyright Office may maintain separate indices for "composite works" and for "works made for hire" does not justify the requirement of two statutory fees.  To facilitate such dual indexing, plaintiffs are willing to supply two applications, one designating the publication as a "composite work" and the other as a "work made for hire," provided only a single fee is paid for

2021MARVEL-0039419

registering the two claims on a single work.

Defendants' arguments may be summarized as follows:

1.  17 U.S.C. § 207 expressly authorizes the Register of Copyrights to establish rules governing applications for copyright registration and renewal and to determine whether applications are entitled to registration.

2.  Plaintiffs' designations of the publications as "composite works" and as "works made for hire" are contradictory, because, under 17 U.S.C. § 26, a "work made for hire" has but one "author" -- the employer -- who alone is entitled to renewal, while a composite work is made up of the distinguishable contributions of several authors, each of whom has the right of renewal as to his contribution. The significance of the difference between the two is emphasized in the present case by the fact that three of the contributors to the publications in question have filed applications for registration of their claim to renewal of the copyright in their respective contributions.

3.  The refusal of the Copyright Office to register inconsistent claims is not arbitrary and capricious, but a proper exercise of the responsibility of the Office because, under 17 U.S.C. §§ 209, 210, a registration constitutes prima facie evidence of validity and of the facts recited.  If the Office registers a claim which classifies a publication in the wrong

2021MARVEL-0039420

category, it may discourage or prejudice the assertion of
renewal rights by a party rightfully entitled thereto.

## The real issue

The real dispute, of course, involves nothing more
or less than whether plaintiffs must pay one $4.00 fee or
two.

Plaintiffs' insistence that they cannot tell a half
truth seems less than fully sincere in view of their re-
peatedly expressed willingness to tell two "half truths,"
one in each of two separate applications, provided they pay
only one fee.

On the other hand, defendants' protestation that the accept-
ance of an application containing inconsistent assertions
would compromise the integrity of the registration system,
is even less convincing in view of their stated willingness
to accept inconsistent assertions made in separate, con-
currently filed applications provided each is accompanied by
the statutory fee.  The integrity of the system would seem
to be compromised at least as much by requiring that the
inconsistent statements be made in two separate applications,
creating a hazard of concealment of the inconsistency, as by
permitting both statements to be made in a single application,
thereby assuring public notice of the inconsistency.

2021MARVEL-0039421

## Is there an inconsistency?

On their face, the terms "composite work" and "work made for hire" would not appear to be mutually exclusive. A publication may obviously be a "composite work" in the ordinary sense that it consists of the distinguishable contributions of several authors, and at the same time a "work made for hire" in the ordinary sense that all of such contributors were salaried employees of the publisher.

In Shapiro, Bernstein & Co., Inc. v. Bryan, supra, Judge Learned Hand gave such ordinary meaning to the term "composite works":

> "The second provides for 'composite works,' by which we understand those to which a number of authors have contributed distinguishable parts, which they have not however 'separately registered,' * * * ." 123 F.2d at 699.

and to the term "work made for hire":

> "The simple meaning of the words is that when the employer has become the proprietor of the original copyright because it was made by an employee 'for hire,' the right of renewal goes with it, unlike an assignment.

* * * *

2021MARVEL-0039422

> "The 'work' intended is clearly any
> 'work' which, but for the employment, the
> employee could have himself copyrighted."
> 123 F.2d at 700.

The Compendium of Copyright Practices, a practice
manual prepared by the Copyright Office for the guidance
of its examining staff, likewise gives the words "composite work"
their customary meaning:

> "Generally, a composite work is an original publi-
> cation relating to a variety of subjects,
> to which a number of different authors have
> contributed distinguishable and separable
> selections."  § 11.8.3.

> \* \* \* \*

> "A work by a single author, consisting of
> a collection of his writings, is not a composite
> work."  § 11.8.3.II.b.

Defendants have cited no court decision or authority
on copyright law, and we are aware of none, which has concluded
or even suggested that the term "composite work" should or
might be interpreted narrowly to exclude publications in which
some or all of the contributions were made for hire.  See,
e.g., Nimmer on Copyright, §§ 13.3, 14.3, 43, 68.

