# EXHIBIT 1

Page 1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
MARVEL CHARACTERS, INC.,

            Plaintiff and
       Counterclaim Defendant,
            vs.                      Case Nos.
                                     1:21-cv-7955-LAK
LAWRENCE D. LIEBER,                  1:21-cv-7957-LAK
                                     1:21-cv-7959-LAK
            Defendant and
            Counter-claimant.
-------------------------------x
MARVEL CHARACTERS, INC.,

            Plaintiff and
            Counterclaim Defendant,
            vs.
KEITH A. DETTWILER, in his
capacity as Executor of the
Estate of Donald L. Heck,

            Defendant and
            Counter-claimant.
-------------------------------x
MARVEL CHARACTERS, INC.,
            Plaintiff and
            Counterclaim Defendant,

            vs.
PATRICK S. DITKO, in his
capacity as Administrator of the
Estate of Stephen J. Ditko,
            Defendant and
            Counter-claimant.
-------------------------------x
   VIDEOTAPED DEPOSITION OF PATRICK S. DITKO
              New York, New York
           Tuesday, February 14, 2023
                   9:52 a.m.
JOB NO. 5697050
```

Page 2

February 14, 2023

9:52 a.m.

Videotaped Deposition of PATRICK S. DITKO, held at the offices of O'Melveny & Myers LLP, Seven Times Square, New York, New York, pursuant to notice, before Jennifer Ocampo-Guzman, a Certified Realtime Shorthand Reporter and Notary Public of the State of New York.

Page 21

```
 1
 2     and that's how it was.
 3         Q.    Meaning that you never discussed
 4     your brother's work with him?
 5         A.    Right, correct.
 6         Q.    Did he ever tell you why he had a
 7     rule that what happens in New York stays in
 8     New York?
 9         A.    Because he was that private.
10         Q.    And did that rule that he applied
11     to your relationship apply to his
12     relationship with the balance of your family?
13         A.    Well, he told that to my mother, my
14     mother relayed it to me, and we -- and then
15     it got through all the kids and everything
16     else; so it was the golden rule.
17         Q.    So it applied to your children as
18     well?
19         A.    Yes.  They were, you know, real
20     young then.
21         Q.    And the same rule applied
22     throughout the duration of your brother's
23     life?
24              MR. TOBEROFF:  Objection, assumes
25         facts.  Objection as to form.
```

