# EXHIBIT 65



O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number: 0903423-00392

September 20, 2022

Molly M. Lens
D: +1 310 246 8593
mlens@omm.com

Marc Toberoff
Jaymie Parkkinen
Toberoff & Associates
23823 Malibu Road, Suite 50-363
Malibu, California 90265

Re:     *Marvel Characters, Inc. v. Lieber*, No. 1:21-cv-07955-LAK; *Marvel Characters, Inc. v. Ditko*, No. 1:21-cv-07957-LAK; *Marvel Characters, Inc. v. Dettwiler*, No. 1:21-cv-07959-LAK; *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM; and *Marvel Characters, Inc. v. Rico*, No. 2:21-cv-07624-DMG-KES

Dear Marc and Jaymie:

Consistent with Judge Scott's and Judge Merkl's September 6 and 16 rulings, MCI provides the following information regarding its electronic and physical search efforts.[1]

Without waiving any applicable privileges, including the attorney-client privilege and work-product doctrines, MCI—together with, and under the supervision of, attorneys at O'Melveny & Myers—worked diligently to identify both custodial and non-custodial sources reasonably likely to have responsive information. *See, e.g.*, *Cartier, a Div. of Richemont N. Am., Inc. v. Aaron Faber Inc.*, 2006 WL 20494, at *1 (S.D.N.Y. Jan. 4, 2006) (A party's "search may, of course, be limited to those sources reasonably likely to contain responsive information"). As part of these efforts, MCI reached out to knowledgeable employees in Marvel's legal, finance, tax, human resources, and publishing departments—including some who have worked for Marvel for decades and were involved in Marvel's prior extensive efforts to identify documents relating to contributors from the 1960s and 1970s—to inquire not only about their files but their knowledge of other potential sources of information. These efforts extended beyond MCI itself to other Marvel entities and within the larger Disney organization, as appropriate.

As a result, MCI identified a number of sources of potentially responsive information, which are detailed below.[2] In each instance, MCI conducted reasonably diligent searches of each so-identified source. MCI did not decline to review any identified sources that were likely to have

---

[1] The Colan Defendants are similarly obligated to provide information about their search efforts but have not yet done so. MCI is still waiting for Defendants' responses to its August 14 and 16 correspondence.

[2] For clarity, MCI has outlined its search and collection efforts around the different categories of documents that Defendants requested. To be clear, however, there is unavoidable overlap among the categories. MCI's searches themselves were not so limited, with MCI looking broadly for responsive documents, regardless of the specific target of the specific search and/or source being reviewed.



responsive information because such sources were either (a) too burdensome to review; or (b) inaccessible.  MCI is unaware of any unsearched repositories that are likely to contain additional non-privileged responsive documents.

1. **Contracts, Draft Agreements, and Related Correspondence and "Working Status" Documents**

Marvel's legal department uses a central document repository called "SharePoint."  SharePoint houses a wide variety of documents, which are organized into more than a dozen different folders (or libraries).  SharePoint is the repository for talent contracts and associated documents, such as correspondence and draft agreements.  It contains both native electronic documents as well as documents that previously existed in hard copy but have been scanned and loaded into the system in searchable form.

As shown in Exhibit A, MCI ran just shy of 900 distinct search terms to identify responsive documents in SharePoint, including terms associated with the Works, the Copyright Claimants, Stan Lee, the Defendant Contributors, and other contributors as agreed to by the parties.[3]  This required a separate search for each term listed.  Further detail about MCI's search terms follows:

- **Copyright Claimants**:  MCI searched the names of the Copyright Claimants both in full, e.g. Canam Publisher Sales Corporation, and in shorthand, e.g. Canam.[4]

- **Stan Lee, Copyright Claimants, and Other Contributors**:  MCI searched the full names of these individuals, including (a) various iterations of full names, e.g. "Don Rico" and "Donato Francisco Rico II," (b) various associated noms de plume, e.g. "Dan Rico," "Donella St. Michaels," "Donna Richards," "Joseph Milton," and "N. Korok," and (c), in the case of the Defendant Contributors, even simply the individual's last name, e.g. "Rico."

- **Works**:  After searching for the names of select Works via plain-text searches of various formulations of the Work, e.g. Amazing Fantasy #15, "Amazing Fantasy #15," "Amazing Fantasy No 15," and "Amazing Fantasy 15," MCI determined that Boolean searches

---

[3] On August 5, Defendants demanded—for the first time—that MCI use names of characters appearing in the Works as search terms.  But those character names are not a reasonable way to identify responsive information, especially given the other search terms that Marvel has run.  For example, Defendants asked that MCI use the term "Black Widow," as that character appears in two comic issues that Don Rico listed in his purported termination notice.  That request ignores that MCI had already run electronic searches for Don Rico (including iterations of his name and his pseudonyms), Don Heck and Stan Lee (who also contributed to the comics at issue), the titles of the comics at issue, and the entity that registered the copyright in those comics.  There is no reason to believe that documents including the term "Black Widow" but not a single one of these other terms would relate to the Works that Rico contributed to in 1964, as opposed to Marvel's vast number of other exploitations involving the Black Widow character in the intervening nearly six decades.

