# EXHIBIT 5

```
 1                      - VOLUME B -

 2            IN THE UNITED STATES DISTRICT COURT

 3            IN AND FOR THE DISTRICT OF DELAWARE

 4                          - - -

 5   IN RE:                           :  Chapter 11 Case
                                      :
 6   MARVEL ENTERTAINMENT GROUP INC., THE :
     ASHER CANDY COMPANY, FLEER CORP., :
 7   FRANK L. FLEER CORP., HEROES WORLD :  Case No. 97-638-RRM
     DISTRIBUTION INC., MALIBU COMICS  :
 8   ENTERTAINMENT INC., MARVEL CHARACTERS:
     INC., MARVEL DIRECT MARKETING INC., :
 9   and SKYBOX INTERNATIONAL INC.     :
                                       :
10               Debtors.              :

11                          - - -

12                    Wilmington, Delaware
                   Tuesday, November 16, 1999
13                       At 10:05 a.m.

14                          - - -

15   BEFORE:   HONORABLE RODERICK R. McKELVIE, U.S.D.C.J.

16                          - - -

17   APPEARANCES:

18
              PEPPER HAMILTON LLP
19            BY:  DAVID B. STRATTON, ESQ.

20                 -and-

21            BATTLE FOWLER LLP
              BY:  DAVID FLEISCHER, ESQ. and
22                 JODI KLEINICK, ESQ.
                 (New York, New York)
23
                      Counsel for Marvel Enterprises, Inc.
24

25                                    Brian P. Gaffigan
                                      Official Court Reporter
```

```
 1   APPEARANCES (CONTINUED):

 2
             MORRIS, JAMES, HITCHENS & WILLIAMS
 3           BY:  JAMES W. SEMPLE, ESQ. and
                  RICARDO PALACIO, ESQ.
 4
                  -and-
 5
             LEOPOLD, PETRICH & SMITH
 6           BY:  LOUIS P. PETRICH, ESQ.
                  (Los Angeles, California)
 7
                     Counsel for New Line Productions, Inc.
 8

 9           STEVENS & LEE
             BY:  JOSEPH GREY, ESQ.
10
                  -and-
11
             KLEINBERG & LERNER, LLP
12           BY:  MICHAEL R. DILBERTO, ESQ., and
                  ADRIAN R. ASKARIEH, ESQ.
13                (Los Angeles, California)

14                   Counsel for Marvin Wolfman

15                      - oOo -

16

17              P R O C E E D I N G S

18       (Proceedings began at 10:05 a.m.)

19       THE COURT:  All right.  Back up.

20       MR. DILIBERTO:  If I may, I just want to comment,

21   during the day yesterday the expert witness for New Line and

22   the employee of Marvel were making faces and gestures at the

23   witness all day.  I would ask they be excluded from the

24   courtroom until they testify or at least admonished not to

25   make faces at the witness.
```

Gene Colan

B-211

Evanier - direct

1   it would seem to be that because someone alleges that they
2   have rights, they have the rights. And, I don't think this
3   complaint offers anything more than that. It's just utterly
4   irrelevant.
5           THE COURT: I don't think you can use an expert
6   as a vehicle to testify about specific examples of other
7   disputes between Marvel and other parties. He could testify
8   about industry practice or whatever else it is that you have
9   put the other side on notice he is going to testify to but,
10  for example, I don't think he is in a position to testify
11  about what third parties told him for the purpose of me
12  taking it as being the truth, taken for the truth of the
13  matter asserted except to the extent that it goes to hearsay
14  that he would rely on to testify about industry practices and
15  procedures.
16          MR. DILIBERTO: That is what he --
17          THE COURT: I hope you understand the distinction
18  I'm trying to draw, because I think an expert is entitled to
19  rely on hearsay, but I don't think you are entitled to put an
20  expert on to establish facts, particular facts in dispute or
21  particular facts the other side does dispute except to the
22  extent you would otherwise look on them on matters under Rule
23  703 as an expert.
24          MR. DILIBERTO: Okay. I understand.
25          THE COURT: So why don't you back up and head in

