# Exhibit 52

WRITERS AGREEMENT

-1-

/s/ EHC

AGREEMENT dated October 7th, 1977 between MARVEL COMICS GROUP (hereinafter called "Marvel") and STEPHEN R. GERBER (hereinafter called "the Employee").

WHEREAS Marvel is desirous of retaining employee as a writer for its magazines and Employee is willing to render such services on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual promises and undertakings herein contained, and for other good and valuable considerations, the parties agree as follows:

1. Employment. Marvel hereby employs Employee and Employee hereby agrees to render services to Marvel, as a writer for magazines heretofore and hereinafter published by Marvel.

2. Term.

(a) Initial Term. The term of this Agreement shall be for one year commencing November 1, 1977 and ending October 31, 1978 (sometimes referred to as the employment years and each 12-month period shall be referred to as an "employment year").

(b) Renewal Terms. In the absence of notice to the contrary given by either party to the other not less than sixty (60) days prior to the expiration of the Initial Term hereof, this Agreement shall be automatically renewed for one year on the

ME00871
JA1887

Case 1:21-cv-07957-LAK Document 80-52 Filed 05/19/23 Page 3 of 13
Case 1:10-cv-00141-CM-KNF Document 95-7 Filed 03/25/11 Page 17 of 27

-2-

same terms and conditions as those herein set forth except to the extent provided below. There shall be like renewals from year to year thereafter, in the absence of like notice given no less than sixty (60) days prior to the expiration of the then current term.

3. Compensation.

(a) <u>Basic Compensation</u>. For the full and faithful performance of Employee's duties and for all services to be provided Marvel hereunder, Marvel shall pay Employee, on a biweekly basis, a salary based on $26.50 per page for each color comic page of script written, and $50.00 for each issue of each standard 32-page comic magazine edited for Marvel and accepted by the Publisher of Marvel (hereinafter the "Material"). For purposes of this Agreement, Employee shall deliver to Marvel during each employment year (Nov. 1 thru Oct. 31) 612 pages at the rate of approximately 51 pages per month, and shall perform editorial duties on twelve (12) standard 32-page comic magazines at the rate of one magazine per month, according to the reasonable schedules and deadlines set by the Publisher of Marvel. In this respect Employee will make all changes and rework all Material as reasonably required by the Publisher of Marvel without charge (that is, reworks and changes shall not constitute pages for the purposes of computing compensation hereunder).

ME00872
JA1888

Case 1:21-cv-07957-LAK Document 80-52 Filed 05/19/23 Page 18 of 127
Case 1:10-cv-00141-CM-KNF Document 97-7 Filed 05/25/11 Page 18 of 127

-3-

(b) Additional Compensation. Employee shall be paid additional compensation for the following services, but only if and to the extent requested from time to time by Marvel:

(i) All pages written for Marvel in excess of the minimum amounts set forth in paragraph 3(a) above in any employment year at the rates set forth in paragraph 3(a) above.

(ii) All pages written or editorial duties performed for publications in any format other than that of the standard four-color or black-and-white Marvel comics magazines. Rates for such material shall be determined separately from this Agreement, and agreed upon in writing by Marvel and the Employee.

Additional compensation shall be paid to Employee within thirty (30) days after submission and acceptance of such material by Marvel.

(c) Notwithstanding anything contained herein, Marvel shall, upon 60 days prior written notice, have the right in the event of a general reduction of production or of work force, or in the event of a partial closing as a result of economic conditions, to reduce the amount(s) of work product required of Employee with a proportionate reduction in pay and other benefits provided for herein. Such reduction shall be only in proportion to the actual reduction of comic books required by Marvel and shall be applied only after the

ME00873
JA1889


Case 1:21-cv-07957-LAK Document 80-52 Filed 05/19/23 Page 5 of 13
Case 1:10-cv-00141-CM-KNF Document 97-7 Filed 03/25/11 Page 5 of 27

-4-

(d) In the event such reduction as provided for in paragraph 3(c) results in the Employee's no longer earning what he deems to be a reasonable living wage, the Employee shall have the right, upon sixty (60) days prior written notice, to terminate the Agreement.

