# Exhibit 53

<u>WRITERS AGREEMENT</u>

AGREEMENT dated August 27, 1976 between MARVEL COMICS GROUP (hereinafter called "Marvel"), and Roy Thomas (hereinafter called the "Employee").

WHEREAS Marvel is desirous of retaining Employee as a writer and editor for its magazines and Employee is willing to render such services on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual promises and undertakings herein contained, and for other good and valuable considerations, the parties agree as follows:

1. <u>Employment.</u> Marvel hereby employs Employee and Employee hereby agrees to render services to Marvel, as a writer and editor for magazines heretofore and hereinafter published by Marvel.

2. <u>Term.</u>

(a) <u>Initial Term.</u> The term of this Agreement shall be for four years commencing September 1, 1976 and ending August 31, 1980 (sometimes referred to as the employment years and each 12 month period shall be referred to as an "employment year").

(b) <u>Renewal Terms.</u> In the absence of notice to the contrary given by either party to the other not less than sixty (60) days prior to the expiration of the Initial Term hereof, this Agreement shall be automatically renewed for one year on the same terms and conditions as those herein set forth except to the extent provided below. There shall be like renewals from year to year thereafter, in the absence of like notice given no less than sixty (60) days prior to the expiration of the then current term.

1

3. <u>Compensation</u>.

(a) <u>Basic Compensation</u>. For the full and faithful performance of Employee's duties and for all services to be provided Marvel hereunder, Marvel shall pay Employee, on a monthly basis, a salary based on $23.00 per page for each script written and edited for Marvel and accepted by the Publisher of Marvel (hereinafter the "Material"). For purposes of this Agreement, Employee shall deliver to Marvel during each employemnt year (September 1 thru August 31) 1440 pages of Material at the rate of approximately 120 pages per month and according to the reasonable schedules and deadlines set by the Publisher of Marvel. In this respect Employee will make all changes and rewrite all Material as reasonably required by the Publisher of Marvel without charge (that is, rewrites and changes shall not constitute pages for purposes of computing compensation hereunder). It is understood that no other writer shall be paid a rate higher than that paid Employee.

(b) <u>Additional Compensation</u>. Employee shall be paid additional compensation for the following services, but only if and to the extent requested from time to time by Marvel:

(i) All pages scripted for Marvel in excess of the minimum amounts set forth in paragraph 3(a) above in any employment year at the rates set forth in paragraph 3(a) above.

(ii) For editing an issue and writing a letters page for the issue of a color comics magazine an editorial fee of $50.00 per issue.

(iii) For editing the black and white magazine "The Savage Sword of Conan," an editorial fee of $300 per issue. Additional compensation shall be paid to Employee within thirty (30) days after submission and acceptance of such material by Marvel.

2

(c) <u>Bonus/Vacation Pay</u>. In lieu of vacation pay, vacation time or any bonuses for each employment year, Employee shall be paid $2,400 sixty (60) days after the end of each employment year throughout the term of this Agreement and any renewal thereof, providing however, Employee has delivered and Marvel has accepted in each employment year 1440 script pages.

(d) <u>Payment Dates</u>. Marvel will pay Employee's salary on a bi-weekly basis or at such other intervals consistent with payroll policies then in effect relating to salaried employees doing similar functions as Employee. Reimbursement of authorized (in writing and in advance of the expenditure) business expenses shall be paid in accordance with Marvel's policies relating thereto.

(e) <u>Employee Benefits</u>. Employee shall be eligible for all coverage or benefits under any plan or plans of health, hospitalization, life or other insurance available to other employees of Marvel who are paid a similar salary and who have a similar position.

4. (a) <u>Conflict</u>. During the period of this Agreement, Employee will attend to his duties with due diligence, and not engage directly or indirectly in any capacity in any business or activity which is (i) competitive with Marvel, or (ii) which could be detrimental to Marvel, or (iii) which may conflict with Employee's duties hereunder. It is understood work done for television or feature films shall not violate 4(a)(i) of this paragraph.

(b) <u>Editorial Stipulations</u>. Selection as to the magazines or features written by Employee for Marvel, as well as of artists, letterers, and colorists thereof, shall be determined by Employee, subject only to the discretion of the Publisher and/or President of Marvel. Marvel agrees, subject to paragraph 4(a), that Employee shall have first refusal right to write and edit any characters

3

or properties created by Robert E. Howard or Edgar Rice Burroughs. Employee shall determine the art and editorial content for each magazine he writes in, subject only to approval of the Publisher and/or President of Marvel.

¶(c) <u>Extent of Service</u>. Employee agrees not to write and/or edit any comic-book material for anyone other than Marvel during the term of this Agreement except as follows: Subject to paragraph 4(a), (i) Employee may write for <u>The National Lampoon</u> or similar magazines providing Marvel does not publish such a similar magazine(s), (in which event Employee will then cease to write and/or edit such other magazine(s)); (ii) comic-strips for newspapers; (iii) hardbound or quality paperback books with a cover price of $5.00 or more; and (iv) certain foreign comic strips which shall be approved of in writing, in advance, by the Publisher of Marvel.

