# Exhibit 64

# NIMMER ON COPYRIGHT

"A Treatise on the Law of Literary, Musical and Artistic Property, and the Protection of Ideas."

by

**MELVILLE B. NIMMER**
Professor of Law
University of California, Los Angeles





1963

MATTHEW BENDER & CO., INC.

| 255 ORANGE ST. | 160 SO. VAN NESS AVE. | 205 EAST 42ND ST. |
| ALBANY 1, N.Y. | SAN FRANCISCO 3, CALIF. | NEW YORK 17, N.Y. |

JA2038

compilation of licensed material then the compiler for purposes of the Copyright Act is an "author" and therefore need not claim either as a proprietor or as an assignee. It might also be urged that one who claims copyright as an employer for hire is a copyright proprietor although he is not an assignee in the sense that no assignment was ever executed. The answer to this proposition lies in Sec. 26 of the Copyright Act which defines "author" to "include an employer in the case of works made for hire." Thus here too the copyright claimant as an author need not fall under either the proprietor or assignee designations. It may, then be concluded that proprietor and assignee are interchangeable terms for the purposes of obtaining statutory copyright under Sec. 9.[42]

### § 62. Works Made for Hire

#### [62.1]—A Presumption of Copyright in the Employer

Section 26 of the Copyright Act provides that "the word 'author' shall include an employer in the case of works made for hire." The constitutional status of this clause is discussed in another section.[43] The reasons there set forth, as well as the requirements of a reasonable construction militate against a completely literal interpretation of this provision. The clause if accepted literally would mean that in an employment for hire relationship the parties would be precluded as a matter of law from agreeing that the copyright in the resulting work shall vest in the employee. Yet in practice there is no question but that an employer and employee may and often do agree that the copyright shall remain in the employee (without any requirement of an assignment by employer to employee) subject to a right of the employer to be exclusively licensed to use the work in particular media.[43a] The foregoing provision of Sec. 26 must be read as creating a presumption of copyright in the employer which may be rebutted only by a preponderance of evidence of a contrary agreement as between the parties.[44]

---

[42] But see § 114 *infra* with reference to the meaning of "proprietor" for purposes of obtaining renewal copyright, and § 65.4 *infra* with reference to foreign proprietors of posthumous works.

[43] See § 6.3 *supra*.

[43a] See Welles v. Columbia Broadcasting System Inc. 308 F 2d 810 (9th Cir. 1962).

[44] As to the effect for purposes of

239     PERSONS ENTITLED TO COPYRIGHT      § 62.31

### [62.2]—What Constitutes an Employment for Hire

Subject to the qualification set forth in § 62.1 *supra*, it is an accepted principle of both statutory [45] and common law [46] copyright that the employer is deemed to be the author of works made for hire.[47] The question then arises as to what constitutes an employment for hire. The nature of the compensation paid to the alleged employee is not necessarily determinative. Thus one may be an employee regardless of whether he is paid on the basis of a conventional periodic salary,[48] on a piece work basis,[48a] on a fee or royalty basis,[49] or even if the writing is done as an accommodation with no compensation at all.[50] The crucial question in determining an employment relationship is whether the alleged employer has the right to direct and supervise the manner in which the writer performs his work.[51] This is, of course, merely a particular application of the general agency doctrine relating to master and servant.

### [62.3]—Which Works Belong to an Employer for Hire

[62.31]—In the absence of agreement. The following discussion assumes the absence of an express agreement between

---

renewal copyright of an agreement between employer and employee that copyright shall be reserved to the employee, see § 114.4 *infra*.

[45] *Dan Kasoff Inc. v. Palmer Jewelry Mfg. Co.* 171 F.Supp 603 (SDNY 1959); *In re Journal-News Corp.* 104 F.Supp. 843 (SDNY 1951); See *King Features Syndicate v. Fleischer* 299 Fed. 533 (2d Cir 1924).

[46] *Zahler v. Columbia Pictures Corp.*, 180 Cal. App. 2d 582, 4 Cal. Rptr. 612 (1960).

