# Exhibit 94

DONALD S. ENGEL
FRANCIS C. PIZZULLI
ENGEL & ENGEL
9665 Wilshire Boulevard
Eighth Floor
Beverly Hills, California    90212

Telephone:  (213) 550-7178

Attorneys for Defendants STAN LEE,
SELLULOID PRODUCTIONS, INC., PETER
SHANABERG, MORRIE EISEMAN and
PETER COFFRIN

RECEIVED

NOV 17 1980

Davidson & Holmes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| STEPHEN GERBER,<br><br>        Plaintiff,<br><br>  vs.<br><br>CADENCE INDUSTRIES CORPORA-<br>TION, a corporation; MARVEL<br>PRODUCTIONS, INC., a<br>corporation; STAN LEE;<br>SELLULOID PRODUCTIONS, INC.,<br>an association, PETER<br>SHANABERG; MORRIE EISEMAN;<br>PETER COFFRIN,<br><br>        Defendants. | Case No.:  80 3840 DVK<br><br>NOTICE OF MOTION AND MOTION<br>TO DISMISS; MEMORANDUM OF POINTS<br>AND AUTHORITIES; DECLARATION OF<br>DONALD S. ENGEL<br><br>Fed. R. Civ. P. 12(b)(1)<br><br>DATE:  December 8, 1980<br>TIME:  10:00 a.m. |

TO PLAINTIFF STEPHEN GERBER AND HIS ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE that on December 8, 1980 at 10:00 a.m.
or as soon thereafter as counsel may be heard, in the courtroom
of the Honorable David V. Kenyon, Judge of the United States
District Court, located at 312 North Spring Street, Los Angeles,
California, defendants STAN LEE, SELLULOID PRODUCTIONS, INC.,
PETER SHANABERG, MORRIE EISEMAN and PETER COFFRIN will move this

EL & ENGEL

ME00820
JA1873

DECLARATION OF DONALD S. ENGEL

Donald S. Engel declares and says:

1. I am a member of the firm of Engel & Engel, attorneys for the moving defendants in this action. This declaration is made for the purpose of introducing certain documents supplied for purposes of this litigation by representatives of the Marvel Comics Group, a division of defendant Cadence Industries Corporation. All of the attached items were provided from the files of Marvel Comics Group ("Marvel") from their East Coast offices.

2. Records of Cadence indicate that Magazine Management Co., Inc. was, and is, a Delaware corporation and a subsidiary of Cadence. Until the early 1970's, Magazine Management Co., Inc. owned and controlled certain assets related to its business of publishing comic magazines, including the comic magazines which are the subject of this action; at that time, it transferred its comic magazine assets to its parent corporation, Cadence. Thenceforth, the Marvel division of Cadence published the comic magazines. Both prior and subsequent to such transfer, Magazine Management Co., Inc., Marvel and Cadence all operated out of the same premises, had the same executives, the same bookkeepers and the same accounting department. For all purposes of this action, said three entities operated as, and should be considered, one entity.

3. Exhibit A appended hereto consists of copies of the cove

/////

ME00839
JA1874

1   and nine representative pages of the December 9, 1973 issue of a

2   magazine entitled "Adventure into Fear" with "The Man-Thing."

3   As noted on page 1 at the bottom, "FEAR is published by MARVEL

4   COMICS GROUP."  There is also the following copyright notice:

5

6           Copyright C 1973 by Marvel Comics Group, A

7           Division of Cadence Industries Corporation.  All rights

8           reserved.  575 Madison Avenue, New York, N.Y. 10022.

