# Exhibit 100

# *Hutson v. Notorious B.I.G., LLC*

United States District Court for the Southern District of New York

December 21, 2015, Decided; December 22, 2015, Filed

No. 14-cv-2307 (RJS)

**Reporter**
2015 U.S. Dist. LEXIS 170733 *

LEE HUTSON, individually and doing business as SILENT GIANT PUBLISHING CO., Plaintiff, VERSUS NOTORIOUS B.I.G., LLC, et al., Defendants.

**Counsel:** [*1] For Lee Hutson, individually and doing business as Silent Giant Publishing Co., Plaintiff: Alan S. Clarke, Atlanta, Georgia; Anthony R. Motta, New York, New York.

For BIG and Poppa, Defendants: Seth L. Bennan of Nixon Peabody LLP, Jericho, New York; Staci J. Riordan of Nixon Peabody LLP, Los Angeles, California.

For Combs Publishing, EMI, Bad Boy, and WMG, Defendants: Staci J. Riordan.

For UMG, Defendant: Andrew H. Bart, Christine Lee of Jenner & Block LLP, New York, New York.

**Judges:** RICHARD J. SULLIVAN, United States District Judge.

**Opinion by:** RICHARD J. SULLIVAN

## Opinion

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Lee Hutson ("Hutson") brings this copyright infringement action against Defendants Notorious B.I.G., LLC ("BIG"), Osten Harvey, Jr. ("Harvey"), Janice Combs Publishing, doing business as Justin Combs Publishing ("Combs Publishing"), Big Poppa Music ("Poppa"), EMI April Music, Inc. ("EMI"), Bad Boy Entertainment, Inc. ("Bad Boy"), Warner Music Group Corp. ("WMG"), and UMG Recordings, Inc. ("UMG") for allegedly infringing the copyrights of the song "Can't Say Enough About Mom." Now before the Court is Defendants' motion to dismiss the First Amended Complaint. For the reasons set forth below, [*2] Defendants' motion is GRANTED.

I. BACKGROUND[1]

Lee Hutson is an internationally recognized singer and songwriter who brings this lawsuit based on Defendants' alleged copyright infringement of the musical composition (the "Composition") and the sound recording (the "Sound Recording") of his 1973 song "Can't Say Enough About Mom" ("Can't Say Enough"). (FAC ¶ 11.)[2] On September 7, 1972, Plaintiff entered into a recording contract with Curtom Records Co. ("Curtom"), in which

---

[1] The following facts are taken from the First Amended Complaint, filed on May 15, 2014 (Doc. No. 19 ("FAC")). In ruling on the motion, the Court has also considered Defendants' Memorandum of Law (Doc. No. 38 ("Mem.")), Plaintiff's Opposition (Doc. No. 42 ("Opp'n")), and Defendants' Reply (Doc. No. 49 ("Reply")).

[2] Songs typically contain two distinct types of copyrights: (i) a musical composition copyright, which protects the "music and lyrics" of a song, and (ii) a sound recording copyright, which protects "the physical embodiment of a particular performance of the musical composition, usually in the form of a master recording." *Ulloa v. Universal Music & Video Distrib. Corp., 303 F. Supp. 2d 409, 412 (S.D.N.Y. 2004)*; *see also In re Cellco P'ship, 663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009)* ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." (internal quotation marks omitted)).

Plaintiff agreed to create sound recordings that would be the exclusive property of Curtom. (Declaration of Ernest E. Badway, dated Sept. 5, 2014, Doc. No. 37, ("Badway Decl.") Ex. 7 ("Recording Agreement") §§ 1(A), 7.) This contract lasted from approximately 1973 to 1979. (FAC ¶ 11.) While under this contract, in November 1973, Curtom released Plaintiff's album *The Man*, which featured the song "Can't Say Enough." (*Id.* ¶¶ [*3] 14, 16.) Subsequently, on December 3, 1973, Aopa Publishing Co. ("Aopa") and Silent Giant Publishing Co. ("SGP"), two music publishing companies, registered a copyright for the Composition of "Can't Say Enough" (*Id.* ¶ 14; Badway Decl., Ex. 8), and, on January 18, 1974, Curtom registered a copyright for the Sound Recording (Declaration of Lee Hutson, dated Oct. 3, 2014, Doc. No. 44, ("Hutson Decl.") Ex. 2).

