# EXHIBIT 91

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------x
JOSEPH H. SIMON,                        :
                 Plaintiff,             :
                                        :    Index No.
          v.                            :    14632/1967
MARTIN GOODMAN et al,                   :
                                        :    BILL OF PARTICULARS
                 Defendants.            :
---------------------x

SIR:

      Defendants, for their Bill of Particulars pursuant to plaintiff's Demand dated March 2, 1967, as modified by the Court Order dated October 23, 1967, state as set forth in the below-numbered paragraphs, in the case of each paragraph the statement being made with respect to the claim statement set forth by the defendants pursuant to C.P.L.R. R 3014 to which the correspondingly numbered paragraph of the Demand apparently relates:

    1. The names and identities of the individuals, companies, or corporations under which defendants Martin Goodman and Jean Goodman (hereinafter referred to as the "Goodmans") were operating when they first published the work "Captain America", this work being understood to be that more particularly identified as "Captain America Comics, Volume 2, No. 1, Copyright Registration No. B 480415", on Schedule 1 of the information supplied to counsel for the plaintiff with the letter from defendants' counsel of June 12, 1967, are:

        Abraham Goodman
        Jean Goodman
        Martin Goodman

Marvel 001396

2021MARVEL-0056396

       Manvis Publications, Inc.
       Newsstand Publications, Inc.
       Postal Publications, Inc.
       Timely Publications
       Universal Crime Stories, Inc.
       Western Fiction Publishing Company, Inc.
       Zest Publishing Co.

If the names and identities of any other such individuals, companies or corporations are uncovered, they will be supplied.

  2. The aforesaid work "Captain America" was acquired by being drawn and written by and for the Goodmans. Copyright in the literary property of this work was secured by the original publisher thereof by publication thereof with the notice of copyright required by Title 17, United States Code, on December 20, 1940, pursuant to 17 U.S.C. §10. The owner of this copyright to the literary property of this work is Timely Comics, Inc. The steps by which the acquisition was made were the discussion between and among the Goodmans and those who were working for them about new comic material and the stories and characters to be created, and the writing, layout, penciling and shading, editing, lettering, inking and coloring, all of which went into the origination and creation of the new material. The following are the names of the people who were involved in working for the Goodmans during this period:

| | |
|---|---|
| Alfred Avison | Harold Douglas |
| Otto Bender | Natalie Eley |
| Michael Berman | Robert O. Erisman |
| Carl Burgos | William Everett |
| Martin Bursten | Elsie Feldstein |

Marvel 001397

2021MARVEL-0056397

| | |
|---|---|
| Howard Ferguson | Beatrice Levine |
| Sylvia Fiegen | Robert Levy |
| Elaine Goldsmith | Stan Lee |
| L. Gladstone | Fernando Martiney |
| Abraham Goodman | Edith Marer |
| Arthur Goodman | M. O'Bierne |
| David Goodman | Elsie Richfield |
| Martin Goodman | Edith Schwartzman |
| Paul Gustafson | Michael A. Sekowsky |
| Edward Herron | Sydney Shores |
| Hilda Jorgensen | Joseph Simon |
| William King | Robert Solomon |
| Jack Kirby | Ethel Sundberg |
| George Klein | Benjamin Thompson |
| Joseph A. Kugelmass | Frank Torpie |
| Al Lederman | Arthur Weiss |

The places of work were the offices of the Goodmans at 330 West 42nd Street and at the then homes of the persons just named. If the names of other such people are uncovered, they will be supplied.

3. [Struck out in its entirety by the Court.]

4. [Struck out in its entirety by the Court.]

