# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>                  Plaintiff,<br><br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>Defendant. | Case No.: 1:21-cv-7957-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**MARVEL CHARACTERS, INC.'S EVIDENTIARY OBJECTIONS TO EVIDENCE OFFERED IN SUPPORT OF PATRICK S. DITKO'S MOTION FOR SUMMARY JUDGMENT** |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>                  Counterclaimant,<br><br>v.<br><br>MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,<br><br>Counterclaim-Defendants. | |

Plaintiff Marvel Characters, Inc. ("MCI") respectfully submits the following Evidentiary Objections to evidence offered in support of Defendant Patrick S. Ditko's ("Defendant") Motion for Summary Judgment.

| Material Objected To: | Grounds for Objection: |
|---|---|
| 1. Toberoff Decl. Ex. 1 (Evanier Expert Report)<br><br>(Entire Exhibit) | • <u>Improper Expert Opinions</u>. *See* Dkt. 77 (MCI's Motion to Exclude Mark Evanier). |
| 2. Toberoff Decl. Ex. 2 (January 7, 2011 Deposition of Larry Lieber)<br><br>(Pages 71:17-74:5) | • <u>Inadmissible Legal Conclusion</u>. Larry Lieber's testimony that there was no "contract" between him and Marvel, that Marvel had no "obligation" to purchase his work, and that Marvel "purchased" his work constitute inadmissible (incorrect) legal conclusions. *See In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *cf. Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("[T]he fact that there was no written contract does not, as a matter of law, mean there was no contractual relationship. 'We agree that, if you draw a picture, I will pay you' creates a contract, whether the agreement is reduced to writing or not. The issue, however, is of no moment, since no written contract is needed to satisfy the 'instance' prong of the instance and expense test."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401).  Mr. Lieber's testimony that Marvel "purchased" his freelance work, that he had no "contract" with Marvel, and that Marvel was not "obligated" to purchase his work is irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("A hiring party's ability to supervise and edit an artist's work does not need to be based on terms set out in a written contract."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 3.   Toberoff Decl. Ex. 2 (January 7, 2011 Deposition of Larry Lieber)<br><br>     (Page 100:3-101:9) | • <u>Best Evidence Rule</u> (Fed. R. Evid. 1002).  Because Mr. Lieber's testimony concerns the alleged content of the alleged check legends, the best evidence rule applies.  *See* Fed. R. Evid. 1002 ("An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise.").  Apart from seeking them from MCI in this case, neither Mr. Lieber nor Defendant established that they made *any* reasonably diligent effort to locate checks from Marvel during the relevant period.  *See Estee Lauder Int'l, Inc. v. World Wide Marine Serv., Inc*., 1989 WL 126067, at *7 (S.D.N.Y. Oct. 13, 1989) ("Lauder has not demonstrated what steps, if any, it has taken to locate World Wide's files, or to identify persons formerly associated with World Wide who might be able to explain the Special Policy's whereabouts or describe the circumstances of its alleged issuance. Since the record does not establish that a 'diligent but unsuccessful search and inquiry' has been made, Lauder has not 'surmounted the initial hurdle with respect to proving the contents of a writing by the use of secondary evidence.'").  And Marvel has not had control over the bank accounts used by its predecessors in interest between 1962 and 1965 for over 50 years.  *See* Fed. R. Evid. 1004(c); *A.F.L. Falck, S.p.A. v. E.A. Karay Co*., 722 F. Supp. 12, 16 (S.D.N.Y. 1989) (explaining Rule 1004(c) exception applies only "if the proponent of the writing can show that the opponent had control over the document, that he demanded the document from the opponent and that the opponent has failed to produce the document").  Indeed, the 1968 asset purchase agreement pursuant to which Perfect Film and Chemical Company bought the Marvel Comics Group's assets specifically excluded all bank accounts.  *See* Bard Declaration ISO Marvel's Motion for Summary Judgment ("Bard Decl."), Ex. 10 at 16 ("It is understood that Sellers shall not transfer to Perfect as part of this transaction any cash, savings accounts, or c*hecking accounts*  . . . .") (emphasis added).  The best evidence rule therefore bars Defendant from using this testimony to establish the content of any check legends.<br><br>• <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  Mr. Lieber testified "I don't really know" when asked when legends first appeared on Marvel checks, *see* Toberoff Decl., Ex. 2 at 100:13-20, meaning any |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | testimony on this subject lacks foundation and amounts to speculation.<br><br>• <u>Inadmissible Legal Conclusion</u>. Mr. Lieber purported to explain the legal effect of alleged check legends, and thus his testimony constitutes an inadmissible (incorrect) legal conclusion.  *See In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) ("It is all too likely that, if the parties thought about it at all, Kirby's assignments at the time he was paid or later were redundancies insisted upon by Marvel to protect its rights; we decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt."). |
| 4.   Toberoff Decl. Ex. 2 (January 7, 2011 Deposition of Larry Lieber)<br><br>(Page 102:15-105:17) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  Mr. Lieber testified "I didn't know.  I didn't speak to him.  I assumed," when asked why Jack Kirby was upset and threw them in the trash, *see* Toberoff Decl., Ex. 2 at 45:19-20, meaning any suggestion by Mr. Lieber that Mr. Kirby was upset because Marvel "rejected" his pages lacks foundation and amounts to speculation.<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401).  Mr. Lieber's testimony about an instance in which Jack Kirby purportedly was upset, tore up pages, and threw them in the trash is irrelevant to the work-for-hire test.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 139-40 (2d Cir. 2013) (explaining the relevant principles of the instance-and-expense test). |
| 5.   Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita)<br><br>(Pages 44:22-46:12) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  Mr. Romita supplied no foundation for his testimony that Stan Lee and Steve Ditko "disagreed on almost everything."  Indeed, he testified "[he] didn't know that [Lee] and Ditko were at odds so extremely," confirming that he lacks foundation and/or is speculating. *See* Toberoff Decl., Ex. 3 at 105:7-14. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | • <u>Irrelevant</u> (Fed. R. Evid. 401). Mr. Romita's testimony about the reason(s) why Lee and Ditko purportedly were at odds is irrelevant to the work-for-hire test. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 139-40 (2d Cir. 2013) (explaining the relevant principles of the instance-and-expense test). Mr. Romita also admitted in his deposition that he did not do any work for Marvel from 1958 at least July 1965. *See* Toberoff Decl., Ex. 3 210:9-25. The fact that Mr. Romita did not work for Marvel from 1962 to 1965 further underscores the irrelevance of this testimony. *See* Toberoff Decl., Ex. 3 at 219:6-10.<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify John Romita as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). The Court should therefore exclude this evidence under Rule 37. *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions).<br><br>• <u>Hearsay (Fed. R. Evid. 802).</u> Mr. Romita's testimony that Stan Lee and Steve Ditko "disagreed on almost everything" appears to be premised on hearsay (if it has any foundation at all). |
