**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>    Defendant. | Case No.: 1:21-cv-7957-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**REPLY IN SUPPORT OF MARVEL CHARACTERS, INC.'S MOTION TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF MARK EVANIER**<br><br>Oral Argument Requested |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>    Counterclaimant,<br><br>v.<br><br>MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,<br><br>    Counterclaim-Defendants. | |

## PRELIMINARY STATEMENT

Defendant's opposition distills to a series of red herrings.  First, Defendant notes the uncontroversial proposition that expert witnesses can rely on hearsay in forming their opinions. But Evanier does not simply rely on hearsay; he uses hearsay to establish "facts," which Defendant, in turn, uses to create the purported factual narrative in his summary judgment papers.  Second, Defendant attempts to distance this case from *Kirby* based on superficial differences, *e.g.*, that *Kirby* concerned a different artist and (some) different works.  But those inconsequential factors do not distinguish Evanier's role here from the one he sought to play in *Kirby*—a role found equally impermissible by this District and the Second Circuit.  Third, Defendant argues that MCI mischaracterized previous cases addressing the propriety of Evanier's testimony, but to do so, must distort MCI's actual discussion of them.  Finally, Defendant tries to impugn MCI's expert Paul Levitz, but ignores that Levitz's testimony is not before this Court and, in any event, Defendant's (incorrect) assertion that "Levitz did it too" is not a reason to admit Evanier's inadmissible testimony.  Try as he might, Defendant cannot paper over the simple truth: Evanier's opinions are conduits for hearsay, usurp the role of the factfinder, and stretch well beyond his purported expertise.  MCI's motion should be granted.

## ARGUMENT

### A.    Evanier Does Not Simply "Rely On" Hearsay As The Basis For His Opinions.

Defendant cannot use Evanier to inject inadmissible hearsay into the summary judgment record just by claiming to rely on general principles about an expert's ability to rely on hearsay evidence to form opinions.  Def.'s Opp. to Pl.'s Mot. to Exclude the Expert Reports and Testimony of Evanier ("Opp."), Dkt. 86 at 15-17.  Defendant argues that expert witnesses, particularly in the social sciences, "commonly rely on hearsay" as well as interviews, *id.* at 15,

and that interviews are a valid methodology in a field not readily subjected to "[p]eer review, publication, [or] potential error rate," *id.* at 16.  But Defendant misses the point.

MCI's motion acknowledged that experts may sometimes rely on hearsay evidence, or derive information from interviews, to form their opinions.  *See* MCI's Mot. to Exclude the Expert Reports and Testimony of Evanier ("Mot."), Dkt. 77 at 6.  But the critical point is that experts may not funnel hearsay statements into the record "under the guise that the testifying expert used the hearsay as the basis of his testimony."  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).  In other words, an expert may "rely on hearsay evidence for the purposes of rendering an opinion based on his expertise," but he cannot merely "repeat[] hearsay evidence" as his opinions "without applying any expertise whatsoever."  *United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003).

Despite this clear rule, Evanier's reports and testimony are filled with hearsay repeated for the sole purpose of establishing facts without any "expertise" applied to them.  Moreover, while Defendant takes issue with MCI's selection of specific examples from the record, Opp. 13 n.6, virtually everything Evanier puts forward is hearsay, as is clear from the report itself.  For example, Evanier testifies that "Kirby said [Spider-Man] was based on an idea that he had developed with Joe Simon in the mid-1950s."  Evanier Opening Report ("Evanier Rep."), Dkt. 79-1 at 20.  Defendant then regurgitates this hearsay as fact in his Rule 56.1 Statement, relying on Evanier's testimony in support.  Def.'s 56.1 Stmt., Dkt. 78 ¶ 79; Def.'s Counter-Stmt., Dkt. 89 at 86, 174-75.  Likewise, Evanier testifies that "Kirby insisted he was never paid for the pages he had drawn" of the first version of Spider-Man, Evanier Rep. at 20—and Defendant seeks to establish that statement as fact by relying on Evanier's report.  Def.'s 56.1 Stmt., Dkt. 78 ¶ 81

("Kirby insisted he was never paid for the pages he had drawn of that first version that was

rejected by 'Marvel.'"); Def.'s Counter-Stmt., Dkt. 89 at 175 (same).[1]

