# EXHIBIT 8

TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Tel:    310-246-3333
Fax:    310-246-3101
MToberoff@ipwla.com

Attorneys for Defendants Lisa R. Kirby, Barbara J.
Kirby, Neal L. Kirby and Susan M. Kirby

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC. and
MVL RIGHTS, LLC,

        Plaintiffs,

  -against-

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

        Defendants.

-----------------------------------------------------------

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

        Counterclaimants,

  -against-

MARVEL ENTERTAINMENT, INC.,
MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC., MVL
RIGHTS, LLC, THE WALT DISNEY
COMPANY and DOES 1 through 10,

       Counterclaim-Defendants.

-----------------------------------------------------------

Civil Action No.  10-141 (CM) (KF)

**DEFENDANTS' MEMORANDUM
OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO
EXCLUDE THE EXPERT REPORT
AND TESTIMONY OF MARK
EVANIER**

[Hon. Colleen McMahon]

[ECF Case]

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL BACKGROUND.............................................................2

ARGUMENT .............................................................................................................3

I.      EVANIER IS WELL QUALIFIED AS AN EXPERT GIVEN HIS
EXTENSIVE KNOWLEDGE OF THE COMIC BOOK INDUSTRY
AND JACK KIRBY .......................................................................................3

      A.     Evanier Is A Leading Comic Book Historian .............................................3

      B.     Expert Testimony That May Assist the Trier of Fact Should Be
Admitted ...........................................................................................6

      C.     Marvel's Arguments Do Not Offer Any Basis to Exclude Evanier's
Testimony ..........................................................................................8

           1.     The Scientific *Daubert* Factors Do Not Apply To Evanier's
"Historical" Testimony ...............................................................8

           2.     It Is Well-Settled That Experts Can Testify to Historical
Events and to Industry Custom and Practice ..............................10

           3.     Evanier's Opinion Does Not Improperly Rely On
"Hearsay".....................................................................................11

                a.     Experience Constitutes a Valid Basis for Expert
Opinion ............................................................................12

                b.     Evanier's Information, Based on Interviews,
Research and Experience, is the Kind Reasonably
Relied on by Other Historical Experts ............................13

                c.     Evanier's Lack of Firsthand Knowledge in the
Period Is Irrelevant..........................................................15

                d.     Marvel Mischaracterizes Evanier's Testimony ...............16

                e.     Marvel Has Relied on the Same Type of Expert
Testimony on a Nearly Identical Issue.............................16

           4.     Evanier's Testimony Properly Analyzes and Supplies the
Context in Which to View the Evidence......................................17

          a.      Evanier Does Not Offer an Improper "Narrative"...........17

          b.      Evanier Properly Analyzes the Record Evidence ............18

     5.      Evanier Does Not Improperly Opine on "Credibility" or "Motivation" ...................................................................................19

     6.      Most of Marvel's Arguments Go to the Weight to be Accorded Evanier's Testimony, Not Its Admissibility................21

   D.     Evanier's Testimony Will Assist the Trier of Fact ...................................21

CONCLUSION ..........................................................................................................23

**TABLE OF AUTHORITIES**

**Federal Cases**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
514 F. Supp. 2d 571 (S.D.N.Y. 2007)..................................................................10

*Algarin v. N.Y. City Dep't of Corr.*,
460 F. Supp. 2d 469 (S.D.N.Y. 2006)............................................................ 9-10

*Amorgianos v. Amtrak*,
303 F.3d 256 (2d Cir. 2002)..............................................................................9

*Arista Records LLC v. Usenet.com, Inc.*,
608 F. Supp. 2d 409 (S.D.N.Y. 2009).................................................................13

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*,
215 F.3d 219 (2d Cir. 2000)............................................................................10

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
380 F. Supp. 2d 334 (S.D.N.Y. 2005).................................................................9

*Berkeley Investment Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2005)............................................................................11

*Borawick v. Shay*,
68 F.3d 597 (2d Cir. 1995)...............................................................................7

*Boucher v. United States Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ................................................................................7

*Bunt v. Altec Indus., Inc.*,
962 F. Supp. 313 (N.D.N.Y. 1997)....................................................................7

*Cayuga Indian Nation v. Pataki*,
165 F. Supp. 2d 266 (N.D.N.Y. 2001)..............................................................10

*Chavez v. Carranza*,
559 F.3d 486 (6th Cir. 2009) ..................................................................10, 13-14

*Colon v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001).................................................................7

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*,
217 F.3d 33 (1st Cir. 2000)............................................................................20

*Cortes-Irizarry v. Corporacion Insular De Seguros*,
111 F.3d 184 (1st Cir. 1997) ................................................................8

*Cree v. Flores*,
157 F.3d 762 (9th Cir. 1998) .............................................................20

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993)................................................................ *passim*

*Derienzo v. Trek Bicycle Corp.*,
376 F. Supp. 2d 537 (S.D.N.Y. 2005)...............................................21

*General Electric v. Joiner*,
522 U.S. 136 (1997)..............................................................................9

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) .............................................................12

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................18

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009)................................................18

*In Re Marvel Entertainment*,
Case No. 1:97-cv-00638 (D. Del. 1997) ...........................................16

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)................................................18

*In re Zyprexa Prods. Liab. Litig. v. Eli Lilly & Co.*,
489 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................9

*Jenson v. Eveleth Taconite Co.*,
130 F.3d 1287 (8th Cir. 1997) .............................................................9

*Katt v. City of New York*,
151 F. Supp. 2d 313 (S.D.N.Y. 2001)..................................13, 15, 20

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*,
863 F.2d 867 (Fed. Cir. 1988).............................................................20

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).............................................................. *passim*

*Liriano v. Hobart Corp.*,
949 F. Supp. 171 (S.D.N.Y. 1996).........................................................................7

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)....................................................................7

*May v. Morganelli-Heumann & Assocs.*,
618 F.2d 1363 (9th Cir. 1980) .............................................................................11

*Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*,
1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 18, 1999) ...................................18

*Monks v. General Electric Co.*,
919 F.2d 1189 (6th Cir. 1990) .............................................................................15

