# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>     Defendant. | Case No.: 1:21-cv-07957-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**DEFENDANT AND COUNTERCLAIMANT PATRICK S. DITKO'S EVIDENTIARY OBJECTIONS TO EVIDENCE OFFERED IN SUPPORT OF MARVEL CHARACTERS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>     Counterclaimant,<br><br>  v.<br><br>MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,<br><br>     Counterclaim-Defendants. | |

Defendant and Counterclaimant Patrick S. Ditko, as Administrator of the Estate of Steven J. Ditko (the "Estate") respectfully submits the following Evidentiary Objections to the purported evidence offered by Plaintiff Marvel Characters, Inc.'s ("MCI" or "Plaintiff") in support of MCI's Motion for Summary Judgment and MCI's Opposition to the Estate's Motion for Summary Judgment.

| Material Objected To: | Grounds for Objection: |
|---|---|
| 1. Bard Decl. Ex. 1<br><br>("Composite of" "copies of Marvel corporate documents produced by Nanci Solo and Erik Colan in this and other matters (*Marvel Characters, Inc. v. Solo*, No. 1:21-cv-05316-NRM-TAM (E.D.N.Y.) and *Marvel Characters, Inc. v. Hart-Rico*, No. 2:21-cv-07624-DMG-KES (C.D. Cal.)")<br><br>(COLAN-0261-COLAN-0299) | Articles of Incorporation (Atlas Magazines, Inc.. Canam Publishers Sales Corp., and Non-Pareil Publishing Corp., May 22, 1970) (COLAN-0275-0299).<br><br>Irrelevant (Fed. R. Evid. 401). Highlighted portions of Articles of Incorporation (i.e., boilerplate corporate purpose sections) are irrelevant for establishing legal relationship between the shell companies and any other alleged "Marvel" entity or for establishing that the shell companies had any actual business operations. |
| 2. Bard Decl. Ex. 2<br><br>("Copy of the 1967 schedule of 'Martin Goodman's Corporations'")<br><br>(2021MARVEL-0069701 – 2021MARVEL-0069704) | Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the contents of the "schedule" beyond stating that it is true and correct copy.<br><br>Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify as a public record. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Hearsay (Fed. R. Evid. 802). The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the schedule concerns the content of alleged other documents (which have not been identified), the best evidence rule applies. |
| 3.   Bard Decl. Ex. 3<br><br>("Copy of the May 19, 1966 schedule of 'Active Corporations and Magazines'")<br><br>(2021MARVEL-0069261 – 2021MARVEL-0069264) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify as a public record.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the contents of the "schedule" beyond stating that it is true and correct copy.<br><br>Hearsay (Fed. R. Evid. 802). The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the schedule concerns the content of alleged other documents, the best evidence rule applies. |
| 4.   Bard Decl. Ex. 4<br><br>("Copy of an undated schedule of Martin Goodman's corporations")<br><br>(2021MARVEL-0069792) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify as a public record.<br><br>Hearsay (Fed. R. Evid. 802). The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein. The document fails to satisfy the business records exception as (by Plaintiff's own admission) it is unknown when it was even created. See Fed. R. Evid. 803(6)(A). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Best Evidence Rule (Fed. R. Evid. 1002). Because the schedule concerns the content of alleged other documents, the best evidence rule applies. |
| 5.  Bard Decl. Ex. 5<br><br>(Copy of Magazine Management Company's June 28, 1951 Dun & Bradstreet report)<br><br>(2021MARVEL-0069621 – 2021MARVEL-0069623) | Inadmissible Legal Conclusion. The Report contains impermissible legal conclusions by non-lawyers: "SYNOPSIS[:] BACKGROUND:  Partnership formed 1942. Principals currently appear as officers in a large number of affiliated corporations." (2021MARVEL-0069621); "12 subsidiary publishing corporations" (2021MARVEL-0069622); "OPERATION-LOCATION[:]  This concern functions as the managing organization for the various publishing corporations in which Martin Goodman is a principal or a stockholder." (*Id.*)<br><br>Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701); Hearsay (Fed. R. Evid. 802) & Improper Summary. Plaintiff has not established a proper foundation for the admission of summaries of unspecified corporate documents indirectly referred to in Bard Decl., Ex. 5. By its very terms, this Report is limited by its scope and sources. (*See* e.g., 2021MARVEL-0069622 ["however, there has been no complete financial information issued on any of the above corporations and there are no inter-company relations… reported."]; *Id.* ["Repeated attempts to contact… proved unsuccessful… Requests left for interview, have gone unanswered."]). The report is inadmissible hearsay, not subject to any exception. *See Chavez v. Metropolitan Dist. Com'n*, 198 Fed. Appx. 74 (2d Cir. 2006) (compliance report was inadmissible because it was hearsay, irrelevant and unduly prejudicial).<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the Report concerns the content of alleged other documents, including unspecified corporate agreements, the best evidence rule applies. |
| 6.  Bard Decl. Ex. 6<br><br>(July 24, 1957 opinion in *Gayle v. Magazine* | Judicial decisions are not evidence. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).  The statements cited |