Nor is there anything about the context in which the
terms are used in the first proviso of Section 24 which suggests
that they were intended to be treated as mutually exclusive.
Defendants stress the fact that the four categories of work
listed in the first proviso of Section 24 are separated by

-11-

2021MARVEL-0039423

the disjunctive "or." However, it is obvious that not all
of these categories are mutually exclusive; for example,
where the work is created by employees of a corporation, the
work could fall into both the third category, "work copy-
righted by a corporate body (otherwise than as assignee or
licensee . . . "), and the fourth category, "work copyrighted
by an employer for whom such work is made for hire."

To the extent that the legislative history sheds
any light on the matter, it tends to undercut defendants'
position. Although a renewal system was incorporated in the
first Copyright Act of 1798, no provision was made for renewal
by proprietors until 1909. In the House Report accompanying
H.R. 28192, the Smoot-Currier bill, which eventually became
the 1909 Copyright Act, the rationale for giving
proprietors the right of renewal in certain situations was
explained in this way:

> "In the case of composite or cyclopedic
> works, to which a great many authors contribute
> for hire and upon which the copyright was origi-
> nally secured by the proprietor of the work it
> was felt that the proprietor of such work should
> have the exclusive right to apply for the renewal
> term. In some cases the contributors to such a
> work might number hundreds and be scattered over
> the world, and it would be impossible for the
> proprietor of the work to secure their cooperation
> in applying for the renewal."

The reference to "composite . . . works to which a
great many authors contribute for hire," appears clearly to

-12-

2021MARVEL-0039424

indicate that the terms "composite work" and "work made for hire" are not used in an incompatible sense.

Defendant Ringer, the present Register of Copyrights, in Renewal of Copyright, her 1960 Legislative Study No. 31, commented on this portion of the 1909 House Report as follows:

> "The legislative history shows that the determinative factors in a 'composite work' were:
>
> 1) A number of authors contributing copyrightable matter to a single work; and
>
> 2) An employment or contractual arrangement entitling the proprietor to secure copyright in the various contributions."
>
> \* \* \* \*
>
> "The Committee reports on this final [Smoot-Currier] bill indicate a likelihood that the legislators regarded a 'work made for hire' as a species of 'composite or cyclopedic work,' and did not realize the breadth of the exception they were creating." Comm. on the Judiciary, 86th Cong., 2d Sess., Study on Renewal of Copyright 131, 139 (Comm. Print 1960)(emphasis added).

This indeed seems the most likely if not the only plausible meaning of the House Report. 6/

In her present role of Register of Copyrights, defendant Ringer has understandably adopted the position of the Copyright Office. Although the construction given a statute by the agency charged with its administration is entitled to substantial weight, Udall v. Tallman, 380 U.S. 1,

-13-

2021MARVEL-0039425

16 (1965), the Copyright Office has repeatedly revealed
its doubts about the proper interpretation of the statutory
language in question, even after obtaining the opinion of
the Attorney General.  At page 17 of their Brief, defendants
state:

> "In an effort to resolve this matter without
> litigation and in accordance with its policy
> of resolving doubtful cases in favor of registration
> whenever possible, the Copyright Office informed
> the Plaintiffs that, as an exception in a limited
> number of cases, it may be arguable that renewal
> claims by the same claimant as 'proprietor of a
> copyright in a composite work' and 'proprietor of
> a copyright in a work made for hire' are not incon-
> sistent and can therefore be made on the same appli-
> cation.  However, the Copyright Office informed the
> Plaintiffs that to qualify for such exceptional
> treatment the Plaintiffs would be required to
> support each such claim with a statement that (1)
> all of the contributions in the work were made for
> hire, and (2) the work is 'composite' because dis-
> parate corporate employers-for-hire, each of whom
> would be considered 'authors,' under section 26 ac-
> counted for the authorship of all of the various
> contributions.  However, the Plaintiffs have refused
> to investigate the facts surrounding the authorship
> of these works sufficiently so as to enable them to
> proceed in this manner.  Instead they have elected
> to pursue this litigation."

This is a clear concession that a composite work may
consist entirely of contributions made for hire, at least where
there were several different corporate employers-for-hire,
as there were for many if not all of the publications here
involved.

Plaintiffs' reluctance to undertake the extensive re-
search necessary to enable them to represent that more than one

2021MARVEL-0039426

corporate employer was responsible for the contributions
to each of the publications is understandable, particularly
when the problem could be resolved by the mere payment of a
second $4.00 (or $6.00) renewal fee.