```
 1
 2           getting confusing.  But the questions
 3           are really not fair, because I don't
 4           have any knowledge, and I already said
 5           that.
 6                MR. TOBEROFF:  And she's implying
 7           that there is no basis, when you say no.
 8                MS. LENS:  No, I'm asking
 9           questions, as I'm entitled to do.
10                MR. TOBEROFF:  I know what you're
11           doing and it's improper.
12           Q.   You haven't seen any checks from
13      Marvel to Steve Ditko from the 1960s, have
14      you?
15                MR. TOBEROFF:  Objection as to
16           form, lacks foundation.
17           A.   No.
18           Q.   And you haven't seen the backs of
19      any checks from Marvel to Steve Ditko from
20      the 1960s, have you?
21                MR. TOBEROFF:  Objection as to
22           form, lacks foundation.
23           A.   No.
24           Q.   And do you have any evidence that
25      Steve Ditko wasn't paid for the pages that he
```

Page 29

1
2       pencilled or inked for Marvel?
3            A.    No.
4            Q.    Are you able to proffer any
5       testimony that Steve Ditko wasn't subject to
6       Stanley's editorial supervision?
7            MR. TOBEROFF:  Object.  Do you
8       understand her question?
9            THE WITNESS:  No, I don't.
10           MR. TOBEROFF:  Do you understand
11      her questions?
12           THE WITNESS:  No I don't.
13           MR. TOBEROFF:  Do not answer
14      questions that you don't understand.
15      Okay?
16           And again, if you don't have a
17      basis because you don't have personal
18      knowledge, I'd like you to specifically
19      state that, sir.  Is that understood?
20           THE WITNESS:  I'm trying.
21           MR. TOBEROFF:  I would rather --
22      it's not a yes or no question, if you
23      need to state where your answer is no
24      because you don't have knowledge.  And
25      as far as evidence is concerned, you may

Page 31

1
2      supervision?
3           A.   I have no knowledge.
4           Q.   Okay.  Thank you.
5                Do you think you're qualified,
6      Mr. Ditko, to testify on whether Steve
7      Ditko's work for Marvel from 1962 to 1966 was
8      done on a work made for hire basis?
9           A.   I have no idea, no knowledge.
10          Q.   Do you know what it means to, for
11     work to have been made on a work for hire
12     basis?
13          A.   No.
14          Q.   Did you ever discuss with your
15     brother Steve whether his work for Marvel was
16     done on a work made for hire basis?
17          A.   No.
18          Q.   Are you aware that your brother
19     Steve and Jack Kirby overlapped at Marvel for
20     several years?
21               MR. TOBEROFF:  Object as to form.
22     Lacks foundation.
23               You could answer.
24          A.   No.
25               THE VIDEOGRAPHER:  If I could just

Page 72

1
2     Q.  So you found what's been marked as
3  Exhibit 100, which is in front of you in an
4  actual book in your brother's apartment?
5         MR. TOBEROFF:  Objection as to
6     form.
7     A.  I don't where it was.  It was in
8  another file other than his reference file.
9  He had other files also.
10    Q.  Did he have a file relating to his
11 work with Marvel?
12        MR. TOBEROFF:  Objection as to
13    form.
14    A.  No, not really.
15    Q.  Did you find any agreement between
16 he and Marvel?
17        MR. TOBEROFF:  Objection as to
18    form.
19    A.  No.
20    Q.  Did you found any agreements
21 between Steve Ditko and DC Comics?
22        MR. TOBEROFF:  Objection as to
23    form.
24    A.  There may have been something
25 there, but I'm not -- I don't really recall.

Page 153

1
2    but -- I would say yes.
3         Q.   Yes, you understood that your
4    brother's estate was worth over a million,
5    correct?
6         A.   Correct.
7         Q.   And does that also help refresh
8    your recollection that each third of the
9    family -- as you said, there's three
10   families -- had received hundreds of
11   thousands of dollars of Steve Ditko's estate
12   at the time of his passing; is that correct?
13            MR. TOBEROFF:  Objection as to
14        form, assumes facts.
15        A.   I don't think -- no, that's not
16   correct.
17        Q.   The monies that you received from
18   your brother's estate, do you -- have you
19   passed any of those monies along to your son
20   Mark?
21        A.   Only expenses from New York, from
22   Johnstown to New York, because he -- yes.
23        Q.   Other than that, has he received
24   any monies from the estate?
25        A.   Mark?

Page 206

```
                         C E R T I F I C A T E
   STATE OF NEW YORK    )
                        : ss.
   COUNTY OF NEW YORK   )


            I, Jennifer Ocampo-Guzman, a
   Certified Realtime Shorthand Reporter and
   Notary Public within and for the State of New
   York, do hereby certify:
            That PATRICK S. DITKO, the
   witness whose deposition is hereinbefore set
   forth, was duly sworn, and that such
   deposition is a true record of the testimony
   given by the witness.
            I further certify that I am not
   related to any of the parties to this action
   by blood or marriage, and that I am in no
   way interested in the outcome of this
   matter.
            IN WITNESS WHEREOF, I have
   hereunto set my hand this 1st day of
   March, 2023.


                   [signature]
            JENNIFER OCAMPO-GUZMAN, CRR, CLR
```

```
------------- I N D E X ----------------
WITNESS              EXAMINATION BY      PAGE
PATRICK S. DITKO     MS. LENS              6
                     MR. TOBEROFF        201
-------------- EXHIBITS -----------------
EXHIBITS                              FOR I.D.

Exhibit 122, Complaint for              94
Declaratory Relief
Exhibit 123, Defendant Ditko's         112
Supplemental Responses and
Objections to Plaintiff's Third Set
of Interrogatories to Patrick S
Ditko
Exhibit 124, Article                   137
entitled,"Ditko family working to
share Johnstown comics legend's
story, promote his legacy."

Exhibit 125, Affidavit, Bates Nos.     150
2021MARVEL-0070642 through
2021MARVEL-0070643

Exhibit 126, Photocopies of            197
handwritten letters
            MARKED FOR RULING
               PAGE   LINE
                26     19
```