[4] The one exception was for Marvel Comics, Inc. where the shorthand "Marvel" or "Marvel Comics" are not practicable search terms, as these searches would yield documents with any mention of Marvel or Marvel Comics, without regard to whether they are likely to relate to this issue in dispute.



could better identify all associated responsive documents with the Works, e.g. "Amazing Fantasy" NEAR(n=2) "15."  In plain English, this search retrieved any document where the term "Amazing Fantasy" was within two phrases of 15, such as where "Amazing Fantasy 15," "Amazing Fantasy #15," "or "Amazing Fantasy No. 15."  MCI executed these Boolean searches for all Works.

Marvel's human resources department also maintains electronic and physical records for Marvel employees.  MCI searched the electronic database for documents relating to any of the five Defendant Contributors, using searches tied to their names.  MCI further identified a hard-copy file for Stan Lee and confirmed that it did not have hard-copy files for any of the Defendant Contributors.  All documents identified as part of this process were reviewed for responsiveness.

MCI also identified hard-copy agreements stored in filing cabinets at Marvel's legal offices in New York, and reviewed them to determine whether they contained any additional responsive documents that were not identified through its SharePoint searches.

MCI additionally identified an index of Marvel's boxes stored in an offsite facility.  While most of the listed boxes pertained to irrelevant time periods and/or were otherwise irrelevant, MCI identified a box from offsite storage containing agreements with talent, pulled these files from that box, and reviewed all agreements contained therein.[5]

2. **Financial, Payment, and Tax Records**

Marvel maintains financial records in two enterprise resource planning ("ERP") databases—Oracle and SAP.   MCI conducted searches associated with the Defendant Contributors' names (as agreed with Defendants) in both.  In addition, Marvel assigns each "vendor"—or payee—a "vendor number," and MCI searched these two databases for any documents associated with the Defendant Contributors' vendor numbers.

MCI also reviewed an index of files stored offsite and determined that all finance and payment-related documents referenced in this index related to the 1980s or later.  When MCI met and conferred with Defendants about the scope of its financial and/or payment records, including copies of checks, MCI explained that Marvel's hard-copy records did not pertain to the time period in question.  Accordingly, the parties agreed that MCI need not search these offsite hard-copy boxes.  And, in an abundance of caution, even though it understood that the records were outside the relevant time period, MCI confirmed that cancelled checks maintained by its legal department were non-responsive.

---

[5] MCI indexed the various "work-for-hire" one-page agreements that were produced in the *Kirby* litigation and cross-referenced those against SharePoint to ensure that all responsive one-pagers had been produced.



MCI also confirmed with various individuals in Marvel's finance, tax, human resources, and publishing departments that they were not aware of additional electronic repositories of such information.

3. **Correspondence**

As noted above, Marvel's SharePoint system is also the repository for material correspondence. MCI ran nearly 900 searches across this database to identify potentially responsive information.

MCI also identified two custodians—David Bogart and C.B. Cebulski—who may have used email to communicate with the Defendant Contributors or Stan Lee.  MCI searched their emails for communications to or from the following email addresses associated with the Defendant Contributors and Stan Lee:  combkman@aol.com,  erikcolan@icloud.com, genecolan@optonline.net, nanlinx@aol.com, mark@thezendude.com, Mark@zenengineering.com, mark@ditkoverse.com, and larrydlieber@gmail.com.  MCI similarly searched for any emails that Bogart and/or Cebulski exchanged with Roy Thomas, Gerry Conway, Jim Steranko, and Neal Adams.

In addition to these electronic searches, MCI reached out to Marvel publishing employees and confirmed that they do not maintain a historical repository of correspondence, including correspondence with Stan Lee.  MCI also confirmed that the two custodians whose emails were searched did not have any potentially responsive physical correspondence files.

4. **Comics and Source Material (including Scripts, Plots, and Artwork and Other "Right to Control" Documents)**

MCI compiled a set of all the comics subject to Defendants' purported termination notices.

MCI reviewed its limited physical files of artwork to identify any documents relating to the Works at issue and/or the Defendant Contributors.  MCI identified five pages relating to Colan, which, while unrelated to the comics at issue in this litigation, have been provided to Nanci Solo and Erik Colan.

Further, MCI reached out to knowledgeable Marvel publishing employees to determine whether they were aware of any additional responsive source materials, such as artwork with margin notes by Stan Lee and/or plots and synopses.  Marvel's publishing department manually identified scans of original artwork, and books containing collections of scans of original artwork, from 1960 to 1979 featured in books published by Marvel or a licensee of Marvel.