2021MARVEL-0033414

Evanier - direct

1   THE COURT: No, I don't. What I'm trying to say
2   is that it's typical an expert gets on the stand and under
3   Rule 703 can rely on hearsay for the purpose of bolstering
4   opinions the expert offers, but it's not too typical. An
5   expert gets on the stand and you use the expert, lawyers may
6   attribute that as not too typical, it gets into evidence.
7   The expert establishes what happens in a particular case with
8   particular individuals for the purpose of establishing that
9   as being true for me to take it as true.
10              If you look at it from my perspective, I don't
11  think that I can rely on this witness for the purpose of
12  finding as a matter of fact that the events he testified to
13  in fact happened, in part because the other side has no
14  real ability to cross-examine the principal actors in the
15  incident. And, so I don't think it's consistent with the
16  Rule 11 as to allow him or try to use him to establish
17  certain facts I would end up finding. If you would look at
18  the opinion, I wonder if I could cite this witness for those
19  facts as being true. I don't think I could. I don't think
20  it's consistent with the Rules of Evidence.
21              So what you want to do, what I was suggesting
22  is you want to back up, you want to establish through this
23  witness the general concepts of industry practice that you
24  think that he wants to establish, and then he might set
25  examples from his experience and from his knowledge of the

Gene Colan

```
                                                                    B-214
                            Evanier - direct
```

1  community of what he relies on to show that general industry

2  practice, if that is the direction you are headed.

3  BY MR. DILIBERTO:

4  Q.     Okay.  Mr. Evanier, in the late 1960s through December

5  31, 1977, are you aware of any custom or practice in the

6  comic book industry that gave comic book companies ownership

7  of materials they published?

8  A.     On only a company-by-company basis, what specific

9  companies may have issued.

10              MR. FLEISCHER:  Your Honor, I'll object to this

11 because it's beyond the scope of the report.  Mr. Evanier,

12 in his report, gave opinions on that subject matter but was

13 unspecific as to time.  And in his deposition, he indicated

14 that his report was not time specific.  And, therefore, any

15 testimony that he gives with respect to these time specific

16 questions would be beyond the scope of his report.

17              THE COURT:  Overruled.

18              MR. DILIBERTO:  Thank you, your Honor.

19 BY MR. DILIBERTO:

20 Q.     You were saying?

21 A.     Where was I?  I'm lost.

22 Q.     Okay.  Yes.  The question was, are you aware of any

23 comic book industry custom or practice between the late 1960s

24 to December 31 of 1977 that would have given comic book

25 companies ownership of any characters and stories that they

2021MARVEL-0033417

Evanier - direct

1    companies trying to induce creators to assign rights to the
2    companies; is that correct?
3    A.    Yes, I did.
4    Q.    And based on the facts you just stated, what opinion
5    does that render regarding comic book companies using their
6    economic powers to induce creators to assign rights to comic
7    book companies?
8            MR. FLEISCHER:  Objection, competence.
9            MR. PETRICH:  I'm going to add hearsay, your
10    Honor, and move to strike.  This is all based on what Jack
11    Kirby said happened.
12            THE COURT:  Again, I don't think I'm going to be
13    able to, if I have to make findings of fact, I don't think
14    I would be able to cite this witness's testimony for the
15    purpose of making this finding.  That is, it doesn't have,
16    it's just not consistent with the Rules of Evidence that I
17    can rely on what he is saying what happened in particular
18    instances for the purpose of determining that it in fact did
19    happen.
20            Why don't we stop for the night, start again
21    tomorrow morning at 9:00 o'clock.
22            MR. DILIBERTO:  All right.  Thank you.
23            THE COURT:  All right?  I'll rely on local
24    counsel to get people out of the building.  You know how to
25    get out afterhours.  You push the red button at the front

2021MARVEL-0033443