(e) Vacation. Employee shall be entitled to two (2) weeks of paid vacation each year. At the option of Marvel such vacation may take the form of Employee being required to deliver, in any given employment year, not more than fifty (50) weeks of weekly work product and being paid for fifty-two (52) weeks of weekly work product, or may take the form of Employee delivering fifty-two (52) weeks of work product with Marvel paying an additional two (2) weeks salary. Marvel shall have the sole option to divide such vacation rights between time off and payments consistent with the terms of this sub-paragraph. Should vacation take the form of time off, such vacation time shall be at the discretion of Employee provided however, that such vacation time does not conflict with Marvel's production schedule. Weekly work product shall be one fifty-second of total annual work product.

(f) Payment Dates. Marvel will pay Employee's salary on a bi-weekly basis or at such other intervals consistent with payroll policies then in effect relating to salaried

employees doing similar functions as Employee. Marvel shall have the right to withhold salary in the event that Employee falls behind in meeting his work requirement by one month's work product. Reimbursement of authorized (in writing and in advance of the expenditure) business expenses shall be paid in accordance with Marvel's policies relating thereto. Marvel agrees that salary checks shall be mailed to Employee via Special Delivery on the day of issue.

(g) <u>Employee Benefits</u>. Employee shall be eligible for all coverage or benefits under any plan or plans of health, hospitalization, life or other insurance available to other employees of Marvel who are paid a similar salary and who have a similar position.

4. (a) <u>Conflict</u>. During the period of this Agreement, Employee will attend to his duties with due diligence, and not engage directly or indirectly in the production of any other color or black-and-white comics magazines/periodicals or books which are competitive with Marvel, or in any activity which could be detrimental to Marvel or which may conflict with Employee's duties hereunder.

(b) <u>Editorial Stipulations</u>. Selection as to the magazines or features written by Employee for Marvel, as well as of artists, letterers, and colorists thereof shall be determined by Marvel, except as provided for below.

ME00875
JA1891

(c) The sole exception to paragraph 4(b) shall be the feature entitled HOWARD THE DUCK, for which Marvel engages Employee's services as writer and editor for the term of this Agreement, except in the event of said feature's discontinuation. Marvel agrees that Employee shall have first option to accept or refuse any additional writing and/or editorial duties connected with the HOWARD THE DUCK feature for any Marvel publication for the term of this Agreement, and that Employee shall be consulted as to the choice of other writers and/or editors who may work on the feature in the event of Employee's refusal. In the event of a license for a film, television or motion picture adaptation of HOWARD THE DUCK, Marvel agrees to recommend ~~suggest~~ to such producer that Employee and Employee only be used by such producer as script and/or story consultant to preserve the integrity of the licensed character. Employee may accept payment for such services from producer.

Marvel further agrees that any change in Marvel's policy regarding the rights of artists and writers to income derived from the licensing of their creations for purposes of commercial exploitation shall be applicable also to the Employee and to HOWARD THE DUCK from that day forward.

(d) *Extent of Service*. Employee agrees not to draw, write, or edit any comic book or comic magazine material for anyone other than Marvel during the term of this Agreement without the prior written approval of Marvel.

-57-

ME00876
JA1892

Case 1:21-cv-07957-LAK-NF Document 80-52 Filed 05/12/23 Page 2 of 13
Case 1:10-cv-00141-CM-KNF Document 97-7 Filed 03/25/11 Page 22 of 27

-7-

(e) <u>Credits</u>. Employee shall be given credit as writer and/or editor in all comics in which he is the sole writer and/or editor, and in any reprint of same.

5. <u>Publisher</u>. In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel. Employee shall consult with him on all matters dealing with editorial policies, in order to assure the efficiency and harmonious operation of Marvel and to meet with the Publisher of Marvel at regular intervals at Marvel's offices in New York, N.Y. Employee shall accept assignments from the Publisher of Marvel to write and/or edit all magazines presently published or hereafter published by Marvel and further agrees that he will make no commitments whatsoever (whether financial or otherwise) on behalf of Marvel without the prior written consent of the Publisher of Marvel.