(d) <u>Credits</u>. Employee shall be given credit as writer or editor as the case may be in all color comics in which he is the sole writer and in all black and white comic magazines where he receives an editorial fee.

5. <u>Publisher</u>. In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel. Employee shall consult with him on all matters dealing with editorial policies, in order to assure the efficiency and harmonious operation of Marvel and to meet with the Publisher of Marvel at regular intervals at Marvel's offices in New York, N. Y. Employee shall accept assignments from the Publisher of Marvel to draw and/or edit all magazines presently published or hereafter published by Marvel and further agrees that he will make no commitments whatsoever (whether financial or otherwise) on behalf of Marvel

4

without the prior written consent of the Publisher of Marvel. Since Employee is living in California, employer will reimburse Employee travel expenses if Employee is asked to meet at Marvel offices in New York City more than twice during a year.

6.  <u>Termination</u>.  Nothing in this Agreement shall be construed to prevent Marvel from terminating Employee's employment hereunder at any time (a) because of his fraud, misappropriation, embezzlement, or the like, or (b) if he has become so disabled as to preclude him from rendering satisfactory services, or (c) if he shall have violated any provision of this Agreement, or (d) in the event Employee fails to meet schedules for a period of two (2) months, for whatever cause, or (e) Employee's work has not met the performance standards stated herein or required by Marvel from other employees performing similar services as Employee.  In any such event(s), except as provided in (b) above, all obligations of Marvel hereunder shall cease and Employee shall be liable to Marvel for breach of this Agreement.

5

2021MARVEL-0070254

7. <u>Rights to Material</u>. Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder including, but not limited to, (a) the exclusive right to secure copyright(s) in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertising and promotion rights therein, and (e) all reprint rights. The exclusive rights herein granted shall pertain to all languages throughout the world and shall be Marvel's property for the period of the copyright and any renewals thereof.

8. <u>Originality of Material</u>. Employee represents that the Material submitted by him will be original and not heretofore published and that it will not infringe upon any statutory copyright, common law copyright or any other proprietary right.

9. <u>Use of Name</u>. Marvel shall at all times have the right to use Employee's name and likeness in connection with the sale, promotion and distribution of any magazines which include Material delivered to Marvel by Employee.

-6-

2021MARVEL-0070255

10. <u>Series and Ideas</u>.  If any Material delivered hereunder is part of a series, the idea and the character or characters used therein shall constitute Marvel's exclusive property for all times.

11. <u>Additional Documents</u>.  Employee shall, at Marvel's expense, take such steps and execute and deliver such further documents from time to time as Marvel may request for the purpose of confirming the rights herein granted to Marvel.

12. <u>Notices</u>.  Any notices required or permitted to be given under this Agreement shall be sufficient if in writing, and if sent by registered mail to his residence in the case of the Employee, or to Publisher, Marvel Comics Group at its principal office in the case of Marvel (with a copy to Secretary and Counsel, Cadence Industries Corporation, 21 Henderson Drive, West Caldwell, New Jersey 07006).

13. <u>Waiver of Breach</u>.  The waiver by Marvel of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. The waiver by the Employee of a breach of any provision of this Agreement by Marvel shall not operate or be construed as a waiver of any subsequent breach by Marvel.

14. <u>Covenants</u>.  Employee agrees that he shall not make and/or sign any other contract or agreement, written or oral, which shall be in conflict with the terms of this Agreement or prevent or hinder his performance hereunder for the length of this Agreement or any extension or renewal thereof, and further agrees that he has the full and unrestricted right to enter into this

-7-

Agreement and deliver the Material hereunder.

15. <u>Assignment</u>. The rights and obligations of Marvel under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Marvel.

16. <u>Entire Agreement</u>. This instrument contains the entire Agreement of the parties and supercedes any previously dated agreement in effect as of the date of commencement of this agreement. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

17. <u>Arbitration</u>. Any claim, dispute or controversy arising out of or in connection with this Agreement or the breach thereof will be submitted by either party to arbitration in New York City before three arbitrators appointed by the American Arbitration Association. The arbitration will proceed under the rules of the Association then obtaining. The award of the arbitrators will be binding and conclusive on both parties, and will be rendered in such form that a judgment may be entered thereon in the highest court of any forum having jurisdiction.

2021MARVEL-0070257

IN WITNESS WHEREOF the parties have executed this Agreement on November 3, 1976 and

ATTEST

_Sol Brodsky_

MARVEL COMICS GROUP

By _[signature]_, Pres.

WITNESS

_[signature]_

_Roy Thomas_
Employee

-9-

2021MARVEL-0070258