[47] However, even if an employer is deemed to be an "author" by reason of Sec. 26, it is not improper in a copyright registration certificate to designate the employee as the author and the employer as the copyright claimant. See *No-Leak-O Piston Ring Co. v. Norris*, 277 Fed. 951 (4th Cir. 1921).

[48] *Tobani v. Carl Fischer Inc.*, 98 F2d 57 (2d Cir. 1938).

[48a] *Tobani v. Carl Fischer Inc.*, 36 USPQ 97 (SDNY 1937) modified on other grounds 98 F2d 57 (2d Cir. 1938).

[49] *Brown v. Select Theatres Corp.*, 56 F.Supp. 438 (D.C. Mass. 1944); *Fred Fisher Music Co. v. Leo Feist Inc.* 55 F.Supp. 359 (S.D.N.Y. 1944) (advance payment against royalties).

[50] *Lawrence v. Dana*, 15 Fed. Cas. 26, No. 8136 (C.C. Mass. 1869).

[51] *French v. Glander*, 146 Ohio 225, 65 N.E. 2d 61 (1946); See *Tobani v. Carl Fischer Inc.*, 36 U.S.P.Q. 97 (SDNY 1937) *modified* 98 F2d 57 (2d Cir 1938).

Copyright 1963, CLARK BOARDMAN COMPANY, LTD., MATTHEW BENDER & COMPANY, INC.

Nimmer

an employer and employee as to which of the works produced by the employee shall be deemed to belong to the employer as the "author" thereof. As indicated in § 62.1 *supra*, the parties may expressly agree that the employee shall be deemed to own the copyright in all works produced in the employment relationship.[51a] Likewise, the parties may expressly agree that all works produced by the employee during the period of the employment relationship shall belong entirely to the employer.[52] Ordinarily, however, the parties to an employment relationship assume ownership in the employer, but do not attempt to define with exact precision the nature of the works which shall be regarded as emanating from the employment relationship.

As one court has said: "no one sells or mortgages all the products of his brain to his employer by the mere fact of employment."[53] Therefore the literary efforts of an employee if not rendered as a part of his duties to his employer remain the property of the employee.[54] This is true even if the subject matter of the work thus created by the employee bears upon or arises out of the employee's activities for his employer, as long as the work was not produced pursuant to his duties as an employee.[55] Thus if a teacher elects to reduce his lectures to writing, the teacher and not the institution employing him owns the copyright in such lectures.[56] Moreover, if a work would not otherwise be regarded as falling within the employment relationship, the fact that a portion of the work was done during working hours, and that the assistance of the employer's facilities and personnel was

---

[51a] See *Welles v. Columbia Broadcasting System Inc.*, 308 F2d 810 (9th Cir 1962).

[52] But as to the enforcement of such a sweeping contractual clause see § 62.32 *infra*.

[53] *Public Affairs Associates Inc. v. Rickover*, 177 F. Supp. 601, 604 (D.D.C. 1959) rev'd *on other grounds* 284 F2d 262 (D.C.Cir. 1960) vacated for insufficient record 369 U.S. 111 (1962).

[54] See *United States v. First Trust Co. of Saint Paul*, 251 F2d 686 (8th Cir. 1958).

[55] *Public Affairs Associates Inc. v. Rickover*, 284 F2d 262 (D.C.Cir. 1960) vacated for insufficient record 369 U.S. 111 (1962); See *O'Neill v. General Film Co.*, 171 App.Div.854 (1916); Cf. *Brown v. Molle Co.* 20 F. Supp. 135(SDNY 1937).