9           Vol. 1, No. 19, December, 1973 issue.

10

11          4.   According to the best information of Marvel, the first

12   depictions of "Howard the Duck" ("Howard") appear on pages 18 and

13   26 and the following pages of Exhibit A, where he is introduced as

14   a minor character in this particular comic magazine.  Plaintiff

15   Stephen Gerber is listed on page 1 as the "writer," Val Mayerik

16   is listed on page 1 as the "artist," Sal Trapani is listed on

17   page 1 as the "inker," Art Semak is listed on page 1 as the

18   "letterer," Stan G. is listed on page 1 as the "colorist" and

19   Roy Thomas is listed as the "editor."

20

21          5.   Howard appeared in subsequent issues of this particular

22   magazine, other comic magazines entitled "Giant Size Man-Thing"

23   and later in magazines entitled "Howard the Duck" and in special

24   publications featuring many Marvel characters, such as "Marvel

25   Team Up."  Some representative copyright certificates in the name

26   of Marvel Comics Group for these various magazines are appended

27   hereto as Exhibit B.

28   /////

EL & ENGEL

-21-

ME00840
JA1875

1    6.    Exhibit C appended hereto consists of copies of the
2  front and back of a check dated June 1, 1973 drawn against the
3  account of "Marvel Comics Group Division of Cadence Industries
4  Corp." and payable to Gerber in the amount of $285.00 representing
5  payment to Gerber for his work performed as the "writer" of the
6  first comic magazine containing the character Howard, which is
7  Exhibit A hereto.  The following legend on the back is typical of
8  checks endorsed by Gerber which he received on payment for his
9  work:

10

11        By endorsement of this check, I, the payee, acknowl-
12        edge full payment [for my] employment by Magazine Management
13        Company, Inc. and for my assignment to it of any copy-
14        right, trademark and any other rights in or related to the
15        material, and including my assignment of any rights to
16        renewal copyright.

17

18    7.    During his employment as a free-lance writer for Marvel,
19  Gerber entered into an agreement dated March 18, 1977 with Marvel,
20  a copy of which is appended hereto as Exhibit D.  The following
21  selected clauses contained in that agreement are particularly
22  pertinent to the instant motion:

23

24        7.    You agree that Marvel shall have all rights of
25        every kind and nature, in and to the Material, including
26        but not by way of limitation, the right to copyright the
27        same in the name of Marvel, the exclusive right to deal
28        with, publish, and use the Material in any way whatsoever,

L & ENGEL

-22-

ME00841
JA1876

1    the right to reprint, rewrite, alter and change the

2    Material, all anthology rights, the right to exploit

3    the Material throughout the world in all languages,

4    the right to use the Material in sales promotions, and

5    for publicity purposes and the right to exploit the

6    Material on television, motion pictures, and radio.

7

8    8.  Thereafter, Gerber ("the Employee") and Marvel entered

9   into an agreement dated October 7, 1977, a copy of which is appended

10  hereto as Exhibit E.  That agreement contained, among other things,

11  the following clauses:

12

13    1.  Employment.  Marvel hereby employs Employee and

14    Employee hereby agrees to render services to Marvel, as

15    a writer for magazines heretofore and hereinafter published

16    by Marvel.

17

18    3.  Compensation.

19    (a) Basic Compensation.  For the full and faithful

20    performance of Employee's duties and for all services

21    to be provided Marvel hereunder, Marvel shall pay

22    Employee, on a biweekly basis, a salary based on $26.50

23    per page for each color comic page of script written,

24    and $50.00 for each issue of each standard 32-page

25    comic magazine edited for Marvel and accepted by the

26    Publisher of Marvel (hereinafter the "Material"). . . . .

27

28    (e)  Vacation.  Employee shall be entitled to two

EL & ENGEL

-23-

ME00842
JA1877

(2) weeks of paid vacation each year. . . .

(g)  Employee Benefits.  Employee shall be eligible for all coverage or benefits under any plan or plans of health, hospitalization, life or other insurance available to other employees of Marvel who are paid a similar salary and who have a similar position.