Over twenty years later, on September 13, 1994, Defendant Bad Boy released *Ready to Die*, the debut album of Christopher George Latore Wallace ("Wallace"), also known as the Notorious B.I.G., Biggie, or Biggie Smalls.[3] (FAC ¶¶ 18-19.) *Ready to Die* featured the song "The What," which was written by Wallace, [*4] Harvey, and another individual. (*Id.* ¶ 27.) Defendants Poppa, Combs Publishing, and EMI published "The What," Defendant Bad Boy released *Ready to Die*, and Defendants UMG and WMG distributed *Ready to Die*. (*Id.* ¶¶ 19-20, 29.)

Nearly two decades later, in 2012, Plaintiff discovered that "The What" included an allegedly unauthorized sample of the Sound Recording of "Can't Say Enough." (*Id.* ¶ 26.) As a consequence, on April 2, 2014, Plaintiff filed a complaint in this action, alleging that Defendants, as composers, publishers, and distributors of "The What," infringed the copyrights of both the Sound Recording and the Composition of "Can't Say Enough," starting with the 1994 release and distribution of "The What" and continuing to the present. (Doc. No. 2.) On May 15, 2014, Plaintiff amended his complaint, asserting claims for copyright infringement of the Composition ("Count One"), the Sound Recording outside North America ("Count Two"), and the digital performance right of the Sound Recording ("Count Three"). (Doc. No. 19 ("First Amended Complaint" [*5] or "FAC").) Plaintiff also seeks injunctive relief, impoundment of the allegedly infringing songs, attorneys' fees, and prejudgment interest. (*Id.*)

On September 5, 2014, Defendants BIG, Combs Publishing, Poppa, EMI, Bad Boy, and WMG filed a motion to dismiss the First Amended Complaint, principally arguing that Plaintiff lacks standing to sue for copyright infringement because he does not have a copyright interest in either the Composition or the Sound Recording of "Can't Say Enough." (Doc. No. 36.) Specifically, in relation to the copyright of the Composition, Defendants rely on a December 17, 2008 settlement agreement between Plaintiff and Rhino Entertainment Co. ("Rhino") and Warner Brothers Records Inc. ("Warner Records"), wholly owned subsidiaries of Defendant WMG, in which Plaintiff acknowledged that Rhino "owns all right, title, and interest" in the Sound Recording in North America. (FAC Ex. A ("Settlement Agreement") § 3; *id.* ¶ 23.) On September 26, 2014, Defendant UMG joined the motion to dismiss. (Doc. No. 41.) To date, Defendant Harvey has neither filed a motion to dismiss nor joined the other Defendants' motion to dismiss. Plaintiff submitted an opposition on October 3, 2014, [*6] and the motion was fully briefed on October 24, 2014. (Doc. Nos. 42, 49-50.)

## II. LEGAL STANDARD

---

[3] Wallace died in 1997, and Defendant BIG now controls his intellectual property rights as the legal representative of Wallace's estate. (FAC ¶ 18.)

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. at 570.