5. The basis for the Goodmans' claim that "Captain America", this being understood to be the character as shown and so identified in the aforesaid work, was created for and on their behalf or on behalf of their predecessors is that it was created at the suggestion and upon the request of the Goodmans, that it was created to their specifications and requirements

Marvel 001398

2021MARVEL-0056398

for a "long underwear" or superhero type of character and so as to be suitable for their comic magazine titled and known as "Captain America Comics", and more particularly, Volume 2, No. 1, thereof, that it was created under and subject to their general supervision and direction, and that the individuals who participated in the writing, layout, penciling and shading, editing, lettering, inking and coloring of all of the characters appearing in the "Captain America" comic strip episodes, including the character identified as "Captain America", were paid to do so by the Goodmans.

6. [Struck out in its entirety by the Court.]

7. The general facts upon which the Goodmans base their claim that the plaintiff was an employee of Marvel during the period are that he worked for them as a compiler and editor, and also for them as an illustrator and writer of new material and in various other capacities as he was assigned by them, that he worked under their general supervision and direction in the performance of his duties, that he was accountable to them for his work, that he was provided office facilities and supplies, and that he was paid by them for his work. It is not presently known whether the employment was under an express oral or written contract or under an implied contract. So far no copy of the contract has been found despite a search for it. The contract was between the Goodmans and Joseph H. Simon, and it provided that Simon was to work for the Goodmans as they requested, fulfilling his obligations under their general supervision and direction, and that the Goodmans were to pay Simon a specified remuneration for his work.

Marvel 001399

2021MARVEL-0056399

8.  The precise date upon which the plaintiff first commenced his employment with Marvel is not presently known, and unless information should be uncovered which indicates the contrary, the plaintiff's testimony to the effect that he first worked directly for Martin Goodman in 1938, although it is possible that it could have been 1937, is accepted. The employment agreement with Marvel required the plaintiff's services and the required services were exclusively for the Goodmans. The agreement did not preclude other services for others. The plaintiff's services with respect to "Captain America" were exclusively for the Goodmans and he did other work for the Goodmans.

9.  [Struck out in its entirety by the Court.]

10. The precise date upon which the plaintiff left the Goodmans is not known, but pending the discovery of additional information, it is believed to be about the winter of 1941-1942, when it is believed that Simon resigned from the Goodmans' employment to work for Detective Comics, Inc., a competitor.

11. This item requests particulars about the basis upon which the Goodmans alleged that the plaintiff consented to Marvel's obtaining copyrights with respect to the "Captain America" material. The defendants have not so alleged. As it happens, the plaintiff did consent to and acquiesce to Marvel's obtaining the copyrights as is apparent from the fact that as an editor and in the performance of his duties for the Goodmans, plaintiff had full knowledge of the fact that the "Captain America" material was being published with

the Goodmans' claim of copyright and notice thereof and by the fact that having such knowledge the plaintiff continued to work for the Goodmans to help in the origination and creation of new material to be published under the "Captain America" name and copyrighted by the Goodmans as the authors and proprietors thereof, and also by the fact of the plaintiff's acquiescence by silence in the copyrighting of this material by the Goodmans for more than a quarter of a century.

12. The manner by which Marvel and the Goodmans have openly, notoriously, and adversely to the alleged ownership rights now asserted by the plaintiff asserted their own right, title, and interest in and to the "Captain America" material is by the publication and licensing of this material, as set forth in the Schedules 1 supplied to counsel for the plaintiff by letter of June 12, 1967, and by the advertising, promotion, and circulation of the material so published and licensed, and by the public solicitation of advertising from others to be placed in their "Captain America" publication, and by their public offering of "Captain America" material for sale and for license, these acts taking place in each and every year of the alleged period.

13. The acts alleged in Paragraph 39th of the defendants' Answer and Counterclaim were committed during the period from spring of 1965 to and including November 8, 1966.

14. The substance of the statements which were made falsely by the plaintiff as alleged in Paragraph 39th of the Answer and Counterclaim is that:

Marvel 001401

2021MARVEL-0056401

(a) He employed Jack Kirby to put the "Captain America" book together (Captain America Comics, Volume 2, Nos. 1-10), that he paid Jack Kirby personally and that he had canceled checks to prove it.