| 6.   Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita)<br><br>(Pages 112:7-113:7) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701). Mr. Romita testified that he only "knew" that Jack Kirby originally drew ten pages of Spider-Man "by rumor and by second- and third-hand information." Any testimony on this subject lacks foundation and amounts to speculation. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | • <u>Hearsay</u> (Fed. R. Evid. 802). Mr. Romita admits that that he only knew about the original Jack Kirby pages "by rumor and by second- and third-hand information." Thus, his testimony on this subject necessarily results from hearsay.<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify John Romita as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 7.   Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita)<br><br>(Pages 219:12-24) | • <u>Irrelevant</u> (Fed. R. Evid. 401).  Mr. Romita testified that he did not do any work for Marvel from 1958 to at least July 1965.  *See* Toberoff Decl., Ex. 3 210:9-25.  Accordingly, Mr. Romita's testimony that he would not accept assignments from Marvel during that 1958 to 1965 period—when he was steadily working at DC Comics, and performing no work for Marvel—is irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything").<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify John Romita as a potential |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 8.    Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita)  (Pages 246:5-9) | • Irrelevant (Fed. R. Evid. 401).  Mr. Romita's testimony that he was not paid for making corrections to work submitted by other Marvel freelancers is irrelevant to the work-for-hire test.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 139-40 (2d Cir. 2013) (explaining the relevant principles of the instance-and-expense test).  Mr. Romita did not testify that he ever made corrections to Steve Ditko's work.  Indeed, Mr. Romita also testified that he did not do any work for Marvel from 1958 to at least July 1965—after Ditko had already contributed to all or essentially all of the works listed in Defendant's termination notices (the "Works").  *See* Toberoff Decl., Ex. 3 210:9-25.  The fact that Mr. Romita did not work for Marvel from 1962 to 1965 further underscores the irrelevance of this testimony.  *See* Toberoff Decl., Ex. 3 at 219:6-10.  • Undisclosed Witness (Fed. R. Civ. P. 26 & 37).  Defendant did not identify John Romita as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 9.  Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita) <br><br> (Pages 159:24-160:4, 194:11-13, 211:7-212:3) | • <u>Inadmissible Legal Conclusion</u>. Mr. Romita's testimony that there was no "contract" between him and Marvel constitutes an inadmissible (incorrect) legal conclusion.  *See In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *cf. Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("[T]he fact that there was no written contract does not, as a matter of law, mean there was no contractual relationship. 'We agree that, if you draw a picture, I will pay you' creates a contract, whether the agreement is reduced to writing or not. The issue, however, is of no moment, since no written contract is needed to satisfy the 'instance' prong of the instance and expense test."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013). <br><br> • <u>Irrelevant (Fed. R. Evid. 401)</u>.  Mr. Romita's testimony that there was no written contract between him and Marvel is irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) ("A hiring party's ability to supervise and edit an artist's work does not need to be based on terms set out in a written contract.").  Mr. Romita also admitted in his deposition that he did not do any work for Marvel from 1958 at least July 1965.  *See* Toberoff Decl., Ex. 3 210:9-25.  The fact that Mr. Romita did not work for Marvel |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | from 1962 to 1965 further underscores the irrelevance of this testimony.  *See* Toberoff Decl., Ex. 3 at 219:6-10.<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37).  Defendant did not identify John Romita as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto.  That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 10.   Toberoff Decl. Ex. 3 (October 21, 2010 Deposition of John Romita)<br><br>(Pages 226:8-227:3) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602).  Mr. Romita's testimony that Cadence "decided to nail down all the suckers before they could jump ship or something" and that they "would take advantage of us and bleed us and then leave us" improperly concerns Cadence's (a predecessor in interest to MCI) state of mind—a subject about which Mr. Romita has no personal knowledge or other foundation to discuss.  Nor did Mr. Romita provide any basis for believing that his testimony concerns "nail[ing] down … rights to the works," as Defendant inaccurately claims in his Rule 56.1 statement.<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401).  Because Mr. Romita's testimony did not concern "rights to works," as Defendant inaccurately suggests in his Rule 56.1 statement, but rather concerned vague employment practices, it is irrelevant to the work-for-hire test. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | • <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify John Romita as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 11. Toberoff Decl. Ex. 8 (March 21, 2011 Declaration of Joe Sinnott)  (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). Joe Sinnott passed away in 2011, meaning that his declaration does not satisfy Rule 56(c)(4). *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment."). All the more so here, where the declaration lacks significant factual detail, was prepared by Defendant's counsel for purposes of opposing summary judgment in the *Kirby* lawsuit, and the declarant was not subject to deposition examination— unlike Stan Lee's affidavit from *Kirby*, which was executed years before he was deposed (twice) in that case. *Gem Fin. Serv., Inc. v. City of New York*, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022) (refusing to consider affidavit of deceased witness in part because it appeared to be a "litigation document manufactured to argue against an opposing party's dispositive motion and |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | to shore up potential weaknesses in extensive deposition testimony"). In addition, no exceptions to the hearsay rule apply. |
| | • Irrelevant (Fed. R. Evid. 401). As Judge McMahon previously ruled with respect to claims brought by the heirs of Jack Kirby, another Marvel freelance artist like Steve Ditko, Mr. Sinnott's declaration contains no evidence creating a material dispute under the work-for-hire test. *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 739 (S.D.N.Y. 2011) (holding Sinnott, Steranko, and Ayers "declarations do not create an issue of fact … because [they] stated that payment for their work was contingent on approval of the work by Marvel's editor, … [and] none discusses whether their work was revised after submission but prior to publication"), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013). |
| | • Undisclosed Witness (Fed. R. Civ. P. 26 & 37). Defendant did not identify Joe Sinnott as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures,, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). The Court should therefore exclude this evidence under Rule 37. *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 12. Toberoff Decl. Ex. 9 (March 24, 2011 Declaration of Jim Steranko)<br><br>(Entire Exhibit) | • <u>Irrelevant</u> (Fed. R. Evid. 401).  As Judge McMahon previously ruled with respect to claims brought by the heirs of Jack Kirby, another Marvel freelance artist like Steve Ditko, Mr. Steranko's declaration contains no evidence creating a material dispute under the work-for-hire test.  *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 739 (S.D.N.Y. 2011) (holding Sinnott, Steranko, and Ayers "declarations do not create an issue of fact … because [they] stated that payment for their work was contingent on approval of the work by Marvel's editor, … [and] none discusses whether their work was revised after submission but prior to publication"), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).<br><br>• <u>Contradictory Testimony</u>.  Mr. Steranko stated in his declaration that Marvel "purchased" his work, that his Marvel checks did not contain a "work for hire" legend, and that he did not understand himself to have worked for Marvel on a work-for-hire basis, but he said *precisely the opposite* when he was hired by Defendant's counsel to offer expert opinions for the heirs of Superman artist Joe Schuster in *Siegel v. Time Warner Inc.*, Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).  Specifically, Mr. Steranko testified under oath in *Siegel*:  "When I worked at Marvel, I was on a work for hire basis. They provided me with description of the character. Sometimes they gave me pencil breakdowns to work from. Occasionally they would give me, especially in the beginning, treatment, synopsis of the material that they were looking for. There was supervision, particularly in the early part of my tour at Marvel. And finally that paycheck that was stamped work for hire."  *See* Lens Opp. Decl., Ex. 89 (Steranko *Siegel* Depo.) at 82:3-23. Because Mr. Steranko's sworn testimony here is "inescapably and unequivocally" inconsistent with his testimony in *Siegel*, the Court should disregard it entirely.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (district court properly disregarded deposition testimony that was "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | deposition); *see also Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) ("[A] party opposing summary judgment does not create a triable issue" by generating testimony that contradicts "previously sworn statements."). |