Defendant also contends that MCI's objections go to the "weight" of the evidence, and

that MCI can "quibble" with Evanier's testimony "on cross-examination" so long as Evanier

meets the bare minimum standard of providing "some explanation as to how he came to his

conclusions and what methodologies or evidence substantiate them."  Opp. 17 (brackets and

quotations omitted).  Not so.  First, as explained in MCI's motion, Evanier's report contains

conjecture untethered to any purported "methodologies."  *See* Mot. 13 (explaining that Evanier's

opinions "reach[] a conclusion based on nothing more than Evanier's personal estimation").  But

even assuming Evanier meets Defendant's purported standard of providing "some explanation as

to how he came to his conclusions," MCI cannot "quibble" with Evanier's hearsay evidence

through cross-examination.  Rather, one reason hearsay is inadmissible is because it *cannot* be

cross-examined.  *Dukagjini*, 326 F.3d at 59 (that party "had an opportunity to cross-examine [the

witness]" is "no answer when it is the out-of-court declaration of another, not subject to cross-

examination, that is being put before the jury for the truth of the matter asserted"); *United States

v. Amato*, 306 F. App'x 630, 632 (2d Cir. 2009) ("[O]ne general purpose of the rule against

hearsay is guarding against unreliable testimony that is not subject to cross-examination.").  MCI

---

[1] In the same vein, Evanier testifies that Sol Brodsky described the entities owned by Martin Goodman as "shell companies," Evanier Dep. Tr., Dkt. 80-20 at 196:7-12, and Defendant parrots that testimony to assert that Goodman "operated his comic book business through dozens of unrelated shell companies," Dkt. 78 ¶ 9.  So too, regarding Spider-Man's creation, Evanier testifies that "Ditko wrote on several occasions that it was all worked out without Stan Lee ever writing an actual script, like those Ditko had illustrated for other publishers," Evanier Rep. at 20—hearsay that Defendant then presents as fact in his Rule 56.1 Statement, Dkt. 78 ¶ 84.

Defendant also cherry-picks which of Ditko's hearsay statements to present to the Court.  He simply omits Ditko's admissions that he "never claimed creating Spider-[M]an," that "[w]hat [he] did with Spider-[M]an, [he] was paid for," and it was all "Marvel's property."  03.29.15 Ditko Letter to Currie, Dkt. 71-72.  (While such statements are hearsay if proffered by Defendant, they are excluded from the rule against hearsay if proffered by MCI as statements of an opposing party.  Fed. R. Evid. 801(d)(2).)

cannot attack on cross-examination the hearsay that Evanier tries to funnel into the record as fact. *See, e.g.*, Evanier Rep. at 21 ("According to Ditko . . . Ditko originated the character[.]"); Evanier Rebuttal Report ("Evanier Rebuttal Rep."), Dkt. 79-2 at 8 ("Joe [Orlando] told me and others that he had to draw more than 30 pages in order to get paid for the 22 pages that Marvel published[.]"). More importantly, these statements are not expert opinions formed on the basis of hearsay—they are hearsay.[2]

**B.    Defendant Cannot Use Evanier To Establish A Factual Narrative.**

Evanier's testimony explicitly sets out a factual narrative, invading the province of the factfinder. Mot. 9. Defendant contends that Evanier will assist the trier of fact by providing "historical context in which to place [the] evidence." Opp. 18. But a factfinder is amply capable of piecing together the actual evidence without Evanier's narrative gloss.

Defendant proffers Evanier's testimony not for mere "historical context," but to establish facts wherever the actual record lacks support. Defendant's Rule 56.1 Statement makes this clear: nearly every paragraph relies, at least in part, on Evanier. A total of 67 paragraphs in Defendant's Rule 56.1 Statement rely on statements from Evanier, with Evanier the lead citation

---

[2] Defendant cites numerous cases that stand, at most, for the general proposition that an expert witness can base his opinions on hearsay. As explained above, MCI does not dispute that proposition—only Defendant's perversion of it. *See, e.g.*, *United States v. Joseph*, 542 F.3d 13, 22 (2d Cir. 2008) (experts can "rely on hearsay" in forming opinions and "base their opinions on interviews"); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 262 (E.D.N.Y. 2007) (examining experts' historical research methodology and finding it "sufficiently reliable to be admissible under *Daubert*"), *vacated and remanded*, 686 F.3d 133 (2d Cir. 2012). Indeed, Defendant's own authority undermines his argument. While Defendant cites *United States v. Paracha* for the proposition that "[r]eliance on interviews and secondary sources is commonly accepted by the courts," Opp. 17, *Paracha* actually *excluded* an expert's testimony in part because the expert was being "use[d]" to "provide a summary of factual evidence" about "individuals alleged to be co-conspirators in [the] case." 2006 WL 12768, at *22-23 (S.D.N.Y. Jan. 3, 2006); *see also id.* at *31 (the government "may not use an expert to summarize factual evidence for the jury"). Moreover, *Paracha* excluded expert testimony that—just like here—would have "intrude[d] on the jury's function" by "undermin[ing] the credibility of [] witnesses' statements." *Id.* at *23, *31 (party may not "present expert testimony aimed at guiding the jury's determination of the credibility of fact witnesses"); *see also* Mot. 12-14 (discussing Evanier's attempts to opine on witness credibility).