*New York v. Shinnecock Indian Nation*,
523 F. Supp. 2d 185 (E.D.N.Y. 2007) ...........................................................13, 15

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005).................................................................................9

*Oneida Indian Nation v. New York*,
691 F.2d 1070 (2d Cir. 1982).........................................................................10, 15

*Pension Comm. v. the Univ. of Montreal Pension Plan v. Banc of America Secs., LLC*,
691 F. Supp. 2d 448 (S.D.N.Y. 2010)...............................................................12, 22

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
2011 U.S. Dist. LEXIS 1534 (S.D.N.Y. Jan. 3, 2011) .................................7, 21

*Playboy Enters. v. Dumas*,
53 F.3d 549 (2d Cir. 1995)...................................................................................11

*Primavera Familienstiftung v. Askin*,
130 F. Supp. 2d 450 (S.D.N.Y. 2001)...................................................................10

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
2008 U.S. Dist. LEXIS 111918 (W.D.N.Y. Aug. 8, 2009) ................................14

*Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*,
208 F. Supp. 2d 423 (S.D.N.Y. 2002)..................................................................21

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
467 F.3d 107 (2d Cir. 2006)..................................................................... *passim*

*States v. Steed*,
548 F.3d 961 (11th Cir. 2008) ...........................................................................14

*Ting Ji v. Bose Corp.*,
538 F. Supp. 2d 354 (D. Mass. 2008) ..........................................................9, 12, 22

*Travelers Indem. Co. v. Scor Reinsurance Co.*,
62 F.3d 74 (2d Cir. 1995) ........................................................................... *passim*

*United States v. Ayala*,
601 F.3d 256 (4th Cir. 2010) .............................................................................14

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2003) .............................................................................9

*United States v. Idaho*,
210 F.3d 1067 (9th Cir. 2000) ...........................................................................10

*United States v. Joseph*,
542 F.3d 13 (2d Cir. 2008)........................................................................... *passim*

*Valentin v. New York City*,
1997 U.S. Dist. LEXIS 24059 (E.D.N.Y. Sept. 9, 1997)...............................................7, 20

*Wisconsin v. Stockbridge-Munsee Cmty.*,
366 F. Supp. 2d 698 (E.D. Wis. 2004)...................................................................10

## Federal Statutes, Rules and Regulations

17 U.S.C. § 304(c) ...........................................................................................3

F.R.C.P. 26(a) ................................................................................................3

F.R.E. 702 ............................................................................................. *passim*

F.R.E. 703 ............................................................................................. *passim*

F.R.E. 702, Notes of Advisory Committee on Rules........................................................23

F.R.E. 703, Notes of Advisory Committee on Rules...............................................12, 22

## Other Authorities

Jones, Rosen, Wegner, Jones, *Federal Civil Trial and Evidence* (2008)
*Federal Civil Trial and Evidence* § 8:1521 .......................................................12

*Federal Civil Trial and Evidence* § 11:37 .......................................................................6

M. Nimmer & D. Nimmer, *Nimmer on Copyright*
1 *Nimmer* § 5.03[D] ...................................................................................................11

## **INTRODUCTION**

Plaintiffs Marvel Worldwide, Inc., Marvel Characters, Inc., and MVL Rights, LLC and Counterclaim-Defendants Marvel Entertainment, LLC's ("Marvel") motion to exclude the expert report and testimony of Mark Evanier ("Motion") is a desperate attempt to silence Evanier, a leading expert on the history of the comic book industry.  Marvel seeks to exclude such testimony because it wants to restrict the Court's view of the case to witnesses it has explicitly prepared to support its revisionist theories, such as Stan Lee, with whom Marvel has a long-standing and lucrative economic relationship.  Marvel repeats the straw-man argument that Evanier improperly testifies to "the pre-1978 work-for-hire policy of Marvel."  Motion at 9.  Instead, Evanier properly testifies on the subjects in his expert report, on which he is uniquely well qualified to opine and which are central to the "work for hire" issue before this court:  (1) the manner in which Jack Kirby ("Kirby") created or co-created comics and comic book characters published by Marvel between 1958-1963 (the "Period"), (2) Kirby's relationship with Marvel during the Period, and (3) Marvel's policies and conduct as to the return of original artwork to artists, including Kirby.  Declaration of Marc Toberoff in Support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude the Expert Report and Testimony of Mark Evanier ("Tob. Dec.") Ex. A ("Report") at 1.  Evanier's testimony, in addition to the testimony of the witnesses, including Marvel's own, and significant documentary evidence, all indicate that Kirby's creations were not work for hire, and that Marvel cannot meet its burden of proof as a matter of law.

Against Evanier's impressive qualifications and credible testimony, Marvel offers only the weak argument that Evanier's opinions must be excluded because he was not personally present when Kirby interacted with Marvel's editor Stan Lee in the Period.  However, the

Federal Rules of Evidence expressly welcome expert testimony, such as Evanier's, that is based on knowledge and experience in an industry, as long as the testimony can aid the trier of fact to understand the evidence and/or determine a fact at issue.  F.R.E. 702.  Marvel erroneously argues the further straw man that certain *Daubert* factors, which apply to expert reports in the hard sciences, apply here to Evanier, when in fact the reliability of Evanier's report is governed by the standards for non-scientific expert reports set forth in the Supreme Court's decision in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  *See United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008) (stating that expert testimony in the social sciences does not require "the exactness of hard science methodologies").  Evanier will provide the Court with the historical context – the conditions, customs and practices under which these works were created between 1958-1963 – that will greatly aid the proper determination of whether Kirby's works were "works for hire."  Tellingly, Marvel did not designate a single expert or offer a rebuttal expert report, as Marvel's true history and practices during the relevant Period do not favor its legal position.

Contrary to Marvel's suggestions, Evanier did not and will not opine on the ultimate legal question of whether the works were "made for hire."  The fact that Evanier's opinions differ from Marvel's does not render his testimony inadmissible.  Marvel's questions, at best, go to the weight afforded Evanier's testimony, not its admissibility.  Lastly, Marvel's attempt to exclude Evanier as a witness is improper because, despite Marvel's claims to the contrary, Evanier is not just an expert, but also a percipient witness, and, in fact, was separately deposed by Marvel as both a fact and expert witness.  *See* Docket Nos. 43, 48.