| Material Objected To: | Grounds for Objection: |
|---|---|
| *Management Co.,* 153 F. Supp. 861, 864 (M.D. Ala. 1957)<br><br>(2021MARVEL-0047410 – 2021MARVEL-0047415) | appear in passing the background section of an opinion concerning a completely different issue (*in personam* jurisdiction for a libel suit). The court did not purport to make adjudicated "findings" about the relationship between Magazine Management Company ("MMC") and the shell companies.<br><br>Hearsay (Fed. R. Evid. 802). The background section relied upon is inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br>Irrelevant (Fed. R. Evid. 401). The cited and quoted statement that MMC "exercises the over-all control of the other defendants" does not support Plaintiff's argument that MMC acted as the agent of the shell companies which were registered *by Marvel* with the U.S. Copyright Office as the statutory "authors" of the alleged "work for hire" at issue in this case. In addition, Marvel expressly relied on these very copyright registrations in its Complaint herein (Dkt. 1 ¶¶ 4, 14) and complaint allegations serve as "judicial admissions" by which a party is "bound throughout the course of the proceeding." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)). |
| 7. | Bard Decl. Ex. 7<br><br>(July 26, 1962 FTC complaint and consent order in *In re Male Publishing Corp.* et al., 61 F.T.C. 315)<br><br>(2021MARVEL-0047431 – 2021MARVEL-0047439) | Complaint and Consent Order are not evidence. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).<br><br>Hearsay (Fed. R. Evid. 802). The FTC complaint and consent order as relied on are inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br>Irrelevant (Fed. R. Evid. 401). The FTC complaint and consent order states nothing about the *relationship* between |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | the shell companies and MMC. It says that the "Marvel Comics Group" was an *unincorporated association* comprised of seven entities, but Atlas Comics was not one of them, and *neither was Magazine Management*. *In re Male Publishing Corp. et al.*, 61 F.T.C. 315, 1962 WL 75441 (F.T.C. July 26, 1962) The FTC complaint does not state or even suggest that MMC acted as the "agent" of any of the other respondents; rather, it says MMC was *one* vehicle by which Goodman "controls and operates approximately forty-eight [unnamed] corporations." *Id.* |
| 8. Bard Decl. Ex. 8<br><br>(March 14, 1976 memorandum and order in *Cadence Industries Corp. v. Ringer*, 76 Civ. 339 (S.D.N.Y.))<br><br>(2021MARVEL-0039411 – 2021MARVEL-0039444) | <u>Judicial decisions are not evidence</u>. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted). The statements cited appear in passing in the "<u>background</u>" section of an opinion concerning a completely different issue (whether in general one can register "composite works" as "for hire"). The court did not purport to make any adjudicated "findings" about the relationship between MMC and the shell companies at issue or even "Marvel Comics Group."<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. The memorandum and order as relied upon are inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. Marvel fudges the legal distinctions between separate corporate entities (e.g., the shell companies) by claiming they are all part of "Marvel Comics Group." But, as Marvel admits, Marvel Comics Group was not a legal entity in the relevant 1962-1965 period (the "Period"). RSMF ¶ 1; AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film and Chemical Co. (which bought MMC's assets) renamed itself "Cadence Industries Corp." and renamed MMC's business, "Marvel Comics Group." AMF ¶ 19. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 9.    Bard Decl. Ex. 9<br><br>(Cadence Industries Corporation's Answer, dated September 9, 1974, in *Jay K. Hoffman Presentations, Inc. v. Marvel Comics Group*, No. 86972/74 (N.Y.C. Civ. Ct.))<br><br>(2021MARVEL-0039912 – 2021MARVEL-0039914) | <u>Pleadings are not evidence</u>. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd*., 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. Allegations in an Answer are inadmissible hearsay when proffered as evidence in a different case. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (even "judicial findings" "are inadmissible hearsay" when offered as evidence in another case.)<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. Marvel fudges the legal distinctions between separate corporate entities (e.g., the shell companies) by claiming they are all part of "Marvel Comics Group." But, as Marvel admits, this was not a legal entity in the relevant Period. RSMF ¶ 1; AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself "Cadence Industries Corp." and renamed MMC's business, "Marvel Comics Group." AMF ¶ 19. |
| 10.    Lens Decl. Ex. 1<br><br>(February 14, 2023 Defendant Patrick Ditko Deposition Excerpts) | <u>Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701)</u>. Patrick Ditko is a party to this case by virtue of his capacity as administrator of the estate of his brother, Stephen J. Ditko. Patrick Ditko testified that he "never discussed [] work with [his] brother." He further testified that his brother did not discuss these matters "Because he was that private." (Tr. at 21:2-9) Based on the foregoing, Patrick Ditko's responses and/or lack of knowledge in response to questions pertaining to his brother's business affairs with MMC lack foundation.<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. Marvel's questions about what Ditko told his brother elicit inadmissible hearsay..<br><br><u>Improper Expert Opinion; Inadmissible Legal Conclusion.</u> Patrick Ditko's response to the question of whether he considers himself "qualified" to testify on whether the works in this case were "done on a work made for hire basis" lacks foundation, calls for speculation, calls for a legal opinion, and |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | would be inadmissible at trial. (Tr. at 31:5-17) Although lay opinion testimony may embrace ultimate issues in a case, the benefits of such testimony "diminish the closer the opinion approaches the crucial issues in the case." *Hester v. BIC Corp.,* 225 F3d 178, 182 (2nd Cir. 2000) (internal quotes omitted) Lay witnesses are precluded from expressing an opinion based on scientific, technical or other specialized knowledge within the scope of Fed. R. Evid. 702 (expert testimony) (Fed. R. Evid. 701(c); see also *U.S. v. Glenn,* 312 F.3d 58, 66 (2d Cir. 2002).<br><br>Irrelevant (Fed. R. Evid. 401 and 403). Due to the above there are no negative inferences to be drawn from Patrick Ditko's lack of personal knowledge. Nor is it relevant that Patrick Ditko does not have the checks Marvel provided Ditko when it opted to buy his material because Ditko naturally deposited such checks. *Id.* 28:12-23).  Nor is it relevant, contrary to Marvel's suggestion, that Steve Ditko, an elderly non-lawyer, was not prepared to provide legal conclusions, including as to "work for hire," which would have been inadmissible in any event. Testimony elicited from Patrick Ditko about the ultimate value of his brother's estate (roughly half a century after the events giving rise to this case) is irrelevant as it has no bearing on the issues to be determined, and even if it did, admission of such testimony would be unduly prejudicial. (Tr. at 153:13-6) |
| 11.   Lens Decl. Ex. 2<br><br>(January 20, 2023 Roy Thomas Deposition Excerpts) | Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701).  Mr. Thomas is not a percipient witness with respect to the creation of Ditko's works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12. Lay witness testimony must be grounded in observation or other first-hand personal experience. Here, Mr. Thomas' testimony lacks foundation and amounts to speculation. The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation.<br><br>Improper and Undisclosed Expert Opinion Mr. Thomas purports to give expert testimony and artistic analysis |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. However, Plaintiff has neither disclosed nor designated Mr. Thomas as an expert witness in this case.<br><br>Irrelevant (Fed. R. Evid. 401). |
| 12. Lens Decl. Ex. 3<br><br>(October 25, 2022 Lawrence D. Lieber Deposition Excerpts) | Hearsay (Fed. R. Evid. 802). Much of Mr. Lieber's testimony, including those highlighted sections cited in Plaintiff's Opposition Memorandum, contain hearsay.<br><br>Inadmissible Legal Conclusions. Mr. Lieber statements incorporate legal conclusions.<br><br>Lacks Foundation (Fed. R. Evid. 602). Mr. Lieber's highlighted testimony affirming the statements of counsel lacks foundation.<br><br>Irrelevant (Fed. R. Evid. 401). How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Steve Ditko ("Ditko") and other freelance artists in the Period when "Marvel" was a tiny fledgling business. |
| 13. Lens Decl. Ex. 4<br><br>(March 14, 2013 Stan Lee Deposition Excerpts from *Stan Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv-02663 (D. Colo.) )<br><br>(Page 83:10-13, 93:23-94:21; 99:6-10; 97:7-9; 124:3-125:18)<br><br>(2021MARVEL-0131405 – 2021MARVEL-0131482) | Lacks Foundation (Fed. R. Evid. 602). Mr. Lee's highlighted testimony affirming the statements of counsel and responding to counsel's questions lacks foundation.<br><br>Inadmissible Legal Conclusion. Mr. Lee makes improper legal conclusions as to the corporate structure of the companies as well as their ownership. See e.g., 83:10-13 ("Q. And am I correct that Timely, over time through various corporate changes, became what we know to be Marvel Comics today? A. That's right."); 99:6-10 ("Well, Martin Goodman was the publisher. He owned the company. And the company, issued the checks. And we all worked -- including me -- we all worked for Martin Goodman. I always assumed he's the fellow who owns everything.") |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | <u>Speculation (Fed. R. Evid. 701).</u>  Mr. Lee testified "I always assumed he's the fellow who owns everything" (99:6-10), meaning his testimony on this subject amounts to speculation. |

<u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).

Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.

Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices

| Material Objected To: | Grounds for Objection: |
|---|---|
| | of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 14. Lens Decl. Ex. 5  (March 13, 2013 Stan Lee Deposition Excerpts from *Stan Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv-02663 (D. Colo.))  (2021MARVEL-0131319 – | Lacks Foundation (Fed. R. Evid. 602). The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. (*See e.g.*, 5:13-18).  Hearsay (Fed. R. Evid. 802) ; Speculation (Fed. R. Evid. 701), Contradictory Testimony. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 2021MARVEL-0131404) | trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 15. Lens Decl. Ex. 6<br><br>(May 4, 2011 Stan Lee Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.),)<br><br>(2021MARVEL-0130754 – 2021MARVEL-0130803) | <u>Lacks Foundation (Fed. R. Evid. 602) Speculation (Fed. R. Evid. 701).</u> The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. (*See e.g.*, 6:13-25 ["Q. Do you recall what the name of that company? A. … I don't know what name they used"].).<br><br><u>Inadmissible Legal Conclusion.</u> Mr. Lee makes improper legal conclusions as to the corporate structure of the companies as well as their ownership. *See e.g.,* 6:23-25 (agreeing with representation contained in counsel's question that Timely Comics was a "division" of MMC).<br><br><u>Hearsay (Fed. R. Evid. 802); Speculation (Fed. R. Evid. 701), Contradictory Testimony.</u> Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a |

| Material Objected To: | Grounds for Objection: |
|---|---|
|  | trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 16. Lens Decl. Ex. 7<br><br>(April 13, 2011 Roy Thomas Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.))<br><br>(2021MARVEL-0130513 – 2021MARVEL-0130753) | <u>Lacks Foundation (Fed. R. Evid. 602).</u><br><br> <u>Speculation (Fed. R. Evid. 701).</u><br><br><u>Irrelevant (Fed. R. Evid. 401).</u><br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12. Notwithstanding the fact that his experience is from a time which is irrelevant to this action, Mr. Thomas conceded that his memory of this time was poor ("without remembering," "I don't remember") |
| 17. Lens Decl. Ex. 8 | <u>Lacks Foundation ((Fed. R. Evid. 602)</u> |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (April 12, 2011 Roy Thomas Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.))<br><br>(2021MARVEL-0041265 – 2021MARVEL-0041434) | Speculation (Fed. R. Evid. 701)<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Inadmissible Legal Conclusion. Mr. Thomas makes improper legal conclusions as to the corporate structure of the companies, including that "Marvel" was a "division of" "the parent company," Magazine Management, as well as the ownership of the companies. |
| 18. Lens Decl. Ex. 9<br><br>(January 7, 2011 Lawrence Lieber Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0130397 – 2021MARVEL-0130512) | Speculation (Fed. R. Evid. 701) Mr. Lieber repeatedly testified "I don't know" when asked about the contents of the back of the check. Moreover, he stated that for years he "wouldn't have noticed" anything about the checks because he stopped looking at them. (Pages 9, 33). Mr. Lieber also stated that he "didn't know" the origins and details of the Marvel Method. (Page 47).<br><br>Irrelevant (Fed. R. Evid. 401). Whether Mr. Lieber, himself, chose to submit works that were not assigned to him is irrelevant. How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Steve Ditko ("Ditko") and other freelance artists in the Period when "Marvel" was a tiny business.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lieber's testimony concerns the content of the documents (including checks), the best evidence rule applies. Mr. Lieber repeatedly testified "I don't know" when asked about the contents of the back of the check. Moreover, he stated that for years he "wouldn't have noticed" anything about the checks because he stopped looking at them. (Pages 9, 33). Mr. Lieber also stated that he "didn't know" the origins and details of the Marvel Method. (Page 47). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 19. Lens Decl. Ex. 10<br><br>(December 8, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 08-cv-01533 (S.D.N.Y.) ("*Kirby*")<br><br>(2021MARVEL-0131062 – 2021MARVEL-0131318) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> This is an impermissible attempt at introducing propensity evidence. (376:1-22) The above behavior as described does not have a sufficiently reflexive, nonvolitional quality for it to constitute a "habit"; Nor has a proper basis been established that Mr. Lee even had such a habit in the first instance.<br><br><u>Hearsay (Fed. R. Evid. 802); Speculation (Fed. R. Evid. 701), Contradictory Testimony.</u> Mr. Lee testified about alleged out-of-court statements he made to others. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER,  2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, *even* though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, _not_ "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 20.   Lens Decl. Ex. 11<br><br>(October 27, 2010 Roy Thomas Deposition | Lacks Foundation (Fed. R. Evid. 602).<br><br>Speculation (Fed. R. Evid. 701). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0043321 – 2021MARVEL-0043361) | Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Mr. Thomas also testified that he was "not really quite sure" about the background of the so-called Marvel Method, and that it developed before he began working it MMC. Mr. Thomas also stated "[he was] guess[ing]" about how the Marvel Method compared to other comic writing methods.<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. |
| 21.  Lens Decl. Ex. 12<br><br>(October 26, 2010 Roy Thomas Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0131738 – 2021MARVEL-0131947) | <u>Lacks Foundation (Fed. R. Evid. 602)</u>.<br><br><u>Speculation (Fed. R. Evid. 701)</u>.<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>.<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Mr. Thomas also concedes that "I didn't see everyone's checks[.]"<br><br><u>Inadmissible Legal Conclusion</u>. Mr. Thomas's testimony contains inadmissible legal conclusions.<br><br><u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Thomas's testimony concerns the content of check legends and other documents, the best evidence rule applies. |
| 22.  Lens Decl. Ex. 13<br><br>(May 13, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions, including as to the corporate structure and ownership of companies. *See e.g.,* 11:18-12:3.<br><br><u>Hearsay (Fed. R. Evid. 802)</u>; <u>Speculation Fed. R. Evid. 701)</u>; <u>Contradictory Testimony</u>. Mr. Lee testified about alleged out- |