The reasoning employed in the opinion of the Attorney
General in reaching the conclusion that the terms "composite
work" and "work made for hire" are inconsistent -- that in the
latter case the proprietor has the right of renewal while in
the former the author has -- is really a non sequitur.

As noted above, when the terms are accorded their
ordinary meaning, a "composite work" can be a "work made for
hire" provided all of the distinguishable contributions were
made by employees of the publisher.  In that case the pro-
prietor would have all the renewal rights and the authors (in
the colloquial sense) and their successors would have none.  On
the other hand, if the "composite work" includes the contributions
of both employees and non-employees, the proprietor would have
renewal rights to all portions of the whole except the identi-
fiable contributions of non-employees, as to which the authors
or their successors would have the renewal rights, at least if
the copyright thereon had been separately registered.⁷ᐟ  There
is no apparent inconsistency in this construction.

Defendants further argue that because the term "composite
work" is defined in their Compendium of Copyright Practice to

-15-

2021MARVEL-0039427

exclude a compilation of the works of a single author, and
because 17 U.S.C. § 26 provides that " . . . the word 'author'
shall include an employer in the case of works made for hire,"
a collection of works made for hire for a single employer
cannot be a composite work.

However, like Judge Learned Hand in <u>Shapiro, Bernstein
& Co. v. Bryan</u>, <u>supra</u>, 123 F.2d at 699, we "cannot see" that
the definition of "author" in Section 26 has anything to do
with the construction of the first proviso in Section 24, "be-
cause the word does not appear in it."

Moreover, the Compendium expressly states at page  11-
16 that

> "The term 'author,'for renewal purposes,
> refers to the individual who personally
> wrote or created 'renewable matter,' in
> the work.
>
>         * * *
>
> "The term 'author' does not include em-
> ployers for hire, publishers * * * or
> any other impersonal entity."

For all the reasons stated, the Court concludes that
the terms "composite works" and "works made for hire" are not
inconsistent.  The Court therefore need not consider the ques-
tion whether defendants have the authority to reject an appli-
cation containing inconsistent statements.  Suffice it merely
to say that defendants' conclusion that they must reject plain-
tiffs' renewal applications because of the <u>prima facie</u>

-16-

2021MARVEL-0039428

presumption of validity and   of the facts recited in a
registration appears unjustified in view of the statement
in Epoch Producing Corp. v. Killiam Shows, Inc., 522 F.2d
737 (2d Cir. 1975), cert. denied, 424 U.S. 955 (1976) that
certificates of renewal, unlike original registrations, are
not accorded prima facie effect.

It is undisputed that the Copyright Office has
neither the facilities nor the authority to rule upon the
factual basis of applications for registration or renewal,
and that where an application is fair upon its face, the
Office cannot refuse to perform the "ministerial duty" of
registration "imposed upon [it] by the law." Bouve v. Twentieth
Century-Fox Film Corp., supra, 122 F.2d at 56.

Defendants will therefore be ordered to register
plaintiffs' claims for renewal describing plaintiffs as
"proprietor of copyright in a composite work made for hire"
upon payment of the single statutory fee in effect as of
the time the respective renewal applications were filed.

Settle judgment order on notice.

William C. Conner
United States District Judge

Dated:  New York, New York
        March 13, 1978

-17-

2021MARVEL-0039429

## FOOTNOTES

1    Throughout this opinion, reference is made to the
     provisions of the Trademark Act of 1909, as amended,
     which was in effect throughout the ten-year history of
     this controversy and was still in effect at the time the
     main briefs of the parties were filed.  As of January 1,
     1978, a new Copyright Act became effective.  However,
     the language of its renewal provision, Section 304, is
     identical with that of Section 24 of the prior Act in
     all of the respects discussed herein, except that the
     renewal fee was increased from $4.00 to $6.00.