MCI also produced the entirety of Marvel's productions from *Kirby*, which reflect Marvel's prior extensive search for source materials for the overlapping comics and characters at issue in that litigation.

MCI also worked with third parties (i.e. Roy Thomas and Gerry Conway) to obtain additional source materials.



In addition, MCI identified additional source materials through publicly available electronic and hard-copy sources, including libraries and collections across the country.

5. **Books, Interviews, and Articles**

MCI searched publicly available electronic and physical sources to identify various written and audiovisual materials containing information relating to the Defendant Contributors, Stan Lee, or the Works. As part of these efforts, MCI visited and/or contacted a number of libraries located around the country to obtain documents from their physical collections. MCI also identified certain books relating to the Defendant Contributors within its files and produced these books, along with other publications identified in the public domain.

During the September 6 and 16 hearings, Defendants' counsel argued that MCI must have "archives" of historical materials used in its publication of books about Marvel's history, with counsel providing a list of these books during the September 16 hearing. *See* Sept. 16, 2022 Hearing Tr., *Marvel Characters, Inc. v. Solo*, No. 1:21-cv-5316-DG-TAM, at 22:14-23:10. Had Defendants' counsel done basic due diligence on these books,[6] however, it would have been apparent that these are books licensed by Marvel and/or works of fiction. As explained here, and in its interrogatory responses, MCI has collected documents from its publishing department and there is not a secret "archive," as Defendants have incorrectly argued. MCI asks that Defendants be mindful of their obligations before making any similar accusations.

6. **Introductions**

Consistent with the parties' agreement, MCI worked with knowledgeable individuals in Marvel's publishing department to manually identify a list of introductions to reprint editions penned for Marvel by the Defendant Contributors. In addition, even though these introductions fell outside its agreement with Defendants,[7] MCI also worked to identify any introductions authored by Stan Lee, Roy Thomas, or Gerry Conway.

7. **Copyright Registrations and Renewals**

MCI requested and obtained the copyright registrations and renewal certificates from an affiliate's intellectual property database. This electronic database includes scanned copies of registrations and renewals that Marvel previously kept in hard copy. To the extent that MCI was

---

[6] Moreover, MCI could have corrected Defendants' misunderstanding had Defendants attempted to meet and confer on this issue, rather than raising these titles during a court hearing for the first time.

[7] *See* MCI's Supp. R&Os, Responses to RFP Nos. 17 and 50 (" . . . MCI has identified a number of introductions to books published by Marvel that either were written by Steve Ditko, Gene Colan, Don Heck, Don Rico, or Larry Lieber and/or contain interviews from such individuals and MCI will produce these introductions."); *see also* April 19, 2022 M. Lens Letter at 5 ("As a compromise . . . MCI has identified a number of introductions to books published by Marvel that either were written by Steve Ditko, Gene Colan, Don Heck, Don Rico, or Larry Lieber and/or contain interviews from such individuals and MCI will agree to produce these introductions. Defendants specifically confirmed their agreement. *See* April 28, 2022 J. Parkkinen Letter at 1 ("**Marvel's April 19 letter satisfactorily addressed the points raised in Defendants' meet-and-confer letters regarding Defendants' RFPs**.") (emphasis added).



not able to find a copyright registration or renewal in the database, MCI reached out to the copyright office to obtain a copy.

MCI also spoke with knowledgeable individuals with responsibility for Marvel's copyright registration-related materials to identify any other electronic or physical repositories of copyright registration-related materials but was unable to identify any.

8. **Prior Litigation Records**

MCI sought and obtained a modification of the protective order in *Kirby*, which allowed MCI to review and produce its own productions from that case in full as well as any other documents produced by third parties that it could identify.  MCI also produced its case-dispositive summary judgment papers and supporting evidence from *Kirby* as well.  Defendants have confirmed that neither their counsel (who was counsel of record in *Kirby*) nor the Kirbys themselves have additional relevant files.

MCI worked to identify relevant information related to the following matters (1) *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-cv-2663 (D. Colo.); (2) *Gary Friedrich Enters. v. Marvel Enters.*, No. 08-cv-1533 (S.D.N.Y.); (3) *Lee v. Marvel Enters.*, No. 02-cv-8945 (S.D.N.Y.); (4) *Marvel Characters, Inc. v. Simon,* No 00-cv-1393 (S.D.N.Y.), and (5) *In re Marvel Entertainment Group* (*Wolfman)*, Nos. 96-2067 through 96-2077 (Bankr. D. Del.); Nos. 97-145, 97-146 (D. Del.).  In addition to having knowledgeable individuals in its legal department identify testimony from these cases, MCI reached out to its prior counsel Paul Hastings LLP, Weil Gotshal & Manges LLP, Kenyon & Kenyon LLP, and Haynes & Boone LLP and worked with them to identify testimony in and documents produced from those cases.  Some of these files were maintained electronically and some in hard copy, depending on the filing and record systems of these law firms.