6. <u>Termination</u>. Nothing in this Agreement shall be construed to prevent Marvel from terminating Employee's employment hereunder at any time (a) because of his fraud, misappropriation, embezzlement, or the like, or (b) if he has become so disabled as to preclude him from rendering satisfactory services, or (c) if he shall have violated any provision of this Agreement, or (d) in the event Employee falls behind in submitting material to the extent of two (2) months' work requirement for whatever cause, or (e) Employee's work has not met the performance

ME00877
JA1893

Case 1:21-cv-07957-LAK Document 80-52 Filed 05/19/23 Page 23 of 127
Case 1:10-cv-00141-CM-KNF Document 97-7 Filed 03/25/11 Page 23 of 127

-8-

standards stated herein or required by Marvel from other employees performing similar services as Employee. In any such event, except as provided in (b) above, all obligations of Marvel hereunder shall cease and Employee shall be liable to Marvel for breach of this Agreement.

It is likewise understood that no provision of this Agreement shall be construed to prevent the Employee from terminating his employment hereunder at any time because of (a) willful fraud or misrepresentation on the part of Marvel, (b) Marvel's inability to provide work assignments in sufficient quantity as specified in paragraph 3(d), or (c) Marvel's violation of any provision of this Agreement. In any such events, all obligations of Employee shall cease, ~~and Marvel shall be liable to Employee for breach of this Agreement.~~

7. **Rights to Material.** Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder, including but not limited to, (a) the exclusive right to secure copyrights in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertizing, and promotion rights therein, and (e) all reprint rights with repayment to Employee for same at Marvel's then-applicable reprint rates. The exclusive rights herein granted shall pertain to all languages

-9-

8. <u>Originality of Material</u>. Employee represents that the Material submitted by him will be original and not heretofore published and that it will not infringe upon any statutory copyright, common law copyright, or any other proprietary right.

9. <u>Use of Name</u>. Marvel shall at all times have the right to use Employee's name and likeness in connection with the sale, promotion, and distribution of any magazines which include Material delivered to Marvel by Employee.

10. <u>Series and Ideas</u>. If any Material delivered hereunder is part of a series, the idea and characters used therein shall constitute Marvel's exclusive property for all times. Employee shall not be required to submit ideas for new series under the terms of this agreement.

11. <u>Additional Documents</u>. Employee shall, at Marvel's expense, take such steps and execute and deliver such further documents from time to time as Marvel may request for the purpose of confirming the rights herein granted to Marvel.

12. <u>Notices</u>. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if

ME00879
JA1895

sent by registered mail to his residence in the case of the Employee, or to Publisher, Marvel Comics Group at its principal office in the case of Marvel (with a copy to Secretary and Counsel, Cadence Industries Corporation, 21 Henderson Drive, West Caldwell, New Jersey 07006).

13. <u>Waiver of Breach</u>. The waiver by Marvel of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. The waiver by the Employee of a breach of any provision of this Agreement by Marvel shall not operate or be construed as a waiver of any subsequent breach by Marvel.

14. <u>Covenants</u>. Employee agrees that he shall not make and/or sign any other contract or agreement, written or oral, which shall be in conflict with the terms of this Agreement or prevent or hinder his performance hereunder for the length of this Agreement or any extension or renewal thereof, and further agrees that he has the full and unrestricted right to enter into this Agreement and deliver the material hereunder.

15. <u>Assignment</u>. The rights and obligations of Marvel under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Marvel.

ME00880
JA1896

16. <u>Entire Agreement</u>. This instrument contains the entire Agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

17. <u>Extraneous Agreements</u>. It is understood that this Agreement in no way alters, supercedes, or nullifies any separate and/or previous agreement between Marvel and the Employee except in regard to working arrangements on the standard four-color or black-and-white comic magazines published by Marvel.

18. <u>Arbitration</u>. Any claim, dispute or controversy arising out of or in connection with this Agreement or the breach thereof will be submitted by either party to arbitration in New York City before three arbitrators appointed by the American Arbitration Association. The arbitration will proceed under the rules of the Association then obtaining. The award of the arbitrators will be binding and conclusive on both parties, and will be rendered in such form that a judgment may be entered thereon in the highest court of any forum having jurisdiction.

-62-

IN WITNESS WHEREOF the parties have executed this Agreement on

ATTEST

*Janine Shand* (signature)

WITNESS

*Sue W. Johnson* (signature)

OFFICIAL SEAL
SUE W. JOHNSON
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires FEB 27, 1979

MARVEL COMICS GROUP

By *(signature)*

*Stephen R. Gerber* (signature)
Employee    10/26/77