[56] *O. O. Sherrill v. L. C. Grieves* 57 Wash.L.Rep. 286, 20 C.O.Bull. 675 (1929).

obtained in some degree in preparing the work will not necessarily render the work the property of the employer.[57]

**[62.32]—The Effect of Agreement as to Scope of Works.** The courts will generally recognize and enforce express contractual provisions whereby the employer is said to be the owner of all of the results and proceeds of an employee's work. Thus in one decision[58] it was held that the employer was owner of a play written by the employee pursuant to a contract whereby the employer was designated the owner of "the entire product and income of his [employee's] intellectual and physical labor and skill."[59] However, notwithstanding broad contract language the courts will often strive, if the language at all permits, to limit its effect so as to preclude an employer claiming ownership in works which would be considered outside the scope of the employment agreement.[60] Thus a contractual provision which required the employee to "devote his entire time to the services of his employer" was construed not to permit an employer to claim rights in work created by the employee during leisure hours.[61] Similarly, in a noncopyright case an employee's undertaking to devote all of his time to the services of the employer bank was construed as follows: "We do not think . . . it was understood that if the defendant in spare moments wrote a book or taught a night school or sang in a church choir the fruits of his extra toil on his own behalf should be swept into the tills of the bank."[62]

Does a contractual provision which purports to make the employer the owner of *all* material created by the employee include material admittedly written pursuant to the employee's duties, but never used by the employer (and possibly

---

[57] *Public Affairs Associates Inc. v. Rickover* 284 F2d 262 (D.C.Cir. 1960) vacated for insufficient record 369 U.S. 111 (1962).

[58] *MacKaye v. Mallory* 12 Fed 328 (S.D.N.Y. 1882).

[59] The wording of the contract in issue is set forth in *Mallory v. Ma-*

*Kaye* 86 Fed. 122(S.D.N.Y. 1898'

[60] See § 62.31 *supra*.

[61] *Sheppard Publishing Co. v. Harkins* 9 Ontario L.R. 504 (1905).

[62] Hillsboro National Bank v. Hyde 7 N.D. 400, 403, 75 N.W. 781 (1898); See also *Herman v. Littlefield* 109 Cal. 430 42 Pac. 443 (1895).

Copyright 1963, CLARK BOARDMAN COMPANY, LTD., MATTHEW BENDER & COMPANY, INC.    Nimmer

never even submitted by the employee) because the work as finally created took on an entirely different form? This situation may arise where the employer finds the employee's work unsuitable or where the employee works on several "false starts" before finally striking upon the form and substance which is ultimately accepted by the employer. It seems probable that such unused material belongs to the employer, at least if the contract of employment contains language purportedly covering "all" material.[63]

Although there is an agreement between employer and employee that the employer shall own certain material to be created by the employee, if in the creation of such material the employee is to work as an independent contractor (even if for other duties he is an employee),[64] then the employer must claim such ownership by virtue of an assignment and not merely by virtue of his status as an employer.[65] Moreover, as an assignee rather than an employer for hire his rights for purposes of renewal copyright will be substantially different.[66]

### [62.4]—On whether the Employer Acquires Rights In All Media

An express contractual provision reserving to the employee rights in certain media, while conveying to the employer rights in other media is not uncommon,[67] and is, of course, enforcible. In the absence of such an express reservation, the employer as "author"[68] acquires exclusive rights in all

---

[63] Thompson v. Clark 109 N.Y. Supp. 700(Sup.Ct. 1904) but cf. Ipswich Mills v. Dillon 260 Mass. 453, 157 N.E. 604 (1927) (dealing with independent contractors).

[64] See § 62.2 supra.

[65] Shapiro, Bernstein and Co. v. Jerry Vogel Music Co. 221 F2d 569 (2d Cir. 1955); See Root v. Borst 142 N.Y. 62, 36 N.E. 814 (1894); See § 63 infra.

[66] See § 114.4 infra.

[67] E.g., Art. XX, 1960 Television Film Basic Agreement, Writers Guild of America; Art. 35, Producer-Writers Guild Theatrical Basic Agreement of 1960.

[68] 17 U.S.C.Sec. 26.