4.(c) ...  Marvel agrees that Employee shall have first option to accept or refuse any additional writing and/or editorial duties connected with the HOWARD THE DUCK feature for any Marvel publication for the term of this Agreement, and that Employee shall be consulted as to the choice of other writers and/or editors who may work on the feature in the event of Employee's refusal. In the event of a license for a film, television or motion picture adaptation of HOWARD THE DUCK, Marvel agrees to recommend to such producer that Employee and Employee only be used by such producer as script and/or story consultant to preserve the integrity of the licensed character.  Employee may accept payment for such services from producer. . . .

5.  Publisher.  In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel. . . .

L & ENGEL

ME00843
JA1878

7.   Rights to Material.   Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder, including but not limited to, (a) the exclusive right to secure copyrights in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertising, and promotion rights therein, and (e) all reprint rights with repayment to Employee for same at Marvel's then-applicable reprint rates. . . .

10.   Series and Ideas.   If any Material delivered hereunder is part of a series, the idea and characters used therein shall constitute Marvel's exclusive property for all times.  Employee shall not be required to submit ideas for new series under the terms of this agreement.

9.   Exhibit F appended hereto is a "Licensing Agreement" entered into on March 12, 1976 between Marvel and Gerber pursuant to which Marvel licensed to Gerber the right to utilize the character Howard solely for the manufacture, sale and distribution of "HOWARD THE DUCK BUTTONS TO BE SOLD VIA MAIL ORDER."  Those rights were limited to the United States and he was required to pay to Marvel as a royalty for the license and rights granted five percent of his gross receipts from sales of the licensed articles.

10.   There are also appended hereto as Exhibits the following

CL & ENGEL

ME00844
JA1879

items taken from the correspondence files of Marvel:

(a)  Exhibit G: a letter dated March 24, 1978 from Joseph D. Peckerman, acting as attorney for Gerber, to Marvel, with appended copy of a telegram dated March 21, 1978.

(b)  Exhibit H: a letter dated April 5, 1978 from Steve Gerber to James E. Galton, president of Marvel.

(c)  Exhibit I: a letter dated May 2, 1978 from Stan Lee, publisher of Marvel, to Gerber.

(d)  Exhibit J: a letter dated June 30, 1980 from Henry W. Holmes, Jr., acting as attorney for Gerber, to Marvel Productions.

11.  The foregoing exhibits indicate the dispute which arose between Gerber and Marvel concerning the ownership of the character Howard.  In the telegram dated March 21, 1978 (see Exhibit G), Gerber's then attorney purported to advise Marvel that:

[U]nder the terms of said agreement [dated March 18, 1977], upon the effective date of any such termination, all of your [Marvel's] rights in and to the characters contained in said comic strip shall terminate . . . .

Gerber wrote on April 5, 1978 (Exhibit H):

ME00845
JA1880

1     Please be advised that under the terms of our said

2     March 18, 1977 agreement, as of April 27, 1978 . . .

3     Marvel Comics Group's . . . rights to the characters

4     contained in the comic strip "Howard the Duck" shall

5     terminate and Marvel shall have no further rights there-

6     in or with respect thereto.

7

8   Similarly, Gerber's present attorney by letter dated June 30, 1980

9   claimed that Gerber, not Marvel, owned all rights to portray the

10  character Howard "in any media or manner" and demanded that Marvel

11  cease and desist from any efforts to license the use of the

12  character and return to Gerber "all materials and proofs and

13  publications" in Marvel's possession which depict the character

14  Howard or its name.

15

16      12.  It is apparent from this correspondence that the dis-

17  pute between Marvel and Gerber can be stated in one sentence:

18

19          Who owns the rights to the character Howard?

20

21      13.  Exhibit K appended hereto is a copy of an agreement

22  entered into as of September 1, 1980 between Marvel and Selluloid

23  pursuant to which Selluloid is granted an option to utilize the

24  character Howard in a live-action theatrical motion picture and

25  the right, during the option period, to produce and distribute

26  episodic radio programs using the character Howard.  The option

27  period for the motion picture use terminates at midnight Septem-

28  ber 1, 1981 and the agreement contemplates that if the option is

EL & ENGEL

ME00846
JA1881

1 exercised, at some point in the future Selluloid would produce and

2 release a motion picture utilizing the character Howard.