III. DISCUSSION [*7]

A. Documents to Consider on a Motion to Dismiss

On a motion to dismiss, a court generally may consider only the complaint and any written instrument attached to the complaint. See Anwar v. Fairfield Greenwich Ltd., 831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011), aff'd sub nom., Pujals v. Std. Chtd. Bank, 533 Fed. Appx. 7 (2d Cir. 2013). However, a court may also consider materials that are "integral" to the complaint — that is, documents on which the complaint heavily relies — as long as no dispute exists regarding the authenticity, accuracy, or relevance of the documents. Id.; see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (noting that, when considering a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"). A court may also consider matters of public record. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

Here, both Plaintiff and Defendants ask the Court to consider several documents outside of the First Amended Complaint and the documents attached thereto. With respect to the documents provided by Defendants in their motion to dismiss, the Court finds that Exhibits 1 through 5, and 8 — which are attached to Badway's Declaration and include the complaints filed in this action, the sound [*8] recording of "Can't Say Enough" and "The What," the articles of incorporation of Aopa and SGP, and the copyright registration of the Composition — are matters of public record or are integral to the First Amended Complaint, and, therefore, will be considered. See Island Software & Comput. Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) (noting that a court can take judicial notice of a federal copyright registration). The Court will also consider the Recording Agreement between Plaintiff and Curtom because it is incorporated by reference in paragraph 11 of the First Amended Complaint. See Onanuga v. Pfizer, Inc., No. 03-cv-5405 (CM), 2003 U.S. Dist. LEXIS 20298, 2003 WL 22670842, at *4 (S.D.N.Y. Nov. 7, 2003) (finding that the court can consider a contract not attached to the complaint because it "was referenced in and relied upon in the drafting the Complaint, and

forms the basis for the allegations set forth in paragraph 83"). However, the Court will not consider Exhibits 6, 9, and 10 — which are attached to Badway's Declaration and include two recording agreements and one transfer agreement among Plaintiff, Defendants, and Curtom — because they are not referenced in the First Amended Complaint and Plaintiff disputes their authenticity. *See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)* (declining to consider documents that were not referenced in the complaint because "plaintiff's [*9] *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion").

Plaintiff also attaches to his Opposition several documents for the Court to consider. As an initial matter, the Court finds that Plaintiff cannot supplement potential gaps in the First Amended Complaint with his extensive declaration. *See Heine v. Colton,Hartnick, Yamin & Sheresky, 786 F. Supp. 360, 375 (S.D.N.Y. 1992)* ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Nevertheless, the Court will consider Exhibits 1, 2, 4, 5, and 7 — which are attached to Plaintiff's Declaration and consist of complaints filed in two related California actions, copyright registrations, and the Settlement Agreement — since they are either attached to the First Amended Complaint or are documents of public record. Similarly, the Court will also consider Exhibits 3 and 11, since those transfer agreements are incorporated by reference in the First Amended Complaint. The Court declines to consider all other extraneous documents attached to Plaintiff's declaration. (*See* Hutson Decl., Exs. 6, 8-10, 12, and 13 (agreements that are neither public records nor incorporated [*10] by reference into the First Amended Complaint).)

**B. Copyright Infringement**

To have standing to sue for copyright infringement of a musical composition or a sound recording, a plaintiff must establish that he is the legal or beneficial owner of an exclusive right under a valid copyright at the time of the alleged infringement. *See 17 U.S.C. § 501(b)*; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)*. Copyright ownership in a protected work "vests initially in the author or authors of the work." *17 U.S.C. § 201(a)*. The authors of a musical composition are usually the composer and lyricist, and the author of a sound recording is generally "the performer(s) whose performance is fixed, or the record producer who processes the sounds and fixes them in the final recording, or both." *In re Cellco, 663 F. Supp. 2d at 369* (internal quotation marks omitted). In addition, a certificate of registration constitutes prima facie evidence of an author's ownership of a copyright. *See Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992)* (discussing *17 U.S.C. § 410(c)*).