(b) The bound "Captain America" book which Jack Kirby ahd given to his wife in commemoration of his work during the time when they first met and which he had loaned to counsel for the defendants so that it could be used for reference at an examination of the plaintiff, was being messed up, and that the lawyers were writing notes and scribbling all over the pages of the books and initialing the individual drawings, so much so that the book (which has a considerable market, as well as sentimental, value) would be worthless.

(c) Counsel for the defendants had offered the plaintiff $30,000 to settle the case and instructed the plaintiff and his counsel not to tell Jack Kirby or any of the other artists of the Marvel Comics Group anything about the settlement, and to keep it secret from them.

15. The method and substance by which the plaintiff has attempted to interfere with the relationship between the Goodmans and their employees is by trying to induce the employees to leave the Goodmans and by misrepresentation of facts concerning the Goodmans to them.

16. and 17. The acts alleged in the Paragraph 40th of the Answer and Counterclaim by which plaintiff has attempted to interfere with the relationship between the Goodmans and their artists and employees were oral. Joseph Simon and Jack Kirby, and also Harriet Simon and Rosalind Kirby, were involved

Marvel 001402

2021MARVEL-0056402

in the conversations which took place over the telephone during the period from spring 1965 to November 8, 1966. Joe Simon called frequently with repeated suggestions that Jack Kirby quit Marvel and accept a proposed employment or venture with the plaintiff or with persons on whose behalf he was acting. Joseph and Harriet Simon called on November 8, 1966, proposing another publishing venture with the plaintiff, and making the false statements as set forth in Paragraph 14, supra.

18. The Goodmans and their predecessors used and advertised the name "Captain America" at least as early as December 18, 1940.

19. The Goodmans and their predecessors have used and advertised the name "Captain America" and the character "Captain America" to identify their comic material and as their trademark. The first registration for the "Captain America" trademark was issued by the United States Patent Office to Timely Comics, Inc., on February 17, 1942.

20. The acts which the defendants will, as presently advised, allege that the plaintiff committed in clouding the Goodmans' title to the "Captain America" trademark and copyright properties are the initiation of false statements, representations and rumors to present and potential licensees, and initiating threats of litigation against such licensees, both orally and in writing.

Many of the demands for particulars about the defendants' defenses to the claims now for the first time being made by the

Marvel 001403

2021MARVEL-0056403

20b

the plaintiff relate to a period before World War II, more than twenty-five years ago. Since no claim or protest was made by the plaintiff or anyone else with respect to this part of the Goodmans' ordinary business for more than a quarter of a century, it will be appreciated that many of the records that would have been available to the defendants had the plaintiff not delayed so long in making his claim are now apparently lost. The foregoing particulars are given to the best of the defendants' present information and belief, and if the defendants uncover further such information and particulars, they will supplement the present Bill.

New York, New York  
Dated: November 13, 1967

KENYON & KENYON

*Carl P Brainard*

59 Maiden Lane  
New York, New York 10038

Attorneys for Defendants

TO: FRIEND & REISKIND  
375 Park Avenue  
New York, New York

Attorneys for Plaintiff

Marvel 001404

2021MARVEL-0056404

203

VERIFICATION

STATE OF NEW YORK   )
                    :  ss.
COUNTY OF NEW YORK  )

    MARTIN GOODMAN, being first duly sworn, deposes and says that he is a defendant in the above-entitled action, that he has read the foregoing Bill of Particulars, and that to the best of his present information, he believes it to be true.

                                                           *Martin Goodman*
                                                            Martin Goodman

    Subscribed and sworn to before me this 14th day of November, 1967.

                                                            *Doris Siegler*
                                                            Notary Public

                                                        DORIS SIEGLER
                                     Notary Public, State of New York
                                            No. 24-8990900
                                       Qualified in Kings County
                                   Certificate filed in New York County
                                   Commission Expires March 30 1969

Marvel 001405

2021MARVEL-0056405