| 13. Toberoff Decl. Ex. 10 (March 25, 2011 Declaration of Richard Ayers) <br><br> (Entire Exhibit) | ● <u>Hearsay</u> (Fed. R. Evid. 802). Richard Ayers passed away in 2014, meaning that his declaration does not satisfy Rule 56(c)(4).  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment.").  All the more so here, where the declaration lacks significant factual detail, was prepared by Defendant's counsel for purposes of opposing summary judgment in the *Kirby* lawsuit, and the declarant was not subject to deposition examination— unlike Stan Lee's affidavit from *Kirby*, which was executed years before he was deposed (twice) in that case.  *Gem Fin. Serv., Inc. v. City of New York*, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022) (refusing to consider affidavit of deceased witness in part because it appeared to be a "litigation document manufactured to argue against an opposing party's dispositive motion and to shore up potential weaknesses in extensive deposition testimony").  In addition, no exceptions to the hearsay rule apply. <br><br> ● <u>Irrelevant</u> (Fed. R. Evid. 401).  As Judge McMahon previously ruled with respect to claims brought by the heirs of Jack Kirby, another Marvel freelance artist like Steve Ditko, Mr. Ayer's declaration contains no evidence creating a material dispute under the work-for-hire test. *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 739 (S.D.N.Y. 2011) (holding Sinnott, Steranko, and Ayers "declarations do not create an issue of fact … because [they] stated that payment for their work was contingent on approval of the work by Marvel's editor, … [and] none discusses whether their work was revised |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | after submission but prior to publication"), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify Richard Ayers as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37. *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 14.  Toberoff Decl. Ex. 11 (March 22, 2011 Declaration of Gene Colan)<br><br>(Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). Gene Colan passed away in 2011, meaning that his declaration does not satisfy Rule 56(c)(4).  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment.").  All the more so here, where the declaration lacks significant factual detail, was prepared by Defendant's counsel for purposes of opposing summary judgment in the *Kirby* lawsuit, and the declarant was not subject to deposition examination—unlike Stan Lee's affidavit from *Kirby*, which was executed years before he was deposed (twice) in that |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | case. *Gem Fin. Serv., Inc. v. City of New York*, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022) (refusing to consider affidavit of deceased witness in part because it appeared to be a "litigation document manufactured to argue against an opposing party's dispositive motion and to shore up potential weaknesses in extensive deposition testimony"). In addition, no exceptions to the hearsay rule apply.<br><br>• Irrelevant (Fed. R. Evid. 401). Mr. Colan's declaration contains no evidence relevant to whether Steve Ditko's contributions to the Works were done on a work-for-hire basis. *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 739 (S.D.N.Y. 2011) (holding similar "declarations [did] not create an issue of fact … because [they] stated that payment for their work was contingent on approval of the work by Marvel's editor, … [and] none discusses whether their work was revised after submission but prior to publication"), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).<br><br>• Undisclosed Witness (Fed. R. Civ. P. 26 & 37). Defendant did not identify Gene Colan as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. That, however, is precisely what Rule 26 required him to do. *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"). The Court should therefore exclude this evidence under Rule 37. *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 15.  Toberoff Decl. Ex. 12 (March 25, 2011 Expert Report of Mark Evanier)<br><br>(Entire Exhibit) | • <u>Improper Expert Opinions</u>.  Judge McMahon excluded this very expert report in litigation involving the Jack Kirby heirs, and the Second Circuit affirmed—the same result should apply here.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 730 (S.D.N.Y. 2011), *aff'd in relevant part*, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013); *see also* Dkt. 77 (MCI's Motion to Exclude Mark Evanier).<br><br>• <u>Undisclosed Opinions</u>.  In the instances where Mr. Evener's opinions in the *Kirby* case exceed the scope of his opinions in this case, those opinions should be excluded under Rule 37. |
| 16.  Toberoff Decl. Ex. 13 (March 24, 2010 Declaration of Neal Adams)<br><br>(Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). Neal Adams passed away in 2022, meaning that his declaration does not satisfy Rule 56(c)(4).  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment.").  All the more so here, where the declaration lacks significant factual detail, was prepared by Defendant's counsel for purposes of opposing summary judgment in the *Kirby* lawsuit, and the declarant was not subject to deposition examination—unlike Stan Lee's affidavit from *Kirby*, which was executed years before he was deposed (twice) in that case.  *Gem Fin. Serv., Inc. v. City of New York*, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022) (refusing to consider affidavit of deceased witness in part because it appeared to be a "litigation document manufactured to argue against an opposing party's dispositive motion and to shore up potential weaknesses in extensive deposition testimony").  In addition, no exceptions to the hearsay rule apply.<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401).  Mr. Adams' declaration concerns his own work for Marvel, which began in 1969—4 years or more after the Works were published. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | It has no bearing on Steve Ditko's earlier working relationship with Marvel. |
| 17.   Toberoff Decl. Ex. 14 (Rebuttal Expert Report of Mark Evanier)<br><br>(Entire Exhibit) | • Improper Expert Opinions. *See* Dkt. 77 (MCI's Motion to Exclude Mark Evanier). |
| 18.   Toberoff Decl. Ex. 16 (October 28, 2022 Deposition of Nanci Solo)<br><br>(Entire Exhibit) | • Lacks Foundation / Speculation (Fed. R. Evid. 602). Nanci Solo testified that Marvel frequently rejected her father Gene Colan's work.  However, while she had "heard th[e] name" Steve Ditko, she otherwise did not know anything about him.  *See* Lens Opp. Decl., Ex. 85 (Solo Depo.) at 155:16-156:3.  Thus, she has no basis for offering any testimony about Steve Ditko's working relationship with Marvel.  Regardless, Ms. Solo supplied no foundation for her belief that her father Gene Colan's work was frequently rejected by Marvel during the relevant time period.  She was a one-year-old baby in 1965 when the last of the Works were published, and was not alive when most Works were published.  At that age, she could not have formed a contemporaneous understanding of the nature of her father's working relationship with Marvel—let alone Steve Ditko's.<br><br>• Irrelevant (Fed. R. Evid. 401).  To the extent Ms. Solo's testimony relates to a period in the late 1960s or 1970s—when she might have been old enough to have an understanding of her father's working relationship with Marvel—her testimony is specific to her father and has no bearing on Steve Ditko's working relationship with Marvel.<br><br>• Hearsay (Fed. R. Evid. 802). To the extent Ms. Solo claims she heard her father Gene Colan say that Marvel rejected his pages, such testimony is inadmissible hearsay.<br><br>• Undisclosed Witness (Fed. R. Civ. P. 26 & 37). Defendant did not identify Nanci Solo as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 19. Toberoff Decl. Ex. 20 (March 3, 2023 Deposition of Mark Evanier)<br><br>(Entire Exhibit) | • Improper Expert Opinions.  *See* Dkt. 77 (MCI's Motion to Exclude Mark Evanier).<br><br>• Hearsay (Fed. R. Evid. 802). Mr. Evanier admits that he met Martin Goodman only once, and that Mr. Goodman never shared his views on the value of Marvel properties with him.  Thus, his testimony necessarily results from hearsay.<br><br>• Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701).  Mr. Evanier's testimony does not establish that he or any of the other hearsay declarants he allegedly spoke to had personal knowledge of Mr. Goodman's views on the value of Marvel properties.<br><br>• Irrelevant (Fed. R. Evid. 401).  Mr. Evanier's understanding—through hearsay—about Mr. Goodman's alleged views on the value of Marvel properties has no bearing on the work-for-hire analysis. |