in 64 of them.  And more than 100 paragraphs in Defendant's Rule 56.1 counter-statement rely

on Evanier, with Evanier the lead citation in 80 of them.  Defendant thus relies critically, and

sometimes exclusively, on Evanier's purported knowledge to establish his narrative of events in

both his motion for summary judgment and opposition to MCI's motion for summary judgment.

Evanier goes so far as to include a section in his report addressing Steve Ditko

specifically, alleging a number of facts about Dikto's work at MCI.  *See* Evanier Rep. at 20-21

(alleging facts about Steve Ditko's involvement in the creation of Spider-Man and Doctor

Strange).  All of this goes far beyond the province of a "custom and practice" expert witness, and

attaching the "custom and practice" label to it does not make it admissible.

Using Evanier to set out a narrative of events to support Defendant's summary judgment

briefing is patently improper.  As the Second Circuit explained in *Kirby*, "[t]he appropriate way

to adduce factual details of specific past events is, where possible, through persons who

witnessed those events."  726 F.3d at 136.  "[A]n expert's factual narrative is unnecessary."

*Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008).

Defendant's attempt to exploit expert testimony to present purported facts about Steve Ditko

inherently intrudes on the role of the factfinder, and the testimony should be excluded.[3]

---

[3] Defendant cites a string of cases in claiming that Evanier's testimony is legitimate "custom and practice" testimony.  Opp. 18.  Not one stands for the proposition that a "custom and practice" expert can be admitted to provide a factual narrative, as Evanier does here.  *See Cayuga Indian Nation of New York v. Pataki*, 165 F. Supp. 2d 266, 300 (N.D.N.Y. 2001) (historians admitted to assist understanding New York's "dealings with" Cayuga Indian Nation and how to interpret "vast historical proof"); *Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. 2009) (expert only "relied upon" inadmissible hearsay "to form her opinions" on human rights abuses); *Oneida Indian Nation of New York v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982) (reversing court for taking judicial notice of extrinsic historical evidence without evidentiary hearing); *United States v. Idaho*, 210 F.3d 1067, 1069 (9th Cir. 2000) (no discussion of expert testimony other than to mention testimony from multiple experts was allowed); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 132-34 (2d Cir. 2006) (affirming admission of testimony on insurance coverage given expert's relevant experience and qualifications); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 225-26 (2d Cir. 2000) (custom-and-practice testimony was "unchallenged" beyond objection that evidence was submitted in reply); *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 78 (2d Cir. 1995) (when interpreting ambiguous contract

C.      **Defendant Cannot Avoid *Kirby*.**

Defendant cannot distinguish *Kirby*, where this District and the Second Circuit excluded

Evanier's opinions under virtually identical circumstances.  While Defendant argues that *Kirby*

concerned a different artist, different (but overlapping) period, and (to some extent) different

comic books, *see* Opp. 13, he does not and cannot explain how the particular contributor, years,

or comics have any bearing on the relative admissibility of Evanier's opinions.

As the Second Circuit explained in *Kirby*, Evanier did not "bring [his] expertise to bear in

any such way" that would help the trier of fact.  726 F.3d at 135-36.  Although "a historian's

'specialized knowledge' could potentially aid a trier of fact in some cases," Evanier's report was

"by and large undergirded by hearsay statements, made by freelance artists in both formal and

informal settings, concerning Marvel's general practices towards its artists during the relevant

time period." *Id.* at 136.  Evanier "dr[ew] from these statements" to "opine on the credibility of

other witnesses' accounts," going beyond the "leeway [permitted] with respect to hearsay

evidence" under Rule 703.  *Id.*

Evanier's testimony here does not differ in any material respect.  Just as in *Kirby*, Evanier

not only relies on hearsay to establish a narrative about "Marvel's general practices," *id.*; Mot. 9-

10, but also opines on MCI's motives and draws conclusions about alleged events based on

conjecture about the behavior of witnesses in this case, *see* Mot. 11-12; Evanier Rebuttal Rep. at

8-9 ("I would estimate that Kirby, over the course of working with Marvel on a freelance basis in

the 1960's, had several dozens of pages rejected by the publisher without compensation.");

Evanier Rep. at 21 ("Had Lee not decided to purchase Ditko's story, Ditko likely would have

---

provision, "testimony as to reinsurance industry custom and practice" was "admissible to the extent it was
relevant to the meaning of the contract"); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir.
2006) (testimony provided context for jury to determine whether there was scienter to evade certain
securities registration requirements, and expert was qualified to offer that testimony).

been able to sell it to Charlton, another company to which he sold freelance material."). Defendant does not, and cannot, meaningfully distinguish this testimony from what was rejected in *Kirby*.