## RELEVANT FACTUAL BACKGROUND

On September 16, 2009, Jack Kirby's children, defendants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby (the "Kirbys"), served Marvel with Notices of

Termination under 17 U.S.C. § 304(c) to recapture their father's copyrights by statutory

termination of any prior grants to Marvel (the "Termination").  Tob. Dec. ¶ 4.  On January 8,

2010, Marvel sued the Kirbys, predictably seeking a declaration that the Termination is invalid

on the revisionist basis that the subject 1958-63 Kirby works were all "works for hire."  Pursuant

to F.R.C.P. 26(a) and the Court's April 19, 2010 scheduling order, Defendants designated Mark

Evanier, as well as John Morrow, as expert witnesses on November 4, 2010, and attached their

expert reports.  *See* Tob. Dec. Exs. A; B.  Evanier was fully deposed by Marvel on November 9

and December 6, 2010.

## ARGUMENT

**I.    EVANIER IS WELL QUALIFIED AS AN EXPERT GIVEN HIS EXTENSIVE KNOWLEDGE OF THE COMIC BOOK INDUSTRY AND JACK KIRBY**

### A    Evanier Is A Leading Comic Book Historian

Evanier easily qualifies as an expert on the subjects of his testimony, which are central to

the "work made for hire" issue now before this court:  (1) the manner in which Jack Kirby

created comics and comic book characters published by Marvel between 1958-1963; (2) Kirby's

relationship with Marvel during this period; and (3) Marvel's conduct with respect to Kirby and

other freelancers.  Indeed, Evanier's qualifications are such that few individuals would be more

qualified as an expert on these subjects, a fact that Marvel and its witnesses (notably Stan Lee)

have readily acknowledged until now.

Evanier is one of the most well known and widely respected historians of both the comic

book industry and Jack Kirby.  He is the author of the award-winning 2008 book *Kirby: King of

Comics*, a biography of Jack Kirby, and the 2002 book *Mad Art*, a history of Mad Magazine.

Report at 3.  He has written numerous forewords and introductions for books about comics,

including many collections published by industry leaders DC Comics ("DC") and, notably,

Marvel, itself. For Marvel, Evanier has written such material for the following titles: *Marvel Masterworks: Rawhide Kid* Volume 2 (2006), *Fantastic Four Omnibus* Vol. 2 (2007), *Marvel Masterworks: The Mighty Thor* No. 6 (2007) and, most recently, *Marvel Masterworks: The Inhumans* Volume 1 (2009). Declaration of Mark Evanier in Support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude the Expert Report and Testimony of Mark Evanier, ¶ 2. For DC he has written introductions and/or forwards for the *Justice League of America Archives*, Vol. 6 (2000), *The Blackhawk Archives* Vol. 1 (2001), *Jack Kirby's Fourth World Omnibus* Vol. 1 (2007), Vol. 2 Vol. 2 (2007), Vol. 3 (2007) and Vol. 4 (2008). *Id.* Evanier has also acted as an informal advisor and historian for Marvel over the last two decades. Report at 4. For example, Evanier helped Marvel determine who "inked" particular Marvel comic book issues, and determine the identity of pseudonymous contributors to various Marvel comic books, particularly from the 1950s. *Id.*.

Evanier has appeared on television programs and supplemental DVD materials dealing with animation and comics. *Id.*, at 3–4 Last year, at Stan Lee's ("Lee") request, Evanier appeared on A&E's "Biography" program on Lee's life. *Id.* at 4. Evanier also was interviewed for the documentary "With Great Power – The Stan Lee Story," which Lee also asked him to review for factual accuracy. *Id.*

Much of Evanier's knowledge about Kirby and the comic book industry comes from his conversations with Kirby while working for him, discussions and formal interviews with leading artists, writers and other figures in the comic book industry, and his work as a comic book writer. *Id.*, at 3. For example, in 1969, Evanier was hired by Marvel's unaffiliated merchandise licensee, Marvelmania, where he often consulted with Kirby on Marvel matters, and in that capacity saw the sketches and drawings that Kirby submitted to Marvelmania, including artwork

4

in Kirby's possession that Marvel had previously rejected.  *Id.* at 1; Tob. Dec. Ex. C; Declaration

of Mark Evanier in Support of Defendants' Motion for Summary Judgment, ¶¶ 17, 19, 20.  He

then worked as Kirby's assistant in the early 1970s, before Kirby left Marvel for DC.  After

Kirby started to work with DC, Evanier assisted in art production work, mockups and

presentations, and acted as a sounding board for Kirby as he created his work and edited the "fan

letters" section of Kirby's comic books.  Report at 2.

     While apprenticing under Kirby, Evanier worked as a comic book writer for The Walt

Disney Company and Gold Key Comics (*Bugs Bunny*, *Daffy Duck*, *Porky*, etc.).  Shortly after

that, he became the editor and head writer for the Edgar Rice Burroughs estate (*Tarzan*).  He has

since written for numerous comic books, including *Superman Adventures, The New Gods* and

*Blackhawk* for DC Comics, *Blackhawk*, *Groo the Wanderer* (with Sergio Aragonés), *Crossfire,*

*Hollywood Superstars* (with Dan Spiegle), and *The DNAgents* (with Will Meugniot).