| Material Objected To: | Grounds for Objection: |
|---|---|
| No. 10-cv-141 (S.D.N.Y.)) <br><br> (2021MARVEL-0130804 – 2021MARVEL-0130953) | of-court statements he made to others. (335:10-336:11) Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020). <br><br> Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. <br><br> Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 23.  Lens Decl. Ex. 14<br><br>(Copy of Stan Lee's June 11, 2007 affidavit from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0025446 – 2021MARVEL-0025460) | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions, including as to copyright law, the corporate structure and ownership of companies.<br><br><u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of numerous contracts and other documents, the best evidence rule applies.<br><br><u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee passed away in 2018, meaning that his declaration does not satisfy Rule 56(c)(4). *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment."). Affidavits not complying with Rule 56(e) are properly the subject of a motion to strike and should not be considered by the Court in adjudicating a summary judgment motion. *See Hollander v Am. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir. 1999) (affirming the striking of an affidavit that "disregard[ed] the requirements of Rule 56(e)," was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge," and "more resemble[d] an adversarial memorandum than a bona fide affidavit."); *see also LaRouche v. Webster*, 175 F.R.D. 452 (S.D.N.Y. 1996) (striking portions of affidavit that lacked personal knowledge or that asserted ultimate facts or legal conclusions); *Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022). |
| | Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. |
| | Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *<u>not</u>* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 24.  Lens Decl. Ex. 15 <br><br> (November 18, 2003 Stan Lee Deposition Excerpts from *Stan Lee v. Marvel Enterprises, Inc.* No. 02-cv-8945 (S.D.N.Y.)) <br><br> (2021MARVEL-0131483 – 2021MARVEL-0131737) | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions to the extent he adopts counsel's repeated predicate that the various shell companies were "Marvel's predecessor." (*See e.g.*, 12:22-23) <br><br> <u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of numerous contracts and other documents, the best evidence rule applies. <br><br> <u>Hearsay (Fed. R. Evid. 802); Speculation (Fed. R. Evid. 701); Contradictory Testimony</u>. Mr. Lee testified about alleged out-of-court statements he made to others. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |
| 25.  Lens Decl. Ex. 16<br><br>(October 13, 1999 Roy Thomas Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman*, No. 97-638 (D. Del.))<br><br>(2021MARVEL-0051131 – 2021MARVEL-0051166) | <u>Lacks Foundation (Fed. R. Evid. 602)</u><br><br><u>Speculation (Fed. R. Evid. 701)</u><br><br><u>Irrelevant (Fed. R. Evid. 401)</u>.<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Mr. Thomas also concedes that "I didn't see everyone's checks[.]"<br><br><u>Inadmissible Legal Conclusion</u>. Mr. Thomas's testimony contains inadmissible legal conclusions. |

| Material Objected To: | Grounds for Objection: |
|---|---|
|  | **Best Evidence Rule** (Fed. R. Evid. 1002). Because Mr. Thomas's testimony concerns the content of check legends and other documents, the best evidence rule applies. |
| 26. Lens Decl. Ex. 17<br><br>(November 19, 1974 Albert E. Landau Deposition Excerpts from *Jay K. Hoffman Presentations, Inc. v. Marvel Comics Group*, No. 86972/74 (N.Y.C. Civ. Ct.))<br><br>(2021MARVEL-0068823 – 2021MARVEL-0068848) | **Irrelevant (Fed. R. Evid. 401).**<br><br>**Inadmissible Legal Conclusion.**<br><br>**Improper Expert Opinions.** Mr. Landau is not a percipient witness with respect to the creation of Ditko's Works or Ditko's relationship with MMC in the Period. Nor is he qualified to speak to the legal structure of the companies or their ownership. See page 4:2-5 ("Q. Can you tell us the structural relationship between Cadence Industries and Marvel Comics Group? A. THE WITNESS: Can you help us on that, because I am never quite sure of the legal structure of anything.") The testimony provided by both sides' counsel (Mr. Sinder and Mr. Bedlock) in the highlighted excerpts of this Exhibit is inadmissible for the purpose of providing this information. |
| 27. Lens Decl. Ex. 18<br><br>(October 13, 1999 Martin Goodman Excerpts from *Joseph H. Simon v. Martin Goodman et al.* (N.Y. 1966).)<br><br>(2021MARVEL-0068849 – 2021MARVEL-0068907) | **Inadmissible Legal Conclusion.** Mr. Goodman's testimony contains inadmissible legal conclusions as to the structure, relationship, and ownership of companies.<br><br>**Speculation (Fed. R. Evid. 701)** Throughout Mr. Goodman testifies as to what he thinks may be the correct answer but then qualifies his answer by stating that he is not certain or sure and that he would need to check his files.<br><br>**Hearsay (Fed. R. Evid. 802).** Mr. Goodman's testimony about the contents of his files is inadmissible hearsay, not subject to any exception.<br><br>**Best Evidence Rule** (Fed. R. Evid. 1002). Because Mr. Goodman's testimony concerns the content of his corporate documents, the best evidence rule applies. |
| 28. Lens Decl. Ex. 19 | **Irrelevant (Fed. R. Evid. 401).** This 2008 Agreement wherein Marvel had Gene Colan retroactively agree, in exchange for |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (Copy of a redacted agreement between MCI and Gene Colan, dated May 31, 2008)<br><br>(2021MARVEL-0022743 – 2021MARVEL-0022752) | money, that everything Mr. Colan had ever created (several decades earlier) that Marvel opted to purchase and publish, was now all "work for hire," is unenforceable and irrelevant to the facts and law governing the actual relationship between Ditko and "Marvel" in the relevant 1962-1965 Period. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (holding that a retroactive acknowledgement by Joe Simon, in a settlement agreement with Marvel, that Captain America was a "work made for hire," years after the character had been co-created by him, was an entirely unenforceable "agreement to the contrary" under 17 U.S.C. § 304(c).<br><br>Hearsay (Fed. R. Evid. 802). The Agreement is inadmissible hearsay as to the truth of the matters stated therein, not subject to any exception. |
| 29. Lens Decl. Ex. 20<br><br>(Copy of a letter from Gene Colan to Marvel, dated April 28, 2008, produced by MCI)<br><br>(2021MARVEL-0022840 – 2021MARVEL-0022841) | Hearsay (Fed. R. Evid. 802). This document contains hearsay from Gene Colan who passed away in 2011. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that this letter has the indicia of trustworthiness needed to admit it under Rule 807. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002). This 2008 letter was written more than half a century following the events discussed therein.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). The letter discusses the contents of checks and other documents.<br><br>Irrelevant (Fed. R. Evid. 401). This letter does not concern Defendant and is therefore irrelevant. *See Contreras v. Artus*, 778 F.3d 97, 108–09 (2d Cir. 2015) (a note that the victim wrote which she said was not about the defendant or the incident at issue was excluded as irrelevant). |
| 30. Lens Decl. Ex. 21<br><br>(Copy of an agreement between Roy Thomas and Marvel Comics | Irrelevant (Fed. R. Evid. 401). The bulk of this 1974 agreement between "Marvel" and Mr. Thomas a decade after the relevant 1962-1965 Period is irrelevant. It also pertains, in large part, to Mr. Thomas' services as a full-time employee.<br><br>Mr. Thomas' 1974 Agreement is relevant insofar as the portion of the agreement which relates to his freelance work |