2.   17 U.S.C. § 24 reads in pertinent part as follows:

     "The copyright secured by this title shall endure
     for twenty-eight years from the date of first publi-
     cation . . .:  Provided, That in the case of any
     posthumous work or of any periodical, cyclopedic,
     or other composite work upon which the copyright
     was originally secured by the proprietor thereof,
     or of any work copyrighted by a corporate body
     (otherwise than as assignee or licensee of the
     individual author) or by an employer for whom
     such work is made for hire, the proprietor of
     such copyright shall be entitled to a renewal
     and extension of the copyright in such work . . .:
     And provided further, That in the case of any
     other copyrighted work, including a contribution
     by an individual author to a periodical or to a
     cyclopedic or other composite work, the author
     of such work [or his designated heirs or repre-
     sentatives] shall be entitled to a renewal. . . . "

3.   The Court of Appeals for the Second Circuit would
     apparently define a posthumous work as one which
     1) was first published after the death of the
        author, and 2) on which the copyright was first
        assigned after the death of the author.
     Bartok v. Boosey & Hawkes, Inc., 523 F.2d 941
     (2d Cir. 1975).  See Nimmer on Copyright, § 114.1.

-8-

2021MARVEL-0039430

4.  The rationale of favoring authors over proprietors
    was explained in the House Report in connection with the
    recent revision of the Copyright Act:

    "It not infrequently happens that the author sells
    his copyright outright to a publisher for a compara-
    tively small sum.  If the work proves to be a great
    sucess and lives beyond the term of twenty-eight
    years, your committee felt that it should be the ex-
    clusive right of the author to take the renewal term,
    and the law should be framed as is the existing law,
    so that he could not be deprived of that right."
    H. R. Rep. No. 2222, 60th Cong. 2d Sess. p.14.

    And in White-Smith Music Publishing Co. v. Goff,
    187 Fed. 247, 251 (1st Cir. 1911), the Court stated:

    "There are at least sentimental reasons for believing
    that Congress may have intended that the author, who
    according to tradition receives but little for his work,
    and afterwards sees large profits made out of it by
    publishers, should later in life be brought into his
    kingdom."

    See also Nimmer on Copyright, § 113.

    However, the author may assign the renewal right.  Fred
    Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643
    (1943).  Nimmer on Copyright, § 117.2.


5.  In the Copyright Act of 1909, as originally worded,
    Section 23 (renumbered as Section 24 in Title 17, U.S. Code)
    permitted the author to renew the copyright in a
    contribution to a composite work only where he had
    separately registered a copyright on that contribution
    originally:

    "* * * That in the case of any other copyrighted
    work, including a contribution by an individual
    author to a periodical or to a cyclopedic or
    other composite work when such contribution has been
    separately registered the author . . . shall be en-
    titled to a renewal . . . (Emphasis supplied)."

    In 1940, this section was amended to eliminate the
    underlined clause, and thus at least literally permit
    renewal by authors whether or not the copyright in
    their contributions had been separately registered.

2021MARVEL-0039431

However, defendants state that "The law concerning
the right to renew a contribution to a composite
work that has not been separately registered is
most unclear."  Defendants' Brief, p. 14.  And
Nimmer agrees, stating

"It is undoubtedly correct when the individual
contribution originally bears a separate copy-
right notice in the name of the author.  Where
this is not the case, however, it cannot be
stated with certainty that the author has a right
to claim renewal in the work even though he was
never owner of record of the work in its original
term of copyright."   Nimmer on Copyright, § 114.2.

If authors who had not separately registered claims
to copyright on their contributions to a composite
work were not entitled to renewal, there could be
no difference in consequences, whether or not the
work was made for hire.

In any event, it is settled that the renewal right is
never extended  to employees whose contributions
were produced for hire.  Fred Fisher Music Co., Inc.
v. Leo Feist, Inc., 55 F. Supp. 359 (S.D.N.Y. 1944).

6.    The Attorney General's Report, in footnote 8 on page 10,
took a different position:

"Use of the words 'for hire' in the above quotation
appears to have been a misnomer.  The reason stated
for giving the proprietor a right to renew in the
case of a composite work -- that it might not be
possible to have the many contributors cooperate
in applying for a renewal -- is logical where those
contributors were not employed on a salary basis
and would therefore have had renewal rights as authors.
That reason is inappropriate if the contributors had
worked for hire since they would then have no renewal
rights and the proprietor alone would be entitled to
renew."

However, it seems less likely that the author and
readers of the House Report were sensitive to this
rather abstruse nuance than that they understood the
ordinary meaning of the words "composite works . . . to
which a great many authors contribute for hire,"

-c-

2021MARVEL-0039432

7.    See note 5, *supra*.

2021MARVEL-0039433