As Defendants know, several of these matters are decades old, and protective orders were entered in many of them.  Those orders limited MCI's ability to obtain, review, and/or produce these documents.  Defendants represented in March that they were going to move to lift the protective orders in *Simon* and *Friedrich*—which their counsel claimed were "undeniably relevant"—but they never did.  Defendants did not indicate that they intended to move to modify the protective orders in any of the other matters.  Similarly, Defendants were advised that MCI did not intend to move to modify the protective orders in any of these cases in March.  Subject to these limitations, MCI has reviewed the testimony and Marvel-produced documents that it has identified from these cases and produced any responsive testimony and produced documents.

After pressing MCI to complete its document production by August 22, on August 24, Defendants served additional requests for production related to 19 prior cases that Marvel was involved in.  It is unclear how Defendants selected these 19 cases, given that most lack any relevance to the issues in dispute in the pending cases.  Indeed, in implicit recognition of their overreach, Defendants withdrew the requests relating to 9 of the cases.   In response to the still-pending requests, and without waiver of its forthcoming objections and responses, MCI is working to determine whether there is additional testimony and/or produced documents from the



identified prior litigations that it can produce within the confines of any applicable protective orders.

In addition, through its counsel of record, MCI conducted additional electronic searches of court and administrative records to identify additional responsive information relating to the following terms:  Martin Goodman, Jean Goodman, Timely Publications, Timely Comics, Inc., Magazine Management Company, Atlas Magazines, Inc., Non-Pareil Publishing Corp., Vista Publications, Inc., Marvel Comics, Inc., Canam Publisher Sales Corp., Magazine Management Company, Inc., Perfect Film & Chemical Corp., Martin Ackerman, Cadence Industries Corporation, Sheldon Feinberg, and Marvel Comics Group.[8]

9. **Historical Corporate Documents**

MCI identified physical documents associated with the 1998 consummation of Marvel Entertainment Group, Inc.'s chapter 11 plan of reorganization within its files.  MCI also identified electronic copies of the closing documents from New World Entertainment's 1988 sale of Marvel Entertainment Group, Inc. to Andrews Group International.

Further, MCI worked with attorneys who previously worked for Kenyon & Kenyon LLP—Marvel's outside counsel dating back to the 1960s—to identify potentially relevant information contained in Kenyon's historical archives.  Over the course of many months, MCI retrieved and reviewed approximately thirty boxes of physical files and, as a result, identified files not only relating to Marvel's historical organizational structure, ownership of the Copyright Claimants, and corporate restructurings but also other responsive documents, such as contracts, litigation files, payment records, and correspondence, dating back to the 1960s (and earlier).  MCI contacted other former counsel associated with Kenyon and Marvel dating back to the 1950s but were unable to identify any other physical repository of such files beyond the records in Kenyon's outside storage facility.

MCI also searched available electronic and hard-copy governmental records for responsive documents, such as certificates of incorporation, certificates of doing business under an assumed name, and merger documents associated with the names of the Copyright Claimants, including the following terms:  Atlas Magazines, Inc. NY, Non-Pareil Publishing Corp. NY, Vista Publications, Inc. NY, Marvel Comics, Inc. NY, Canam Publisher Sales Corp. NY, Magazine Management Company (Partnership) NY, Magazine Management Company, Inc. NY, Magazine Management Company Inc DE, Perfect Film & Chemical Corp. NJ / DE, Cadence Industries Corporation NJ / DE, and Marvel Comics Group NY.

*     *     *

---

[8] MCI also took such steps to collect documents responsive to its *own* requests for production, retrieving publicly available surrogate court documents for certain deceased Defendant Contributors.  These efforts required sending a vendor to the courthouse to copy documents from physical files.



We trust that this satisfies Defendants' inquiries about MCI's collection efforts. The vast majority of this information was provided in MCI's August 15 interrogatory responses; Defendants have not raised any concerns with MCI's collection efforts in the intervening five weeks. That said, should you have any questions, please let us know so that the parties can meet and confer.

All rights reserved.

Sincerely,

Molly M. Lens
Of O'Melveny & Myers LLP

Enclosure



We trust that this satisfies Defendants' inquiries about MCI's collection efforts. The vast majority of this information was provided in MCI's August 15 interrogatory responses; Defendants have not raised any concerns with MCI's collection efforts in the intervening five weeks. That said, should you have any questions, please let us know so that the parties can meet and confer.

All rights reserved.

Sincerely,

Molly M. Lens
Of O'Melveny & Myers LLP

Enclosure