[69] But if the employer regarded the product of the employees services as useful only in a given medium or for a single purpose, the contract of employment may be construed as reserving to the employee rights in other media or for other noncompetitive purposes. See Uproar Co. v. National Broadcasting Co., 81 F.2d 373 (1st Cir. 1936).

media.[69] Thus, the "shop rights" doctrine of patent law is not applicable to copyright.[69a]

[62.5]—**The Effect of a Material Breach by the Employer**

Who may claim copyright in a work clearly written in and pursuant to an employment for hire where the employer wrongfully refuses to pay the employee for his services or otherwise materially breaches the contract of employment? It may be argued that the employee's only remedy is a contractual right to wages or other compensation payable under the contract, and that the copyright nevertheless remains in the employer since such copyright was vested in him not by the contractual agreement of the employee but rather by reason of the employer's "status" as an author under Sec. 26 of the Copyright Act. He is nonetheless an employer and hence nonetheless an "author" by reason of the fact that he has failed in honoring certain contractual obligations arising out of the employment relationship.

However, if the observations made in §§ 6.3 and 62.1 *supra* are correct, then the above argument must be regarded as fallacious. Such prior sections suggest that an employer may claim to be the author and hence the copyright proprietor not simply by reason of his status as an employer, but rather by reason of a presumed agreement (in the absence of a contrary expression of the parties) that the employer shall acquire the rights of the author. If, then, the employer's claim of copyright is based upon the agreement (albeit implied) of the employee, then surely a material breach by the employer must under traditional principles of contract law[70] entitle the employee to rescind the employment agreement and hence claim back the copyright which he had agreed to convey.[71] Although no modern cases appear to have ruled upon this precise issue,[72] the result here suggested is sup-

---

[69a] But see *Boucicault* v. *Fox*, 3 Fed. Cas. 977, No. 1691 (SDNY 1862); *DeWitt* v. *Brooks*, 7 Fed. Cas. 575 No. 3851.

[70] Restatement of Contracts, Sec. 397; See Uniform Sales Act Sec. 61.

[71] As to such right of rescission in an express assignment rather than an employment relationship, see § 130 *infra*.

[72] The dearth of cases raising this issue suggests a general assumption

Copyright 1963, CLARK BOARDMAN COMPANY, LTD.,
MATTHEW BENDER & COMPANY, INC.                                Nimmer

JA2044

ported by several early English decisions.[73] Of course, even if such a rescission may be affected, this in no case would entitle the employee to claim ownership of the tangible copies which embody the copyrighted work. Such tangible copies would in any event remain the property of the employer since the ownership in them was never in any sense conveyed by the employee. They were from the first instance the property of the employer.[74] However, the right to make additional copies of the work or to exercise any of the other rights granted exclusively to the copyright owner[75] may no longer be claimed by the employer following such a rescission.

### § 63. Commissioned Works

This section deals with the copyright ownership of works which are specially created upon the order or request of a person other than the creator, but where the creator is an independent contractor rather than an employee of such other person.[76] Whether copyright resides in the person thus commissioning the work or in the independent contractor creating the work will always turn on the intention of the parties where that intention can be ascertained.[77] A problem arises where, as is often the case, the parties do not expressly agree as to such an intention. Under such circumstances should it be presumed, as in the case of an employment for hire,[78] that copyright resides in the person commissioning the work, or should the contrary presumption of copyright in the independent contractor-creator prevail? Some decisions

---

among both employees and employers that a rescission whereby the copyright is reclaimed by the employee is not possible. Such a long standing assumption might in itself prove influential with courts in any future determination of this issue.

[73] *Brown* v. *Cooke*, 16 L.J.Rep.N.S. Ch. 140 (1846); See *Richardson* v. *Gilbert*, 1 Sim (N.S.) 336, 61 Eng. Rep. 130 (1851).

[74] Query, however, whether following rescission the employee could claim that the copies must be destroyed under the provisions of 17 U.S.C. 101(d). It might well be held that such copies were not liable for such destruction since at the time they were created no rescission had as yet been affected and hence the copies were not "infringing copies" within the meaning of Sec. 101(d).

[75] See Chapter 8 *infra*.

[76] See § 62.2 *supra*.

[77] *Hartfield* v. *Herzfeld*, 60 F.2d 599 (SDNY 1932).