3

4    I declare under penalty of perjury that the foregoing is

5 true and correct.

6

7    Executed this /7th day of November, 1980 at Beverly Hills,

8 California.

9

10

11                              DONALD S. ENGEL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L & ENGEL

-28-

ME00847
JA1882





EXHIBIT C

ME00867
JA1883

Stephen Gerber
631 Nineth Avenue
New York, New York  10036

    This letter will set forth the understanding between you and
Marvel Comics Group (Marvel) concerning the services you will
perform in connection with the production by Marvel of a daily and
Sunday comic strip featuring "Howard the Duck", (The "Feature"),
for the Register and Tribune Syndicate, Inc., ("Syndicator").

    1. You agree to provide all the ~~artwork~~ script material (The Material) required
to produce the Feature in accordance with the schedule set up by the
Syndicator.  To this end Marvel will advise you of the scheduling as
reasonably practicable after it receives such from the Syndicator.

    2. You will supply the Material as long as required by Marvel
or until the Feature is no longer produced by Marvel.

    3. The Material shall be similar in character, design and format
to that you have heretofore prepared and written for Marvel's comic
magazine featuring said character.

    4. It is understood that you will supply said Material to Marvel
at your own cost and expense utilizing your own tools, furnishing
your own place of work and utilizing your own assistance.

    5. Marvel agrees to pay to you 1/3 of the net receipts it
receives from the Syndicator 30 days after it receives such.  Net
receipts for purposes of this arrangement shall be Marvel's share

Marvel Comics Group
575 Madison Avenue
-49- EXHIBIT D
CADENCE
Publishing &
ME00868
JA1884

— 2 —

of payments received by it from the Syndicator for the Feature
less Marvel's out-of-pocket expenses (lettering and coloring)
incurred in connection with the production of the Feature.   Marvel
agrees to furnish copies of monthly statements of net receipts
from Syndicator and an accounting of Marvel's expenses for lettering
and coloring.

6. You acknowledge that the Syndicator has the sole and absolute
authority to sell and/or license the Feature as it sees fit and
determine all selling and licensing costs.

7. You agree that Marvel shall have all rights of every kind
and nature, in and to the Material, including but not by way of
limitation, the right to copyright the same in the name of Marvel,
the exclusive right to deal with, publish, and use the Material in
any way whatsoever, the right to reprint, rewrite, alter and change
the Material, all anthology rights, the right to exploit the Material
throughout the world in all languages, the right to use the Material
in sales promotions, and for publicity purposes and the right to
exploit the Material on television, motion pictures, and radio.

In the event Marvel sells or licenses the Material for uses
other than the daily and Sunday comic strip, then Marvel shall pay
to you one third of the net receipts (less any applicable commissions
or expenses) it receives from such sale and/or license.

8. You warrant and represent to Marvel that:

(a) that you are the sole artist of the Material;

(b) that the Material is original and does not infringe

ME00869
JA1885

upon any existing common law or statutory copyright

or upon any common law right, proprietary right, civil

right, or any other right whatsoever;

(c) that the Material contains no matter that is scandalous, obscene, libelous or otherwise contrary to law; and

(d) that the rights herein conveyed to Marvel have not heretofore been assigned, pledged, or otherwise encumbered.

9. Writer shall be given proper credit notice in all advertising and promotion used by the Syndicate.

10. This letter represents the entire understanding between you and Marvel and may not be changed orally. The agreement shall be governed by the laws of the State of New York and may be terminated by Marvel upon thirty (30) days prior written notice and by Stephen Gerber upon ninety (90) days written notice.

Very truly yours,

MARVEL COMICS GROUP

By _____
James E. Galton, President

Accepted and Agreed to this

_18th_ day of March, 1977.