A copyright owner may assign or transfer his copyright interest as long as the transfer is memorialized in writing and signed by the copyright owner. *See 17 U.S.C. § 204(a)*; *Jasper v. Bovina Music, Inc., 314 F.3d 42, 46 (2d Cir. 2002)*. After such a transfer, an assignee may assert a claim for copyright infringement that occurred prior to the transfer only if the "accrued causes of action" are [*11] "expressly included in the assignment." *See ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991)* (noting that without an express assignment, "the assignee is only entitled to bring actions for infringements that were committed while it was the copyright owner" since "the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the

assignment"). Additionally, an assignee may assert a claim for copyright infringement that occurred after the transfer as long as he plausibly alleges that he received the copyright through a valid transfer and was the copyright owner during the alleged infringement. *Cf.* Arista Records LLC v. Lime Grp. LLC, No. 06-cv-5936 (KMW), 2011 U.S. Dist. LEXIS 35362, 2011 WL 1641978, at *2 (S.D.N.Y. Apr. 29, 2011) ("An assignee of a valid copyright who is not named on the registration as the owner has the additional burden of proving valid chain of title.").

Here, Defendants argue that Plaintiff has failed to state a claim for copyright infringement of the Composition in Count One because the facts alleged in the First Amended Complaint do not support the inference that Plaintiff owns a copyright in the Composition. Defendants further argue that the Court lacks subject matter jurisdiction over the infringement alleged in Count [*12] Two because that infringement occurred abroad. Finally, Defendants argue that Plaintiff has failed to state a claim for copyright infringement of the digital performance rights in the Sound Recording because the facts alleged in the First Amended Complaint do not support the inference that Plaintiff owns a copyright in the Sound Recording. The Court considers each argument in turn.[4]

1. Plaintiff Has Failed to Plead Ownership in the Composition

---

[4] Defendants also argue that Plaintiff's claims for copyright infringement prior to 2011 are barred by the Copyright Act's three-year statute of limitations. *See* 17 U.S.C. § 507(b). However, because the Second Circuit has stated that "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement," Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 125 (2d Cir. 2014), and Plaintiff alleges that he discovered Defendants' infringement in 2012 (FAC ¶ 26), the Court finds that Plaintiff's claims prior to 2011 may not be dismissed on statute of limitations grounds at this stage of the proceedings.

Plaintiff alleges that he "is and at all relevant times has been the copyright owner" of "50% of the rights in and to the" Composition. (FAC ¶¶ 15, 39.) However, the Court finds that Plaintiff lacks [*13] standing to sue because he fails to plausibly allege that he owned a copyright interest in the Composition at the time of the alleged infringement — 1994 to the present — or was subsequently transferred copyright ownership that expressly included the right to sue for causes of action that accrued prior to his ownership.

Here, as previously noted, Aopa and SGP registered a copyright in the Composition on December 3, 1973 (Badway Decl., Ex. 8), thereby establishing a "rebuttable presumption of ownership of a valid copyright." R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 52 (S.D.N.Y. 2009); *see also* 37 C.F.R. § 202.3(a)(3) (noting that a copyright claimant is either the author of the work or a "person or organization that has obtained ownership of *all rights* under the copyright initially belonging to the author" (emphasis added)). Significantly, Plaintiff offers no allegation relating to the copyright of the Composition over the next thirty years. However, Plaintiff asserts that, in December 2003, he entered into an agreement with Windswept Holdings LLC ("Windswept") and SGP, in which he agreed to sell, assign, and deliver his rights in the Composition to Windswept and SGP, thus leaving Windswept and SGP each with a fifty percent interest in the copyright of the Composition. [*14] (Hutson Decl., Ex. 11 ("Windswept Agreement") § 1(a); FAC at 5 n.2.) By virtue of the Windswept Agreement and the fact that Plaintiff allegedly "does business as" SGP, Plaintiff asserts that he now owns a fifty percent interest in the copyright of the Composition. (FAC ¶¶ 15, 39.)

However, Plaintiff's claim that he transferred a copyright in the Composition in 2003 fails to raise a plausible inference of ownership

because he has alleged no facts to explain how or when either Aopa or SGP transferred its copyright in the Composition to Plaintiff such that he had a copyright to transfer through the Windswept Agreement in the first place. *Cf. Int'l Media Films, Inc. v. Lucas Entm't, Inc., 703 F. Supp. 2d 456, 463 (S.D.N.Y. 2010)* ("[A] transferee plaintiff in a copyright infringement action must prove that the copyright was properly transferred to the plaintiff."). Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for copyright infringement of the Composition that occurred between 1994 and 2003.