| 20. Toberoff Decl. Ex. 21 (February 10, 2023 Deposition of James Steranko)<br><br>(Pages 29:9-30:17) | • Irrelevant (Fed. R. Evid. 401).  James Steranko began working at Marvel in 1965 or 1966, after (or, at most, just before) Steve Ditko quit. Lens Opp. Decl., Ex. 82 (Steranko Depo.) at 25:2-8.  Indeed, Mr. Steranko admitted that he did not work with or know Steve Ditko.  *Id*. at 26:21-24, 75:18-19.  And Mr. Steranko expressly distinguishes his experience from "many other  situations that Stan [Lee] had with other artists … where he often submitted information to them that he wanted material done."  Toberoff Decl. Ex. 21 at 30:5-9.  Thus, even |

| Material Objected To: | Grounds for Objection: |
|---|---|
|  | accepting this testimony (which as noted below, the Court should not do), Mr. Steranko's working relationship with Marvel is irrelevant to Steve Ditko's working relationship with Marvel and Stan Lee.<br><br>• Contradictory Testimony.  Mr. Steranko testified here that Stan Lee never gave him plots and that he did work "on spec" for Marvel, but he said *precisely the opposite* when he was hired by Defendant's counsel to offer expert opinions for the heirs of Superman artist Joe Schuster in S*iegel v. Time Warner Inc.*, Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).  Specifically, Mr. Steranko testified under oath in *Siegel*:  "When I worked at Marvel, I was on a work for hire basis. They provided me with description of the character. Sometimes they gave me pencil breakdowns to work from. Occasionally they would give me, especially in the beginning, treatment, synopsis of the material that they were looking for. There was supervision, particularly in the early part of my tour at Marvel. And finally that paycheck that was stamped work for hire."  *See* Lens Opp. Decl., Ex. 89 (Steranko *Siegel* Depo.) at 82:3-23.  Because Mr. Steranko's sworn testimony here is "inescapably and unequivocally" inconsistent with his testimony in Seigel, the Court should disregard it entirely.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (district court properly disregarded deposition testimony that was "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior deposition); *see also Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) ("[A] party opposing summary judgment does not create a triable issue" by generating testimony that contradicts "previously sworn statements."). |
| 21.  Toberoff Decl. Ex. 21 (February 10, 2023 Deposition of James Steranko)<br><br>(Pages 61:23-62:3, 91:11-93:19) | • Best Evidence Rule (Fed. R. Evid. 1002).  Because Mr. Steranko's testimony concerns the alleged content of alleged check legends, the best evidence rule applies.  *See* Fed. R. Evid. 1002 ("An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise.").  Apart from seeking them from MCI in this case, neither Mr. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Steranko nor Defendant established that they made *any* reasonably diligent effort to locate checks from Marvel during the relevant period.  *See Estee Lauder Int'l, Inc. v. World Wide Marine Serv., Inc.*, 1989 WL 126067, at *7 (S.D.N.Y. Oct. 13, 1989)  ("Lauder has not demonstrated what steps, if any, it has taken to locate World Wide's files, or to identify persons formerly associated with World Wide who might be able to explain the Special Policy's whereabouts or describe the circumstances of its alleged issuance. Since the record does not establish that a 'diligent but unsuccessful search and inquiry' has been made, Lauder has not 'surmounted the initial hurdle with respect to proving the contents of a writing by the use of secondary evidence.'").  And Marvel has not had control over the bank accounts used by its predecessors in interest between 1962 and 1965 for over 50 years. *See* Fed. R. Evid. 1004(c); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 722 F. Supp. 12, 16 (S.D.N.Y. 1989) (explaining Rule 1004(c) exception applies only "if the proponent of the writing can show that the opponent had control over the document, that he demanded the document from the opponent and that the opponent has failed to produce the document").  Indeed, the 1968 asset purchase agreement pursuant to which Perfect Film and Chemical Company bought the Marvel Comics Group's assets specifically excluded all bank accounts.  *See* Bard Decl., Ex. 10 at 16 ("It is understood that Sellers shall not transfer to Perfect as part of this transaction any cash, savings accounts, or c*hecking accounts*  . . . .") (emphasis added).  The best evidence rule therefore bars Defendant from using this testimony to establish the content of any check legends.<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401). Mr. Steranko began working at Marvel in 1965 or 1966, after (or, at most, just before) Steve Ditko quit.  Lens Opp. Decl., Ex. 82 (Steranko Depo.) at 25:2-8.  Thus, even accepting his recollection of what his checks said (which the Court should not do), his testimony says nothing about what, if anything, Steve Ditko's checks said.<br><br>• <u>Contradictory Testimony</u>.  Mr. Steranko testified here that Stan Lee never gave him plots and that he did work "on spec" for Marvel, but he said *precisely the opposite* when he was hired by Defendant's counsel to offer expert opinions for the heirs of Superman artist Joe |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Schuster in *Siegel v. Time Warner Inc.*, Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).  Specifically, Mr. Steranko testified under oath in *Siegel*:  "When I worked at Marvel, I was on a work for hire basis. They provided me with description of the character. Sometimes they gave me pencil breakdowns to work from. Occasionally they would give me, especially in the beginning, treatment, synopsis of the material that they were looking for. There was supervision, particularly in the early part of my tour at Marvel. And finally that paycheck that was stamped work for hire."  *See* Lens Oppo Decl., Ex. 89 (Steranko *Siegel* Depo.) at 82:3-23.  Because Mr. Steranko's sworn testimony here is "inescapably and unequivocally" inconsistent with his testimony in Seigel, the Court should disregard it entirely.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (district court properly disregarded deposition testimony that was "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior deposition); *see also Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) ("[A] party opposing summary judgment does not create a triable issue" by generating testimony that contradicts "previously sworn statements."). |
| 22.   Toberoff Decl. Ex. 21 (February 10, 2023 Deposition of James Steranko)  (Pages 63:10-64:17) | ● <u>Inadmissible Legal Conclusion</u>. Mr. Steranko testified that there was no "contract" or "agreement" between him and Marvel.  Such testimony constitutes an inadmissible (incorrect) legal conclusion.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *cf. Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("[T]he fact that there was no written contract does not, as a matter of law, mean there was no contractual relationship. 'We agree that, if you draw a picture, I will pay you' creates a contract, whether the agreement is reduced to writing or not. The issue, however, is of no moment, since no written contract is needed to satisfy the 'instance' prong of the instance and expense test."). |