In fact, Defendant repeats many of the arguments word-for-word that the Kirby Heirs raised in favor of admitting Evanier's testimony.  Those arguments are no more persuasive now than they were before and this Court should reject them.  *Compare, e.g.*, July 21, 2023 Lens Decl., Ex. 8 ("Kirby Heirs' Opp.") at 30 ("Evanier, despite Marvel's suggestion, does not opine as to the ultimate legal conclusion of whether Kirby's iconic work was 'made for hire.'  Instead, Evanier focuses on the conditions, customs and practices of the comic book industry . . . ."), *with* Opp. 25 ("Evanier, despite Marvel's suggestion, does not opine as to the ultimate legal issue of whether Ditko's iconic work was 'made for hire.'  Instead, Evanier focuses on the conditions, customs and practices of the comic book industry. . . .").[4]  Given the similarities between this case and *Kirby*, it is no surprise that Defendant cannot elaborate on the supposed "particular circumstances" that make Evanier's testimony newly admissible here.  *See* Opp. 3, 13 (arguing that "Marvel ignores the 'broad discretion' accorded *each* district court . . . under the circumstances of each case" (emphasis in original; quotations omitted)).

### D.    Levitz Has No Bearing On The Admissibility of Evanier's Opinions.

MCI did not rely on its expert witness, Paul Levitz, in moving for summary judgment.

---

[4] *Compare also* Kirby Heirs' Opp. at 26-27 ("As set forth above, experts can properly offer the type of 'historical' reconstruction provided by Evanier.  The cases cited by Marvel stand for a different proposition: that it is improper for an expert to simply provide a 'narrative' of the record evidence. However, Marvel omits that an expert can properly testify as to the historical context in which to place such evidence and can draw inferences from such evidence based on expertise."), *with* Opp. 18 ("As set forth above, experts can properly offer the type of 'historical' reconstruction provided by Evanier.  The cases cited by Marvel stand for a different proposition: that it is improper for an expert to simply provide a 'narrative' of the record evidence.  Marvel omits, however, that an expert can properly testify as to the historical context in which to place such evidence and can draw inferences from such evidence based on his/her expertise.").

Defendant nonetheless focuses significantly on Levitz's testimony, attempting to equate Levitz's testimony with Evanier's. Opp. 7 (asserting that Levitz "delves into particulars and events at 'Marvel'"); *id.* at 10 (asserting that Levitz testifies to "the same historical subjects and practices as Evanier"); *id.* at 15 (calling MCI's designation of Levitz "hypocrisy").

Defendant mischaracterizes Levitz's report, which is a far cry from the conduit for out-of-court statements that Evanier's is. Defendant cites no genuine example of Levitz testifying to specific facts or repeating hearsay about parties or witnesses. And unlike Defendant, MCI does not rely on Levitz at all on summary judgment—much less to fill a factual void with hearsay.

But more importantly, Levitz's testimony is irrelevant to the question before the Court on this motion. The admissibility of Levitz's testimony does not control the admissibility of Evanier's, and Defendant's argument—which amounts to, "you did it too"—is not an affirmative basis for admitting an expert witness. *See Trexler v. City of Belvidere*, 2023 WL 415184, at *7 (N.D. Ill. Jan. 25, 2023) (rejecting argument that amounted to "[w]e know these opinions are inadmissible, but the opinions should be admissible because Plaintiffs did it first" and noting, "[t]wo wrongs do not make a right"); *Berardi v. Vill. of Sauget, Ill.*, 2009 WL 2972346, at *3-4 (S.D. Ill. Sept. 11, 2009) (defendant was "free to formally object to plaintiff's witness's statement on the same grounds"); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 2021 WL 2643109, at *6 (S.D. Ohio June 28, 2021) (challenged party has "burden to demonstrate that his expert's testimony is admissible, which he fails to do here").