     As a result of his decades of experience and work as an historian, Evanier has served as

moderator or at hundreds of comic book industry events, including at the industry-leading

Comic-Con International in San Diego, WonderCon in San Francisco, the Los Angeles Comics

and S-F Convention, and the Mid-Ohio Con in Columbus, Ohio.  At each annual San Diego

Comic-Con, he commonly moderates five or six panels and events where he interviews comic

book "greats" about their work.  For his efforts in recording and preserving comic book history,

he was awarded the prestigious Bob Clampett Humanitarian Award in 2001.  Evanier has also

been nominated six times for the prestigious Will Eisner Award, the comic book industry's top

award, for his work as a comic book creator, and has won three times.  *Id.*

     Evanier has also been admitted as an expert and at several trials regarding comic book

history.  Most recently, Evanier was an expert witness in the long-running *Superman* copyright

litigation in the U.S. District Court for the Central District of California, on behalf of the family

of Jerry Siegel, the co-creator of *Superman*.  The Court not only denied Warner Bros' and DC's

motion to exclude Evanier from a 2009 bench trial and permitted Evanier to testify regarding the

history of Superman through the years, but cited Evanier in its June 8, 2009 order as one of the

most credible and helpful witnesses in the case:

> In assessing the testimony at trial, the Court found some of the witnesses very credible
> and others not credible at all. The Court found the testimony by [the Siegels'] comic book
> historian expert, Mark Evanier … both credible and persuasive. Considering [his]
> demeanor and testimony, the Court observed that [he] attempted to answer directly and
> honestly the questions put to [him] without equivocation or evasion, even when [his]
> answers resulted…in the admission of certain facts that were not altogether beneficial to
> [his side].

Tob. Dec. Ex. D at 6.

### B.       Expert Testimony That May Assist the Trier of Fact Should Be Admitted

Federal Rule of Evidence 702 broadly provides that if specialized knowledge "will assist

the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert

witness may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony

is the product of reliable principles and methods, and (3) the witness has applied the principles

and methods reliably to the facts of the case."  F.R.E. 702.  The trial court acts as a "gatekeeper"

in deciding whether expert testimony satisfies Rule 702.  *See Daubert v. Merrell Dow*

*Pharmaceuticals*, 509 U.S. 579, 582 (1993).

Trial courts have wide discretion in admitting expert testimony.  As "too much depends

upon the particular circumstances of the particular case … the trial judge must have considerable

leeway in deciding … whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at

152; *see also* Jones, Rosen, Wegner, Jones, *Federal Civil Trial and Evidence* (2008) § 11:37

("There is no hard and fast rule for qualification of experts. The determinative issue in each case

is whether the witness has sufficient knowledge, skill or experience in the field so that his or her testimony would be likely to assist the [trier of fact] in its search for the truth.").

"[T]he Federal Rules of Evidence favor the admissibility of expert testimony, and [the court's] role as gatekeeper is not intended to serve as a replacement for the adversary system." *POM Wonderful LLC v. Organic Juice USA, Inc.*, Ca2011 U.S. Dist. LEXIS 1534, at *19 (S.D.N.Y. Jan. 3, 2011) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 561 (S.D.N.Y. 2007)) (McMahon, J.). As such, "the district court's role as a gatekeeper in screening out unreliable testimony is tempered by the liberal thrust of the Federal Rules of Evidence and the presumption of admissibility." *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 75 (S.D.N.Y. 2001) (internal citation omitted). *See also Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir. 1995); *Bunt v. Altec Indus., Inc.*, 962 F. Supp. 313, 317 (N.D.N.Y. 1997); *Liriano v. Hobart Corp.*, 949 F. Supp. 171, 176 (S.D.N.Y. 1996).

"A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Colon,* 199 F. Supp. 2d at 75. Notably, "the Second Circuit espouses a particularly broad standard for the admissibility of expert testimony." *Id.* (citing *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that expert testimony is admissible unless purely conjectural or based on wholly unfounded assumptions)).

"[C]ourts have held that any doubts about whether an expert's testimony will be useful should be resolved in favor of admissibility." *Valentin v. New York City*, 1997 U.S. Dist. LEXIS 24059, at *53 (E.D.N.Y. Sept. 9, 1997) (citations omitted). In accordance with "the liberalizing purpose of Rule 702," experts may properly testify "even as to the ultimate issue in a case, so long as there are sufficient facts already in evidence or disclosed by the witness … to take such [expert opinion] testimony out of the realm of guess work and speculation." *Id.* at *53–54

(internal citations omitted). It is "[o]nly if the expert testimony is so fundamentally unsupported that it cannot help the factfinder should a trial court exclude an expert opinion." *Id.* at *54.

Other Circuits have similarly noted that while *Daubert* applies on summary judgment, it must be used cautiously. *See e.g., Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).[1]

The best remedy for attacking expert testimony is cross-examination and contrary evidence, not exclusion. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

**C.** **Marvel's Arguments Do Not Offer Any Basis to Exclude Evanier's Testimony**

**1.** **The Scientific *Daubert* Factors Do Not Apply To Evanier's "Historical" Testimony**

Marvel attacks Evanier's expert testimony on the grounds that it does not meet certain scientific factors set forth in *Daubert* – *i.e.*, that his opinions have not been subject to peer review, that it is unclear whether "there are standards controlling its operation," and that there is no "known and potential error rate of the theory or technique." However, such "scientific" factors are applicable to expert opinions in the hard sciences or engineering, and do not readily apply to the social sciences. As the U.S. Supreme Court noted in *Kumho Tire*:

---

[1] "The fact that *Daubert* can be used in connection with summary judgment motions does not mean that it should be used profligately. A trial setting normally will provide the best operating environment for the triage which *Daubert* demands. *Voir dire* is an extremely helpful device in evaluating proffered expert testimony, and this device is not readily available in the course of summary judgment proceedings. Moreover, given the complex factual inquiry required by *Daubert*, courts will be hard-pressed in all but the most clear-cut cases to gauge the reliability of expert proof on a truncated record. Because the summary judgment process does not conform well to the discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Id.*

8

> We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Kumho Tire*, 526 U.S. at 141–42. By definition, expert testimony such as Evanier's, grounded in the social sciences, "cannot have the exactness of hard science methodologies." *United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997)). "[P]eer review, publication, potential error rate, etc. … are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology of theory behind it." *Id.* at 21–22 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2003)). *See also Ting Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 357 (D. Mass. 2008) ("[*Daubert*] factors do not always apply cleanly to non-scientific experts and the trial court's discretion in such matters is broad.").