| Material Objected To: | Grounds for Objection: |
|---|---|
| Group, dated September 1, 1974)<br><br>(2021MARVEL-0088673 – 2021MARVEL-0088680) | as a writer. It expressly shows that as late as 1974: (1) Marvel's stated policy was still that it was completely free to reject any freelance material presented to it, in its sole discretion, without any payment for such work even if Marvel had proposed it; (2) if Marvel requested that any freelance work be redone it would again only pay for that product it ultimately accepted for publication in its sole discretion and not for the additional labor of revising the material, and (3) Marvel still used language of purchase, grant and assignment regarding freelance work as late as 1974 -- with no mention of "work for hire" whatsoever.<br><br>To the extent Marvel proffers this agreement as evidence that "Marvel Comic Group" was some sort of legal entity encompassing Martin Goodman's shell companies at issue herein and MMC, that is misleading. As Marvel admits "Marvel Comics Group" during the relevant Period was not a legal entity at all. RSMF 1; *see also* AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself Cadence and renamed MMC and Goodman's comic book business --"Marvel Comics Group." AMF ¶ 19. |
| 31. Lens Decl. Ex. 22<br><br>(Copy of an agreement between Cadence Industries Corporation and Stan Lee, dated January 19, 1972)<br><br>(2021MARVEL-0032010 – 2021MARVEL-0032013) | <u>Irrelevant (Fed. R. Evid. 401); Hearsay (Fed. R. Evid. 802).</u> This employment contract, which was entered into by Lee after the Period (1962-1965), has no bearing on the issues in this case. To the extent Marvel offers this agreement as evidence that "Marvel Comic Group" was some sort of legal entity encompassing Martin Goodman's shell companies at issue herein and MMC, that is misleading. As Marvel admits "Marvel Comics Group" during the relevant Period was not a legal entity at all. RSMF 1; *see also* AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself Cadence and renamed MMC and Goodman's comic book business --"Marvel Comics Group." AMF ¶ 19. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 32. Lens Decl. Ex. 23<br><br>("Composite of copies of agreements between Marvel and various freelancers, including Steve Ditko, dated between 1978 and 1985)<br><br>(2021MARVEL-0033453, 2021MARVEL-0017391 – 2021MARVEL-0017620, and 2021MARVEL-0017904 – 2021MARVEL-0018062) | Irrelevant (Fed. R. Evid. 401). To the extent these agreements are offered for their retroactive "work for hire" acknowledgements (relating to works created decades earlier) that Marvel insisted upon as a condition to its return to freelancers of their physical artwork or as a condition to future employment, such purported retroactive "acknowledgements" are irrelevant to the facts and law governing the actual relationship between Ditko and "Marvel" in the 1962-1965 Period and are unenforceable. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (holding that a retroactive acknowledgement by Joe Simon, in a settlement agreement with Marvel, that Captain America was a "work made for hire," years after the character had been co-created by him, was an unenforceable "agreement to the contrary" under 17 U.S.C. § 304(c). |
| 33. Lens Decl. Ex. 35<br><br>(Copy of excerpts from *Marvel Masterworks: Avengers*, Vol. 4 (2012))<br><br>(2021MARVEL-0125769 – 2021MARVEL-0125990) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the Exhibit. No foundation is provided for the documents contained in the book excerpts which comprise the Exhibit.<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Nor has Mr. Thomas been disclosed and designated as an expert witness by Marvel.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents contained in Exhibit 35 beyond stating that "Exhibit 35 is a true and correct copy of excerpts from Marvel Masterworks: Avengers, Vol. 4 (2012)."<br><br>Best Evidence Rule (Fed. R. Evid. 1002). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Speculation (Fed. R. Evid. 701)<br><br>Irrelevant (Fed. R. Evid. 401)<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802). These excerpts are full of hearsay and are not subject to any hearsay exception. |
| 34.  Lens Decl. Ex. 36<br><br>(Copy of an introduction to Marvel Masterworks: Marvel Rarities, Vol. 1 (2014))<br><br>(2021MARVEL-0073592 – 2021MARVEL-0073596) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br>Mr. Thomas is also not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802).  Mr. Thomas's "Introduction," is replete with hearsay, not subject to any exception.<br><br>Improper Expert Opinion. Mr. Thomas has not been disclosed and designated by Marvel as an expert witness in this case. |
| 35.  Lens Decl. Ex. 37<br><br>(Excerpts from 75 Years of Marvel (December 2014), published by Taschen)<br><br>(2021MARVEL-0075642 – | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 2021MARVEL-0075763) | <u>Hearsay (Fed. R. Evid. 802).</u><br><br><u>Best Evidence Rule (Fed. R. Evid. 1002).</u><br><br><u>Improper Expert Opinion.</u> Mr. Thomas has not been disclosed and designated by Marvel as an expert witness in this case.<br><br>This Exhibit contains excerpts of a book written by Roy Thomas. It summarizes the content of numerous distinct comics and provides information and analysis regarding characters' development. The information and opinion contained in the article relies on other unidentified sources. The person responsible for the creation of this work cannot provide expert or lay opinion.<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Nor has Mr. Thomas been disclosed and designated by Marvel as an expert in this case |
| 36. Lens Decl. Ex. 38<br><br>(Copy of an interview entitled "Stan Made Up the Plot . . . And I'd Write the Script!," published in *Alter Ego* No. 2 (Autumn 1999))<br><br>(2021MARVEL-0027468 – 2021MARVEL-0027481) | <u>Hearsay (Fed. R. Evid. 802).</u> The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 37. Lens Decl. Ex. 39<br><br>(Excerpts from an interview entitled "Fifty | <u>Hearsay (Fed. R. Evid. 802).</u> The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 |