[78] See § 62.1 *supra*.

have suggested a presumption in favor of the independent contractor,[79] but most decisions indicate a contrary presumption.[80] Thus in the absence of persuasive evidence of an agreement to the contrary it is generally held that if an artist, writer, photographer, architect or other "author" is commissioned to create a work, the copyright in such work will vest in the person commissioning the work.[81]

However, the foregoing generally prevailing rule is subject to certain qualifications. In the first place the presumption of copyright in the person commissioning the work is valid only with respect to the initial term of copyright, not as to the renewal term.[82] This is to be contrasted with an employment for hire[83] which not only divests the employee of the original term of copyright but also divests him and his successors of the renewal term.[84]

The issue may be raised as to whether in fact the work was created pursuant to a commission. This is determined by an evaluation of the surrounding circumstances. In the ordinary case where a photographer is retained by a client to take a photograph, copyright will vest in such client.[85] The subject of a personal portrait taken by a commercial photographer

---

[79] *W. H. Anderson Co.* v. *Baldwin Law Pub. Co.*, 27 F.2d 82 (6th Cir. 1928); See *Uproar Co.* v. *National Broadcasting Co.*, 81 F.2d 373 (1st Cir. 1936); *Hartfield* v. *Hersfeld*, 60 F.2d 599 (SDNY 1932).

[80] This notwithstanding the fact that 17 U.S.C. Sec. 26 expressly renders an employer for hire an "author" but makes no comparable provision with respect to commissioned works.

[81] *Yardley* v. *Houghton Mifflin Co.* 108 F2d 28(2d Cir. 1939); *Otten* v. *Curtis Pub. Co.* 91 U.S.P.Q. 222 (N.Y.Sup.Ct. 1951); *Crimi* v. *Rutgers Presbyterian Church* 194 Misc. 570, 89 NYS2d 813(Sup.Ct. 1949); *Morton* v. *Raphael* 334 Ill.App.399, 79 NE2d 522(1948); *Tumey* v. *Little* 186 NYS 2d 94(Sup.Ct.1959); See *Douglas* v. *Stokes* 149 Ky. 506, 149 S.W. 849(1912); *Holmes* v. *Underwood & Underwood Inc.* 225 App. Div. 360(1929); *Dielman* v. *White*, 102 Fed. 892 (CCD Mass. 1900).

[82] *Shapiro, Bernstein and Co.* v. *Jerry Vogel Music Co.* 221 F2d 569 (2d Cir.1955); See *Yardley* v. *Houghton Mifflin Co.* 108 F2d 28(2d Cir. 1939).

[83] See § 62.1 *supra*.

[84] See § 114.4 *infra*.

[85] *Lumiere* v. *Robertson-Cole Distr. Corp.* 280 Fed.550(2d Cir.1922); *Avedon* v. *Exstein* 141 F.Supp.278 (SDNY 1956); *Lawrence* v. *Ylla* 184 Misc. 807, 55 NYS2d 343(1945).

Copyright 1963, CLARK BOARDMAN COMPANY, LTD., MATTHEW BENDER & COMPANY, INC.   Nimmer

§ 63    THE LAW OF COPYRIGHT    246

is generally a commissioning client, and therefore entitled to claim copyright in the resulting photograph.[86] The surrounding circumstances, however, may indicate that this is not the case. Thus copyright in a photograph will belong to the photographer and not the subject and the work will not be regarded as commissioned if the photograph was taken at the request of and for the benefit of the photographer[87] or where the photographer took the picture on his own initiative and at his own expense.[88] (However, indiscriminate use by the photographer of a photograph in which he has the copyright, but which is distinctively identified with the subject of the photograph may give rise to an action for unfair competition,[89] invasion of privacy,[90] or infringement of the right of publicity.)[91]

Finally it should be noted that even where the relationship is truly one of a commissioning client retaining an independent contractor, the parties may agree to vary the general rule of law, so that the copyright will vest in the independent contractor. It has been held that mere evidence of a custom and usage in a given industry will not be admissible to establish such an agreement.[92] However, evidence of such an agreement between the parties is admissible,[93] and the evidence

---

[86] A commissioning client will be entitled to copyright in the resulting photograph regardless of whether it is a personal portrait or impersonal commercial work. *Avedon v. Exstein* 141 F.Supp.278(SDNY 1956); see *Cory v. Physical Culture Hotel Inc.* 14 F.Supp. 977(WDNY 1936).