By _____
Stephen Gerber

ME00870
JA1886

WRITERS AGREEMENT

AGREEMENT dated October ~~8~~ 7th, 1977 between MARVEL COMICS GROUP (hereinafter called "Marvel") and STEPHEN R. GERBER (hereinafter called "the Employee").

WHEREAS Marvel is desirous of retaining employee as a writer, for its magazines and Employee is willing to render such services on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual promises and undertakings herein contained, and for other good and valuable considerations, the parties agree as follows:

1. Employment. Marvel hereby employs Employee and Employee hereby agrees to render services to Marvel, as a writer for magazines heretofore and hereinafter published by Marvel.

2. Term.

(a) Initial Term. The term of this Agreement shall be for one year commencing November 1, 1977 and ending October 31, 1978 (sometimes referred to as the employment years and each 12-month period shall be referred to as an "employment year").

(b) Renewal Terms. In the absence of notice to the contrary given by either party to the other not less than sixty (60) days prior to the expiration of the Initial Term hereof, this Agreement shall be automatically renewed for one year on the

EXHIBIT F

ME00871
JA1887

same terms and conditions as those herein set forth except to the extent provided below. There shall be like renewals from year to year thereafter, in the absence of like notice given no less than sixty (60) days prior to the expiration of the then current term.

3. Compensation.

(a) Basic Compensation. For the full and faithful perfor-mance of Employee's duties and for all services to be provided Marvel hereunder, Marvel shall pay Employee, on a biweekly basis, a salary based on $26.50 per page for each color comic page of script written, and $50.00 for each issue of each standard 32-page comic magazine edited for Marvel and accepted by the Publisher of Marvel (hereinafter the "Material"). For purposes of this Agreement, Employee shall deliver to Marvel during each employment year (Nov. 1 thru Oct. 31) 612 pages at the rate of approximately 51 pages per month, and shall perform editorial duties on twelve (12) standard 32-page comic magazines at the rate of one magazine per month, according to the reasonable schedules and deadlines set by the Publisher of Marvel. In this respect Employee will make all changes and rework all Material as reasonably required by the Publisher of Marvel without charge (that is, reworks and changes shall not constitute pages for the purposes of computing compensation hereunder).

ME00872
JA1888

(b) <u>Additional Compensation</u>. Employee shall be paid additional compensation for the following services, but only if and to the extent requested from time to time by Marvel:

(i) All pages written for Marvel in excess of the minimum amounts set forth in paragraph 3(a) above in any employment year at the rates set forth in paragraph 3(a) above.

(ii) All pages written or editorial duties performed for publications in any format other than that of the standard four-color or black-and-white Marvel comics magazines. Rates for such material shall be determined separately from this Agreement, and agreed upon in writing by Marvel and the Employee.

Additional compensation shall be paid to Employee within thirty (30) days after submission and acceptance of such material by Marvel.

(c) Notwithstanding anything contained herein, Marvel shall, upon 60 days prior written notice, have the right in the event of a general reduction of production or of work force, or in the event of a partial closing as a result of economic conditions, to reduce the amount(s) of work product required of Employee with a proportionate reduction in pay and other benefits provided for herein. Such reduction shall be only in proportion to the actual reduction of comic books required by Marvel and shall be applied only after the

ME00873
JA1889

(d) In the event such reduction as provided for in paragraph 3(c) results in the Employee's no longer earning what he deems to be a reasonable living wage, the Employee shall have the right, upon sixty (60) days prior written notice, to terminate the Agreement.

(e) Vacation.   Employee shall be entitled to two (2) weeks of paid vacation each year.   At the option of Marvel such vacation may take the form of Employee being required to deliver, in any given employment year, not more than fifty (50) weeks of weekly work product and being paid for fifty-two (52) weeks of weekly work product, or may take the form of Employee delivering fifty-two (52) weeks of work product with Marvel paying an additional two (2) weeks salary. Marvel shall have the sole option to divide such vacation rights between time off and payments consistent with the terms of this sub-paragraph.   Should vacation take the form of time off, such vacation time shall be at the discretion of Employee provided however, that such vacation time does not conflict with Marvel's production schedule.   Weekly work product shall be one fifty-second of total annual work product.