Similarly, the Court finds that Plaintiff lacks standing to sue for the alleged infringement that occurred between 2003 and the present because, even if Plaintiff had a valid copyright in the Composition that he could transfer through the Windswept Agreement, he fails to allege [*15] that he — as opposed to SGP — owned the copyright in the Composition after the transfer. To support his claim that he shares copyright ownership in the Composition with SGP, Plaintiff conclusorily alleges that he "does business as" SGP. (FAC ¶ 1.) He also alleges that, while "doing business as SGP," he registered the copyright in the Composition. (*Id.* ¶ 14.) Finally, Plaintiff points to the caption of the First Amended Complaint, which states that Plaintiff is "Lee Hutson, individually and d/b/a Silent Giant Publishing Company."

SGP, however, is not an independent Plaintiff in this action, and merely listing in the caption of the First Amended Complaint that Plaintiff does business as SGP fails to establish that Plaintiff and SGP should be treated as the same entity for purposes of copyright ownership. *See Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa, 428 F. Supp. 1237, 1241 (S.D.N.Y. 1977)* ("[O]f course, whether or not [defendant] is in fact 'doing business as [another entity]' is a matter which is not decided by plaintiff's choice of caption in his complaint."); *TicketNetwork, Inc. v. Darbouze doing business as Charged.fm, No. 15-cv-237 (VAB), 133 F. Supp. 3d 442, 2015 U.S. Dist. LEXIS 126400, 2015 WL 5595486, at *4 n.6 (D. Conn. Sept. 22, 2015)* (a case caption's assertion that an individual is "doing business as" another entity is an improper legal conclusion; accordingly, the [*16] entity prior to the "d/b/a" is the true party in the action). In addition, since the transfer of copyright ownership requires a writing signed by the copyright owner, *see 17 U.S.C. § 204(a)*, simply stating that Plaintiff is "doing business as" SGP does not effectuate a transfer of rights.

In addition, Plaintiff's conclusory assertion that he does business as SGP is contradicted by SGP's Articles of Incorporation, a public document, which identifies SGP as a separate corporate entity with independent legal obligations and liabilities distinct from those of its officers. (*See* Badway Decl., Ex. 5); *see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001)* ("[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."). Furthermore, the fact that Plaintiff is listed in that document as the President of SGP is insufficient to suggest that the Court should ignore SGP's corporate form. *See id.* ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."). Thus, despite Plaintiff's allegation to the contrary, [*17] the copyright registration clearly reflects that Aopa and SGP — not Plaintiff — registered the copyright in the Composition. (*See* Badway Decl., Ex. 8.) Accordingly, the Court finds that Plaintiff has failed to plausibly allege that he does business

as SGP or that he shares an ownership interest in the copyright of the Composition. *See Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)* (holding that the court "is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint"); *see also R&B Realty Grp. v. Heiser, 322 F. Supp. 2d 206, 210 (D. Conn. 2004)* (merely alleging that plaintiff does business as a company is insufficient to demonstrate that plaintiff and the company "should be treated as the same entity"); *cf. Big E. Entm't, Inc. v. Zomba Enters., Inc., 453 F. Supp. 2d 788, 797 (S.D.N.Y. 2006)* (finding that a corporation does not have standing to sue for copyright infringement merely because the individual that owns the corporation has a copyright interest in the copyright alleged to be infringed), *aff'd*, *259 F. App'x 413 (2d Cir. 2008)*.