| Material Objected To: | Grounds for Objection: |
|---|---|
|  | • <u>Irrelevant (Fed. R. Evid. 401)</u>. Mr. Steranko's testimony that he had no "contract" or "agreement" with Marvel, as well as his personal feelings about "bad business" practices are irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("A hiring party's ability to supervise and edit an artist's work does not need to be based on terms set out in a written contract."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).<br><br>• <u>Contradictory Testimony</u>.  Mr. Steranko testified here that Stan Lee never gave him plots and that he did work "on spec" for Marvel, but he said *precisely the opposite* when he was hired by Defendant's counsel to offer expert opinions for the heirs of Superman artist Joe Schuster in *Siegel v. Time Warner Inc.*, Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).  Specifically, Mr. Steranko testified under oath in *Siegel*:  "When I worked at Marvel, I was on a work for hire basis. They provided me with description of the character. Sometimes they gave me pencil breakdowns to work from. Occasionally they would give me, especially in the beginning, treatment, synopsis of the material that they were looking for. There was supervision, particularly in the early part of my tour at Marvel. And finally that paycheck that was stamped work for hire."  *See* Lens Opp. Decl., Ex. 89 (Steranko *Siegel* Depo.) at 82:3-23.  Because Mr. Steranko's sworn testimony here is "inescapably and unequivocally" inconsistent with his testimony in Seigel, the Court should disregard it entirely.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (district court properly disregarded deposition testimony that was "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior deposition); *see also Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) ("[A] party opposing summary judgment does not create a triable issue" by generating testimony that contradicts "previously sworn statements."). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 23.   Toberoff Decl. Ex. 21 (February 10, 2023 Deposition of James Steranko)<br><br>(Page 97:3-23) | • <u>Inadmissible Legal Conclusion</u>. Mr. Steranko testified that Marvel "hadn't commissioned" his work, and opined that his work was not "work for hire."  That testimony constitutes an (incorrect) inadmissible legal conclusion. *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it").<br><br>• <u>Irrelevant</u> (Fed. R. Evid. 401). Mr. Steranko's testimony about Marvel not owning the work prior to paying for it, and his opinion on whether Marvel "commissioned" his work, as well as his statement that he never heard the words "work for hire" used are irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) ("A hiring party's ability to supervise and edit an artist's work does not need to be based on terms set out in a written contract.").<br><br>• <u>Contradictory Testimony</u>.  Mr. Steranko testified here that Stan Lee never commissioned his work and that he did not work for hire, but he said *precisely the opposite* when he was hired by Defendant's counsel to offer expert opinions for the heirs of Superman artist Joe Schuster in *Siegel v. Time Warner Inc.*, Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).  Specifically, Mr. Steranko testified under oath in *Siegel*:  "When I worked at Marvel, I was on a work for hire basis. They provided me with description of the character. Sometimes they gave me pencil breakdowns to work from. Occasionally they would give me, especially in the beginning, treatment, synopsis of the material that they were looking for. There was supervision, particularly in the early part of my tour at Marvel. And finally that paycheck that was stamped work for hire."  *See* Lens Opp. Decl., Ex. 89 (Steranko *Siegel* Depo.) at 82:3-23.  Because Mr. Steranko's sworn testimony here is "inescapably and unequivocally" inconsistent with his testimony in Seigel, the Court should disregard it entirely.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (district court properly disregarded deposition testimony that was |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior deposition); *see also Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998) ("[A] party opposing summary judgment does not create a triable issue" by generating testimony that contradicts "previously sworn statements."). |
| 24.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)<br><br>(Pages 155:17-156:4, 267:5-269:21) | • <u>Irrelevant</u> (Fed. R. Evid. 401). Mr. Lieber's testimony that he was not paid for a purported rejected plot that he wrote for a different Marvel editor long after the relevant period is irrelevant. *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). Indeed, Mr. Lieber testified that Stan Lee—the editor of all the Works—*always* accepted and paid for his work. Lens Opp. Decl., Ex. 86 (Lieber Depo.) at 156:5-13. |
| 25.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)<br><br>(Pages 259:5-16, 287:22-288:3) | • <u>Irrelevant</u> (Fed. R. Evid. 401). Mr. Lieber's testimony that in his "view," he "felt" that Marvel was not obligated to buy his work is irrelevant to the work-for-hire test—particularly since Mr. Lieber testified that Stan Lee always accepted and paid for his work.  Lens Opp. Decl., Ex. 86 (Lieber Depo.) at 156:5-13.<br><br>• <u>Inadmissible Legal Conclusion</u>. Mr. Lieber testified Marvel was not "obligated" to buy his work.  Such testimony constitutes an (incorrect) inadmissible legal conclusion. *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"). |
| 26.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)<br><br>(Pages 252:23-254:24) | • <u>Lacks Foundation</u> (Fed. R. Evid. 602).  Mr. Lieber testified that he did not "ever recall hearing" of Vista Publications, Inc., Canam Publishers Sales Corp., Atlas Magazines, Inc., or Non-Pareil Publishing Corp., let alone whether any had any employees.  Thus, to the extent Defendant relies on this testimony to establish that these entities lacked employees, the testimony lacks foundation. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | • <u>Irrelevant</u> (Fed. R. Evid. 402).  Whether Vista, Canam, Atlas, or Non-Pareil had employees is irrelevant to whether Steve Ditko's contributions to the Works were done on a work-for-hire basis. |
| 27.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)  (Pages 255:10-256:6) | • <u>Lacks Foundation</u> (Fed. R. Evid. 602).  Mr. Lieber supplied no foundation for his beliefs about what role Stan Lee was performing when he "was making up a story."  • <u>Irrelevant</u> (Fed. R. Evid. 402).  Mr. Lieber's beliefs about what role Stan Lee was preforming when he "was making up a story" is irrelevant to whether Steve Ditko's contributions to the works were done on a work-for-hire basis. |
| 28.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)  (Pages 266:13-267:2) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  Mr. Lieber supplied no foundation for his beliefs about who owned stories he wrote for Marvel before he was paid; rather, he admitted that his opinion was a "guess."  • <u>Irrelevant</u> (Fed. R. Evid. 402).  Mr. Lieber's beliefs about who owned stories he wrote for Marvel before he was paid is irrelevant to whether Steve Ditko's contributions to the works were done on a work-for-hire basis.  • <u>Inadmissible Legal Conclusion</u>. Mr. Lieber testified concerning his beliefs about who owned Marvel stories he wrote before Marvel paid him for them.  Such testimony constitutes an (incorrect) inadmissible legal conclusion.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"). |