### E.  MCI Accurately Described *Siegel* and *In re Marvel Entertainment Group*.

Defendant also argues that MCI's brief mischaracterized *Siegel* and *In re Marvel Entertainment Group* ("*Wolfman*"). MCI's brief did no such thing. MCI referenced *Siegel* exactly once in a "see also" citation with an explanatory parenthetical. Mot. 8. That parenthetical stated that *Seigel* "reject[ed] Evanier's proffered expert opinion as unhelpful"—

because it did. *Id.* Specifically, the *Siegel* Court found Evanier's opinion to be "not at all

probative on the issue" for which his testimony was proffered. *Siegel v. Warner Bros. Ent. Inc.*,

542 F. Supp. 2d 1098, 1123 (C.D. Cal. 2008), *rev'd in part*, *Larson v. Warner Bros. Ent.*, 504 F.

App'x 586 (9th Cir. 2013). The same is true here; as explained in MCI's motion, Evanier's

proffered opinions are not probative of the issues before this Court. *See* Mot. 14-15.[5]

Defendant's criticism of MCI's discussion of *Wolfman* makes even less sense. MCI's

brief quoted directly from the *Wolfman* transcript and appended the relevant excerpts—including

the same excerpts Defendant cites. *See* Dkt. 79-5. Those excerpts are wholly consistent with

MCI's description: the *Wolfman* court explained that Evanier's testimony about "what happened

in particular instances" could not be relied upon "for the purpose of determining that it in fact did

happen." *Id.* at 6; *accord id.* at 4 ("I don't think he is in a position to testify about what third

parties told him for the purpose of me taking it as being the truth[.]"); Mot. 8 (same).

F.      **Evanier's Opinions Should Be Excluded On Several Additional Grounds.**

Evanier's exclusion is warranted for additional, independent reasons too. On top of

serving as a vessel for hearsay and seeking to establish a factual narrative, Evanier improperly

opines on the motives and intent of the parties and the credibility of witnesses. Mot. 11-14.

Such testimony "lie[s] outside the bounds of expert testimony." *In re Rezulin Prod. Liab. Litig.*,

309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *Paracha*, 2006 WL 12768, at *31 (rejecting attempt

to "present expert testimony aimed at guiding the jury's determination of the credibility of fact

---

[5] Defendant contends MCI insinuated that Evanier's testimony was excluded, as opposed to disregarded, quoting the statement in MCI's brief that Evanier's "testimony was stricken the first two times and should fare no better in this case." Opp. 13-14. But that sentence referred to *Wolfman* and *Kirby*—the two cases in which Evanier was proffered against *Marvel*—not *Siegel* against Warner Brothers. That is precisely why MCI referred to "two" times—not three.

witnesses").[6]  Defendant asserts that MCI "cherry-picks random words or phrases" on motive and intent and mischaracterizes credibility determinations, but the record speaks for itself.  *See* Mot. 12 (quoting Evanier's conjecture that "it is extremely doubtful that either Marvel, Stan Lee, or pure freelancers such as Steve Ditko . . . had any cause to believe their freelance material . . . was 'work made for hire.'"); *id.* ("Some artists working this way felt that they were co-writing the comics without pay or credit, and sometimes doing even more than merely 'cowriting.'").  Defendant concedes that at least one of Evanier's statements "implicates intent," but he seeks to excuse it as "rhetorical flourish" and point the finger at Levitz for offering similar testimony.  Opp. 20-22 & n.10.  But once again, that argument is no basis for including Evanier's testimony.

Evanier also reaches beyond his purported background as a comic book historian on the *creative* side of the industry.  He opines on corporate structure and commercial transactions at MCI and reaches into legal conclusions whether freelancers' work was "on spec" or work made for hire.  Mot. 14-15.  Defendant points to Evanier's "specialized knowledge" and experience in the industry, Opp. 26, but that knowledge is—according to Evanier himself—limited to one side of the industry, and provides no reliable basis for Evanier to opine in many areas Evanier purports to provide expertise.  Mot. 15.  Here, just as in *Kirby*, "any one of" the grounds raised by MCI is a sufficient basis for excluding Evanier.  *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 729 (S.D.N.Y. 2011), *aff'd in relevant part*, 726 F.3d 119 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, MCI's Motion to Exclude should be granted.

---

[6] Defendant asserts that MCI "tries to mimic this Court's decision in *In re Rezulin*," Opp. 19, but MCI's brief does not do that.  Rather, MCI cites *In re Rezulin* for the principles that (1) an expert cannot simply piece together a factual narrative for a party, and (2) an expert witness cannot opine on the "motive of parties or others."  Mot. 9, 11.

Dated:  July 21, 2023                    **O'MELVENY & MYERS LLP**


By:        */s/ Daniel M. Petrocelli*
                Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Matthew Kaiser*
mkaiser@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Allen Burton
aburton@omm.com
Danielle Feuer
dfeuer@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

* Admitted *pro hac vice*

*Attorneys for Marvel Characters, Inc.*