Notably, **all** the cases on which Marvel relies applied the scientific *Daubert* factors to scientific or mathematical issues not present here. *See Daubert*, 509 U.S. at 582 (birth defects allegedly caused by prescription anti-nausea drug); *Amorgianos v. Amtrak*, 303 F.3d 256, 260 (2d Cir. 2002) (neurological injuries allegedly caused by inhaling xylene and other toxic chemicals); *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (human perception and cognitive function; an expert opinion may be based "on data, a methodology <u>or</u> studies") (emphasis added); *In re Zyprexa Prods. Liab. Litig. v. Eli Lilly & Co.*, 489 F. Supp. 2d 230, 236 (E.D.N.Y. 2007) (alleged side effects of an antipsychotic drug); *General Electric v. Joiner*, 522 U.S. 136, 139 (1997) (small cell lung cancer "promoted" by exposure to PCBs and their derivatives); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005) (infection after arthroscopic knee surgery); *Algarin v. N.Y. City Dep't of Corr.*, 460 F. Supp. 2d

469 (S.D.N.Y. 2006) (standards of the medical community governing involuntary commitment); *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 523 (S.D.N.Y. 2001) (computer models of fair market values of collateralized mortgage obligations); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571, 574 (S.D.N.Y. 2007) (calculation of fair market value of business at time of breach of contract;  acknowledging that the *Daubert* factors "do not, however, constitute a "definitive checklist or test" of reliability).

> ## 2. It Is Well-Settled That Experts Can Testify to Historical Events and to Industry Custom and Practice

Marvel's arguments as to scientific *Daubert* factors and "hearsay" would apply equally to nearly any expert testimony regarding the history or custom and practice of an industry. However, it is well-settled that experts are permitted to testify as to such subjects, as Evanier does here.  *See, e.g., Oneida Indian Nation v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982) (requiring expert testimony on history); *Cayuga Indian Nation v. Pataki*, 165 F. Supp. 2d 266, 304-357 (N.D.N.Y. 2001) (considering expert testimony of historians); *Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. 2009) (same); *United States v. Idaho*, 210 F.3d 1067, 1069 (9th Cir. 2000) (same); *Wisconsin v. Stockbridge-Munsee Cmty.*, 366 F. Supp. 2d 698, 742-43, 779 (E.D. Wis. 2004) (same).

It is also routine for experts to testify as to industry custom and practice, including the evolution of such custom and practices over time, as Evanier does here.  *See, e.g., SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 133-134 (2d Cir. 2006) (approving testimony regarding "custom and practice in the property insurance industry" to evaluate meaning of contract); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 225 (2d Cir. 2000) (adopting expert testimony as evidence of "the custom and practice in the petroleum industry" regarding taxes); *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74,

78 (2d Cir. 1995) (approving expert testimony on "industry custom and practice," including

historical testimony that such practice was "the same before and after" the contractual provisions

at issue "came into general use"); *Berkeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 218

(3d Cir. 2005) (expert testimony as to industry custom and practices is admissible).

     Notably, under the 1909 Copyright Act, the "custom and practice" of an industry can

rebut the "work for hire" presumption (once the "instance and expense" test is met), making such

testimony especially pertinent. *See* 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §

5.03[D] at 5-56.12 ("[A] custom or usage whereby certain rights are reserved to an employee …

would become an implied in fact term of the contract of employment," and can rebut a "work for

hire" presumption); *Playboy Enters. v. Dumas*, 53 F.3d 549, 557 (2d Cir. 1995) (considering

evidence of industry custom and practice in determining whether a work was "for hire"); *May v.

Morganelli-Heumann & Assocs.*, 618 F.2d 1363, 1369 (9th Cir. 1980) (relying on "prevailing

custom and usage" in order "to determine whether the parties intended to contract contrary to the

presumption of the 'works for hire' doctrine").

### 3.     Evanier's Opinion Does Not Improperly Rely On "Hearsay"

     Marvel erroneously attempts to exclude Evanier's opinions as based in part on "hearsay."

However, Evanier's multiple sources of knowledge, which include numerous interactions and

interviews with Kirby, Kirby's family, top freelance artists and writers who sold their work to

Marvel during the Time Period, Marvel staff and other industry figures during that period;

reviewing relevant documents; years of historical study and research of the comic book industry;

and his own experience as a comic book creator, are all valid bases for expert opinion. *See, e.g.*,

Report at 3; Tob. Dec. Ex. E at 14:21–15:4.

     F.R.E. 703 makes clear that expert opinion, based on knowledge "of a type reasonably

relied upon by experts in the particular field in forming opinions or inferences upon the subject," is admissible even when such knowledge is gleaned from inadmissible hearsay. Rule 703 allows an expert witness to rely on facts and data presented "outside of court and other than by his own perception." F.R.E. 703, Notes of Advisory Committee on Rules. "Thus, a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." *Id.*

> a. Experience Constitutes a Valid Basis for Expert Opinion

It is well settled that lengthy experience, such as Evanier's, can constitute a valid basis for an expert opinion. *See* Jones, Rosen, Wegner, Jones, *Federal Civil Trial and Evidence* (2008) § 8:1521 ("[I]n certain fields experience is the predominant, if not sole, basis for a great deal of reliable expert testimony"). *See, e.g.*, *SR Int'l Bus. Ins. Co.,* 467 F.3d at 132 (insurance expert could properly rely on his experience in the insurance industry to testify as to industry practices); *Pension Comm. v. the Univ. of Montreal Pension Plan v. Banc of America Secs., LLC,* 691 F. Supp. 2d 448 (S.D.N.Y. 2010) (expert could testify about a hedge fund's due diligence based on expert's experience in the industry, his own due diligence reviews and his "further knowledge about common practices in the industry through personal relationships and industry conferences"); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (where testimony is not contingent on scientific or technical methodology, knowledge and experience is a proper basis for reliability); *Ting Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359 (D. Mass. 2008) ("[S]ufficient experience in the relevant industry can support a finding of expertise").

        b.    <u>Evanier's Information, Based on Interviews, Research and Experience, is the Kind Reasonably Relied on by Other Historical Experts</u>

Information obtained by Evanier from interviews, industry experience and reviewing documentary evidence is exactly the kind of information reasonably relied upon by experts, especially experts addressing industry custom and practice and/or historical matters. *See, e.g., Chavez*, 559 F.3d at 497; *Katt v. City of New York*, 151 F. Supp. 2d 313, 356 (S.D.N.Y. 2001) (approving testimony based on "personal experience," "interviews with police officers" and academic research); *SR Int'l Bus. Ins. Co.,* 467 F.3d at 133-134 (approving testimony of "an expert on custom and practice in the property insurance industry" as to meaning of contract, based on expert's "31 years of experience" in the industry); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 261-62 (E.D.N.Y. 2007) (permitting expert testimony as to "the pertinent historical documents … in the context of the contemporary historical understanding").