| Material Objected To: | Grounds for Objection: |
|---|---|
| Years on the 'A' List: A Candid Conversation with John Romita," published in *Alter Ego* No. 9 (July 2001))<br><br>(2021MARVEL-0079978 – 2021MARVEL-0080017) | (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 38.  Lens Decl. Ex. 40<br><br>(Excerpts from a document entitled "And Men Shall Call Him . . . PROTOTYPE! – Part II: Of Mystics, Mighty Men, and Immortals," published in *Alter Ego* No. 31 (December 2003))<br><br>(2021MARVEL-0074178 – 2021MARVEL-0074207) | Irrelevant (Fed. R. Evid. 401).<br><br>Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Hearsay (Fed. R. Evid. 802). This article is full of hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br>Improper Opinion.<br><br>This article, apparently written by Tom Lammers, and edited by Roy Thomas as well as others, summarizes the content of numerous distinct comics and provides information and analysis regarding characters' evolution over the course of comic book issues. The information and opinion contained in the article, which is highlighted by Plaintiff, relies on other unidentified sources. The persons responsible for the creation of this work cannot provide expert or lay opinion. Neither individual is a percipient witness with respect to the creation of Ditko's works or relationship with MMC in the Period, nor have either been disclosed and designated by Marvel as an expert in this case. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 39.  Lens Decl. Ex. 41<br><br>(Excerpts from an interview entitled "Stan Lee's Amazing Marvel Interview," published in *Alter Ego* No. 104 (August 2011))<br><br>(2021MARVEL-0071404 – 2021MARVEL-0071450) | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the two articles are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted) |
| 40.  Lens Decl. Ex. 42<br><br>(Excerpts from a document entitled "The Secret Kirby Origin on Iron Man," published in Alter Ego No. 170 (July 2021))<br><br>(2021MARVEL-0074241 – 2021MARVEL-0074249) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br>Speculation (Fed. R. Evid. 701)<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802). The article is introduced for the truth of the matter asserted therein and is hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Improper Expert Opinion.<br><br>This Exhibit contains excerpts of a book written by Roy Thomas. It summarizes the content of numerous distinct comics and provides information and analysis regarding comic book characters' portrayal and development over time. The information and opinion contained in the article relies on other unidentified sources. Mr. Thomas, the person allegedly responsible for the creation of this article cannot provide |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | expert testimony because he has not been disclosed and designated by Marvel as an expert in this case. He also cannot provide lay opinion. Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or Ditko's relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. |
| 41. Lens Decl. Ex. 43<br><br>(Excerpts from an interview entitled "Gold and Silver Memories," published in Write Now! No. 18 (Summer 2008))<br><br>(2021MARVEL-0073293 – 2021MARVEL-0073294) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 42. Lens Decl. Ex. 44<br><br>(Copy of an interview entitled "The Spider's Man: The Life Story of Steve Ditko," published in Komik Heroes of the Future #6 (1964) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(DITKO-0040 – DITKO-0041) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 43. Lens Decl. Ex. 45 | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (Copy of an interview entitled "Steve Ditko: A Portrait of the Master," published in Comic Fan #2 (1965) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(DITKO-0045 – DITKO-0046) | matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 44.  Lens Decl. Ex. 48<br><br>(Copy of a document entitled "An Insider's Part of Comics History: Jack Kirby's Spider-Man," published in Robin Snyder's History of Comics, Vol. 1 No. 5 (May 1990))<br><br>(DITKO-0183 – DITKO-0188) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br><u>Speculation (Fed. R. Evid. 701).</u><br><br><u>Irrelevant (Fed. R. Evid. 401).</u><br><br><u>Inadmissible Legal Conclusion.</u><br><br><u>Hearsay (Fed. R. Evid. 802).</u><br><br><u>Best Evidence Rule (Fed. R. Evid. 1002).</u><br><br><u>Improper Opinion.</u><br><br>Robin Snyder's article is full of hearsay and legal conclusions. It refers to numerous extraneous sources and is thus also subject to the best evidence rule. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 45.  Lens Decl. Ex. 65 | <u>Hearsay (Fed. R. Evid. 802).</u> The letter from counsel reproduced in Exhibit 65 cannot be introduced at trial for the truth of the matters asserted therein, i.e., what efforts were |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (Copy of a September 20, 2022 letter from Molly M. Lens to Marc Toberoff.) | actually taken and by whom to locate the checks from "Marvel" to Ditko issued in the relevant Period, or to locate *any* checks from the Period to any freelancer or for Plaintiff's alleged inability to find any checks from the Period or the 1960's. Marvel merely produced just three checks issued to freelancers from the mid-1970s (which were already available to the Estate, including via a Google search).<br><br>Irrelevant (Fed. R. Evid. 401). |
| 46. Lens Decl. Ex. 68<br><br>(Copy of a notebook titled "Donald L. Heck Account Book for Earnings")<br><br>(DETTWILER-0014 – DETTWILER-0127) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the notebook.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "it is a true and correct copy of a notebook titled 'Donald L. Heck Account Book for Earnings' produced by Defendant Keith A. Dettwiler" |
| 47. Lens Decl. Ex. 69<br><br>(Copy of a document entitled "Synopses: The Fantastic Four [—] July '61 Schedule (#1)")<br><br>(2021MARVEL-0023907 – 2021MARVEL-0023908) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the document.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "a true and correct copy of a document entitled 'Synopses: The Fantastic Four [—] July '61 Schedule (#1)" As widely reported, the authenticity of this purported Fantastic Four "synopsis" by Mr. Lee has been analyzed in detail and debunked by comic book experts.<br><br>Irrelevant (Fed. R. Evid. 401). |
| 48. Lens Decl. Ex. 70<br><br>(Copies of documents entitled "Avengers Plot," "The Avengers vs. Sub-Mariner (#40)," and | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the document.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "a true and |

| Material Objected To: | Grounds for Objection: |
|---|---|
| "Avengers vs. Super-Adaptoid")<br><br>(2021MARVEL-0071572 – 2021MARVEL-0071578; 2021MARVEL-0071592 – 2021MARVEL-0071594) | correct copy of a documents entitled "Avengers Plot," "The Avengers vs. Sub-Mariner (#40)," and "Avengers vs. Super-Adaptoid"<br><br>Irrelevant (Fed. R. Evid. 401). |
| 49. Lens Decl. Ex. 71<br><br>(Copy of excerpts from an interview of Stan Lee on WATL-TV Atlanta, time-stamped 3:25 – 6:09; 20:17 – 23:23)<br><br>(2021MARVEL-0126136) | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the interview are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 263 (S.D.N.Y. 2003) (Videotaped interview ruled inadmissible).<br><br>Irrelevant (Fed. R. Evid. 401). |
| 50. Lens Decl. Ex. 72<br><br>(Copy of excerpts from "Steve Ditko and Memories of Another Day" (J. Ballmann ed., 2020))<br><br>(DITKO-0020, DITKO-0023) | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 51. Lens Decl. Ex. 73<br><br>(Copy of an interview entitled "Spotlight on the Pros: Number 5; This Issue: Steve | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if |