[87] *Press Pub. Co. v. Falk* 59 Fed. 324(CCSNY 1894); *Young v. J. M. Hickerson Inc.* 5 Misc.2d 140, 159 NYS2d 612(1957, rev'd on other grounds 9 Misc.2d 932, 170 NYS2d 168 (1957); See *Yardley v. Houghton Mifflin Co. Inc.* 108 F2d 28(2d Cir. 1939).

[88] *Cory v. Physical Culture Hotel Inc.* 14 F. Supp.977(WDNY 1936), aff'd 88 F2d 411 (2d Cir.1937); *Altman v. New Haven Union Co.* 254 Fed. 113(D.C.Conn.1918).

[89] See *Hoague-Sprague Corp. v. Frank C. Meyer Co. Inc.* 31 F2d 583 (EDNY 1929).

[90] See *Gill v. Hearst Pub. Co.* 40 Cal.2d 224, 253 P2d 441(1953); *Gill v. Curtis Pub. Co.* 38 Cal.2d 273, 239 P2d 630(1952).

[91] See Nimmer, *The Right of Publicity*, 19 Law & Contemporary Problems 203(1954).

[92] *Avedon v. Exstein* 141 F.Supp. 278(SDNY 1956); cf. *Otten v. Curtis Pub. Co.* 91 U.S.P.Q. 222(N.Y.Sup. Ct. 1951).

[93] *Lumiere v. Pathe Exchange Inc.* 275 Fed.428(2d Cir.1921); *Dielman v. White* 102 Fed. 892 (D Mass. 1900).

247  PERSONS ENTITLED TO COPYRIGHT  § 64

may establish such an implied agreement even though the express agreement between the parties does not so provide.[94] Still, the mere act by the commissioned creator of placing a copyright notice on the work in his own name has been held insufficient to establish an implied agreement to vary the presumption of copyright in the person commissioning the work unless it is further shown that the latter in accepting the work was aware of such notice and had authority to vary the usual presumption as to ownership.[95]

### § 64. Letters

Letters are no less a form of literary property than any other writings. They raise certain peculiar problems, however, in that (1) like commissioned works,[96] they are usually created for some specified recipient (2) the function for which they are intended necessarily requires a transfer of possession of the tangible expression of the work, and (3) their content is often regarded as confidential by either the sender or the recipient. In view of these considerations somewhat specialized rules have evolved in determining copyright ownership of letters as between the sender and the recipient.

It is clear that letters are regarded as a form of literary property regardless of their intrinsic merit, and regardless of whether they are intended for publication.[97] Subject to the recognized exceptions enumerated below, and to any contrary agreement of the parties, the general rule is that the author of a letter retains the ownership of the copyright or literary property contained therein while the recipient of the letter acquires ownership of the tangible physical property of the letter itself.[98] This creates a somewhat strange

---

[94] R. R. Donnelly & Sons Co. v. Haber 43 F.Supp. 456(EDNY 1942).

[95] Yardley v. Houghton Mifflin Co. 108 F2d 28(2d Cir.1939); See Lumiere v. Pathe Exchange 275 Fed. 428 (2d Cir.1921).

[96] See § 63 supra.

[97] Baker v. Libbie 210 Mass. 599, 97 N.E. 109(1912); Woolsey v. Judd 4 Duer 379(N.Y. 1855); Folsom v. Marsh 9 Fed.Cas.342, No. 4901(C.C. Mass. 1841).

[98] Folsom v. Marsh 9 Fed.Cas. 342, No. 4901 (C.C.Mass.1841); Baker v. Libbie 210 Mass.599, 97 N.E. 109

Copyright 1963, CLARK BOARDMAN COMPANY, LTD., MATTHEW BENDER & COMPANY, INC.  Nimmer