(f) Payment Dates.   Marvel will pay Employee's salary on a bi-weekly basis or at such other intervals consistent with payroll policies then in effect relating to salaried

ME00874
JA1890

employees doing similar functions as Employee. Marvel shall
have the right to withhold salary in the event that Employee
falls behind in meeting his work requirement by one month's
work product. Reimbursement of authorized (in writing and
in advance of the expenditure) business expenses shall be paid
in accordance with Marvel's policies relating thereto.
Marvel agrees that salary checks shall be mailed to Employee
via Special Delivery on the day of issue.

(g) <u>Employee Benefits</u>. Employee shall be eligible for
all coverage or benefits under any plan or plans of health,
hospitalization, life or other insurance available to other
employees of Marvel who are paid a similar salary and who have
a similar position.

4. (a) <u>Conflict</u>. During the period of this Agreement,
Employee will attend to his duties with due diligence, and
not engage directly or indirectly in the production of any
other color or black-and-white comics magazines/ <u>periodicals or books</u> which are
competitive with Marvel, or in any activity which could be
detrimental to Marvel or which may conflict with Employee's
duties hereunder.

(b) <u>Editorial Stipulations</u>. Selection as to the magazines
or features written by Employee for Marvel, as well as of
artists, letterers, and colorists thereof shall be determined
by Marvel, except as provided for below.

-56-

ME00875
JA1891

(c) The sole exception to paragraph 4(b) shall be the feature entitled HOWARD THE DUCK, for which Marvel engages Employee's services as writer and editor for the term of this Agreement, except in the event of said feature's discontinuation. Marvel agrees that Employee shall have first option to accept or refuse any additional writing and/or editorial duties connected with the HOWARD THE DUCK feature for any Marvel publication for the term of this Agreement, and that Emplyee shall be consulted as to the choice of other writers and/or editors who may work on the feature in the event of Employee's refusal. In the event of a license for a film, television or motion picture adaptation of HOWARD THE DUCK, Marvel agrees to recommend suggest to such producer that Employee and Employee only be used by such producer as script and/or story consultant to preserve the integrity of the licensed character. Employee may accept payment for such services from producer.

Marvel further agrees that any change in Marvel's policy regarding the rights of artists and writers to income derived from the licensing of their creations for purposes of commercial exploitation shall be applicable also to the Employee and to HOWARD THE DUCK from that day forward.

(d) <u>Extent of Service</u>. Employee agrees not to draw, write, or edit any comic book or comic magazine material for anyone other than Marvel during the term of this Agreement without the prior written approval of Marvel.

-57-

ME00876
JA1892

(e) <u>Credits</u>.  Employee shall be given credit as writer and/or editor in all comics in which he is the sole writer and/or editor, and in any reprint of same.

5. <u>Publisher</u>.  In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel.  Employee shall consult with him on all matters dealing with editorial policies, in order to assure the efficiency and harmonious operation of Marvel and to meet with the Publisher of Marvel at regular intervals at Marvel's offices in New York, N.Y.  Employee shall accept assignments from the Publisher of Marvel to write and/or edit all magazines presently published or hereafter published by Marvel and further agrees that he will make no commitments whatsoever (whether financial or otherwise) on behalf of Marvel without the prior written consent of the Publisher of Marvel.

6. <u>Termination</u>.  Nothing in this Agreement shall be construed to prevent Marvel from terminating Employee's employment hereunder at any time (a) because of his fraud, misappropriation, embezzlement, or the like, or (b) if he has become so disabled as to preclude him from rendering satisfactory services, or (c) if he shall have violated any provision of this Agreement, or (d) in the event Employee falls behind in submitting material to the extent of two (2) months' work requirement for whatever cause, or (e) Employee's work has not met the performance

ME00877
JA1893

standards stated herein or required by Marvel from other employees performing similar services as Employee. In any such event, except as provided in (b) above, all obligations of Marvel hereunder shall cease and Employee shall be liable to Marvel for breach of this Agreement.