Because Plaintiff has failed to allege that he had an ownership interest in the copyright of the Composition during the alleged infringement period or that he was expressly transferred the right to sue, the Court finds that he lacks standing to assert a [*18] claim for infringement in this action. *See Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)* ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *17 U.S.C. § 501(b)*; *cf. Feinberg v. Katz, No. 99-cv-45 (CSH), 2002 U.S. Dist. LEXIS 13771, 2002 WL 1751135, at \*6 (S.D.N.Y. July 26, 2002)* ("[A parent] and its sole shareholder cannot bring claims to recover for damages incurred by its subsidiary. This conclusion follows from the principle that a parent corporation cannot create a subsidiary and then ignore its separate corporate existence whenever it would be advantageous to the parent." (internal quotation marks omitted)). Therefore, the Court grants Defendants' motion to dismiss Count One.

### 2. The Court Lacks Jurisdiction Over Infringement Occurring Abroad

In Count Two, Plaintiff alleges that he "is and at all relevant times has been the copyright owner of the exclusive rights" of the Sound Recording outside North America and that Defendants infringed his exclusive rights by "reproduc[ing] and distribut[ing]" the Sound Recording outside North America. (FAC ¶¶ 47, 49.) However, the Second Circuit has long recognized that the federal Copyright Act "do[es] not have extraterritorial application." *Robert Stigwood Grp. Ltd. v. O'Reilly, 530 F.2d 1096, 1101 (2d Cir. 1976)*; *see also Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988)*. Therefore, courts do "not have subject matter jurisdiction [*19] over infringement occurring outside of the United States." *Levitin v. Sony Music Entm't, 101 F. Supp. 3d 376, 384 (S.D.N.Y. 2015)*; *see also Lotus Onda Indus. Co., No. 02-cv-1151 (CBM), 2003 U.S. Dist. LEXIS 68, 2003 WL 42001, at \*5 (S.D.N.Y. Jan. 6, 2003)* ("Infringing acts which take place entirely outside of the United States are not actionable under United States copyright laws.").[5] Accordingly, because the Court lacks jurisdiction over Defendants' alleged infringement abroad, the Court grants Defendants' motion to dismiss Count Two.

### 3. Plaintiff Has Failed to Plead Ownership in the Sound Recording

---

[5] While courts have recognized a narrow exception to this general rule — "[w]here an individual commits an act of infringement in the United States that permits further reproduction outside the United States[,] such as when an individual makes unauthorized copies of copyrighted material and then sends them out of the country," *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., No. 96-cv-1103 (MBM), 1996 U.S. Dist. LEXIS 18653, 1996 WL 724734, at \*4 (S.D.N.Y. Dec. 17, 1996)* — this exception is not applicable to the instant case.

In Count Three, Plaintiff alleges that he "is and at all relevant times has been the copyright owner" of the digital performance rights in the Sound Recording and that Defendants infringed on those rights through their public digital performance of the Sound Recording. (FAC ¶¶ 15, 55-57.) The right to digitally [*20] perform a sound recording is one of six exclusive rights afforded to copyright holders of a sound recording. See 17 U.S.C. § 106(6). As a result, failure to plausibly allege ownership in the Sound Recording would warrant dismissal of Count Three in its entirety. Here, the Court finds that Plaintiff has failed to allege ownership in the Sound Recording because, through the 2008 Settlement Agreement, he transferred (i) his copyright in the Sound Recording, including the digital performance rights, and (ii) any causes of action that accrued prior to the Settlement Agreement.

Here, as previously discussed, Curtom registered a copyright for the sound recording of "Can't Say Enough" on January 18, 1974, thereby establishing the rebuttable presumption that it is the copyright owner of the Sound Recording. (Hutson Decl., Ex. 2 (listing Curtom as the copyright claimant).) Plaintiff alleges that, in March 1989, Curtom transferred back to Plaintiff "ownership of all of his master sound recordings along with all rights, title and interest." (Hutson Decl., Ex. 3 ("1989 Curtom Transfer"); see also FAC ¶ 17.) Additionally, Plaintiff alleges that, on August 14, 2007, he "filed his renewal registration" in the Sound [*21] Recording. (FAC ¶ 17.)