| 29.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)  (Pages 269:24-271:20) | • <u>Best Evidence Rule</u> (Fed. R. Evid. 1002).  Because Mr. Lieber's testimony concerns the content of the alleged check legends, the best evidence rule applies.  *See* Fed. R. Evid. 1002 ("An original writing ... is required in order to prove its content unless these rules or a federal |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | statute provides otherwise.").  Apart from seeking them from MCI in this case, neither Mr. Lieber nor Defendant established that they made *any* reasonably diligent effort to locate checks from Marvel during the relevant period. *See Estee Lauder Int'l, Inc. v. World Wide Marine Serv., Inc.*, 1989 WL 126067, at *7 (S.D.N.Y. Oct. 13, 1989) ("Lauder has not demonstrated what steps, if any, it has taken to locate World Wide's files, or to identify persons formerly associated with World Wide who might be able to explain the Special Policy's whereabouts or describe the circumstances of its alleged issuance. Since the record does not establish that a 'diligent but unsuccessful search and inquiry' has been made, Lauder has not 'surmounted the initial hurdle with respect to proving the contents of a writing by the use of secondary evidence.'").  And Marvel has not had control over the bank accounts used by its predecessors in interest between 1962 and 1965 for over 50 years. *See* Fed. R. Evid. 1004(c); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 722 F. Supp. 12, 16 (S.D.N.Y. 1989) (explaining Rule 1004(c) exception applies only "if the proponent of the writing can show that the opponent had control over the document, that he demanded the document from the opponent and that the opponent has failed to produce the document").  Indeed, the 1968 asset purchase agreement pursuant to which Perfect Film and Chemical Company bought the Marvel Comics Group's assets specifically excluded all bank accounts.  *See* Bard Decl., Ex. 10 at 16 ("It is understood that Sellers shall not transfer to Perfect as part of this transaction any cash, savings accounts, or *checking accounts*  . . . .") (emphasis added).  The best evidence rule therefore bars Defendant from using this testimony to establish the content of any check legends.<br><br>• <u>Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  Mr. Lieber conceded that he "do[es]n't remember a great deal" and said whether the checks had "work for hire" was "a totally unknown."<br><br>• <u>Inadmissible Legal Conclusion</u>. To the extent Defendant suggests that Mr. Lieber's testimony explains the legal effect of the alleged check legends, such testimony constitutes an inadmissible (incorrect) legal conclusion.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) ("It is all too likely that, if the parties thought about it at all, Kirby's assignments at the time he was paid or later were redundancies insisted upon by Marvel to protect its rights; we decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt."). |
| 30.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)  (Page 288:4-12) | • Inadmissible Legal Conclusion. Mr. Lieber testified there was no "contract" between him and Marvel.  Such testimony constitutes an inadmissible (incorrect) legal conclusion.  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (explaining that such testimony "usurp[s] ... the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it"); *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("[T]he fact that there was no written contract does not, as a matter of law, mean there was no contractual relationship. 'We agree that, if you draw a picture, I will pay you' creates a contract, whether the agreement is reduced to writing or not. The issue, however, is of no moment, since no written contract is needed to satisfy the 'instance' prong of the instance and expense test."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013).   • Irrelevant (Fed. R. Evid. 401).  Mr. Lieber's testimony that he had no written agreement with Marvel is irrelevant to the work-for-hire test.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 741 (S.D.N.Y. 2011) ("A hiring party's ability to supervise and edit an artist's work does not need to be based on terms set out in a written contract."), *aff'd in relevant part, Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013). |
| 31.   Toberoff Decl. Ex. 22 (October 25, 2022 Deposition of Larry Lieber)  (Page 303:15-19) | • Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701).  Mr. Lieber testified that he lacked any foundation for his testimony regarding the name of the company on his checks and was simply speculating.  *See* Toberoff Decl., Ex. 22 at 303:15-19 ("Q. And do you remember the name of the company that issued the checks to you? A. I thought it was Marvel. I don't know. I assumed it |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | was Marvel or Magazine Management or something I mean"). |

- Best Evidence Rule (Fed. R. Evid. 1002).  Because Mr. Lieber's testimony concerns the content of the alleged check legends, the best evidence rule applies.  *See* Fed. R. Evid. 1002 ("An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise.").  Apart from seeking them from MCI in this case, neither Mr. Lieber nor Defendant established that they made *any* reasonably diligent effort to locate checks from Marvel during the relevant period. *See Estee Lauder Int'l, Inc. v. World Wide Marine Serv., Inc.*, 1989 WL 126067, at *7 (S.D.N.Y. Oct. 13, 1989) ("Lauder has not demonstrated what steps, if any, it has taken to locate World Wide's files, or to identify persons formerly associated with World Wide who might be able to explain the Special Policy's whereabouts or describe the circumstances of its alleged issuance. Since the record does not establish that a 'diligent but unsuccessful search and inquiry' has been made, Lauder has not 'surmounted the initial hurdle with respect to proving the contents of a writing by the use of secondary evidence.'").  And Marvel has not had control over the bank accounts used by its predecessors in interest between 1962 and 1965 for over 50 years. *See* Fed. R. Evid. 1004(c); *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 722 F. Supp. 12, 16 (S.D.N.Y. 1989) (explaining Rule 1004(c) exception applies only "if the proponent of the writing can show that the opponent had control over the document, that he demanded the document from the opponent and that the opponent has failed to produce the document").  Indeed, the 1968 asset purchase agreement pursuant to which Perfect Film and Chemical Company bought the Marvel Comics Group's assets specifically excluded all bank accounts.  *See* Bard Decl., Ex. 10 at 16 ("It is understood that Sellers shall not transfer to Perfect as part of this transaction any cash, savings accounts, or *checking accounts*  . . . .") (emphasis added).  The best evidence rule therefore bars Defendant from using this testimony to establish the content of any check legends.

- Irrelevant (Fed. R. Evid. 402).  The name of the formal legal entity on the checks by which Mr. Lieber (or Steve Ditko) was paid is irrelevant to the work-for-hire test,

| Material Objected To: | Grounds for Objection: |
|---|---|
| | because Steve Ditko—at a minimum—worked at the instance and expense of Martin Goodman, who controlled all of the Marvel Comics Group entities during the 1962 to 1965 period the Works were created. *See, e.g., Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640, 642-43, 653 (S.D.N.Y. 1970), aff'd, 457 F.2d 1213 (2d Cir. 1972) (songwriter's work deemed Disney's work for hire even though it was "reviewed and revised by [intermediary] Berlin's music editor and arranger" before being "sent on to Disney" with the "inten[tion] to become Disney's property exclusively"); *Twentieth Century Fox Film Corp. v. Dastar Corp.*, 2000 WL 35503105, at *9 (C.D. Cal. Jan. 4, 2000) (writer's work deemed Doubleday's work for hire even though New York Herald personnel discussed the preparation and content of the memoirs and provided editing services), *aff'd sub nom., Twentieth Century Fox Film Corp. v. Ent. Distrib.*, 429 F.3d 869, 873 (9th Cir. 2005). |
| 32. Toberoff Decl. Ex. 23 (Feb. 8, 2023 Deposition of Mark Ditko) <br><br> (Page 160:2-8) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701). Mark Ditko was not alive in the 1960s, and identified no basis for his "belie[f]" that Steve Ditko was "also doing work for Charlton" in the 1960s. Nor does that vague testimony establish that Steve Ditko was doing work for Charlton in the 1962-1965 period relevant to this case. |
| 33. Toberoff Decl. Ex. 23 (Feb. 8, 2023 Deposition of Mark Ditko) <br><br> (Pages 166:5-168:8) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701). Mark Ditko was not alive in 1946, and identified no basis for his "understanding" that Steve Ditko was in the military in Germany at the time of the letter. |