Evanier's sources of information – including extensive conversations with Kirby, Kirby's family and many industry figures, such as Marvel's witnesses, Stan Lee, Roy Thomas and John Romita, his review of documentary evidence, his observations of the comic book industry over the last three decades, and experience as a comic book creator – are all "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and therefore qualify under Rule 703. *See Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) ("In forming their opinions, experts, of course, often rely on interviews of people with knowledge of relevant facts."); *Katt,* 151 F. Supp. 2d at 356 (social science expert permitted to testify as to "code of silence" within police department based on "personal experience," "interviews with police officers," "commission reports, research articles, scholarly journals, books and newspaper reports," as "[s]uch data is of a type reasonably relied

upon by experts in various disciplines of social science"); *Chavez*, 559 F.3d at 497 (social science expert permitted to testify based upon "interviews, commission reports …, documentary research, and field research" about historical events which occurred in the preceding decades).

For example, the Second Circuit in *Joseph*, 542 F.3d at 21-22 held that expert testimony about Internet "role-playing" satisfied Rule 703, when the expert's opinion was based solely on interviews and studying chat-room conversations, used to analyze motivations and to place the parties' conduct in context. The Second Circuit noted that the expert could properly testify to "the distinct culture of the Internet" and "the distinct realities and motivations" of participants in that culture. *Id.* at 16, 22. Even though the expert's testimony relied upon out-of-court statements, "that would not be a valid objection" because expert witnesses "commonly base their opinions on interviews." *Id.* at 22 (citing F.R.E. 703).

Similarly, *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 2008 U.S. Dist. LEXIS 111918, at *15-16, *16 n.7 (W.D.N.Y. Aug. 8, 2009) admitted Rule 703 expert testimony based on statements in historical sources about a company's "evolving corporate governance relationship" with another company, decades earlier. "The fact that records [the expert] relied on may have contained hearsay is of no consequence." *Id.* at *28 n.10 (citing Rule 703). The expert's testimony was admitted because "distilling and summarizing the historical documents, providing historical perspective with respect to the public utility industry during the relevant time period, and placing the historical data in context with well established principles of corporate governance was of assistance to the Court." *Id.* at *15–16.[2]

---

[2] Other circuits have reached similar conclusions. *United States v. Ayala*, 601 F.3d 256, 275 (4th Cir. 2010) approved expert testimony about gang history and practices that relied on out-of-court interviews with unnamed interviewees, study and observation. Likewise, *United States v. Steed*, 548 F.3d 961, 975–76 (11th Cir. 2008) admitted a police officer's expert testimony about drug trafficking based on his experience in the field, conversations with other officers, and his review

c.    Evanier's Lack of Firsthand Knowledge in the Period Is Irrelevant

Marvel's central complaint that Evanier's testimony is not based on "firsthand knowledge … at the time the works were created" (Mot. at 5) is thus a red herring:  unless an expert is testifying as a percipient witness, his/her expert testimony will *always* derive from facts from "others," not "firsthand knowledge."  Indeed, even Marvel's percipient witnesses – notably John Romita, Sr. and Roy Thomas – did not work at Marvel during the relevant Period.  Tob. Dec. Ex. F at 219:6–220:11, Ex. G at 23:3–8, 214:11–13.  Marvel similarly seeks to disqualify Evanier on the ground that he was not personally present when Kirby interacted with Lee.  Motion at 9.  This again is irrelevant as to whether Evanier can testify as an expert.  *See, e.g.,* F.R.E. 703; *Oneida Indian Nation*, 691 F.2d at 1086; *New York*, 523 F. Supp. 2d at 261-62; *Katt*, 151 F. Supp. 2d at 356.

Moreover, Marvel's carefully-worded argument is highly misleading, because Evanier *is* a percipient witness to later events that shed light on the work for hire issues at the core of this case.  For instance, while submitting artwork for Marvel's *Thor* and *Tales of Asgard* comic books, Kirby created a re-imagined version of *Thor* and his supporting characters that was rejected by Marvel without pay.  Evanier helped Jack Kirby produce a portfolio of artwork based on these concepts that Kirby sold at comic book conventions and through mail order.  Tob. Dec. Ex. I at ¶ 17, Ex. C.  Such percipient testimony strongly supports, *e.g.,* the Kirbys' claims that Marvel could only own the works created through purchase and assignment, and not at inception as "work for hire."

---

of literature on law enforcement.  *See also Monks v. General Electric Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990) (holding trial court erred in excluding expert testimony based on depositions, government documents, official Army reports and historical data).

d.       Marvel Mischaracterizes Evanier's Testimony

Tellingly, Marvel does not point to a single impermissible "hearsay" statement that Evanier supposedly restates or relies upon.  Instead Marvel attacks the vague straw man that Evanier simply "credited Kirby's version of certain facts" over that of Stan Lee.  Mot. at 3.  This is belied by Evanier's credible testimony.  *See, e.g.*, Tob. Dec. Ex. E at 60:4-61:20 ("I don't think that either Stan's or Jack's accounts exactly match the physical evidence of the printed comic," and "I'm very careful to try and not take – not to say either Stan's version was completely correct or Jack's version was completely correct, because I don't think either one of those tells the whole story.").  In both Evanier's expert report and deposition testimony, he carefully noted the contradictions between Lee's conflicting accounts of the facts, and set forth his reasoning based on his expert knowledge, including Lee's prior accounts, recitations of the purported facts, custom and practice in the comic book industry, and Lee's and Kirby's particular practices, knowledge that will assist the Court.  *See, e.g.*, Report at 14-16 (analyzing the creation of *The Fantastic Four* in light of Kirby and Lee's known working practices and prior works); Tob. Dec. Ex. E at 111:8-115:9.