| Material Objected To: | Grounds for Objection: |
|---|---|
| Ditko," published in The Rocket Blast / Rocket's Blast Comicollector #31 (June 1964) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(2021MARVEL-0024197 – 2021MARVEL-0024199) | sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 52. Lens Decl. Ex. 74<br><br>(Copy of an agreement between Cadence Industries Corporation and Stan Lee, dated April 9, 1976)<br><br>(DITKO-0019) | Irrelevant (Fed. R. Evid. 401); Hearsay (Fed. R. Evid. 802). The employment contract embodied in Ex. 22, which was entered into by Lee after the Period (1962-1965), has no bearing on the issues in this case. Any probative value is outweighed by risks of unfair prejudice. To the extent Plaintiff cites the highlighted text (best characterized as being a "representation" section of a non-compete clause), for the truth of the matters asserted therein, the writing amounts to hearsay. See highlighted text, sec. 4(a) ("You acknowledge that you are a unique talent in the comic book field, that Marvel Comics Group is dependent upon your continued supervision and employment, and that Marvel Comics Group would be irreparably damaged if you cease to be employed by them…") |
| 53. Lens Decl. Ex. 75<br><br>(Copy of a Certificate of Conducting Business Under Assumed Name "Marvel," dated March 8, 1967)<br><br>(2021MARVEL-0024197 – 2021MARVEL-0024199) | Irrelevant (Fed. R. Evid. 401). Whether a dba certificate was sought or attained after the relevant 1962-1965 Period for one or more of the shell companies has no bearing on the material issues in this case. Even if such a dba certificate had been sought or attained *in the Period* this would do nothing to establish an agency relationship between MMC (as the agent) and the relevant shell companies (as MMC's principal). Nor does a mere dba like "Marvel" for branding or marketing purposes, etc., affect or transform the status of the shell companies as separate juridical entities. Nor does it establish a material legal relationship between the relevant shell companies and any other corporation. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 54. Lens Decl. Ex. 76<br><br>(Copy of a Certificate of Conducting Business Under Assumed Name "Marvel Comics Group," dated March 8, 1967)<br><br>(2021MARVEL-0069149 – 2021MARVEL-0069155) | <u>Irrelevant (Fed. R. Evid. 401)</u>. Whether a dba certificate was sought or attained after the relevant 1962-1965 Period for one or more of the shell companies has no bearing on the material issues in this case. Even if such a dba certificate had been sought or attained *in the Period* this would do nothing to establish an agency relationship between MMC (as the agent) and the relevant shell companies (as MMC's principal). Nor does a mere dba like "Marvel Comics Group" for branding or marketing purposes, etc., affect or transform the status of the shell companies as separate juridical entities. Nor does it establish a material legal relationship between the relevant shell companies and any other corporation. |
| 55. Lens Decl. Ex. 77<br><br>(Copy of Lisa R. Kirby, Barbara J.Kirby, Neal L. Kirby, and Susan M. Kirby's "Notice of Termination of Transfer Covering Extended Renewal Term [–] "SPIDERMAN," dated September 15, 2009)<br><br>(2021MARVEL-0039754 – 2021MARVEL-0039761) | *Exhibit 77 appears to have been misidentified. The document filed as Dkt. No. 71-98 (captioned Ex. 77) is a Notice of Termination by Patrick S. Ditko, Administrator of the Estate of Stephen J. Ditko.*<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. This Notice of Termination misidentified as Ex. 77 refers to just the cover of just one published Spiderman story which was penciled by Jack Kirby. |
| 56. Lens Decl. Ex. 79<br><br>(Copy of excerpts of an interview entitled "An interview with DON HECK," published in Comics Feature No. 21 (November 1982)) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (2021MARVEL-0070310 – 2021MARVEL-0070322) | |
| 57.   Lens Decl. Ex. 81<br><br>(February 14, 2023 Defendant Patrick Ditko Deposition Excerpts)<br><br>(Pages 60:2-5, 62:3-12) | Lacks Foundation (Fed. R. Evid. 602); Calls for Speculation (Fed. R. Evid. 701). Patrick Ditko is a party to this case by virtue of his capacity as administrator of the estate of his brother, Stephen J. Ditko. Patrick Ditko testified that he "never discussed [] work with [his] brother." He further testified that his brother did not discuss these matters with family "[b]ecause he was that private" and would say: "What happens in New York stays in New York" (Ex.1, 21:2-9). Based on the foregoing, any responses by Patrick Ditko to questions pertaining to his brother's business with MMC would lack foundation and amount to speculation.<br><br>Irrelevant (Fed. R. Evid. 401). Due to the above no negative inferences should be drawn from Patrick Ditko's lack of relevant personal knowledge about his brother's business with Marvel.<br><br>Hearsay (Fed. R. Evid. 802: Marvel's questions about what Ditko told his brother regarding Dr. Strange sought inadmissible hearsay in any event. |
| 58.   Lens Decl. Ex. 82<br><br>(February 10, 2023 James Steranko Deposition Excerpts)<br><br>(Pages 25:2-8, 26:21-24, 75:18-19) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the document.<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802).<br><br>Speculation (Fed. R. Evid. 701).<br><br>The declarant, who claims to have begun working at MMC in 1966, is not a percipient witnesses with respect to the creation of Ditko's works or relationship with MMC in the Period.<br><br>Inadmissible Legal Conclusion. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Best Evidence Rule (Fed. R. Evid. 1002). The testimony highlighted by Plaintiff discusses multiple sketches which were allegedly received by the declarant and is this subject to the best evidence rule. |
| 59. Lens Decl. Ex. 83<br><br>(February 2, 2023 Michele Hart-Rico Deposition Excerpts)<br><br>(Pages 72:25-73:7, 207:24-208:1) | Irrelevant (Fed. R. Evid. 401).<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the testimony concerns the content of alleged interviews, the best evidence rule applies.<br><br>Hearsay (Fed. R. Evid. 802). The deposition testimony contains hearsay, including statements summarizing unidentified interviews and relies on other unidentified sources. The persons responsible for these interviews cannot provide expert or lay opinion, nor are they percipient witnesses. |
| 60. Lens Decl. Ex. 84<br><br>(January 20, 2023 Roy Thomas Deposition Excerpts)<br><br>(Pages 30:17-31:1, 87:11-90:4, 247:13-16, 273:11-15, 283:4-12, 303:14-304:19, 311:13, 335:2-5) | Improper and Undisclosed Expert Opinion Mr. Thomas purports to give expert testimony and artistic analysis regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. Mr. Thomas was neither disclosed nor designated as an expert witness in this case.<br><br>Lacks Foundation (Fed. R. Evid. 602) Plaintiff has not established a proper foundation for the admission of the document.<br><br>Speculation (Fed. R. Evid. 701)<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12.<br><br>Inadmissible Legal Conclusion. Mr. Thomas makes improper legal conclusions as to the corporate structure of the companies as well as the ownership of the companies.<br><br>Hearsay (Fed. R. Evid. 802). The declarant refers to out of court statements by others, including Stan Lee, which is inadmissible hearsay, not subject to any hearsay exception. |
| 61. Lens Decl. Ex. 85<br><br>(October 28, 2022 Nanci Solo Deposition Excerpts)<br><br>(Pages 155:16-156:3) | Irrelevant (Fed. R. Evid. 401). |
| 62. Lens Decl. Ex. 86<br><br>(October 25, 2022 Lawrence Lieber Deposition Excerpts)<br><br>(Page 156:5-13) | Hearsay (Fed. R. Evid. 802).<br><br>Irrelevant (Fed. R. Evid. 401). The declarant's statements regarding his own experiences with Lee are irrelevant for purposes of determining what occurred between Lee and Steve Ditko. |
| 63. Lens Decl. Ex. 87<br><br>(March 14, 2013 Stan Lee Deposition Excerpts from *Stan Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv-02663 (D. Colo.).)<br><br>(Page 109:19-25 [2021 MARVEL-0131443].) | Hearsay (Fed. R. Evid. 802). The article read into the record by counsel (which constitutes much of the Exhibit) is hearsay, not subject to any hearsay exception.<br><br>Inadmissible Legal Conclusion. The article read into the record by counsel as well as Mr. Lee's conclusion as to the accuracy of the statements contained therein (i.e., "Anything I create Stan Lee Media will own," "At Marvel I was an employee, a writer for hire[,]" and "No one who worked for a comics company back then owned anything they created") constitute inadmissible legal conclusions. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 64.  Lens Decl. Ex. 88<br><br>(May 13, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(Page 120:3-9 [2021 MARVEL-0130923].) | Lacks Foundation (Fed. R. Evid. 602). Mr. Lee's highlighted testimony affirming the statements of counsel and responding to counsel's questions lacks foundation.<br><br>Inadmissible Legal Conclusion. Mr. Lee makes improper legal conclusions in his rehearsed testimony regarding substantive copyright law issues and Marvel's alleged ownership of certain works. *See e.g.* 120:3-5 ("I never owned these characters. I did them as a work for hire. So the company owned the characters.")<br><br>Hearsay (Fed. R. Evid. 802); Contradictory Testimony. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>not</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 65. Lens Decl. Ex. 89<br><br>(March 6, 2007 James Steranko Siegel Deposition Excerpts from *Siegel v. Time Warner Inc*., Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).)<br><br>(Page 82:3-23) | <u>Inadmissible Legal Conclusion & Contradictory Testimony</u>. Mr. Steranko testified about his understanding of the "work for hire" doctrine as well as his legal conclusion that he was in a work for hire relationship. That testimony constitutes an inadmissible legal conclusion.<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. Mr. Steranko testimony about alleged statements made to him is hearsay, not subject to any hearsay exception.<br><br><u>Best Evidence Rule (Fed. R. Evid. 1002)</u>. Because Mr. Steranko's testimony concerns the content of alleged checks and other documents, the best evidence rule applies. |
| 66. Lens Decl. Ex. 90<br><br>(December 14, 1967 Martin Goodman 1967 Deposition Excerpts from *Joseph H. Simon v. Martin Goodman et al*. (N.Y. 1966),)<br><br>(Page 5:11-19 [2021 MARVEL-00411 69].) | <u>Lacks Foundation (Fed. R. Evid. 602)</u>. Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br><u>Speculation (Fed. R. Evid. 701)</u>. Mr. Goodman testified "I can't recall" when asked which entity published first published Captain America. Ex. 90 at 5:11-15. Moreover, Mr. Goodman was ignorant as to whether "[he] ha[d] the first publication copyrighted." *Id*. at 5:15-19. Mr. Goodman testified "I would believe so"; However, he identified no basis for his "belie[f]". *Id*.<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. It is unclear why Plaintiff cites this testimony. The questions to which Mr. Goodman responded are explicitly limited to Captain America. *See Id*. at 5:9-12 ("Q. When was Captain America first published. A. As near as I can recall the early part of 1940. Q. Who published it? A. One of my corporations.") To the extent this excerpt of deposition testimony is being cited for any property aside from Captain America, it is irrelevant.<br><br><u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Goodman's testimony concerns the content of the copyright registrations, the best evidence rule applies. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 67.  Lens Decl. Ex. 91<br><br>(November 13, 1967 Martin Goodman 1967 Bill of Particulars from *Joseph H. Simon v. Martin Goodman et al.*)<br><br>(2021MARVEL-0056396 – 2021MARVEL-0056405) | Best Evidence Rule (Fed. R. Evid. 1002). This document impermissibly discusses the content of numerous distinct documents.<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802). The document is inadmissible to prove the truth of the matters asserted therein, such as whether the lists of people and entities and descriptions thereof are accurate. It is not subject to any hearsay exception.<br><br>Inadmissible Legal Conclusion. This document contains multiple inadmissible legal conclusions. |
| 68.  Lens Decl. Ex. 94<br><br>(Clifford Meth, "The Gene Colan Interview" (June 17, 1995), reprinted in *The Invincible Gene Colan* 118, 181 (C. Meth ed., 2010).)<br><br>(COLAN-0061 – COLAN-0067) | Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802). The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |
| 69.  Lens Decl. Ex. 95<br><br>("INTERVIEW: JIM STERANKO" and "HE COULDN'T WAIT," published in *Fantastic Fanzine* No. 11, pgs. 11, 31 (1970).)<br><br>(STERANKO-0165 – STERANKO-0184) | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the two articles are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 70.  Lens Decl. Ex. 96<br><br>(Martin Goodman Letter [To Whom it May Concern] dated March 20, 1967)<br><br>(2021MARVEL-0069166) | Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802)<br><br>Inadmissible Legal Conclusion.<br><br>The letter in question is not admissible to substantively establish that Charles Goodman gave Martin Goodman the authority with regard to the subject matter of the statement. |
| 71.  Lens Decl. Ex. 97<br><br>(Goodman Licensing Schedules containing the header "Simon v. Goodman" and captions "SCHEDULE 3–A, Miscellaneous Contracts Concerning Captain America", "SCHEDULE 3–B. Contracts with Krantz Films, Inc. on Standard Form Concerning Captain America", and "SCHEDULE 3–C. Contracts with Magazine Management on Standard Form Concerning Captain America")<br><br>(2021MARVEL-0039774, 2021MARVEL-0039824, and 2021MARVEL-0039825) | Lacks Foundation (Fed. R. Evid. 602) & Improper Summary.<br><br>Plaintiff has not established a proper foundation for the admission of summaries of the documents listed in Exhibit 97.<br><br>Hearsay (Fed. R. Evid. 802). As these alleged contract "schedules" are offered for the truth of the matters stated therein, this Exhibit contains inadmissible hearsay, not subject to any exception.<br><br>Irrelevant (Fed. R. Evid. 401). |
| 72.  Lens Decl. Ex. 98 | Irrelevant (Fed. R. Evid. 401). |