It is likewise understood that no provision of this Agreement shall be construed to prevent the Employee from terminating his employment hereunder at any time because of (a) willful fraud or misrepresentation on the part of Marvel, (b) Marvel's inability to provide work assignments in sufficient quantity as specified in paragraph 3(d), or (c) Marvel's violation of any provision of this Agreement. In any such events, all obligations of Employee shall cease. ~~and Marvel shall be liable to Employee for breach of this Agreement.~~

7.  Rights to Material.   Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder, including but not limited to, (a) the exclusive right to secure copyrights in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertizing, and promotion rights therein, and (e) all reprint rights with repayment to Employee for same at Marvel's then-applicable reprint rates.   The exclusive rights herein granted  shall pertain to all languages

ME00878

8. Originality of Material. Employee represents that the Material submitted by him will be original and not heretofore published and that it will not infringe upon any statutory copyright, common law copyright, or any other proprietary right.

9. Use of Name. Marvel shall at all times have the right to use Employee's name and likeness in connection with the sale, promotion, and distribution of any magazines which include Material delivered to Marvel by Employee.

ᴓ.

10. Series and Ideas. If any Material delivered hereunder is part of a series, the idea and characters used therein shall constitute Marvel's exclusive property for all times. Employee shall not be required to submit ideas for new series under the terms of this agreement.

11. Additional Documents. Employee shall, at Marvel's expense, take such steps and execute and deliver such further documents from time to time as Marvel may request for the purpose of confirming the rights herein granted to Marvel.

12. Notices. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if

ME00879
JA1895

sent by registered mail to his residence in the case of the
Employee, or to Publisher, Marvel Comics Group at its principal
office in the case of Marvel (with a copy to Secretary and
Counsel, Cadence Industries Corporation, 21 Henderson Drive,
West Caldwell, New Jersey 07006).

13. <u>Waiver of Breach</u>.  The waiver by Marvel of a breach of
any provision of this Agreement by the Employee shall not
operate or be construed as a waiver of any subsequent breach
by the Employee.  The waiver by the Employee of a breach of
any provision of this Agreement by Marvel shall not operate
or be construed as a waiver of any subsequent breach by Marvel.

14. <u>Covenants</u>.  Employee agrees that he shall not make and/or
sign any other contract or agreement, written or oral, which
shall be in conflict with the terms of this Agreement or
prevent or hinder his performance hereunder for the length of
this Agreement or any extension or renewal thereof, and
further agrees that he has the full and unrestricted right to
enter into this Agreement and deliver the material hereunder.

15. <u>Assignment</u>.  The rights and obligations of Marvel under this
Agreement shall inure to the benefit of and shall be binding upon
the successors and assigns of Marvel.

ME00880
JA1896

16. Entire Agreement. This instrument contains the entire Agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

17. Extraneous Agreements. It is understood that this Agreement in no way alters, supercedes, or nullifies any separate and/or previous agreement between Marvel and the Employee except in regard to working arrangements on the standard four-color or black-and-white comic magazines published by Marvel.

18. Arbitration. Any claim, dispute or controversy arising out of or in connection with this Agreement or the breach thereof will be submitted by either party to arbitration in New York City before three arbitrators appointed by the American Arbitration Association. The arbitration will proceed under the rules of the Association then obtaining. The award of the arbitrators will be binding and conclusive on both parties, and will be rendered in such form that a judgment may be entered thereon in the highest court of any forum having jurisdiction.

ME00881
JA1897

IN WITNESS WHEREOF the parties have executed this

Agreement on

ATTEST

MARVEL COMICS GROUP

By

WITNESS

Employee   10/26/77

OFFICIAL SEAL
SUE W. JOHNSON
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires FEB 27, 1979

ME00882
JA1898