In October 2007, Plaintiff filed a lawsuit against Rhino, Warner Records, and ten John Doe defendants for their alleged copyright infringement of the musical compositions and sound recordings in several of Plaintiff's albums, including *The Man*. (*See Leroy Hutson, an individual doing business as Silent Giant Publ'g Co. v. Rhino Entm't Co. et al.*, 07- cv-7024, Doc. No. 1 (C.D. Cal.).) In December 2008, Plaintiff entered into the Settlement Agreement with Rhino and Warner Records in order to resolve "any past or present or future controversies that have arisen or may arise concerning" the sound recordings as to which there was a dispute in ownership, including the Sound Recording of "Can't Say Enough." (Settlement Agreement at 1.) The Settlement Agreement acknowledged that Rhino "owns all right, title, and interest" to the sound recordings described in the agreement, including "all the master sound recordings over which [Plaintiff] claimed to have obtained ownership pursuant to" the 1989 Curtom Transfer. (Settlement Agreement § 3.) It further provided that, "[t]o the extent that [Plaintiff] owns any right, title, or interest" in the sound recordings, Plaintiff assigned the [*22] interest in those sound recordings to Rhino. (Settlement Agreement § 3.)

By its very terms, the Settlement Agreement provides that Plaintiff was not the copyright owner of the Sound Recording after 2008. As a result, Plaintiff lacks standing to sue for any claims of infringement on the Sound Recording that occurred after that date. See 17 U.S.C. § 501(b). In addition, Plaintiff's claim that the "digital performance rights were not transferred" through the Settlement Agreement (FAC ¶ 23) is directly contradicted by the Settlement Agreement itself, which does not exclude the digital performance right from the clause that states that Rhino "owns *all* right, title, and interest in the copyright to the" Sound Recording. (Settlement Agreement § 3 (emphasis added).) In light of this clear language, the Court is not obligated to accept Plaintiff's contradictory allegations as true. *See Fisk, 401 F. Supp. 2d at 368.* Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for copyright infringement of the digital performance right in the Sound Recording from 2008 to the present.

The Court also grants Defendant WMG's motion to dismiss Count Three for claims accruing before 2008. The Settlement Agreement "forever release[d] and discharge[d]" Rhino [*23] and its parent — here, WMG — from "any and all claims . . . and causes of action, whether past, present or future . . . at law or in equity, arising out of or related to any acts or omissions occurring prior to the execution of this Agreement." (Settlement Agreement § 5(a).) Since Plaintiff's claims against WMG clearly fall under the broad language of the Settlement Agreement, Plaintiff may not now renew claims that were settled in 2008.

With respect to pre-2008 claims against the remaining seven Defendants, the Court must consider whether the Settlement Agreement "expressly" transferred accrued causes of action to Rhino, thereby depriving Plaintiff of standing to proceed on the claims in Count Three. See ABKCO Music, 944 F.2d at 980. Exhibit 1 of the Settlement Agreement provided that Plaintiff transferred his "entire right, title, and interest in . . . *any and all* rights to sue at law or in equity for any infringement, impairment or other unauthorized use" of the Sound Recording to Rhino. (Settlement Agreement, Ex. 1 (emphasis added).) Although ordinarily a transfer of copyright will be deemed to include accrued causes of action only if they are "expressly included in the assignment," ABKCO Music, 944 F.2d at 980, the transfer at issue here [*24] occurred in the context of a dispute concerning the ownership of "all the master sound recordings over which [Plaintiff] claimed to have obtained ownership pursuant to" the 1989 Curtom Transfer. (Settlement Agreement § 3.) By resolving that ownership dispute in Rhino's favor in a Settlement Agreement which sought to resolve "any past or present or future controversies that have arisen or may arise concerning" the Sound Recording (Settlement Agreement at 1), the Settlement Agreement clearly provided Rhino with the exclusive right to pursue causes of action for past infringement of the Sound Recording. To hold otherwise would render the Settlement Agreement meaningless, since it would leave past and present controversies unresolved, while inviting, rather than resolving, future controversies between Rhino and Plaintiff. See Hester v. Navigators Ins. Co., 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013) ("Courts must avoid interpretations that render contract provisions meaningless or superfluous." (internal quotation marks omitted)). Accordingly, the Court finds that Plaintiff lacks standing with respect to any accrued causes of action, and, therefore, grants the remaining seven Defendants' motion to dismiss Count Three as it pertains to any claims that accrued between [*25] 1994 and 2008.