| 34. Toberoff Decl. Ex. 25 (Steve Ditko Letter to "Tom") <br><br> (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018. MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2). *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence."). Defendant, however, |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | cannot use Steve Ditko's hearsay statements against MCI.  The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807.  But Defendant cannot demonstrate that a personal letter from Ditko to a fan named "Tom," written several decades after the Works were published, has the indicia of trustworthiness needed to admit it under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003).  Moreover, to the extent Steve Ditko quotes others or relies on statements from others to found his statements in the letter, this exhibit contains hearsay within hearsay. |
| 35.   Toberoff Decl. Ex. 27 (Steve Ditko Letter to Mark Ditko)  (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018.  MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2).  *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").  Defendant, however, cannot use Steve Ditko's hearsay statements against MCI.  The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807.  But Defendant cannot demonstrate that a personal letter from Ditko to his nephew, written several decades after the Works were published, has the indicia of trustworthiness needed to admit it under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003).  Moreover, to the extent Steve Ditko quotes others or |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | relies on statements from others to found his statements in the letter, this exhibit contains hearsay within hearsay. |
| 36.  Toberoff Decl. Ex. 29 (May 1990 Steve Ditko Essay)<br><br>(Entire Exhibit) | • Hearsay (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018.  MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2).  *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").  Defendant, however, cannot use Steve Ditko's hearsay statements against MCI.  The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807.  But Defendant cannot demonstrate that Steve Ditko's statements about the nature and origins of Kirby's Spider-Man in an unsworn essay—published several decades after the Works were published—have the indicia of trustworthiness needed to admit them under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003).  Moreover, to the extent Steve Ditko quotes others or relies on statements from others to found his statements in the letter, this exhibit contains hearsay within hearsay. |
| 37.  Toberoff Decl. Ex. 31 (March 20, 2018 Blog Post)<br><br>(Entire Exhibit) | • Hearsay (Fed. R. Evid. 802). This 2018 blog post is itself inadmissible hearsay from an undisclosed witness, and may contain additional levels of hearsay (because of the lack of foundation, how many levels of hearsay are involved is unclear).<br><br>• Lacks Foundation (Fed. R. Evid. 602).  Nothing in the document establishes that the author has personal knowledge of the circumstances described. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | • <u>Irrelevant</u> (Fed. R. Evid. 401).  An alleged 1982 Marvel contest is irrelevant to the nature of Steve Ditko's working relationship with Marvel from 1962 to 1965— approximately 20 years earlier.<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37).  To the extent Defendant claims that the evidence contained in this exhibit can be admitted at trial in admissible form, he is wrong.  Defendant did not identify Randy Schueller as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto.  That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 38.   Toberoff Decl. Ex. 32 (1982 Letter from J. Shooter to R. Schueller)<br><br>(Entire Exhibit) | • <u>Irrelevant</u> (Fed. R. Evid. 401). This letter from Jim Shooter, then Marvel editor, to Randy Schueller is dated August 3, 1982—approximately twenty years after the Works were published. It has no bearing whatsoever on Steve Ditko's working relationship with Marvel from 1962 to 1965.<br><br>• <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37). Defendant did not identify Jim Shooter or Randy Schueller as potential witnesses or even as persons with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto.  That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 39.   Toberoff Decl. Ex. 33 (Sketches)  (Entire Exhibit) | • <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602). The document contains two bare sketches, with no annotation or description whatsoever.  Nothing in the document or any other supporting evidence indicates that these are characters (as opposed to simple doodles or sketches).  Even Defendant does not contend that one of the two sketches has any relation to Doctor Strange, and there is certainly nothing to indicate that the other sketch is Doctor Strange.  Indeed, Defendant admitted that Steve Ditko never discussed Doctor Strange with him. *See* Lens Opp. Decl., Ex. 81 (P. Ditko Depo.) at 60:2-5. He also admitted that Steve Ditko never told him that the sketch he received in 1946 was Doctor Strange.  *Id*. at 62:3-6.  Instead, Defendant testified, "Well, yeah, I assumed it."  *Id*. at 62:7-12.  • <u>Irrelevant</u> (Fed. R. Evid. 401). The 1946 sketches are irrelevant to whether Steve Ditko drew Doctor Strange's first appearance in *Strange Tales* Vol. 1, No. 110 (July 1963) as a commissioned work for hire for Marvel. |
| 40.   Toberoff Decl. Ex. 34 (May 16, 2007 CBR.com Article)  (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This online news article is inadmissible hearsay.  • <u>Irrelevant</u> (Fed. R. Evid. 401).  An alleged 1982 Marvel contest is irrelevant to the nature of Steve Ditko's working relationship with Marvel from 1962 to 1965— approximately 20 years earlier.  • <u>Undisclosed Witness</u> (Fed. R. Civ. P. 26 & 37).  To the extent Defendant claims that the evidence contained in this exhibit can be admitted at trial in admissible form, he is wrong.  Defendant did not identify Randy Schueller as a potential witness or even as a person with knowledge |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto.  That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 41.   Toberoff Decl. Ex. 35 (Excerpted Ditko Essays) <br><br> (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018. MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2).  *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").  Defendant, however, cannot use Steve Ditko's unsworn essays against MCI. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Defendant cannot demonstrate that his essays, written several decades after the Works were published, has the indicia of trustworthiness needed to admit it under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003). Moreover, to the extent Steve Ditko quotes |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | others or relies on statements from others to found his statements in the essays, this exhibit contains hearsay within hearsay. |
| 42.  Toberoff Decl. Ex. 37 (1979 and 1980 Marv Wolfman Artwork Releases)<br><br>(Entire Exhibit) | • Irrelevant (Fed. R. Evid. 401).  Artwork Releases signed by Marv Wolfman in 1979 and 1980 have no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965. |
| 43.  Toberoff Decl. Ex. 38 (1982 Randy Schuller Agreement)<br><br>(Entire Exhibit) | • Irrelevant (Fed. R. Evid. 401).  A 1982 agreement signed by Randy Schueller has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965.  *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything").<br><br>• Undisclosed Witness (Fed. R. Civ. P. 26 & 37).  To the extent Defendant claims that the evidence contained in this exhibit can be admitted at trial in admissible form, he is wrong.  Defendant did not identify Randy Schueller as a potential witness or even as a person with knowledge relevant to this case, in either his initial Rule 26(a) disclosures, responses to MCI's interrogatories seeking identification of persons with knowledge, or any supplements thereto.  That, however, is precisely what Rule 26 required him to do.  *See* Fed. R. Civ. P. 26(e)(1)(a) (requiring party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").  The Court should therefore exclude this evidence under Rule 37.  *See Conklin v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2023 WL 2537665, at *9 (S.D.N.Y. Mar. 16, 2023) (declining to consider evidence from undisclosed witnesses in resolving summary judgment motions). |
| 44.  Toberoff Decl. Ex. 43 (1975 Gene Colan Agreement) | • Irrelevant (Fed. R. Evid. 401).  An agreement between Marvel and Gene Colan, dated March 22, 1975— approximately a decade or more after the Works were |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (Entire Exhibit) | published—has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works.  *See, e.g., Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). |