Such testimony makes clear that Evanier is not "simply repeating hearsay evidence without applying any expertise" (Motion at 7), but is applying his expertise to evaluate the true relationship between Kirby and Marvel in 1958-63, by, among other things, placing such relationship in its proper historical context.

e.       Marvel Has Relied on the Same Type of Expert Testimony on a Nearly Identical Issue

Notably, in *In Re Marvel Entertainment*, Case No. 1:97-cv-00638 (D. Del. 1997), a bankruptcy case cited heavily by Marvel in their Motion, Marvel relied on the same type of expert testimony as Evanier's.  In 1999, Marvel submitted expert reports by Jim Shooter on

whether certain artwork created in 1969-1973 was "work-for-hire."  *See* Confidential Declaration of Marc Toberoff Filed March 25, 2011 ("Tob. Conf. Dec."), Ex. 14; Plaintiffs' and Counterclaim-Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, at 2, 11, 13–14. 15, 16, 17 (citing *In re Marvel Entm't Group, Inc.*, 254 B.R. 817 (D. Del. 2000)).  Shooter's alleged "expert" testimony was based on his purported understanding of industry custom and practice from "common knowledge" and "discussion in the industry," not percipient knowledge. Tob. Conf. Dec. Ex. 14 at 3, 4.  Shooter testified to custom and practice in the industry, and at Marvel in particular, in 1969-1976, even though he admitted he was "out of touch" with the business in 1969-1973 (*id.*, Ex. 15 at MARVEL15816:21–15817:4); and, aside from just three weeks in 1969, Shooter did not work at Marvel until January, 1976.  *Id.* at MARVEL15810:6–10; 15812:12–16; 15822:4–11.

Marvel's citation to statements by the bankruptcy court as to Evanier further undermines its position.  The Court admitted Evanier as an expert to testify at trial, and asked him to opine on "the general concepts of [comic book] industry practice," based on "examples from his experience and from his knowledge of the community," statements deliberately omitted by Marvel.  Declaration of Sabrina A. Perelman (Docket No. 69) Ex. 4, at 213:21–214:2.

### 4. Evanier's Testimony Properly Analyzes and Supplies the Context in Which to View the Evidence

#### a. Evanier Does Not Offer an Improper "Narrative"

Marvel's "improper factual narrative" argument (Mot. at 13) also does not hold water. As set forth above, experts can properly offer the type of "historical" reconstruction provided by Evanier.  The cases cited by Marvel stand for a different proposition:  that it is improper for an expert to simply provide a "narrative" of the record evidence.  However, Marvel omits that an expert can properly testify as to the historical context in which to place such evidence and can

draw inferences from such evidence based on expertise.

An example, cited by Marvel, is *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009), which prohibited an expert from offering a "summary or selective quotation from internal [] documents, regulatory filings, and the deposition testimony" that "should be presented to the jury directly," but, in the same breath, permitted the expert to "explain[] the regulatory context …, defin[e] any complex or specialized terminology, or draw[] inferences that would not be apparent without the benefit of experience or specialized knowledge." *See also Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*, 1999 U.S. Dist. LEXIS 16035, at *8-12 (S.D.N.Y. Oct. 18, 1999) (excluding expert testimony where it was a narrative based on a "review of documents and depositions produced by the parties," but permitting testimony as to "the customs and practices of the sports industry, an analysis of whether the conduct of the parties in this action conformed to those customs, and whether such behavior evidences the parties' intent to be bound by contract").

The other cases cited by Defendants exclude portions of expert reports that simply offer a "narrative" of the record evidence or improper legal conclusions, which Evanier does not do. *See e.g., Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (testimony excluded to the extent that the expert "is simply rehashing otherwise admissible evidence"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding an expert's "narrative reciting selected regulatory events").

     b. <u>Evanier Properly Analyzes the Record Evidence</u>

After erroneously arguing that Evanier's testimony should be excluded as a mere "narrative" of the record evidence, Marvel argues that Evanier's report should be excluded because it is not based on the "record evidence." Motion at 4, 11. *First*, Evanier properly based

his report on decades of material and personal interviews. His opinion should not be limited to the rehearsed testimony of Marvel's witnesses and the documents produced by its lawyers. *Second*, Evanier's testimony and report analyzes much of the "record evidence" produced in this case, including checks issued to Dick Ayers and Jack Kirby (Report at 12-13); an alleged *Fantastic Four* "synopsis" by Stan Lee (*id.* at 15); and a letter from DC Comics' Editors to *The Comics Journal* discussing how DC's viewed ownership of freelance artwork (*id.* at 20), and places such evidence in the proper historical context.

      *Third*, while criticizing Evanier for not studying Lee's May 13, 2010 deposition, Marvel fails to mention that Lee's version of events was already well known to Evanier. Lee's testimony was largely a recitation of self-promoting anecdotes repeated over the years in Lee's books available to the general public, and much of Lee's deposition was spent affirming such materials: the January 9, 1966 article "Super Heroes with Super Problems" by Nat Freedland, Tob. Dec. Ex. H at 39:9–41:19; the article "A Fantastic First! The Creation of the Fantastic Four – And Beyond!" by Roy Thomas, originally published in Alter Ego Vol. 2, No.2 in 1998, and reprinted in 2001 in Alter Ego: The Comic Book Artist Collection, *id.* at 62:17–70:22; audio and video interviews publicly available at the American Heritage Center at the University of Wyoming, *id.* at 103:16–120:9, 126:2–130:12, 131:24–143:22; and the book Stan Lee: Conversations (reprinting interviews with Stan Lee from 1968 through 2005), *id.* at 123:13– 125:25, 130:13–131:23. These are sources with which Evanier is already familiar.