| Material Objected To: | Grounds for Objection: |
|---|---|
| (Kirby's MoL ISO Opp to MSJ dated March 25, 2011, filed in *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 1:10-cv-00141 (CM) (KF) (S.D.N.Y.), ECF 96.) | <u>Legal memoranda are not evidence</u>. The legal memorandum filed in a separate case, on behalf of different parties, is at best an opinion about the evidence at a particular point in time, which would confuse the jury by presenting them with incomplete facts and would force them to speculate as to the meaning and basis without providing the complete context. Accordingly, the legal memorandum should be excluded by the Court under Rules 401 and 403. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). |
| 73.  Lens Decl. Ex. 99<br><br>(Magic Comics Excerpts) | <u>Authenticity (Fed. R. Evid. 901)</u>. Plaintiff has not authenticated the documents beyond stating that the Exhibit "is a composite of true and correct images extracted from publicly available websites that depict excerpts of [the comics]" depicted therein. |
| 74.  Lens Decl. Ex. 100<br><br>(*Doctor Strange* Vol. 1, No. 181 (July 1969).) | <u>Irrelevant (Fed. R. Evid. 401)</u>. The allusion to a potential origin story in a particular comic book issue is immaterial to whether Defendant created the Doctor Strange character. |

Date: July 28, 2023

Respectfully submitted,

By: _____*/s/ Marc Toberoff*_____
       Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
*mtoberoff@toberoffandassociates.com*
23823 Malibu Road, Suite 50-363
Malibu, CA 90265

*Attorneys for Patrick S. Ditko*