C. Counts Four Through Six

In the First Amended Complaint, Plaintiff also seeks injunctive relief ("Count Four"), attorneys' fees ("Count Five"), and prejudgment interest ("Count Six") from Defendants. In reality, Counts Four through Six are remedies, not causes of action. See, e.g., Commercial Union Assurance Co. PLC v. Milken, 17 F.3d 608, 614 (2d Cir. 1994) (a request for prejudgment interest is an equitable remedy); Miller v. Wells Fargo Bank, N.A., 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) (a request for an injunction is a remedy); Mercer v. Mercer, No. 13-cv-4192 (SJF) (WDW), 2014 U.S. Dist. LEXIS 100214, 2014 WL 3652698, at *7 (E.D.N.Y. July 21, 2014) (a request for attorneys' fees is a remedy). As such, those Counts rise and fall with Plaintiff's copyright claims. Accordingly, the Court dismisses Counts Four through Six for the same reasons underlying the dismissals of Counts One through Three.

D. Defendant Osten Harvey, Jr.

As noted above, Defendant Harvey neither

filed a motion to dismiss nor joined the other Defendants' motion to dismiss. Nevertheless, a "district court has the power to dismiss a complaint sua sponte for failure to state a claim, so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994)*; *see also Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000)* ("Where, as here, two defendants have moved to dismiss the Amended Complaint in its entirety for failure to state a claim, and the plaintiff [*26] has responded in full, the plaintiff is on notice and the 12(b)(6) motion may be considered with regard to all [other] defendants for all claims briefed."). Accordingly, the Court dismisses the claims against Defendant Harvey for the same reasons that the claims are dismissed against the rest of the Defendants.

E. Leave to Amend

*Rule 15(a) of the Federal Rules of Civil Procedure* provides that leave to amend "shall be freely given when justice so requires." *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)*. Nevertheless, "it is within the sound discretion of the [court] to grant or deny leave to amend." *Id.* As an initial matter, "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." *Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006)*; *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)* ("[T]he permissive standard of *Rule 15* is consistent with our strong preference for resolving disputes on the merits." (citation and internal quotation marks omitted)). However, a court may deny leave to amend based on undue delay, bad faith, and dilatory motive of the plaintiff, or where "amendment would be futile." *Loreley, 797 F.3d at 190*. Moreover, a district court is under "no obligation" to grant leave to amend when the plaintiff offers no indication as to "what [he] might add to [his] complaint in order to [*27] make it viable." *Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004)*; *see also Shemian v. Research in Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014)* (same); *Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 275-76 (2d Cir. 2006)* (denying leave to amend where plaintiff failed to "indicate[] to the district court how the complaint might be amended to cure its deficiencies").

Here, Plaintiff made only a cursory request for leave to amend in his Opposition, without including a proposed amended complaint or any explanation of the facts that would cure the First Amended Complaint's deficiencies. (*See* Opp'n at 1.) Accordingly, the Court denies Plaintiffs request for leave to amend because he gives "no clue as to how the complaint's defects would be cured." *Loreley, 797 F.3d at 190* (internal quotation marks omitted).

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. IT IS FURTHER ORDERED THAT Plaintiffs request for leave to amend is DENIED. The Clerk of the Court is respectfully directed to terminate the motion located at docket number 36 and to close this case.

SO ORDERED.

/s/ Richard J. Sullivan

RICHARD J. SULLIVAN

United States District Judge

Dated: December 21, 2015

New York, New York

2015 U.S. Dist. LEXIS 170733, *27

**End of Document**