| 45.   Toberoff Decl. Ex. 44 (1974 Roy Thomas Agreement)<br><br>(Entire Exhibit) | ● <u>Irrelevant</u> (Fed. R. Evid. 401).  An agreement between Marvel and Roy Thomas, dated September 1, 1974—approximately a decade or more after the Works were published—has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works.  *See, e.g., Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). |
| 46.   Toberoff Decl. Ex. 45 (1974-75 Richard B. Ayers Checks)<br><br>(Entire Exhibit) | ● <u>Irrelevant</u> (Fed. R. Evid. 401).  Checks dated 1974 from Marvel Comics Group, a Division of Candence Industries, to Richard B. Ayers, a former Marvel artist, have no bearing on what, if anything, Steve Ditko's checks from Marvel said from 1962 to 1965.  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) ("[T]he [Ayers and Gerber] checks were not issued to Kirby and are not from the relevant time period, so they are not admissible evidence of anything."), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) ("[W]e decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt."). |
| 47.   Toberoff Decl. Ex. 47 (1966 Don Rico Lancer Books Agreement)<br><br>(Entire Exhibit) | ● <u>Irrelevant</u> (Fed. R. Evid. 401).  This agreement between Don Rico, a former Marvel freelance writer and artist, and non-party Lancer Books, Inc., concerns one of Don Rico's paperback fiction novels—not his work for Marvel or even his work in the comics industry more generally.  What Don Rico's agreements with paperback novel published said has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works. |
| 48.   Toberoff Decl. Ex. 51 (1973 Stephen Gerber Checks)<br><br>(Entire Exhibit) | ● <u>Irrelevant</u> (Fed. R. Evid. 401).  Check dated 1973 from Marvel Comics Group, a Division of Candence Industries, to Stephen Gerber, a former Marvel artist, have no bearing on what, if anything, Steve Ditko's checks from Marvel said from 1962 to 1965. *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | (S.D.N.Y. 2011) ("[T]he [Ayers and Gerber] checks were not issued to Kirby and are not from the relevant time period, so they are not admissible evidence of anything."), *aff'd in relevant part Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) ("[W]e decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt."). |
| 49.  Toberoff Decl. Ex. 52 (1977 Steve Gerber Agreement)<br><br>(Entire Exhibit) | • <u>Irrelevant</u> (Fed. R. Evid. 401).  An agreement between Marvel and Steve Gerber, dated October 7, 1977—over a decade after the Works were published—has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works. *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). |
| 50.  Toberoff Decl. Ex. 53 (1976 Roy Thomas Agreement)<br><br>(Entire Exhibit) | • <u>Irrelevant</u> (Fed. R. Evid. 401).  An agreement between Marvel and Roy Thomas, dated August 27, 1976—over a decade after the Works were published—has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works. *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). |
| 51.  Toberoff Decl. Ex. 54 (1977 Roy Thomas Agreement and 1978 Correspondence)<br><br>(Entire Exhibit) | • <u>Irrelevant</u> (Fed. R. Evid. 401).  An agreement between Marvel and Roy Thomas, dated March 7, 1977, and correspondence concerning the agreement dated February 24, 1978—over a decade after the Works were published—has no bearing on Steve Ditko's working relationship with Marvel from 1962 to 1965 when he contributed to the Works. *See, e.g.*, *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 748 (S.D.N.Y. 2011) (rejecting evidence from outside "the relevant time period" as "not admissible evidence of anything"). |
| 52.  Toberoff Decl. Ex. 57 (Ditko Correspondence with Currie)<br><br>(Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018. MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2). *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").  Defendant, however, cannot use Steve Ditko's hearsay statements against MCI.  The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807.  But Defendant cannot demonstrate that a personal letter from Ditko to David Currie, written nearly a half-century after the Works were published, has the indicia of trustworthiness needed to admit it under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003).  Moreover, to the extent Steve Ditko quotes others or relies on statements from others to found his statements in the letter, this exhibit contains hearsay within hearsay. |
| 53.   Toberoff Decl. Ex. 58 (2016 Ditko Correspondence with Currie)   (Entire Exhibit) | • <u>Hearsay</u> (Fed. R. Evid. 802). This document contains hearsay from Steve Ditko who passed away in 2018. MCI can use Steve Ditko's statements against Defendant under Rule 801(d)(2).  *See, e.g.*, Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").  Defendant, however, cannot use Steve Ditko's hearsay statements against MCI.  The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807.  But Defendant cannot demonstrate that a personal letter from Ditko to David Currie, written nearly a half-century after the Works were published, has the indicia of trustworthiness needed to admit it under Rule 807.  *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002) (finding newspaper article did not fall within residual hearsay exception because the "four |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | classic hearsay dangers … namely, insincerity, faulty perception, faulty memory, and faulty narration" were all present), *aff'd*, 59 F. App'x 430 (2d Cir. 2003). Moreover, to the extent Steve Ditko quotes others or relies on statements from others to found his statements in the letter, this exhibit contains hearsay within hearsay. |
| 54. Toberoff Decl. Ex. 59 (February 14, 2023 Patrick Ditko Deposition)<br><br>(Pages 61:15-62:2) | ● <u>Lacks Foundation / Speculation</u> (Fed. R. Evid. 602 & 701).  The document Defendant discussed in this testimony contains two naked sketches.  Nothing in the document or any other supporting evidence indicates that these are characters (as opposed to simple doodles or sketches).  And there is certainly nothing indicating that any of the sketches is Doctor Strange.  Indeed, Defendant admitted that Steve Ditko never discussed Doctor Strange with him.  *See* Lens Opp. Decl., Ex. 81 (P. Ditko Depo.) at 60:2-5.  He also admitted that Steve Ditko never told him that the sketch he received in 1946 was Doctor Strange.  *Id*. at 62:3-6.  Instead, Defendant testified, "Well, yeah, I assumed it."  *Id*. at 62:7-12.<br><br>● <u>Improper Expert Opinion</u> (Fed. R. Evid. 703). Defendant is not a copyright or comic book expert, but attempts to offer the *de facto* expert opinion that the 1946 sketch is the Marvel character Doctor Strange. |
| 55. Toberoff Decl. Ex. 61 (Opinion & Order – *Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.* (S.D.N.Y. Sept. 10, 2010))<br><br>(Entire Exhibit) | ● <u>Judicial decisions are not evidence</u>.  *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted). |
| 56. Toberoff Decl. Ex. 62 (Complaint – *Marvel Characters, Inc. v. Stephen Ditko*)<br><br>(Entire Exhibit) | ● <u>Complaints are not evidence</u>.  *Geshke v. Crocs, Inc.*, 740 F.3d 74, 78 n. 3 (1st Cir. 2014) ("[U]nverified allegations in a complaint are not evidence."). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 57.  Toberoff Decl. Ex. 63 (Counterclaim – *Marvel Characters, Inc. v. Stephen Ditko*)<br><br>(Entire Exhibit) | ● <u>Complaints are not evidence.</u>  *Geshke v. Crocs, Inc.*, 740 F.3d 74, 78 n. 3 (1st Cir. 2014) ("[U]nverified allegations in a complaint are not evidence."). |
| 58.  Toberoff Decl. Ex. 64 (*Nimmer on Copyright*, 1963)<br><br>(Entire Exhibit) | ● <u>Legal treatises are not admissible evidence.</u>  *See Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 728 (S.D.N.Y. 2011) (explaining same exhibit "is not … evidence of anything, and cannot be relied on to raise any genuine issue of fact"). |

Dated:  June 30, 2023

**O'MELVENY & MYERS LLP**


By:        */s/ Daniel M. Petrocelli*
                 Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Matthew Kaiser*
mkaiser@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Allen Burton
aburton@omm.com
Danielle Feuer
dfeuer@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

* Admitted *pro hac vice*

*Attorneys for Marvel Characters, Inc.*