      **5.    Evanier Does Not Improperly Opine on "Credibility" or "Motivation"**

      Marvel argues that Evanier's testimony should be excluded because it touches on the motivations or intent of Marvel and freelance artists or because it sometimes contradicts that of Stan Lee. Motion at 14-17. These are not grounds for exclusion. Rule 702 allows for expert

testimony as to the intent and motivation of parties and non-parties alike. *See Joseph*, 542 F.3d at 22 (urging the district court to allow expert testimony on "the distinct realities and motivations" of participants in online cultures); *SR Int'l Bus. Ins. Co.,* 467 F.3d at 132; (approving expert testimony on contractual intent); *Travelers Indem. Co.,* 62 F.3d at 78 (same); *See also Katt*, 151 F. Supp. 2d at 359 (permitting expert testimony "to assist the jury to understand why … [plaintiff] might reasonably have chosen not to take advantage of established [] procedures"); *Valentin*, 1997 U.S. Dist. LEXIS 24059, at *72-73 (E.D.N.Y. Sept. 9, 1997) (permitting expert testimony as to the potential motivations of persons within defendant organization who retaliated against plaintiff); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (experts permitted to testify as to "no evidence of deceptive intent" in patent application). This is particularly true when the matter in question is decades old. *See Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 38-39 (1st Cir. 2000) (permitting expert testimony on intent "because the policy was several decades old," and the experts "could testify to what the terms in the policy must have meant in light of industry practice" at the relevant time); *Cree v. Flores*, 157 F.3d 762, 767-768 (9th Cir. 1998) (considering extensive historical testimony as to meaning and intent of a old treaty).

Evanier's testimony is based on his knowledge of the culture and history of the comic book industry, gleaned from hundreds of interviews (including Stan Lee's) and other acceptable sources of expert knowledge and opinion. Expert testimony is not excluded merely because it pertains to a witness' credibility. *Joseph*, 542 F.3d at 22 n.11 ("[W]hen the Government implores a jury to find the defendant and his explanation not credible, we think the presentation of that explanation from a qualified expert would be significant, especially where the explanation is not one with which jurors are likely to have familiarity."). Here, Evanier draws upon his

expertise to point out to the Court instances where the version of events recited by Marvel's

witnesses differs from their own prior statements or that of others who were present in 1958-

1963.  As shown by his testimony, Evanier's "disagreement" with Lee is based on Evanier's

conversations with Lee and Kirby and his expert knowledge, including of prior contradictory

statements by Lee, industry custom and practice in the Time Period, and the relative success of

Lee's works, without Kirby's key involvement, compared to that of Kirby.  Tob. Dec. Ex. E at

230:7-233:3.  The Court, not Evanier, Marvel or the Kirbys will ultimately decide the weight to

assign all such testimony.

### 6. Most of Marvel's Arguments Go to the Weight to be Accorded Evanier's Testimony, Not Its Admissibility

Marvel's arguments, at best, go to the weight to be accorded Evanier's testimony, not to

its admissibility.  *See POM Wonderful LLC*, 2011 U.S. Dist. LEXIS 1534, at *31-32 (admitting

expert report as the "methodological flaws alleged in [the expert] report go to the weight to be

given to the surveys, not their admissibility") (McMahon, J.); *Derienzo v. Trek Bicycle Corp.*,

376 F. Supp. 2d 537, 557 (S.D.N.Y. 2005) (criticisms went to the "weight of [the expert]

testimony, not its admissibility") (McMahon, J.); *Royal Ins. Co. of Am. v. Joseph Daniel Constr.,

Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) ("Once the thresholds of reliability and relevance

are met … any purported weakness in an expert's methodology or conclusion goes to the degree

of credibility to be accorded to the evidence, not to … its admissibility.") (McMahon, J.).

### D. Evanier's Testimony Will Assist the Trier of Fact

Evanier, despite Marvel's suggestion, does not opine as to the ultimate legal conclusion

of whether Kirby's iconic work was "made for hire."  Instead, Evanier focuses on the conditions,

customs and practices of the comic book industry at the time Kirby created his works, based on

Evanier's lengthy experience as both a participant and industry scholar.  For example, Evanier

explains why comic book companies, particularly Marvel, in the late 1950s fired their staff artists and instead, purchased freelance work to curtail their financial risk.  Report at 7-8.  Evanier explains why Marvel suddenly began returning original artwork to freelancers in the 1970s. Report at 17-19.  Evanier explains the history of the "legends" Marvel placed on the back of its freelancer checks and how this changed over the years.  Report at 12-13.  Courts routinely admit this sort of evidence.  *See Travelers Indem. Co.,* 62 F.3d at 78 (approving expert testimony on industry custom and practice over time, to shed light on a new contract clause); *Ting Ji,* 538 F. Supp. 2d at 358 (expert permitted to testify, based on her "obvious familiarity with the industry," as to custom and practice and the meaning of language in a "payment voucher" and "release form"); *SR Int'l Bus. Ins. Co.*, 467 F.3d at 132; *Pension Comm.*, 691 F. Supp. 2d at 448.

The Rules welcome the testimony of knowledgeable experts like Evanier, provided their testimony assists the trier of fact.  F.R.E. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify …."); F.R.E. 703, Notes of Advisory Committee on Rules ("The third source [of facts or data upon which expert opinions are based] contemplated by the rule consists of *presentation of data to the expert outside of court and **other than by his own perception**.") (emphasis added).

Evanier's "specialized knowledge" based on his experience and vast knowledge of the comic book industry, both its history and its customs, will be an invaluable aid to the trier of fact as it provides, among other things, the historical context in which to properly evaluate the bits and pieces of testimonial and documentary evidence regarding Kirby's relationship with Marvel during the relevant Period.  Without Evanier's expert testimony, the trier of fact would not be able to determine, "to the best possible degree the particular issue" of Kirby's relationship with

Marvel.  F.R.E. 702, Notes of Advisory Committee on Rules.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Marvel' motion to

exclude the expert report and testimony of Mark Evanier be denied in its entirety.

Dated: March 25, 2011

Respectfully submitted,
TOBEROFF & ASSOCIATES, P.C.

/s/ Marc Toberoff
Marc Toberoff (MT 4862)

Attorneys for defendants
Lisa R. Kirby, Barbara J. Kirby, Neal L.
Kirby and Susan M. Kirby

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was served electronically by e-mail

and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: March 25, 2011                    TOBEROFF & ASSOCIATES, P.C.

                                         /s/ Marc Toberoff
                                         _____
                                         Marc Toberoff (MT 4862)

                                         Attorneys for defendants
                                         Lisa R. Kirby, Barbara J. Kirby, Neal L.
                                         Kirby and Susan M. Kirby