# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC., | Case No.: 1:21-cv-07957-LAK |
| Plaintiff, | |
| v. | Hon. Lewis A. Kaplan |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | **MARVEL CHARACTERS, INC.'S RESPONSE TO DEFENDANT AND COUNTERCLAIMANT PATRICK S. DITKO'S EVIDENTIARY OBJECTIONS TO EVIDENCE OFFERED IN SUPPORT OF MARVEL CHARACTERS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko, | |
| Counterclaimant, | |
| v. | |
| MARVEL CHARACTERS, INC. and DOES 1-10, inclusive, | |
| Counterclaim-Defendants. | |

1

Plaintiff Marvel Characters, Inc. ("MCI"), by and through its undersigned counsel, respectfully submits this response to Defendant Patrick S. Ditko's evidentiary objections.  Defendant did not file evidentiary objections to the evidence that MCI submitted with its motion for summary judgment with his opposition to MCI's motion.  Instead, Defendant waited until he filed his reply papers on his own motion for summary judgment to file omnibus objections to (1) the evidence that MCI submitted with its motion for summary judgment more than two months earlier (Objections Nos. 1 to 50); and (2) the more limited evidence that MCI submitted in opposition to Defendant's cross-motion for summary judgment (Objection Nos. 51-74).  Because MCI did not previously have an opportunity to respond to Defendant's evidentiary objections, MCI submits its response to such objections now.  *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015) (the proponent of evidence must have "an opportunity to respond to the [non-moving party's] objections or to supplement the record with additional documentation").

As explained below, Defendant's evidentiary objections are all meritless and should be rejected for two additional reasons.  First, Defendant's objections to MCI's evidence submitted in support of MCI's motion for summary judgment are untimely, as they should have been submitted on June 30, 2023, with Defendant's other opposition papers.  Further, many of Defendant's purported objections are not evidentiary objections at all but rather thinly disguised legal arguments serving as an improper sur-reply to MCI's motion.[1]  *See, e.g.*, Dkt. 100 at 5-7, 23, 28, 38-39 (argument concerning "shell companies"); *id.* at 6-7 (arguing that Marvel Comics Group "was not a legal entity"); *id.* at 10-15, 17-25, 43-44 (arguing that Stan Lee was "biased").

---

[1] In so doing, Defendant further improperly evades the Court's page limits on briefing, even though Defendant already benefited from—and used—an additional 20 pages of briefing upon seeking leave of the Court.  *See* Dkts. 64, 76, 88.

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 1. | Bard Decl. Ex. 1<br><br>("Composite of" "copies of Marvel corporate documents produced by Nanci Solo and Erik Colan in this and other matters (*Marvel Characters, Inc. v. Solo*, No. 1:21-cv-05316-NRM-TAM (E.D.N.Y.) and *Marvel Characters, Inc. v. Hart-Rico*, No. 2:21-cv-07624-DMG-KES (C.D. Cal.)")<br><br>(COLAN0261-COLAN-0299) | Articles of Incorporation (Atlas Magazines, Inc.. Canam Publishers Sales Corp., and Non-Pareil Publishing Corp., May 22, 1970) (COLAN-0275-0299).<br><br>Irrelevant (Fed. R. Evid. 401). Highlighted portions of Articles of Incorporation (i.e., boilerplate corporate purpose sections) are irrelevant for establishing legal relationship between the shell companies and any other alleged "Marvel" entity or for establishing that the shell companies had any actual business operations. | Defendant's argument that various corporate documents filed on behalf of various entities owned by Martin Goodman and/or his wife Jean Goodman—including the entities that published the Works—are somehow **irrelevant** lacks merit. This composite exhibit establishes that the entities that published and filed copyright registrations for the Works (*i.e.*, MCI's predecessors-in-interest) all had the same stated purpose, were all directed by the same President and Director, Martin Goodman, and were all wholly owned and controlled by the same shareholders, Martin and Jean Goodman.  These documents are plainly relevant to establishing the copyright chain of title to the Works, and to rebut Defendant's argument that the Works were not created at Marvel's instance and expense. |
| 2. | Bard Decl. Ex. 2<br><br>("Copy of the 1967 schedule of 'Martin Goodman's Corporations'")<br><br>(2021MARVEL-0069701 – 2021MARVEL-0069704) | Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the contents of the "schedule" beyond stating that it is true and correct copy.<br><br>Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify | To start, Defendant's **authenticity** and **foundation** objections ignore that the schedule MCI relies on in this exhibit is attached to a letter dated October 4, 1967 from Charles R. Brainard to Michael E. Shultz, who is alive and could authenticate the document and lay any further necessary foundation at trial.  *See, e.g.*, *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) ("In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible at a trial.") (internal |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | as a public record.<br><br>Hearsay (Fed. R. Evid. 802). The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the schedule concerns the content of alleged other documents (which have not been identified), the best evidence rule applies. | quotation marks omitted).  Defendant also ignores that this is plainly an ancient document, and hence that it can be authenticated under Rule 901(b)(8).<br><br>Similarly, because the document is ancient and was produced after a diligent search of files maintained by Kenyon & Kenyon—Marvel's regular outside counsel during the 1950s and 1960s—it is admissible under Rule 803(16)'s exception to the rule against **hearsay**.  *See* Fed. R. Evid. 803(16); *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 643 (2d Cir. 2004) (letters authenticated as ancient documents excepted from hearsay rule).<br><br>Finally, it is unclear why Defendant believes that a schedule of all corporations owned by Martin Goodman, along with a calculation of fiscal year profits and net worth, would violate the **best evidence rule**.  Because the document is not being offered to prove the content of any writings, the best evidence rule does not apply.  *See Diamondstar Ent. Holdings, LLC v. THH, LLC*, 2022 WL 16951838, at *7 n.4 (C.D. Cal. Nov. 15, 2022) ("The 'best evidence' rule, embodied in Fed. R. Evid. 1002, comes into play only when the Terms of a Writing are being established."). |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 3.<br><br>Bard Decl. Ex. 3<br><br>("Copy of the May 19, 1966 schedule of 'Active Corporations and Magazines'")<br><br>(2021MARVEL-0069261 – 2021MARVEL-0069264) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify as a public record.<br><br><u>Authenticity (Fed. R. Evid. 901).</u> Plaintiff has not authenticated the contents of the "schedule" beyond stating that it is true and correct copy.<br><br><u>Hearsay (Fed. R. Evid. 802).</u> The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein.<br><br><u>Best Evidence Rule (Fed. R. Evid. 1002).</u> Because the schedule concerns the content of alleged other documents, the best evidence rule applies. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 2.  *See supra* at 3-4. |
| 4.<br><br>Bard Decl. Ex. 4<br><br>("Copy of an undated schedule of Martin Goodman's corporations")<br><br>(2021MARVEL-0069792) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of the schedule. The author of the schedule is not identified in the declaration or in the document itself. There is insufficient foundation to admit it as a business record and it does not qualify as a public record.<br><br><u>Hearsay (Fed. R. Evid. 802).</u> The schedule is inadmissible hearsay, not subject to any exception. Plaintiff cannot use it to prove the truth of the matters contained therein. The  document fails to | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 2.  *See supra* at 3-4.<br><br>Further, while this exhibit is undated, courts may consider extrinsic evidence to establish that it is more than 20 years old.  *See, e.g.*, *U.S. v. Portrait of Wally*, 663 F. Supp. 2d 232, 255 (S.D.N.Y. 2009) (admitting undated letter as an ancient document where document was "found in a likely place" and the "appearance of the document d[id] not raise a contrary suspicion").  Here, the |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | satisfy the business records exception as (by Plaintiff's own admission) it is unknown when it was even created. See Fed. R. Evid. 803(6)(A).<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the schedule concerns the content of alleged other documents, the best evidence rule applies. | schedule is on visibly dated paper, it was found in counsel's files along with other contemporaneous business and legal records, and it contains notations written in pencil reflecting corporate changes over time for entities that were dissolved no later than the 1970s (suggesting that the document was created, and continuously updated, prior to the 1970s). It therefore qualifies as an ancient document. *See* Fed. R. Evid. 803(16); *Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay rule). |
| 5. | Bard Decl. Ex. 5<br><br>(Copy of Magazine Management Company's June 28, 1951 Dun & Bradstreet report)<br><br>(2021MARVEL-0069621 – 2021MARVEL-0069623) | Inadmissible Legal Conclusion. The Report contains impermissible legal conclusions by non-lawyers: "SYNOPSIS[:] BACKGROUND: Partnership formed 1942. Principals currently appear as officers in a large number of affiliated corporations." (2021MARVEL-0069621); "12 subsidiary publishing corporations" (2021MARVEL-0069622); "OPERATION-LOCATION[:] This concern functions as the managing organization for the various publishing corporations in which Martin Goodman is a principal or a stockholder." (*Id.*)<br><br>Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701); Hearsay (Fed. R. Evid. 802) & Improper Summary. Plaintiff has not established a proper foundation for the admission of summaries of unspecified corporate documents indirectly referred to in Bard Decl., Ex. 5. By its very terms, this Report is limited by its scope and sources. (*See* | Descriptions of when a partnership was formed, who the principals are, and what the partnership does are straightforward matters of fact and not "**impermissible legal conclusions**," as Defendant claims. *See, e.g., Hagen v. United States*, 485 F. Supp. 2d 622, 627 (D. Md. 2007) (finding "there can be no dispute that the portions of [fact witness's] testimony relating to the corporate structure and management of corporate finances are admissible").<br><br>Further, Defendant's assertion that this exhibit purportedly **lacks foundation** and contains **speculation** and "**improper summary**" is baseless. MCI relies only upon the "synopsis," "history," and "operation-location" sections for which Dun & Bradstreet was able to properly provide detailed information as part of its regular |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | e.g., 2021MARVEL-0069622 ["however, there has been no complete financial information issued on any of the above corporations and there are no inter-company relations… reported."]; *Id.*["Repeated attempts to contact… proved unsuccessful… Requests left for interview, have gone unanswered."]). The report is inadmissible hearsay, not subject to any exception. *See Chavez v. Metropolitan Dist. Com'n,* 198 Fed. Appx. 74 (2d Cir. 2006) (compliance report was inadmissible because it was hearsay, irrelevant and unduly prejudicial).<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because the Report concerns the content of alleged other documents, including unspecified corporate agreements, the best evidence rule applies. | reporting.<br><br>This exhibit is also admissible under the **hearsay** exception in Rule 803(16) for ancient documents and can be **authenticated** under Rule 901(b)(1) & (8), for the reasons outlined in MCI's Response to Defendant's Objection No. 2.  *See supra* at 3-4.<br><br>Moreover, courts routinely admit Dun & Bradstreet reports as credible and reliable business records under Rule 803(6).  *See U.S. v. Beecroft,* 608 F.2d 753, 761 (9th Cir. 1979) (admitting one of Dun and Bradstreet's "regularly prepare[d]" and "trustworthy" reports under Federal Rule of Evidence 803(6)); *see also Hamilton v. Accu-Tek,* 32 F. Supp. 2d 47, 63-64 & n.11 (E.D.N.Y. 1998).<br><br>And, because nothing in this exhibit is being offered to prove the content of any writings, the **best evidence rule** does not apply.  *See Diamondstar,* 2022 WL 16951838, at *7 n.4. |
| 6. | Bard Decl. Ex. 6<br><br>(July 24, 1957 opinion in *Gayle v. Magazine Management Co.*, 153 F. Supp. 861, 864 (M.D. Ala. 1957)<br><br>(2021MARVEL-0047410 – 2021MARVEL-0047415) | Judicial decisions are not evidence. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).  The statements cited appear in passing the background section of an opinion concerning a completely different issue (*in personam* jurisdiction for a libel suit).  The court did not purport to make adjudicated "findings" about the relationship between Magazine Management Company ("MMC") and the shell companies. | Although **judicial opinions** generally do not qualify as evidence, this exhibit is admissible under Rule 803(16) as an ancient document and under Rule 807's residual hearsay exception.  The findings of facts in this decision are particularly trustworthy given that they were made by a federal judge and are corroborated by similar statements in other historical evidence.  *See, e.g.,* Bard Decl., Exs. 1-8; *see also Jones v. Washington Metro. Area Transit Auth.*, 946 F. Supp. 1011, 1019 (D.D.C. 1996) (admitting |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Hearsay (Fed. R. Evid. 802). The background section relied upon is inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br>Irrelevant (Fed. R. Evid. 401). The cited and quoted statement that MMC "exercises the over-all control of the other defendants" does not support Plaintiff's argument that MMC acted as the agent of the shell companies which were registered *by Marvel* with the U.S. Copyright Office as the statutory "authors" of the alleged "work for hire" at issue in this case. In addition, Marvel expressly relied on these very copyright registrations in its Complaint herein (Dkt. 1 ¶¶ 4, 14) and complaint allegations serve as "judicial admissions" by which a party is "bound throughout the course of the proceeding." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)). | factual findings from prior case under residual exception).<br><br>As noted above, this document is not inadmissible **hearsay**, as it is an ancient document under Rule 803(16) and separately admissible under Rule 807's residual hearsay exception.<br><br>Finally, contrary to Defendant's argument that the document is **irrelevant**, the fact that Magazine Management Company exercised "the over-all control of the other [Goodman] entities," including those entities which published the Works, is plainly relevant to rebutting Defendant's argument that Ditko did not work at the instance and expense of the copyright registrants for the Works. After all, the fact that the Goodman entities were commonly controlled by Magazine Management Company and operated at its direction confirms that Ditko worked at the instance and expense of the copyright registrant, whose dealings were carried out by Magazine Management Company. Ditko's own admissions reflect that he understood this, with Ditko writing in 1965 that he "did 1st work for Stan Lee and Marvel" in 1955 and in 1958 "Stan Lee asked [him] to do some work, [and he] returned to Marvel." *See* Lens Decl., Ex. 45 at 3; *see also* Lens Decl., Ex. 54 at 4 (Ditko describing "Marvel" as having "picky editors" who adopted the creed that "[t]he editor is always right"); Lens Decl., Ex. 57 at 3 (Ditko writing "What I did with |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | Spider-man, I was paid for. Marvel's property."). |
| 7. Bard Decl. Ex. 7 (July 26, 1962 FTC complaint and consent order in *In re Male Publishing Corp.* et al.,61 F.T.C. 315) (2021MARVEL-0047431 – 2021MARVEL-0047439) | <u>Complaint and Consent Order are not evidence</u>. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. The FTC complaint and consent order as relied on are inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. The FTC complaint and consent order states nothing about the *relationship* between the shell companies and MMC. It says that the "Marvel Comics Group" was an *unincorporated association* comprised of seven entities, but Atlas Comics was not one of them, and *neither was Magazine Management*. *In re Male Publishing Corp. et al.*, 61 F.T.C. 315, 1962 WL 75441 (F.T.C. July 26, 1962). The FTC complaint does not state or even suggest that MMC acted as the "agent" of any of the other respondents; rather, it says MMC was *one* vehicle by which Goodman "controls and operates approximately forty-eight [unnamed] corporations." *Id.* | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection 6. *See supra* at 7-8. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 8. | Bard Decl. Ex. 8<br><br>(March 14, 1976 memorandum and order in *Cadence Industries Corp. v. Ringer*, 76 Civ. 339 (S.D.N.Y.))<br><br>(2021MARVEL-0039411 – 2021MARVEL-0039444) | <u>Judicial decisions are not evidence</u>. *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at \*4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).  The statements cited appear in passing in the "<u>background</u>" section of an opinion concerning a completely different issue (whether in general one can register "composite works" as "for hire"). The court did not purport to make any adjudicated "findings" about the relationship between MMC and the shell companies at issue or even "Marvel Comics Group."<br><br><u>Hearsay (Fed. R. Evid. 802)</u>. The memorandum and order as relied upon are inadmissible hearsay, not subject to any exception. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) ("judicial findings" "are inadmissible hearsay" when proffered as evidence in another case.)<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. Marvel fudges the legal distinctions between separate corporate entities (e.g., the shell companies) by claiming they are all part of "Marvel Comics Group." But, as Marvel admits, Marvel Comics Group was not a legal entity in the relevant 1962-1965 period (the "Period"). RSMF ¶ 1; AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film and Chemical Co. (which bought MMC's assets) renamed itself "Cadence Industries Corp." and renamed MMC's business, "Marvel Comics Group." AMF ¶19. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 6.  *See supra* at 7-8.<br><br>Further, Defendant's legal contention that "Marvel Comics Group" was "just a branding name sporadically appearing on some comic books" is incorrect and not supported by the evidence.  As MCI's evidence establishes, Goodman's commonly owned and controlled entities long did business as Marvel, including during the relevant period.  *See* MCI's Reply in Support of Undisputed Fact 1 in MCI's Reply 56.1 Statement, Dkt. 104, citing Bard Decl., Ex. 8 at 5-6, Lens Opp. Decl., Ex. 93 at 4-5 (1966 advertising rate card for Marvel Comics Group); Lens Opp. Decl., Ex. 92 at 3-8 (1946 advertising rate card for Marvel Comics Group); Lens Decl., Ex. 45 at 3 (Ditko himself surely understood this, writing in 1965 that he "did 1st work for Stan Lee and Marvel" in 1955 and in 1958 "Stan Lee asked [him] to do some work, [and he] returned to Marvel."). |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 9. | Bard Decl. Ex. 9<br><br>(Cadence Industries Corporation's Answer, dated September 9, 1974, in *Jay K. Hoffman Presentations, Inc. v. Marvel Comics Group*, No. 86972/74 (N.Y.C. Civ. Ct.))<br><br>(2021MARVEL-0039912 – 2021MARVEL-0039914) | <u>Pleadings are not evidence.</u> *See Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, 2014 WL 625321, at *4 (N.D. Ill. Feb. 18, 2014) ("Judicial opinions and parties' own briefs are not evidence.") (citation omitted).<br><br><u>Hearsay (Fed. R. Evid. 802).</u> Allegations in an Answer are inadmissible hearsay when proffered as evidence in a different case. *See Blue Cross and Blue Shield v. Philip Morris*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001) (even "judicial findings" "are inadmissible hearsay" when offered as evidence in another case.)<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> Marvel fudges the legal distinctions between separate corporate entities (e.g., the shell companies) by claiming they are all part of "Marvel Comics Group." But, as Marvel admits, this was not a legal entity in the relevant Period. RSMF ¶ 1; AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself "Cadence Industries Corp." and renamed MMC's business, "Marvel Comics Group." AMF ¶ 19. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection Nos. 6 & 8.  *See supra* at 7-8, 10.<br><br>Defendant's objections further ignore that this Answer filed by MCI's predecessor in interest is sworn under oath.  *See, e.g., Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 391 (5th Cir. 1989) (admitting interrogatory answers under precursor to Federal Rule of Evidence 807). |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 10. | Lens Decl. Ex. 1<br><br>(February 14, 2023 Defendant Patrick Ditko Deposition Excerpts) | <u>Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701)</u>. Patrick Ditko is a party to this case by virtue of his capacity as administrator of the estate of his brother, Stephen J. Ditko. Patrick Ditko testified that he "never discussed [] work with [his] brother." He further testified that his brother did not discuss these matters "Because he was that private." (Tr. at 21:2-9) Based on the foregoing, Patrick Ditko's responses and/or lack of knowledge in response to questions pertaining to his brother's business affairs with MMC lack foundation.<br><br><u>Hearsay (Fed. R. Evid. 802).</u> Marvel's questions about what Ditko told his brother elicit inadmissible hearsay.<br><br><u>Improper Expert Opinion; Inadmissible Legal Conclusion.</u> Patrick Ditko's response to the question of whether he considers himself "qualified" to testify on whether the works in this case were "done on a work made for hire basis" lacks foundation, calls for speculation, calls for a legal opinion, and would be inadmissible at trial. (Tr. at 31:5-17) Although lay opinion testimony may embrace ultimate issues in a case, the benefits of such testimony "diminish the closer the opinion approaches the crucial issues in the case." *Hester v. BIC Corp.,* 225 F3d 178, 182 (2nd Cir. 2000) (internal quotes omitted) Lay witnesses are precluded from expressing an opinion based on scientific, technical or other specialized knowledge within the scope of Fed. R. Evid. 702 | Defendant's **foundation** and **speculation** objections ignore that Defendant obviously knows what he and his brother discussed (or didn't discuss) and is fully competent to testify about these topics based on his personal knowledge.<br><br>Nor are Defendant's admissions **hearsay**, as testimony confirming the absence of any out of court statements is not hearsay.  And, in any event, Ditko's statements can be used against Defendant under Rule 801(d)(2).  *See, e.g.,* Fed. R. Evid. 801(d)(2); *Baptist v. Bankers Indem. Ins. Co.*, 377 F.2d 211, 220 (2d Cir. 1967); *Estate of Shafer v. Comm'r*, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements are a "classic example of an admission"); *N.W. v. City of Long Beach*, 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence.").<br><br>Finally, Defendant's **improper expert opinion** and **inadmissible legal conclusion** objections ignore that Patrick Ditko's admissions are evidence that he is not qualified to provide testimony on the nature of Steve Ditko's work for Marvel.<br><br>Further, Defendant's admissions that he never spoke to his brother Steve Ditko about Steve |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | (expert testimony) (Fed. R. Evid. 701(c); see also *U.S. v. Glenn,* 312 F.3d 58, 66 (2d Cir. 2002).<br><br>Irrelevant (Fed. R. Evid. 401 and 403). Due to the above there are no negative inferences to be drawn from Patrick Ditko's lack of personal knowledge. Nor is it relevant that Patrick Ditko does not have the checks Marvel provided Ditko when it opted to buy his material because Ditko naturally deposited such checks. *Id.*28:12-23). Nor is it relevant, contrary to Marvel's suggestion, that Steve Ditko, an elderly non-lawyer, was not prepared to provide legal conclusions, including as to "work for hire," which would have been inadmissible in any event. Testimony elicited from Patrick Ditko about the ultimate value of his brother's estate (roughly half a century after the events giving rise to this case) is irrelevant as it has no bearing on the issues to be determined, and even if it did, admission of such testimony would be unduly prejudicial. (Tr. at 153:13-6). | Ditko's comic book work are **relevant** to show that Defendant has no personal knowledge to support his claim that Doctor Strange and various other Marvel characters that appear in the Works were conceived of by Ditko prior to his work for Marvel. *See* Dkt. 68 at 14; Dkt. 92 at 14. |
| 11. | Lens Decl. Ex. 2<br><br>(January 20, 2023 Roy Thomas Deposition Excerpts) | Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701). Mr. Thomas is not a percipient witness with respect to the creation of Ditko's works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12. Lay witness testimony must be grounded in observation or | While Defendant objects on the basis of **foundation** and **speculation**, Defendant does not identify any testimony from Roy Thomas that is not based on his personal knowledge. Nor could he. Thomas testified based on his personal knowledge and experience working at Marvel. Further, Defendant ignores that "[t]he test of admissibility pursuant to Fed. R. Evid. 602 is whether a reasonable trier of fact could believe the witness had personal knowledge of the facts to |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | other first-hand personal experience. Here, Mr. Thomas' testimony lacks foundation and amounts to speculation. The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation.<br><br>Improper and Undisclosed Expert Opinion Mr. Thomas purports to give expert testimony and artistic analysis regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. However, Plaintiff has neither disclosed nor designated Mr. Thomas as an expert witness in this case.<br><br>Irrelevant (Fed. R. Evid. 401). | which he is testifying." *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 427 (S.D.N.Y. 2000) (addressing foundation objections at summary judgment stage). Moreover, contrary to Defendant's objections that Thomas purportedly lacks foundation and/or is speculating, Defendant himself relies on Thomas as a percipient witness, thereby underscoring that Defendant's objections are baseless. *See* Dkt. 78 at 4-5, 8-12, 14-17, 19-35, 44-45 (relying on Thomas testimony).<br><br>Defendant also argues that Thomas's testimony that Doctor Strange and "Mandrake the Magician" look similar is **improper expert testimony**. But this testimony was elicited by Defendant's own counsel. Defendant also ignores that Marvel proffered this testimony to rebut Defendant's unsupported suggestion that a bare 1946 sketch "is" Doctor Strange. *See* Dkt. 92 at 25-26.<br><br>Defendant tellingly proffers no support for his **relevance** objection. Roy Thomas is one of the few living witnesses with personal knowledge of Marvel's operations during the relevant time period. Thomas was properly disclosed by MCI as a witness with relevant knowledge in its initial Rule 26(a) disclosures. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 12. | Lens Decl. Ex. 3<br><br>(October 25, 2022 Lawrence D. Lieber Deposition Excerpts) | Hearsay (Fed. R. Evid. 802). Much of Mr. Lieber's testimony, including those highlighted sections cited in Plaintiff's Opposition Memorandum, contain hearsay.<br><br>Inadmissible Legal Conclusions. Mr. Lieber statements incorporate legal conclusions.<br><br>Lacks Foundation (Fed. R. Evid. 602). Mr. Lieber's highlighted testimony affirming the statements of counsel lacks foundation.<br><br>Irrelevant (Fed. R. Evid. 401). How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Steve Ditko ("Ditko") and other freelance artists in the Period when "Marvel" was a tiny fledgling business. | Defendant's **hearsay** objection is meritless because Lieber's testimony could be presented in a non-hearsay form by calling Lieber at trial in this case. *See Savage v. Scripto-Tokai* Corp., 266 F. Supp. 2d 344, 351 (D. Conn. 2003) (considering hearsay evidence, where it appeared that plaintiffs would "be able to present this evidence in admissible form at trial, either by calling the deponents themselves or establishing their unavailability").<br><br>While Defendant asserts that Lieber's testimony incorporates **legal conclusions** and **lacks foundation**, he identifies no specific purported legal conclusions or unfounded testimony in Lieber's testimony.  Nor could he, as Lieber simply testifies concerning his experience working as a freelancer for Marvel.<br><br>Finally, while Defendant claims that Lieber's testimony is **irrelevant**, Defendant acknowledges that Lieber testified about his working relationship with Marvel and, more particularly, with Stan Lee during the relevant time period.  That testimony is plainly relevant to Marvel's working relationship with its freelancers during the time period. |
| 13. | Lens Decl. Ex. 4<br><br>(March 14, 2013 Stan Lee Deposition Excerpts from *Stan* | Lacks Foundation (Fed. R. Evid. 602). Mr. Lee's highlighted testimony affirming the statements of counsel and responding to counsel's questions lacks foundation. | Stan Lee was Marvel's editor in chief and creative director for decades—including during the relevant time period.  His testimony is plainly based on his own personal knowledge and |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| *Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv- 02663 (D. Colo.) )<br><br>(Page 83:10-13, 93:23-94:21; 99:6-10; 97:7-9; 124:3-125:18)<br><br>(2021MARVEL-0131405 – 2021MARVEL-0131482) | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions as to the corporate structure of the companies as well as their ownership. See e.g., 83:10-13 ("Q. And am I correct that Timely, over time through various corporate changes, became what we know to be Marvel Comics today? A. That's right."); 99:6-10 ("Well, Martin Goodman was the publisher. He owned the company. And the company, issued the checks. And we all worked -- including me -- we all worked for Martin Goodman. I always assumed he's the fellow who owns everything.").<br><br><u>Speculation (Fed. R. Evid. 701)</u>. Mr. Lee testified "I always assumed he's the fellow who owns everything" (99:6-10), meaning his testimony on this subject amounts to speculation.<br><br><u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition | experience, and Defendant's unsupported claim that his testimony **lacks foundation** is meritless. Indeed, while Defendant focuses on a lone statement from Lee that he "always assumed [Goodman was] the fellow who owns everything," Marvel does not rely on that passing comment, but rather Lee's testimony that "Martin Goodman was the publisher" and "we all worked . . . for Martin Goodman," with such testimony plainly well founded and **non-speculative**.<br><br>Lee's testimony that Timely went through corporate changes to become Marvel Comics is not an **improper legal conclusion**. Lee simply explains his understanding—based on personal knowledge and experience—of how Timely Comics evolved to become Marvel during his tenure there.<br><br>Further, contrary to Defendant's claim, Lee's sworn deposition testimony is not inadmissible **hearsay**. Rather, it is admissible under both Rule 804(b)(1) and Rule 807's hearsay exceptions.<br><br>Under Rule 804(b)(1), Lee's prior deposition testimony is admissible because the parties in that case had a similar opportunity and motive to cross-examine Stan Lee. Indeed, the plaintiff in the prior case took positions substantially identical to those of Defendant here—*i.e.*, that Lee's work for Marvel was not done on a work-for-hire basis. Thus, the testimony is admissible under Rule 804(b)(1). *See, e.g., Fed. Hous. Fin. Agency v.* |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ 98. Nonetheless, on | *Merrill Lynch & Co.*, 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014) ("With respect to the interpretation of 'predecessor in interest,' courts have adopted a 'realistically generous [approach] over one that is formalistically grudging,' admitting testimony where 'it appears in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination.'") (quoting *Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)); *Rao v. Rodriguez*, 2017 WL 1753489, at *2 (E.D.N.Y. May 1, 2017) (interpreting rule to only require "opportunity and similar motive").<br><br>Lee's sworn deposition testimony is separately admissible under Rule 807's residual hearsay exception. Indeed, courts routinely admit sworn testimony of deceased witnesses in prior cases involving similar subject matter. *See Robinson v. Shapiro*, 646 F.2d 734, 742 (2d Cir. 1981) (admitting testimony of deceased witness where there was "no dispute that the evidence was material, nor can there be any serious argument that the statement was not 'more probative on the point for which it (was) offered' than other reasonably available evidence"); *Secs. Investor Protection Corp. v. Bernard L. Madoff Investment Secs. LLC*, 610 B.R. 197, 228-30 (S.D.N.Y. 2019) (admitting decedent's testimony from unrelated criminal trial under the residual exception); *Lisker v. City of Los Angeles*, 2012 WL 3610134, at *1-2 |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.*¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.*¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.*¶ 101. <br><br> Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.*¶ 102. This contradicts all the record evidence. *Id.*¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.*¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d | (C.D. Cal. Aug. 20, 2012) (deposition testimony of witnesses from prior case who were deceased at time of later case was admissible under residual exception); *see also King v. Armstrong World Indus., Inc.*, 906 F.2d 1022, 1025-26 (5th Cir. 1990) (affirming admission of 1975 deposition of deceased individual in case between unrelated parties touching on same general subject matter); *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 163 (S.D.N.Y. 2009) (admitting testimony of witnesses under residual exception, noting that they had "testified in court, before a jury, under oath and penalty of perjury, in a highly-scrutinized, public proceeding"). <br><br> Steve Ditko could have served purported termination notices prior to his passing in 2018 (when Stan Lee also passed away).  He chose not to.  Rather, after his brother's death, Patrick Ditko served the purported termination notices at issue.  MCI should not be punished as a result. <br><br> Finally, MCI responds to Defendant's improper argument that Lee's was purportedly "**biased.**" Courts "may not make credibility determinations" on summary judgment.  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  Defendant thus "cannot defeat summary judgment . . . merely by impugning [witnesses'] honesty."  *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999); *Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. | credibility of a witness will not, by themselves, present questions of material fact."). Indeed, despite similar attacks on Stan Lee's credibility, the Second Circuit relied extensively on Stan Lee's deposition testimony in the *Kirby* case. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 125-26, 141 (2d Cir. 2013).<br><br>Moreover, the only purportedly "**inconsistent**" testimony identified by Defendant relates to the content of legends stamped on the back of Marvel check in the 1960s. MCI does not rely on this testimony. And, in any event, testimony on the content of those legends is immaterial, as the Second Circuit's decision in *Kirby* confirms. *See Kirby*, 726 F.3d at 143 ("[W]e decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt."). |
| 14. | Lens Decl. Ex. 5<br><br>(March 13, 2013 Stan Lee Deposition Excerpts from *Stan Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv- 02663 (D. Colo.))<br><br>(2021MARVEL-0131319 – 2021MARVEL- | Lacks Foundation (Fed. R. Evid. 602). The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. (*See e.g.*, 5:13-18).<br><br>Hearsay (Fed. R. Evid. 802) ; Speculation (Fed. R. Evid. 701), Contradictory Testimony. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13. *See supra* at 15-19.<br><br>While Defendant also argues that the testimony purportedly **lacks foundation**, it concerns how Stan Lee was paid for his editorial contributions to Marvel works versus his freelance writing contributions to Marvel works—a subject about which Lee obviously had personal knowledge. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 0131404) | given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices  of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | received that did not bear this legend." *Id.*¶ 102. This contradicts all the record evidence. *Id.*¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.*¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory.  AMF ¶ 105. | |
| 15. | Lens Decl. Ex. 6<br><br>(May 4, 2011 Stan Lee Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.),)<br><br>(2021MARVEL-0130754 – 2021MARVEL-0130803) | <u>Lacks Foundation (Fed. R. Evid. 602) Speculation (Fed. R. Evid. 701).</u> The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. (*See e.g.*, 6:13-25 ["Q. Do you recall what the name of that company? A. … I don't know what name they used"].).<br><br><u>Inadmissible Legal Conclusion.</u> Mr. Lee makes improper  legal conclusions as to the corporate structure of the companies as well as their ownership. *See e.g.,* 6:23-25 (agreeing with representation contained in counsel's question that Timely Comics was a "division" of MMC).<br><br><u>Hearsay (Fed. R. Evid. 802); Speculation (Fed. R. Evid. 701)</u>, <u>Contradictory Testimony.</u> Stan Lee | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13.  *See supra* at 15-19.<br><br>Further, while Defendant argues that Lee's testimony **lacks foundation**, the testimony in this excerpt concerns Marvel's operations and Lee's role in those operations—subjects about which Lee obviously had personal knowledge. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC,* No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.*¶ 102. This contradicts all the record evidence. *Id.*¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, _not_ "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.*¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. | |
| 16. | Lens Decl. Ex. 7<br><br>(April 13, 2011 Roy Thomas Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.))<br><br>(2021MARVEL-130513 – 2021MARVEL-0130753) | <u>Lacks Foundation (Fed. R. Evid. 602).</u><br><br><u>Speculation (Fed. R. Evid. 701).</u><br><br><u>Irrelevant (Fed. R. Evid. 401).</u><br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 11.  *See supra* at 13-14.<br><br>Further, contrary to Defendant's unsupported assertions, Thomas's testimony is not **speculative** or without **foundation** simply because he caveated a response, "without remembering every single check."  *See* Lens Decl., Ex. 7 at 178:15-23.  That caveat simply underscores that Thomas provided truthful and accurate testimony. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12.  Notwithstanding the fact that his experience is from a time which is irrelevant to this action, Mr. Thomas conceded that his memory of this time was poor ("without remembering," "I don't remember"). | |
| 17. | Lens Decl. Ex. 8<br><br>(April 12, 2011 Roy Thomas Deposition Excerpts from *Gary Friedrich Enterprises LLC v. Marvel Enterprises, Inc.*, No. 08-cv-01533 (S.D.N.Y.))<br><br>(2021MARVEL-0041265 – 2021MARVEL-0041434) | Lacks Foundation ((Fed. R. Evid. 602).<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Inadmissible Legal Conclusion. Mr. Thomas makes improper legal conclusions as to the corporate structure of the companies, including that "Marvel" was a "division of" "the parent company," Magazine Management, as well as the ownership of the companies. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 11.  *See supra* at 13-14. |
| 18. | Lens Decl. Ex. 9<br><br>(January 7, 2011 Lawrence Lieber | Speculation (Fed. R. Evid. 701) Mr. Lieber repeatedly testified "I don't know" when asked about the contents of the back of the check. Moreover, he | These excerpts from Larry Lieber's 2011 deposition in the *Kirby* case concern his working relationship with Marvel and Stan Lee, and are |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.)) <br><br> (2021MARVEL-0130397 – 2021MARVEL-0130512) | stated that for years he "wouldn't have noticed" anything about the checks because he stopped looking at them. (Pages 9, 33). Mr. Lieber also stated that he "didn't know" the origins and details of the Marvel Method. (Page 47). <br><br> <u>Irrelevant (Fed. R. Evid. 401)</u>. Whether Mr. Lieber, himself, chose to submit works that were not assigned to him is irrelevant. How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Steve Ditko ("Ditko") and other freelance artists in the Period when "Marvel" was a tiny business. <br><br> <u>Best Evidence Rule (Fed. R. Evid. 1002)</u>. Because Mr. Lieber's testimony concerns the content of the documents (including checks), the best evidence rule applies. Mr. Lieber repeatedly testified "I don't know" when asked about the contents of the back of the check. Moreover, he stated that for years he "wouldn't have noticed" anything about the checks because he stopped looking at them. (Pages 9, 33). Mr. Lieber also stated that he "didn't know" the origins and details of the Marvel Method. (Page 47). | therefore based on Lieber's personal knowledge and experience. While Defendant suggests the testimony is **speculative** because Lieber testified he "didn't know" what the language on the back of checks from Marvel to freelance contributors said in the relevant time period, testimony that a witness *does not know* something is not speculative or lacking in foundation. Indeed, MCI proffers Lieber's testimony for precisely that reason—to show he has no recollection of what the checks he received approximately 60 years ago said. <br><br> And, contrary to Defendant's **relevance** objection, Lieber's working relationship with Marvel and Stan Lee is relevant to show Marvel's practices during the time period. Even if that were not the case, Lieber testified about Lee's working relationship with Steve Ditko in particular in the proffered excerpts, with Lieber testifying that "there was usually one story for Ditko in the books and Stan liked to write that himself, so he made it up and he worked with Ditko." *See* Lens Decl., Ex. 9 at 18:9-13. <br><br> And the **best evidence rule** does not apply here, because Lieber's testimony only concerns his *lack of knowledge* of the contents of the legend on the back of checks from Marvel to freelancers, *i.e.* the testimony is not being offered to establish the contents of a writing. *United States v. Holland*, 223 F. App'x 891, 898 (11th Cir. 2007) ("the Best Evidence Rule only applies when the *contents* of |

| **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|
| | | the writing or recording are sought to be proved"). |
| 19. | Lens Decl. Ex. 10<br><br>(December 8, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 08-cv-01533 (S.D.N.Y.) ("*Kirby*")<br><br>(2021MARVEL-0131062 – 2021MARVEL-0131318) | Lacks Foundation (Fed. R. Evid. 602). This is an impermissible attempt at introducing propensity evidence. (376:1-22) The above behavior as described does not have a sufficiently reflexive, nonvolitional quality for it to constitute a "habit"; Nor has a proper basis been established that Mr. Lee even had such a habit in the first instance.<br><br>Hearsay (Fed. R. Evid. 802); Speculation (Fed. R. Evid. 701), Contradictory Testimony. Mr. Lee testified about alleged out- of-court statements he made to others. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13. *See supra* at 15-19.<br><br>Further, Defendant's **hearsay** objection is particularly meritless here, given that Kirby's legal theories are indistinguishable from Defendant's in this case. Moreover, Kirby was represented by the same counsel of record as Defendant here, with Defendant's counsel having extensively cross examined Lee at his deposition.<br><br>And while Defendant claims that Lee's testimony concerning his experience with Marvel's payment practices is "propensity evidence," nothing in Rule 404 precludes evidence about a regular business practice or deems it tantamount to inadmissible "propensity" evidence. *See, e.g.*, *Empress Casino Joliet Corp. v. Johnston*, 2014 WL 6735529, at *2 (N.D. Ill. Nov. 28, 2014) (evidence of payment practices is "not impermissible 'propensity' evidence" but merely suggests "a regular business practice"). |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC,* No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.*¶ 99. On December 18, 2009, Disney also gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney quadrupled POW's | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103.<br><br>On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, not "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; see Adams v. Master Carvers of Jamestown, Ltd., 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. | |
| 20. | Lens Decl. Ex. 11<br><br>(October 27, 2010 Roy | Lacks Foundation (Fed. R. Evid. 602). | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 11. *See supra* at 13-14. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Thomas Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0043321 – 2021MARVEL-0043361) | <u>Speculation (Fed. R. Evid. 701).</u><br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Mr. Thomas also testified that he was "not really quite sure" about the background of the so-called Marvel Method, and that it developed before he began working it MMC. Mr. Thomas also stated "[he was] guess[ing]" about how the Marvel Method compared to other comic writing methods.<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> | |
| 21. Lens Decl. Ex. 12<br><br>(October 26, 2010 Roy Thomas Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(2021MARVEL-0131738 – 2021MARVEL-0131947) | <u>Lacks Foundation (Fed. R. Evid. 602).</u><br><br><u>Speculation (Fed. R. Evid. 701).</u><br><br><u>Irrelevant (Fed. R. Evid. 401).</u><br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, | Defendant's objections lack merit for the reasons explained in MCI's response to Defendant's Objection No. 11. *See supra* at 13-14.<br><br>Further, while Defendant emphasizes Thomas's testimony that he "didn't see everyone's checks, of course," Defendant ignores that Thomas proceeded to testify that he occasionally discussed the legends with Marvel freelance artists, thus supplying an adequate basis for his testimony. *See* Lens Decl., Ex. 12 at 72:14-25.<br><br>In addition, Defendant's **best evidence rule** |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | 110-12. Mr. Thomas also concedes that "I didn't see everyone's checks[.]" <br><br> Inadmissible Legal Conclusion. Mr. Thomas's testimony contains inadmissible legal conclusions. <br><br> Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Thomas's testimony concerns the content of check legends and other documents, the best evidence rule applies. | objection confirms that all of Defendant's proffered evidence about the check legends are inadmissible, leaving Defendant without any evidence of a "grant" to terminate.  See Ditko's Rule 56.1 Statement, Dkt. 78 ¶¶ 67-69; see United States v. Finkielstain, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989) ("As to the best evidence rule, that canon requires the production of a document to prove its content when a witness testifies on the issue of what that document contains.").  That said, the best evidence rule does not apply to Thomas's testimony about his understanding of the import of such checks.  See, e.g., In re PCH Assocs., 60 B.R. 870, 875 (S.D.N.Y.) (deponent's "understanding and recollection of what took place" not a legal conclusion), aff'd, 804 F.2d 193 (2d Cir. 1986); Air Support Int'l, Inc. v. Atlas Air, Inc., 54 F. Supp. 2d 158, 169 (E.D.N.Y. 1999) (relying on deponent's "business understanding" in summary judgment disposition). |
| 22. | Lens Decl. Ex. 13 <br><br> (May 13, 2010 Stan Lee Deposition Excerpts from Marvel Worldwide, Inc. v. Lisa R. Kirby, No. 10-cv-141 (S.D.N.Y.)) <br><br> (2021MARVEL-0130804 – 2021MARVEL-0130953) | Inadmissible Legal Conclusion. Mr. Lee makes improper legal conclusions, including as to the corporate structure and ownership of companies. See e.g., 11:18-12:3. <br><br> Hearsay (Fed. R. Evid. 802); Speculation Fed. R. Evid. 701); Contradictory Testimony. Mr. Lee testified about alleged out-of-court statements he made to others. (335:10-336:11) Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13.  See supra at 15-19. |

| **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|
| | by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); United States v. Acquest Transit LLC, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020). <br><br> Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel and later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Kirby case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.*¶ 99. On December 18, 2009, Disney also gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney quadrupled POW's compensation. *Id.*¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.*¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can | |

| **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|
| | recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, not "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. | |
| **23.** Lens Decl. Ex. 14 (Copy of Stan Lee's June 11, 2007 affidavit from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.)) (2021MARVEL-0025446 – 2021MARVEL-0025460) | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions, including as to copyright law, the corporate structure and ownership of companies. <u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of numerous contracts and other documents, the best evidence rule applies. <u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee passed away in 2018, meaning that his declaration does not satisfy Rule 56(c)(4). *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13.  *See supra* at 15-19. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | show that the affiant or declarant is competent to testify on the matters stated."); *Great Lakes Reinsurance (UK) SE v. Herzig*, 2023 WL 3560578, at *7 n. 9 (S.D.N.Y. May 18, 2023) ("Heffner died on August 31, 2022, and this Court concludes that his declaration would not be admissible at trial, and thus may not be considered on this motion for summary judgment.").<br><br>Affidavits not complying with Rule 56(e) are properly the subject of a motion to strike and should not be considered by the Court in adjudicating a summary judgment motion. *See Hollander v Am. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir. 1999) (affirming the striking of an affidavit  that"disregard[ed] the requirements of Rule 56(e)," was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge," and "more resemble[d] an adversarial memorandum than a bona fide affidavit."); *see also LaRouche v. Webster*, 175 F.R.D. 452 (S.D.N.Y. 1996) (striking portions of affidavit that lacked personal knowledge or that asserted ultimate facts or legal conclusions); *Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.*¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.*¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.*¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.*¶ 102. This contradicts all the record evidence. *Id.*¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, _not_ "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.*¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory.  AMF ¶ 105. | |
| 24. | Lens Decl. Ex. 15<br><br>(November 18, 2003 Stan Lee Deposition Excerpts from *Stan Lee v. Marvel Enterprises, Inc.* No. 02-cv-8945 (S.D.N.Y.))<br><br>(2021MARVEL-0131483 – 2021MARVEL-0131737) | <u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions to the extent he adopts counsel's repeated predicate that the various shell companies were "Marvel's predecessor." (*See e.g.*, 12:22-23)<br><br><u>Best Evidence Rule</u> (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of numerous contracts and other documents, the best evidence rule applies.<br><br><u>Hearsay</u> (Fed. R. Evid. 802); Speculation (Fed. R. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 13.  *See supra* at 15-19. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Evid. 701); <u>Contradictory Testimony</u>. Mr. Lee testified about alleged out-of-court statements he made to others. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving and self-aggrandizing testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.*¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.*¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.*¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and | |

| | **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|---|
| | | 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.*¶ 102. This contradicts all the record evidence. *Id.*¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.*¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory.  AMF ¶ 105. | |
| 25. | Lens Decl. Ex. 16 <br><br> (October 13, 1999 Roy Thomas Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman*, No. 97-638 (D. Del.)) <br><br> (2021MARVEL-0051131 – 2021MARVEL-0051166) | Lacks Foundation (Fed. R. Evid. 602). <br><br> Speculation (Fed. R. Evid. 701). <br><br> Irrelevant (Fed. R. Evid. 401). <br><br> Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Mr. Thomas also concedes that "I didn't see everyone's checks[.]" <br><br> Inadmissible Legal Conclusion. Mr. Thomas's | Defendant's objections lack merit for the reasons outlined in MCI's Responses to Defendant's Objection Nos. 11 and 21.  *See supra* at 13-14, 31-32. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | testimony contains inadmissible legal conclusions.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Thomas's testimony concerns the content of check legends and other documents, the best evidence rule applies. | |
| 26. | Lens Decl. Ex. 17<br><br>(November 19, 1974 Albert E. Landau Deposition Excerpts from *Jay K. Hoffman Presentations, Inc. v. Marvel Comics Group*, No. 86972/74 (N.Y.C. Civ. Ct.))<br><br>(2021MARVEL-0068823 – 2021MARVEL-0068848) | Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion.<br><br>Improper Expert Opinions. Mr. Landau is not a percipient witness with respect to the creation of Ditko's Works or Ditko's relationship with MMC in the Period. Nor is he qualified to speak to the legal structure of the companies or their ownership. See page 4:2-5 ("Q. Can you tell us the structural relationship between Cadence Industries and Marvel Comics Group? A. THE WITNESS: Can you help us on that, because I am never quite sure of the legal structure of anything.") The testimony provided by both sides' counsel (Mr. Sinder and Mr. Bedlock) in the highlighted excerpts of this Exhibit is inadmissible for the purpose of providing this information. | The proffered evidence is not **irrelevant** because the fact that Marvel Comics Group was a division of Cadence is relevant to show that MCI, though a series of assignments of copyright, is successor-in-interest to the Marvel Comics Group entities and owns the intellectual property contained in the comic books and characters at issue.<br><br>The proffered evidence is also not an **inadmissible legal conclusion**. *See, e.g., Hagen v. United States*, 485 F. Supp. 2d 622, 627 (D. Md. 2007) (finding "there can be no dispute that the portions of [fact witness's] testimony relating to the corporate structure and management of corporate finances are admissible").<br><br>Finally, this evidence is not an **improper expert opinion** because it does not require specialized knowledge, experience, or training to testify that the Marvel Comics Group was a division of another company. *See id.* While Defendant argues that the deponent, Albert Landau, is not competent to testify to Marvel's corporate structure, the ensuing representations were made by Marvel's counsel of record. *See Savage*, 266 |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | F. Supp. 2d at 352 (considering hearsay evidence, where it appeared that plaintiffs would "be able to present this evidence in admissible form at trial, either by calling the deponents themselves or establishing their unavailability"). |
| 27. Lens Decl. Ex. 18 (October 13, 1999 Martin Goodman Excerpts from *Joseph H. Simon v. Martin Goodman et al.* (N.Y. 1966)) (2021MARVEL-0068849 – 2021MARVEL-0068907) | Inadmissible Legal Conclusion. Mr. Goodman's testimony contains inadmissible legal conclusions as to the structure, relationship, and ownership of companies. Speculation (Fed. R. Evid. 701) Throughout Mr. Goodman testifies as to what he thinks may be the correct answer but then qualifies his answer by stating that he is not certain or sure and that he would need to check his files. Hearsay (Fed. R. Evid. 802). Mr. Goodman's testimony about the contents of his files is inadmissible hearsay, not subject to any exception. Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Goodman's testimony concerns the content of his corporate documents, the best evidence rule applies. | Martin Goodman's testimony that he owns 100% of the stock in the various entities comprising the Marvel Comics Group is plainly based on his own personal knowledge, and it is not a **legal conclusion** or based on **speculation**. *See, e.g., Hagen v. United States*, 485 F. Supp. 2d 622, 627 (D. Md. 2007) (finding "there can be no dispute that the portions of [fact witness's] testimony relating to the corporate structure and management of corporate finances are admissible"). Further, while Defendant suggests this testimony is **hearsay** because it concerns "the contents of his files," that is untrue. Goodman could testify that he owned all the shares of a company without reciting the contents of any "file." For that same reason, Defendant's **best evidence objection** is also meritless. |
| 28. Lens Decl. Ex. 19 (Copy of a redacted agreement between MCI and Gene Colan, dated May 31, 2008) (2021MARVEL- | Irrelevant (Fed. R. Evid. 401). This 2008 Agreement wherein Marvel had Gene Colan retroactively agree, in exchange for money, that everything Mr. Colan had ever created (several decades earlier) that Marvel opted to purchase and publish, was now all "work for hire," is unenforceable and irrelevant to the facts and law | Former Marvel freelance contributor Gene Colan's confirmation in a signed, notarized agreement that all of his work for Marvel— including work done during the relevant time period—was done on a work-for-hire basis is plainly **relevant**. That MCI may not be able to enforce Colan's agreement to foreclose any |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 0022743 – 2021MARVEL-0022752) | governing the actual relationship between Ditko and "Marvel" in the relevant 1962-1965 Period. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (holding that a retroactive acknowledgment by Joe Simon, in a settlement agreement with Marvel, that Captain America was a "work made for hire," years after the character had been co-created by him, was an entirely unenforceable "agreement to the contrary" under 17 U.S.C. § 304(c).<br><br>Hearsay (Fed. R. Evid. 802). The Agreement is inadmissible hearsay as to the truth of the matters stated therein, not subject to any exception. | termination right under Section 304 is an entirely separate issue and does not impact the admission's relevance. *Cf. Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).<br><br>Nor is this document **hearsay**.  Rather, it is admissible under Rule 804(b)(3) as a statement against pecuniary interest by Colan, who passed away in 2011.  *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 992 n.14 (C.D. Cal. 2015) (admitting hearsay statement over the public performance of *Happy Birthday* "because it is reasonable to infer that [the creator] was aware of the potential consequences of disclaiming her rights to the *Happy Birthday* lyrics while talking to a reporter about her sister's lawsuit over the rights to another element of the same song"); *Reich v. New Mt. Pleasant Bakery, Inc.*, 1993 WL 372270, at *7 n.6 (N.D.N.Y. Sept. 13, 1993) (in wage-and-hour lawsuit, employees' statements that they were fully compensated for work for employer admissible under Rule 804(b)(3) as statements against pecuniary interest).<br><br>Finally, Defendant's suggestion that Colan may have not been truthful when he represented that his work for Marvel was all performed on a work-for-hire basis is entirely baseless.  Colan's agreement is entirely consistent with his other statements on this topic.  *See* Lens Decl., Ex. 20 (Colan explaining in a handwritten letter that, during the relevant time period in the comics business, you "either worked 'for hire' or didn't |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | work"). |
| 29. | Lens Decl. Ex. 20<br><br>(Copy of a letter from Gene Colan to Marvel, dated April 28, 2008, produced by MCI)<br><br>(2021MARVEL-0022840 – 2021MARVEL-0022841) | <u>Hearsay (Fed. R. Evid. 802)</u>. This document contains hearsay from Gene Colan who passed away in 2011. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that this letter has the indicia of trustworthiness needed to admit it under Rule 807. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002). This 2008 letter was written more than half a century following the events discussed therein.<br><br><u>Best Evidence Rule (Fed. R. Evid. 1002)</u>. The letter discusses the contents of checks and other documents.<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. This letter does not concern Defendant and is therefore irrelevant. *See Contreras v. Artus*, 778 F.3d 97, 108–09 (2d Cir. 2015) (a note that the victim wrote which she said was not about the defendant or the incident at issue was excluded as irrelevant). | The proffered evidence is not inadmissible **hearsay**, as it is a statement against Colan's pecuniary interests and therefore admissible under Rule 804(b)(3). *See Marya*, 131 F. Supp. 3d at 992 n.14; *Reich*, 1993 WL 372270, at *7 n.6.<br><br>Nor does the **best evidence rule** apply, as the proffered evidence is not about the "content of checks or other documents." Rather, Colan's letter is based on Colan's knowledge and experience working in the comic industry for approximately half a century.<br><br>Finally, Colan's statement that in the comic industry "one either worked 'for hire' or didn't work" is plainly **relevant** to the issues in this case. |
| 30. | Lens Decl. Ex. 21<br><br>(Copy of an agreement between Roy Thomas and Marvel Comics Group, dated September | <u>Irrelevant (Fed. R. Evid. 401)</u>. The bulk of this 1974 agreement between "Marvel" and Mr. Thomas a decade after the relevant 1962-1965 Period is irrelevant. It also pertains, in large part, to Mr. Thomas' services as a full-time employee. | MCI proffered this 1974 agreement to demonstrate Roy Thomas was a Marvel editor and also wrote stories on a freelance basis. *See* Dkt. 69 ¶ 11. The agreement is plainly **relevant** to these points. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 1, 1974)<br><br>(2021MARVEL-0088673 – 2021MARVEL-0088680) | Mr. Thomas' 1974 Agreement is relevant insofar as the portion of the agreement which relates to his freelance work as a writer. It expressly shows that as late as 1974: (1) Marvel's stated policy was still that it was completely free to reject any freelance material presented to it, in its sole discretion, without any payment for such work even if Marvel had proposed it; (2) if Marvel requested that any freelance work be redone it would again only pay for that product it ultimately accepted for publication in its sole discretion and not for the additional labor of revising the material, and (3) Marvel still used language of purchase, grant and assignment regarding freelance work as late as 1974 -- with no mention of "work for hire" whatsoever.<br><br>To the extent Marvel proffers this agreement as evidence that "Marvel Comic Group" was some sort of legal entity encompassing Martin Goodman's shell companies at issue herein and MMC, that is misleading. As Marvel admits "Marvel Comics Group" during the relevant Period was not a legal entity at all. RSMF 1; *see also* AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself Cadence and renamed MMC and Goodman's comic book business --"Marvel Comics Group." AMF ¶ 19. | Further, Defendant's legal contention that "Marvel Comics Group" was "just a branding name sporadically appearing on some comic books" is incorrect and not supported by the evidence. As the evidence establishes, Goodman's commonly owned and controlled entities long did business as Marvel. *See* Bard Decl., Ex. 8 at 5-6; Lens Opp. Decl., Ex. 93 at 4-5; Lens Opp. Decl., Ex. 92 at 3-8; Lens Decl., Ex. 45 at 3.<br><br>Finally, MCI notes Defendant's improper (and incorrect) legal argument as to sections of the agreement that MCI did not rely on. In particular, while Defendant emphasizes that Marvel could reject freelance material presented to it, in its sole discretion, without payment for such work, there is no evidence whatsoever that Marvel ever rejected and failed to compensate Steve Ditko for any of his work. And given the close and continuous working relationship between Ditko and Marvel during the relevant time period, even if there were isolated incidents in which Ditko's work was rejected without compensation, the Works would nevertheless remain works for hire under the Second Circuit's decision in *Kirby*. *See Kirby*, 726 F.3d at 126 (explaining that "Kirby and Marvel were closely affiliated during the relevant time period . . . . Although . . . [Kirby] could and did produce and sell work to other publishers . . . the vast majority of his published works in that time frame was published by Marvel"); *id.* at 141 ("Kirby's ongoing |

| | **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|---|
| | | | partnership with Marvel . . . is therefore what induced Kirby's creation of the works."). Finally, that this 1974 agreement does not specifically refer to "work for hire" is unsurprising, as that phrase did not become a term of art until the passage of the Copyright Act of 1976. |
| 31. | Lens Decl. Ex. 22 (Copy of an agreement between Cadence Industries Corporation and Stan Lee, dated January 19, 1972) (2021MARVEL-0032010 – 2021MARVEL-0032013) | Irrelevant (Fed. R. Evid. 401); Hearsay (Fed. R. Evid. 802). This employment contract, which was entered into by Lee after the Period (1962-1965), has no bearing on the issues in this case. To the extent Marvel offers this agreement as evidence that "Marvel Comic Group" was some sort of legal entity encompassing Martin Goodman's shell companies at issue herein and MMC, that is misleading. As Marvel admits "Marvel Comics Group" during the relevant Period was not a legal entity at all. RSMF 1; *see also* AMF ¶¶ 59-60. Prior to 1973 "Marvel Comics Group" was just a branding name sporadically appearing on some comic books. *Id.* In 1973, well after the Period, Perfect Film & Chemical Corp. (which bought MMC's assets) renamed itself Cadence and renamed MMC and Goodman's comic book business --"Marvel Comics Group." AMF ¶ 19 | While Defendant claims that this agreement is **irrelevant**, Defendant ignores that MCI cited the agreement solely to demonstrate that Lee was elevated as Marvel's publisher in 1972 and, "as a unique talent in the comic book field," "Marvel Comics Group [was] dependent upon [his] continued supervised and employment." *See* Dkt. 69 ¶ 10. Because MCI does not proffer the evidence for the reason Defendant posits, Defendant's objection misses the mark. Defendant's argument that this contract is **hearsay** is baseless. *See, e.g.*, *Arasimowicz v. Bestfoods*, Inc., 81 F. Supp. 2d 526, 530 (S.D.N.Y. 2000) (contracts are "legally operative documents" and are non-hearsay under Rule 801(c)). Further, as outlined in MCI's Response to Defendant's Objection No. 30, Defendant's legal contention that "Marvel Comics Group" was "just a branding name sporadically appearing on some comic books" is incorrect and not supported the |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | evidence, with Goodman's commonly owned and controlled entities long doing business as Marvel, including during the relevant time period. *See supra* 45-47. |
| 32. Lens Decl. Ex. 23 ("Composite of copies of agreements between Marvel and various freelancers, including Steve Ditko, dated between 1978 and 1985) (2021MARVEL-0033453, 2021MARVEL-0017391–2021MARVEL-0017620, and 2021MARVEL-0017904–2021MARVEL-0018062) | <u>Irrelevant (Fed. R. Evid. 401).</u>  To the extent these agreements are offered for their retroactive "work for hire" acknowledgements (relating to works created decades earlier) that Marvel insisted upon as a condition to its return to freelancers of their physical artwork or as a condition to  future employment, such purported retroactive "acknowledgements" are irrelevant to the facts and law governing the actual relationship between Ditko and "Marvel" in the 1962-1965 Period and are unenforceable. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (holding that a retroactive acknowledgement by Joe Simon, in a settlement agreement with Marvel, that Captain America was a "work made for hire," years after the character had been co-created by him, was an unenforceable "agreement to the contrary" under 17 U.S.C. § 304(c). | Steve Ditko's acknowledgement in a formal, signed agreement from 1978 that his work for Marvel—including on the Works—was done on a work-for-hire basis is plainly **relevant**.  It is evidence that Ditko himself—who, as Defendant has repeatedly argued, was notoriously strong-willed and opinionated—believed his work for Marvel was done on a work-for-hire basis.  And the fact that scores of other Marvel freelance writers and artists similarly acknowledged that they too worked for hire is similarly relevant. That MCI may not be able to enforce these agreements to foreclose any termination rights under Section 304 is an entirely separate issue and does not impact the admission's relevance.  *Cf. Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). |
| 33. Lens Decl. Ex. 35 (Copy of excerpts from *Marvel Masterworks: Avengers*, Vol. 4 (2012)) (2021MARVEL-0125769 – 2021MARVEL- | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of the Exhibit. No foundation is provided for the documents contained in the book excerpts which comprise the Exhibit. Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an | While Defendant claims that this introduction written by Roy Thomas to a book containing a number of Marvel comics **lacks foundation** and amounts to **speculation**, Thomas worked at Marvel when the comics contained therein were published and explains in this exhibit that he personally assigned the cover of an *Avengers* comic book to Gil Kane. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 0125990) | assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Nor has Mr. Thomas been disclosed and designated as an expert witness by Marvel.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents contained in Exhibit 35 beyond stating that "Exhibit 35 is a true and correct copy of excerpts from Marvel Masterworks: Avengers, Vol. 4 (2012)."<br><br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Speculation (Fed. R. Evid. 701)<br><br>Irrelevant (Fed. R. Evid. 401)<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802). These excerpts are full of hearsay and are not subject to any hearsay exception. | Moreover, Defendant's **authenticity** and **hearsay** objections lack merit because this evidence can be introduced in an admissible format at trial through testimony from Thomas. *See, e.g., Wexler v. Hasbro, Inc.*, 2022 WL 743431, at *11 (S.D.N.Y. Mar. 11, 2022) ("Hearsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial.").<br><br>Finally, the portion of this exhibit Marvel relies on concerns the fact that, despite Don Heck penciling a cover for *Avengers* #37 and being paid for it based on his accounting ledger, Marvel did not publish the cover Heck penciled, opting instead to use a cover by Gil Kane, based on an assignment from Thomas himself.  Such evidence is not a **legal conclusion**, and it is plainly **relevant** to rebut Defendant's suggestion that Marvel "rejected" and did not pay artists for work Marvel elected not to use.<br><br>And since the testimony has nothing to do with the terms of any document, Defendant's **best evidence rule** objection is baseless. |
| 34. | Lens Decl. Ex. 36<br><br>(Copy of an introduction to Marvel Masterworks: Marvel Rarities, Vol. 1 (2014))<br><br>(2021MARVEL-0073592 – | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit. Mr. Thomas is also not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) | Defendant's objections lack merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 33.  *See supra* at 48-49.<br><br>In addition, Defendant also claims that this exhibit contains inadmissible **hearsay** and **improper expert opinion** testimony.  But Thomas's testimony is not hearsay because Thomas can |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 2021MARVEL-0073596) | had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802). Mr. Thomas's "Introduction," is replete with hearsay, not subject to any exception.<br><br>Improper Expert Opinion. Mr. Thomas has not been disclosed and designated by Marvel as an expert witness in this case. | testify about his personal knowledge and understanding of the character's backstory.<br><br>To the extent Defendant suggests reference to the comics themselves is **hearsay**, that is simply incorrect, as MCI would not be offering the contents of the comics for their "truth" (these are, after all, fictional characters), but rather for the non-hearsay purpose of showing that the Doctor Droom and Doctor Strange backstories are essentially the same (and the comic are, in any event, admissible as ancient documents). *See, e.g.*, *United States v. Shields*, 783 F. Supp. 1094, 1099 (N.D. Ill. 1991) (admitting "statements concern[ing] a fictional case [because] they are not offered for their truth in contravention of the hearsay rule").<br><br>And because such testimony concerns Thomas's personal knowledge and experience, it is not **expert opinion**, as Defendant posits. |
| 35. | Lens Decl. Ex. 37<br><br>(Excerpts from 75 Years of Marvel (December 2014), published by Taschen)<br><br>(2021MARVEL-0075642 – 2021MARVEL-0075763) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion. | Defendant's objections lack merit for the reasons outlined in MCI's Responses to Defendant's Objection Nos. 33 and 34. *See supra* at 48-50.<br><br>Further, Thomas's observation that the backstory for Doctor Strange is essentially identical to the backstory for Doctor Droom is not **improper expert opinion** as it is based on his own personal knowledge and experience reading the two comic books. It is not a technical comparison of different artwork or an opinion that requires |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Hearsay (Fed. R. Evid. 802).<br><br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Improper Expert Opinion. Mr. Thomas has not been disclosed and designated by Marvel as an expert witness in this case.<br><br>This Exhibit contains excerpts of a book written by Roy Thomas. It summarizes the content of numerous distinct comics and provides information and analysis regarding characters' development. The information and opinion contained in the article relies on other unidentified sources. The person responsible for the creation of this work cannot provide expert or lay opinion.<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Nor has Mr. Thomas been disclosed and designated by Marvel as an expert in this case. | specialized knowledge, experience, or training. |
| 36.<br><br>Lens Decl. Ex. 38<br><br>(Copy of an interview entitled "Stan Made Up the Plot . . . And I'd | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL | Defendant's **hearsay** objection to this excerpt of an interview of Larry Lieber ignores that Lieber could be called to testify live at trial regarding the contents of this exhibit. *See, e.g., Wexler v. Hasbro, Inc*., 2022 WL 743431, at *11 (S.D.N.Y. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | Write the Script!," published in *Alter Ego* No. 2 (Autumn 1999))<br><br>(2021MARVEL-0027468 – 2021MARVEL-0027481) | 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Mar. 11, 2022) ("Hearsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial."). |
| 37. | Lens Decl. Ex. 39<br><br>(Excerpts from an interview entitled "Fifty Years on the 'A' List: A Candid Conversation with John Romita," published in *Alter Ego* No. 9 (July 2001))<br><br>(2021MARVEL- 0079978 – 2021MARVEL-0080017) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's **hearsay** objection to this excerpt of an interview of Roy Thomas ignores that Thomas could be called to testify at trial regarding the contents of this exhibit. *See Wexler*, 2022 WL 743431, at *11. |
| 38. | Lens Decl. Ex. 40<br><br>(Excerpts from a document entitled "And Men Shall Call Him . . . PROTOTYPE! – Part II: Of Mystics, Mighty Men, and Immortals," published in *Alter Ego* No. 31 (December 2003)) | <u>Irrelevant (Fed. R. Evid. 401)</u>.<br><br><u>Lacks Foundation (Fed. R. Evid. 602)</u>. Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br><u>Speculation (Fed. R. Evid. 701)</u>.<br><br><u>Best Evidence Rule (Fed. R. Evid. 1002)</u>. | Defendant's objections lack merit for the reasons outlined in MCI's Responses to Defendant's Objection Nos. 33 and 34. *See supra* at 48-50.<br><br>Further, like several others, this exhibit contains details concerning Doctor Droom and his similarities to Doctor Strange. This exhibit is not **hearsay** because although the article is written by Thomas Lammers, the editorial commentary Marvel relies on was written by Roy Thomas, and |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (2021MARVEL- 0074178 – 2021MARVEL- 0074207) | Hearsay (Fed. R. Evid. 802). This article is full of hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br>Improper Opinion. This article, apparently written by Tom Lammers, and edited by Roy Thomas as well as others, summarizes the content of numerous distinct comics and provides information and analysis regarding characters' evolution over the course of comic book issues. The information and opinion contained in the article, which is highlighted by Plaintiff, relies on other unidentified sources. The persons responsible for the creation of this work cannot provide expert or lay opinion. Neither individual is a percipient witness with respect to the creation of Ditko's works or relationship with MMC in the Period, nor have either been disclosed and designated by Marvel as an expert in this case. | he could competently testify regarding the contents of the article at trial. *See Wexler*, 2022 WL 743431, at *11. |
| 39. Lens Decl. Ex. 41<br><br>(Excerpts from an interview entitled "Stan Lee's Amazing Marvel Interview," published in *Alter Ego* No. 104 (August 2011)) | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the two articles are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into | Defendant's **hearsay** objection lacks merit. As an initial matter, Defendant ignores that one portion of this exhibit that MCI relies on was written by Roy Thomas, who can be called to testify at trial. *See Wexler*, 2022 WL 743431, at *11. Thomas was a well-established editor in the comic book industry in 1982 when the cover Steve Ditko drew |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (2021MARVEL- 0071404 –2021MARVEL- 0071450) | evidence for the truth of the matter asserted therein.") (citations omitted) | for *Amazing Fantasy* No. 15—but which Marvel elected not the use—was first published.  And although Thomas was not at Marvel when the Kirby-penciled cover for *Amazing Fantasy* No. 15 was published, Thomas has extensive knowledge of the comic industry, including from publications authored by Ditko himself such as "An Insiders Part of Comics History," Lens Decl., Ex. 48, which Defendant has not objected to and which is admissible under Rule 801(d)(2) as explained in MCI's Response to Defendant's Objection 10.  *See supra* at 12-13.  In that article, Ditko admitted that Stan Lee opted to have Kirby draw the cover for *Amazing Fantasy* No. 15, instead of using the cover penciled by Ditko (and later published by Marvel in 1982).  Thus, Thomas's testimony relies on his own personal knowledge and evidence admissible under hearsay exceptions.<br><br>MCI also relies on a statement made by Stan Lee during the interview transcribed in this 2005 interview regarding Doctor Droom and Doctor Strange.  Lee's statement is admissible under Rule 807's residual hearsay exception because it was given in 2005, well before this litigation or even the *Kirby* litigation had commenced.  And the testimony is corroborated by Roy Thomas and entirely consistent with Steve Ditko's account of how he drew the Doctor Strange character and Lee gave him his name.  *See Robinson*, 646 F.2d at 742 (admitting testimony of deceased witness where there was "no dispute that the evidence was material, nor can there be any serious argument |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | that the statement was not 'more probative on the point for which it (was) offered' than other reasonably available evidence"). |
| 40. Lens Decl. Ex. 42<br><br>(Excerpts from a document entitled "The Secret Kirby Origin on Iron Man," published in Alter Ego No. 170 (July 2021))<br><br>(2021MARVEL-0074241 – 2021MARVEL-0074249) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br><u>Speculation (Fed. R. Evid. 701)</u><br><br><u>Irrelevant (Fed. R. Evid. 401).</u><br><br><u>Inadmissible Legal Conclusion.</u><br><br><u>Hearsay (Fed. R. Evid. 802).</u> The article is introduced for the truth of the matter asserted therein and is hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br><u>Best Evidence Rule (Fed. R. Evid. 1002).</u><br><br><u>Improper Expert Opinion.</u><br><br>This Exhibit contains excerpts of a book written by Roy Thomas. It summarizes the content of numerous distinct comics and provides information and analysis regarding comic book characters' portrayal and development over time. The information and opinion contained in the article relies on other unidentified sources. Mr. Thomas, | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 33.  *See supra* at 48-49.<br><br>Further, Defendant's **hearsay** objection to those excerpts, which detail how Marvel took Larry Lieber and Don Heck off of Iron Man and replaced them with Stan Lee and Jack Kirby, ignores that Lieber could be called to testify live at trial regarding the contents of this exhibit.  *See Wexler*, 2022 WL 743431, at *11. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | the person allegedly responsible for the creation of this article cannot provide expert testimony because he has not been disclosed and designated by Marvel as an expert in this case. He also cannot provide lay opinion. Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or Ditko's relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. | |
| 41. | Lens Decl. Ex. 43<br><br>(Excerpts from an interview entitled "Gold and Silver Memories," published in Write Now! No. 18 (Summer 2008))<br><br>(2021MARVEL-0073293 – 2021MARVEL-0073294) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's **hearsay** objection lacks merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 36.  *See supra* at 51-52. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 42. Lens Decl. Ex. 44<br><br>(Copy of an interview entitled "The Spider's Man: The Life Story of Steve Ditko," published in Komik Heroes of the Future #6 (1964) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(DITKO-0040 – DITKO-0041) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's **hearsay** objection fails because Ditko's statements in this interview, originally published in 1964, are admissible both under Rule 801(d)(2), as explained in MCI's Response to Defendant's Objection No. 10, *see supra* at 12-13, and as an ancient document under Rule 803(16). *See Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 321 n.33 (S.D.N.Y. 2016) ("[T]he Billboard Article is over twenty-years old and is thus both admissible under the 'ancient document' hearsay exception and self-authenticating."). |
| 43. Lens Decl. Ex. 45<br><br>(Copy of an interview entitled "Steve Ditko: A Portrait of the Master," published in Comic Fan #2 (1965) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(DITKO-0045 – DITKO-0046) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's **hearsay** objection lacks merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 42.  *See supra* at 57. |
| 44. Lens Decl. Ex. 48 | <u>Lacks Foundation (Fed. R. Evid. 602)</u>. Plaintiff has not established a proper foundation for the | This exhibit is an article written and copyrighted |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (Copy of a document entitled "An Insider's Part of Comics History: Jack Kirby's Spider-Man," published in Robin Snyder's History of Comics, Vol. 1 No. 5 (May 1990)<br><br>(DITKO-0183 – DITKO-0188) | admission of this Exhibit.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Inadmissible Legal Conclusion.<br><br>Hearsay (Fed. R. Evid. 802).<br><br>Best Evidence Rule (Fed. R. Evid. 1002).<br><br>Improper Opinion.<br><br>Robin Snyder's article is full of hearsay and legal conclusions. It refers to numerous extraneous sources and is thus also subject to the best evidence rule. The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | by Steve Ditko and published in 1990 by Robin Snyder in his publication *History of Comics*. Because the document is over 20 years old, Defendant's **foundation** objection is meritless, as it can be authenticated under Rule 901(b)(8).<br><br>And because Ditko describes his working relationship with Stan Lee and his contributions to Spider-Man—subjects well within Ditko's personal knowledge—Defendant's unsupported **relevance**, **legal conclusion**, and "**improper opinion**" objections are baseless.<br><br>Finally, Defendant's **hearsay** objection fails for several reasons.  To start, the document and Ditko's statements therein are admissible under Rule 803(16)'s ancient document exception to the hearsay rule.  And as explained in MCI's Response to Defendant's Objection No. 10, the proffered statements from Ditko are also admissible under Rule 801(d)(2).  *See supra* at 12-13. Lastly, given Ditko's strong views on creatorship, there is no reason to believe that Ditko afforded Lee more credit than he was due, which—given that Lee and Ditko are no longer alive—also renders this exhibit admissible under Rule 807's residual hearsay exception.  *Cf. Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799, 811 (E.D. Tex. 2005) (admitting four newspaper articles under Federal Rule of Evidence 807 where "articles represent[ed] the only link between [defendant] and [the issue] in question"). |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 45. Lens Decl. Ex. 65<br><br>(Copy of a September 20, 2022 letter from Molly M. Lens to Marc Toberoff.) | <u>Hearsay (Fed. R. Evid. 802)</u>. The letter from counsel reproduced in Exhibit 65 cannot be introduced at trial for the truth of the matters asserted therein, i.e., what efforts were actually taken and by whom to locate the checks from "Marvel" to Ditko issued in the relevant Period, or to locate *any* checks from the Period to any freelancer or for Plaintiff's alleged inability to find any checks from the Period or the 1960's. Marvel merely produced just three checks issued to freelancers from the mid-1970s (which were already available to the Estate, including via a Google search).<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> | Defendant's argument that this exhibit—a letter from MCI's counsel to Defendant's counsel outlining MCI's efforts to locate checks from the relevant time period—is inadmissible **hearsay** and **irrelevant** ignores that MCI is not seeking to admit this exhibit into evidence.  Rather, MCI offered this document to establish its objections to testimony offered by Defendant about the alleged content of legends on the back of checks from Marvel to freelance contributors, including Ditko. In making the preliminary determination of admissibility, "the court is not bound by evidence rules," but, regardless, MCI could provide this evidence in an admissible form at trial were that required.  *See* Fed. R. Evid. 104; *see also, e.g.*, *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) ("In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible at a trial."). |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 46. Lens Decl. Ex. 68 (Copy of a notebook titled "Donald L. Heck Account Book for Earnings") (DETTWILER-0014 – DETTWILER-0127) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the notebook. Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "it is a true and correct copy of a notebook titled 'Donald L. Heck Account Book for Earnings' produced by Defendant Keith A. Dettwiler" | This exhibit's **authenticity** and **foundation** are satisfied under Rule 901(b)(8) based on the deposition testimony of Keith Dettwiler—Don Heck's nephew and the executor of his estate who was represented by Defendant's counsel in this case. Dettwiler identified the accounting notebook, and testified that he found it in Heck's home after his passing along with a significant amount of other artwork.  *See* August 11, 2023 Declaration of Molly M. Lens, Ex. A at 93:11-95:10.  Given that the notebook entries at issue date back to the 1960s, the document is well over twenty years old and hence authentic under Rule 901(b)(8). Further, Defendant's objections to Don Heck's accounting notebook are particularly curious, given that Defendant's counsel produced the document not only in this case, but also in the *Kirby* case (where Defendant's counsel also designated it as a trial exhibit).  And Defendant affirmatively relies on it.  *See* Toberoff Decl., Ex. 50 (Dkt. 80-50). |
| 47. Lens Decl. Ex. 69 (Copy of a document entitled "Synopses: The Fantastic Four [—] July '61 Schedule (#1)") (2021MARVEL- | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the document. Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "a true and correct copy of a document entitled 'Synopses: | Defendant's **authentication** and **foundation** objections are meritless.  Defendant's argument that the authenticity of this exhibit "has been analyzed in detail and debunked by comic book experts" is entirely unsupported by any record evidence.  In any event, Rule 901(a) only requires MCI to "produce evidence sufficient to support a |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | 0023907 – 2021MARVEL-0023908) | The Fantastic Four [—] July '61 Schedule (#1)" As widely reported, the authenticity of this purported Fantastic Four "synopsis" by Mr. Lee has been analyzed in detail and debunked by comic book experts.<br><br>Irrelevant (Fed. R. Evid. 401). | finding that the item is what [MCI] claims it is." Here, Roy Thomas testified that Stan Lee showed him the plot synopsis in approximately 1966 or 1967, and explained to him that it was a plot synopsis that he wrote for the first issue of *Fantastic Four*.  *See* August 11, 2023 Declaration of Molly M. Lens, Ex. B at 98:3-99:24.  That satisfies Rule 901(b)(1).  Moreover, this exhibit also qualities as an ancient document under Rule 901(b)(8).<br><br>Further, given that this document shows that Stan Lee provided artists with written or oral plots or synopses from which they would pencil comic book stories, this contemporaneous written plot synopsis is plainly **relevant**. |
| 48. | Lens Decl. Ex. 70<br><br>(Copies of documents entitled "Avengers Plot," "The Avengers vs. Sub-Mariner (#40)," and "Avengers vs. Super-Adaptoid")<br><br>(2021MARVEL- 0071572 –2021MARVEL-0071578; 2021MARVEL-0071592 – 2021MARVEL-0071594) | Lacks Foundation (Fed. R. Evid. 602). Plaintiff has not established a proper foundation for the admission of the document.<br><br>Authenticity (Fed. R. Evid. 901). Plaintiff has not authenticated the documents beyond stating "a true and correct copy of a documents entitled "Avengers Plot," "The Avengers vs. Sub-Mariner (#40)," and "Avengers vs. Super- Adaptoid"<br><br>Irrelevant (Fed. R. Evid. 401). | Defendant's objection lack merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 47.  *See supra* at 60-61.<br><br>This objection is even more frivolous, because these are plot synopses prepared by Roy Thomas himself, who not only authenticated them at his deposition, but could do so at trial as well. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 49. | Lens Decl. Ex. 71<br><br>(Copy of excerpts from an interview of Stan Lee on WATL-TV Atlanta, time-stamped 3:25 – 6:09; 20:17 – 23:23)<br><br>(2021MARVEL-0126136) | <u>Hearsay (Fed. R. Evid. 802).</u> The alleged statements contained in the interview are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 263 (S.D.N.Y. 2003) (Videotaped interview ruled inadmissible).<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> | Stan Lee's statements about the Marvel Method and Marvel's "basic formula" for making comics are not inadmissible **hearsay** because Lee is no longer alive and the statements are entirely consistent with Lee's statements in other interviews and in his sworn deposition testimony in multiple cases, rendering it admissible under Rule 807's residual exception.  And although Defendant raises a completely unsupported **irrelevance** objection, this evidence is relevant to Marvel and Lee's substantial control over and involvement in the creation of Marvel characters. |
| 50. | Lens Decl. Ex. 72<br><br>(Copy of excerpts from "Steve Ditko and Memories of Another Day" (J. Ballmann ed., 2020))<br><br>(DITKO-0020, DITKO-0023) | <u>Hearsay (Fed. R. Evid. 802).</u> The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered in evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's **hearsay** objection fails as Steve Ditko's quoted statements in this interview—contained in a document produced by Defendant—are admissible under Rule 801(d)(2), as explained in MCI's Response to Defendant's Objection No. 10, *see supra* at 12-13. |
| 51. | Lens Decl. Ex. 73<br><br>(Copy of an interview entitled "Spotlight on the Pros: Number 5; This Issue: Steve Ditko," published in The Rocket Blast / | <u>Hearsay (Fed. R. Evid. 802).</u> The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for | As outlined in MCI's Response to Defendant's Objection No. 42, *see supra* at 57, Defendant's **hearsay** objection fails because Ditko's statements in this interview, originally published in 1964, are admissible under Rules 801(d)(2) and 803(16), and the author's statements are likewise admissible under Rule 803(16).  *See Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1081 |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Rocket's Blast Comicollector #31 (June 1964) and reprinted in Steve Ditko in the 1960s (J. Ballmann ed., 2020))<br><br>(2021MARVEL-0024197 – 2021MARVEL-0024199) | the truth of the matter asserted therein.") (citations omitted). | (9th Cir. 2019) (Rule 803(16) requires admission of ancient documents that "contain multiple levels of hearsay"); Wright & Miller, 30B Fed. Prac. & Proc. Evid. § 6935 (2022 ed.) (each layer of hearsay in ancient document qualifies for admission). |
| 52. Lens Decl. Ex. 74<br><br>(Copy of an agreement between Cadence Industries Corporation and Stan Lee, dated April 9, 1976)<br><br>(DITKO-0019) | Irrelevant (Fed. R. Evid. 401); Hearsay (Fed. R. Evid. 802). The employment contract embodied in Ex. 22, which was entered into by Lee after the Period (1962-1965), has no bearing on the issues in this case. Any probative value is outweighed by risks of unfair prejudice. To the extent Plaintiff cites the highlighted text (best characterized as being a "representation" section of a non-compete clause), for the truth of the matters asserted therein, the writing amounts to hearsay. See highlighted text, sec. 4(a) ("You acknowledge that you are a unique talent in the comic book field, that Marvel Comics Group is dependent upon your continued supervision and employment, and that Marvel Comics Group would be irreparably damaged if you cease to be employed by them…"). | Defendant's objection lacks merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 31. *See supra* 47-48. |
| 53. Lens Decl. Ex. 75<br><br>(Copy of a Certificate of | Irrelevant (Fed. R. Evid. 401). Whether a dba certificate was sought or attained after the relevant 1962-1965 Period for one or more of the shell | Defendant's argument that this 1967 Certificate of Conducting Business Under Assumed Name "Marvel" is **irrelevant** is belied by his relentless |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Conducting Business Under Assumed Name "Marvel," dated March 8, 1967)<br><br>(2021MARVEL-0024197 – 2021MARVEL-0024199) | companies has no bearing on the material issues in this case. Even if such a dba certificate had been sought or attained in the Period this would do nothing to establish an agency relationship between MMC (as the agent) and the relevant shell companies (as MMC's principal). Nor does a mere dba like "Marvel" for branding or marketing purposes, etc., affect or transform the status of the shell companies as separate juridical entities. Nor does it establish a material legal relationship between the relevant shell companies and any other corporation. | contention that "Marvel" and/or the "Marvel Comics Group" was not a real business entity. This exhibit establishes that Goodman's various commonly owned and controlled publishing entities in fact did business as "Marvel" or "Marvel Comics Group," as Goodman himself attested to under oath as the President of each such entity in this exhibit.  That is directly relevant and responsive to Defendant's legal arguments concerning Marvel's corporate structure and the affiliation of the copyright registrants with other Marvel entities. |
| 54. | Lens Decl. Ex. 76<br><br>(Copy of a Certificate of Conducting Business Under Assumed Name "Marvel Comics Group," dated March 8, 1967<br><br>(2021MARVEL-0069149 – 2021MARVEL-0069155) | <u>Irrelevant (Fed. R. Evid. 401)</u>. Whether a dba certificate was sought or attained after the relevant 1962-1965 Period for one or more of the shell companies has no bearing on the material issues in this case. Even if such a dba certificate had been sought or attained *in the Period* this would do nothing to establish an agency relationship between MMC (as the agent) and the relevant shell companies (as MMC's principal). Nor does a mere dba like "Marvel Comics Group" for branding or marketing purposes, etc., affect or transform the status of the shell companies as separate juridical entities. Nor does it establish a material legal relationship between the relevant shell companies and any other corporation. | Defendant's objections lack merit for the reasons outlined in MCI's Responses to Defendant's Objection No. 53.  *See supra* at 63-64. |
| 55. | Lens Decl. Ex. 77<br><br>(Copy of Lisa R. Kirby, | *Exhibit 77 appears to have been misidentified. The document filed as Dkt. No. 71-98 (captioned Ex. 77) is a Notice of Termination by Patrick S. Ditko,* | As Defendant correctly observed, while Exhibit 77 should have been the Kirby's Notice of Termination related to Spider-Man, MCI |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Barbara J.Kirby, Neal L. Kirby, and Susan M. Kirby's "Notice of Termination of Transfer Covering Extended Renewal Term [–] "SPIDERMAN," dated September 15, 2009)<br><br>(2021MARVEL-0039754 – 2021MARVEL-0039761) | *Administrator of the Estate of Stephen J. Ditko.*<br><br>Irrelevant (Fed. R. Evid. 401). This Notice of Termination misidentified as Ex. 77 refers to just the cover of just one published Spiderman story which was penciled by Jack Kirby. | inadvertently filed Defendant's Notice of Termination related to Spider-Man.  MCI filed an errata and submitted a corrected version of Exhibit 77 concurrent with this filing.  *See* August 11, 2023 Declaration of Molly M. Lens, Ex. C.  MCI does not offer the exhibit for its truth—indeed, it was found by multiple courts to be *invalid*.  Rather, it is **relevant** to show that at least the cover art for the first appearance of Spider-Man was at issue in *Kirby*, and thus that both the district court and Second Circuit found that Jack Kirby's contributions to Spider-Man were done on a work-for-hire basis.<br><br>MCI also notes that, despite objecting to testimony from Steve Ditko about how Jack Kirby drew the cover art for *Amazing Fantasy* No. 15, Defendant seems to concede that the cover "was penciled by Jack Kirby" here. |
| 56. Lens Decl. Ex. 79<br><br>(Copy of excerpts of an interview entitled "An interview with DON HECK," published in Comics Feature No. 21 (November 1982))<br><br>(2021MARVEL-0070310 – 2021MARVEL- | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Defendant's only objection to this 1982 published interview of former Marvel artist Don Heck—that it is **hearsay**—lacks merit.  Heck's statements are admissible because they are contained in an ancient document published in 1982, as explained in MCI's Responses to Defendant's Objection Nos. 42 & 51.  *See supra* 57, 62-63. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | 0070322) | | |
| 57. | Lens Decl. Ex. 81<br><br>(February 14, 2023 Defendant Patrick Ditko Deposition Excerpts)<br><br>(Pages 60:2-5, 62:3-12) | <u>Lacks Foundation (Fed. R. Evid. 602); Calls for Speculation (Fed. R. Evid. 701)</u>. Patrick Ditko is a party to this case by virtue of his capacity as administrator of the estate of his brother, Stephen J. Ditko. Patrick Ditko testified that he "never discussed [] work with [his] brother." He further testified that his brother did not discuss these matters with family "[b]ecause he was that private" and would say: "What happens in New York stays in New York" (Ex.1, 21:2-9). Based on the foregoing, any responses by Patrick Ditko to questions pertaining to his brother's business with MMC would lack foundation and amount to speculation.<br><br><u>Irrelevant (Fed. R. Evid. 401)</u>. Due to the above no negative inferences should be drawn from Patrick Ditko's lack of relevant personal knowledge about his brother's business with Marvel.<br><br><u>Hearsay (Fed. R. Evid. 802</u>: Marvel's questions about what Ditko told his brother regarding Dr. Strange sought inadmissible hearsay in any event. | This evidence demonstrates that Defendant has no personal knowledge to support his arguments that Ditko drew Doctor Strange "on spec" or that the 1946 sketch was "Doctor Strange."  Defendant's admission that he *has* no personal knowledge and is simply relying on assumptions is plainly relevant and founded on Defendant's own (lack of) knowledge.  Thus, Defendant's **relevance**, **foundation**, and **speculation** objections fail. Finally, Defendant's testimony that Ditko never talked to him about Doctor Strange or the sketch does not rely on any out of court statements, and therefore it cannot be **hearsay**.  *Cf. United States v. Boyd*, 566 F.2d 929, 937 (5th Cir. 1978) (recordings of conversations are not hearsay when offered merely "to prove that the conversations occurred"). |
| 58. | Lens Decl. Ex. 82<br><br>(February 10, 2023 James Steranko | <u>Lacks Foundation (Fed. R. Evid. 602)</u>. Plaintiff has not established a proper foundation for the admission of the document. | The proffered testimony relates solely to when Jim Steranko began "working with Marvel," and whether he "work[ed] with" or "kn[e]w" Steve Ditko (the answer to both questions was "No.") Such testimony is **relevant** to show that he has no knowledge relevant to Ditko's working |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| Deposition Excerpts) (Pages 25:2-8, 26:21-24, 75:18-19) | Irrelevant (Fed. R. Evid. 401). Hearsay (Fed. R. Evid. 802). Speculation (Fed. R. Evid. 701). The declarant, who claims to have begun working at MMC in 1966, is not a percipient witnesses with respect to the creation of Ditko's works or relationship with MMC in the Period. Inadmissible Legal Conclusion. Best Evidence Rule (Fed. R. Evid. 1002). The testimony highlighted by Plaintiff discusses multiple sketches which were allegedly received by the declarant and is this subject to the best evidence rule. | relationship with Marvel during the relevant time period. And because Steranko has personal knowledge bearing on those issues, Defendant's **foundation**, **speculation**, and **inadmissible legal conclusion** objections are baseless. Similarly, because Steranko can be called to testify at trial, Defendant's **hearsay** objections are likewise meritless. Finally, although Defendant suggests Steranko discusses multiple sketches, MCI is not attempting to prove the content of those sketches through Steranko's testimony, meaning the **best evidence rule** is inapplicable. |
| 59. Lens Decl. Ex. 83 (February 2, 2023 Michele Hart-Rico Deposition Excerpts) (Pages 72:25-73:7, 207:24-208:1) | Irrelevant (Fed. R. Evid. 401). Best Evidence Rule (Fed. R. Evid. 1002). Because the testimony concerns the content of alleged interviews, the best evidence rule applies. Hearsay (Fed. R. Evid. 802). The deposition testimony contains hearsay, including statements summarizing unidentified interviews and relies on other unidentified sources. The persons responsible for these interviews cannot provide expert or lay opinion, nor are they percipient witnesses. | Michele Hart-Rico's testimony (who Defendant's counsel of record represented at the time) about her now-deceased husband Don Rico's financial success as a comic artist during the 1950s and 1960s is **relevant** to rebut Defendant's baseless suggestion that Marvel artists were underpaid or otherwise in dire financial straits during the 1960s.  And none of Hart-Rico's testimony— which concerns her own recollection of how financially well-off she and her husband were—is **hearsay** or subject to the **best evidence rule**. |
| 60. Lens Decl. Ex. 84 | Improper and Undisclosed Expert Opinion Mr. | Defendant's objections fail for the same reasons outlined in MCI's Response to Defendant's |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (January 20, 2023 Roy Thomas Deposition Excerpts)<br><br>(Pages 30:17-31:1, 87:11-90:4, 247:13-16, 273:11-15, 283:4-12, 303:14-304:19, 311:13, 335:2-5) | Thomas purports to give expert testimony and artistic analysis regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. Mr. Thomas was neither disclosed nor designated as an expert witness in this case.<br><br>Lacks Foundation (Fed. R. Evid. 602) Plaintiff has not established a proper foundation for the admission of the document.<br><br>Speculation (Fed. R. Evid. 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>The highlighted testimony cited in Plaintiff's Opposition Memorandum contains statements which are conclusions without evidentiary foundation. Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or relationship with MMC in the Period. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12.<br><br>Inadmissible Legal Conclusion. Mr. Thomas makes improper legal conclusions as to the corporate structure of the companies as well as the ownership of the companies.<br><br>Hearsay (Fed. R. Evid. 802). The declarant refers | Objection No. 11. *See supra* at 13-14. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | to out of court statements by others, including Stan Lee, which is inadmissible hearsay, not subject to any hearsay exception. | |
| 61. | Lens Decl. Ex. 85<br><br>(October 28, 2022 Nanci Solo Deposition Excerpts)<br><br>(Pages 155:16-156:3) | Irrelevant (Fed. R. Evid. 401). | MCI agrees that Nanci Solo—the daughter of former Marvel contributor Gene Colan—has no testimony relevant to this case.  Indeed, MCI noted in MCI's Objection No. 18, Solo was a one-year-old baby in 1965 when the last of the Works was published, and was not yet alive when most Works were published.  At that age, she could not have formed a contemporaneous understanding of the nature of her father's working relationship with Marvel—let alone Steve Ditko's.  *See* Dkt. 95 at 17.  However, putting aside that foundational deficiency, this excerpted testimony from Solo is **relevant** to rebut Defendant's use of Solo's testimony because Solo confirmed that, while she has heard Steve Ditko's name, she does not know who he is.  Thus, this testimony demonstrates that Defendant cannot use Solo to try to create an issue of fact about whether Steve Ditko was paid for the comics at issue here. |
| 62. | Lens Decl. Ex. 86<br><br>(October 25, 2022 Lawrence Lieber Deposition Excerpts)<br><br>(Page 156:5-13) | Hearsay (Fed. R. Evid. 802).<br><br>Irrelevant (Fed. R. Evid. 401). The declarant's statements regarding his own experiences with Lee are irrelevant for purposes of determining what occurred between Lee and Steve Ditko. | Mr. Lieber's testimony about his own personal experience is plainly not **hearsay**.<br><br>Lieber's testimony is also **relevant** to rebut Defendant's suggestion that Marvel rejected and failed to compensate freelancers for their assignments with any regularity—if at all. |

| | **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|---|
| 63. | Lens Decl. Ex. 87<br><br>(March 14, 2013 Stan Lee Deposition Excerpts from *Stan Lee Media, Inc. v. The Walt Disney Company*, No. 12-cv-02663 (D. Colo.).)<br><br>(Page 109:19-25 [2021 MARVEL-0131443].) | <u>Hearsay (Fed. R. Evid. 802)</u>. The article read into the record by counsel (which constitutes much of the Exhibit) is hearsay, not subject to any hearsay exception.<br><br><u>Inadmissible Legal Conclusion</u>. The article read into the record by counsel as well as Mr. Lee's conclusion as to the accuracy of the statements contained therein (i.e., "Anything I create Stan Lee Media will own," "At Marvel I was an employee, a writer for hire[,]" and "No one who worked for a comics company back then owned anything they created") constitute inadmissible legal conclusions. | Stan Lee's sworn deposition testimony confirming the accuracy of a quote attributed to him in a 2000 Chicago Tribune article is not inadmissible **hearsay**.  Lee's statement, which disclaims Lee's ownership over any of the works he created for Marvel, is admissible under Rule 804(b)(3) given that it goes against Lee's pecuniary interests and Lee is no longer alive.  *See Marya*, 131 F. Supp. 3d at 992 n.14 (admitting hearsay statement over the public performance of *Happy Birthday* "because it is reasonable to infer that [the creator] was aware of the potential consequences of disclaiming her rights to the *Happy Birthday* lyrics while talking to a reporter about her sister's lawsuit over the rights to another element of the same song"); *Reich*, 1993 WL 372270, at *7 n.6 (in wage-and-hour lawsuit, employees' statements that they were fully compensated for work for employer admissible under Rule 804(b)(3) as statements against pecuniary interest).  In addition, because the statements are against Lee's pecuniary interest, they are sufficiently trustworthy that they should also be admitted under Rule 807's residual hearsay exception.<br><br>Further, Lee's statement is not an **inadmissible legal conclusion**.  It demonstrates Lee's personal knowledge and understanding of the structure under which he and others at Marvel (including Steve Ditko) worked, which is not a legal conclusion.  *See, e.g.*, *In re PCH Assocs.*, 60 B.R. at 875 (deponent's "understanding and |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | recollection of what took place" not a legal collection); *Air Support Int'l*, 54 F. Supp. 2d at 169 (relying on deponent's "business understanding" in summary judgment disposition). |
| 64. | Lens Decl. Ex. 88<br><br>(May 13, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-cv-141 (S.D.N.Y.))<br><br>(Page 120:3-9 [2021 MARVEL-0130923].) | <u>Lacks Foundation (Fed. R. Evid. 602)</u>. Mr. Lee's highlighted testimony affirming the statements of counsel and responding to counsel's questions lacks foundation.<br><br><u>Inadmissible Legal Conclusion</u>. Mr. Lee makes improper legal conclusions in his rehearsed testimony regarding substantive copyright law issues and Marvel's alleged ownership of certain works. *See e.g.* 120:3-5 ("I never owned these characters. I did them as a work for hire. So the company owned the characters.")<br><br><u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness.  Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question | Defendant's objections fail for the same reasons outlined in MCI's Response to Defendant's Objection No. 13.  *See supra* at 15-19. |

| **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|
| | Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters.  Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.*¶ | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id*.¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id*.¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id*.¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id*.¶ 102. This contradicts all the record evidence. *Id*.¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id*.¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a | |

| | **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|---|
| | | genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. | |
| 65. | Lens Decl. Ex. 89<br><br>(March 6, 2007 James Steranko Siegel Deposition Excerpts from *Siegel v. Time Warner Inc*., Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.).)<br><br>(Page 82:3-23) | Inadmissible Legal Conclusion & Contradictory Testimony. Mr. Steranko testified about his understanding of the "work for hire" doctrine as well as his legal conclusion that he was in a work for hire relationship. That testimony constitutes an inadmissible legal conclusion.<br><br>Hearsay (Fed. R. Evid. 802). Mr. Steranko testimony about alleged statements made to him is hearsay, not subject to any hearsay exception.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Steranko's testimony concerns the content of alleged checks and other documents, the best evidence rule applies. | Jim Steranko gave this testimony as a retained expert in *Siegel v. Time Warner Inc*., Nos. 04-cv-8400 and 04-cv-8776 (C.D. Cal.)—it is not an **inadmissible legal conclusion**, nor is it **hearsay**, given that the testimony concerns Steranko's personal knowledge and experience working at Marvel.<br><br>And while MCI agrees that Steranko gave **contradictory testimony**, that is the very reason MCI offers this exhibit. Indeed, this exhibit establishes that Steranko's sworn testimony from this case is "inescapably and unequivocally" inconsistent with his testimony in *Seigel*, and thus that the Court should disregard it entirely. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 85-88 (2d Cir. 2019) (district court properly disregarded deposition testimony that was "inescapably and unequivocally contradicted by [witness's] own [prior] sworn [testimony]"); *In re Fosamax Prod. Liab. Litig*., 707 F.3d 189, 194 (2d Cir. 2013) (district court properly disregarded deposition testimony where it "inescapably and unequivocally contradicted the testimony [the witness] gave" in a prior deposition).<br><br>Finally, while Defendant's **best evidence rule** |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | objection would have merit if MCI offered this evidence to establish the terms of the alleged legends on the back of Marvel checks, the purpose of this testimony is—again—to show that Steranko's testimony is inescapably and unequivocally inconsistent and therefore must be disregarded. *See Bentley*, 935 F.3d at 85-88. But, to be clear, MCI agrees with Defendant that the best evidence rule prevents the use of testimony to prove the contents of the check legends, as Defendant improperly attempts to do. *See* Ditko's Rule 56.1 Statement, Dkt. 78 ¶¶ 67-69. |
| 66. | Lens Decl. Ex. 90<br><br>(December 14, 1967 Martin Goodman 1967 Deposition Excerpts from *Joseph H. Simon v. Martin Goodman et al.* (N.Y. 1966))<br><br>(Page 5:11-19 [2021 MARVEL-0041169].) | <u>Lacks Foundation (Fed. R. Evid. 602).</u> Plaintiff has not established a proper foundation for the admission of this Exhibit.<br><br><u>Speculation (Fed. R. Evid. 701).</u> Mr. Goodman testified "I can't recall" when asked which entity published first published Captain America. Ex. 90 at 5:11-15. Moreover, Mr. Goodman was ignorant as to whether "[he] ha[d] the first publication copyrighted." *Id.*at 5:15-19. Mr. Goodman testified "I would believe so"; However, he identified no basis for his "belie[f]". *Id.*<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> It is unclear why Plaintiff cites this testimony. The questions to which Mr. Goodman responded are explicitly limited to Captain America. *See Id.*at 5:9-12 ("Q. When was Captain America first published. A. As near as I can recall the early part of 1940. Q. Who | Martin Goodman, as the owner of the publishing entities and the publisher of Marvel comics, had personal knowledge of his business operations and therefore Defendant's **foundation** and **speculation** arguments lack merit.<br><br>Moreover, Goodman's testimony plainly shows that it was a common practice of Goodman's to register copyrights in the name of the entity that published the relevant work, meaning his testimony is **relevant** to respond to and rebut Defendant's entity arguments.<br><br>Finally, Goodman's testimony is not subject to the **best evidence rule**, as it does not concern the content of any copyright registrations—rather, it concerns his knowledge and understanding of the business practices he employed as owner and publisher of Marvel. |

| **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|
| | published it? A. One of my corporations.") To the extent this excerpt of deposition testimony is being cited for any property aside from Captain America, it is irrelevant.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Goodman's testimony concerns the content of the copyright registrations, the best evidence rule applies. | |
| 67. | Lens Decl. Ex. 91<br><br>(November 13, 1967 Martin Goodman 1967 Bill of Particulars from *Joseph H. Simon v. Martin Goodman et al.*)<br><br>(2021MARVEL-0056396 –2021MARVEL-0056405) | Best Evidence Rule (Fed. R. Evid. 1002). This document impermissibly discusses the content of numerous distinct documents.<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802). The document is inadmissible to prove the truth of the matters asserted therein, such as whether the lists of people and entities and descriptions thereof are accurate. It is not subject to any hearsay exception.<br><br>Inadmissible Legal Conclusion. This document contains multiple inadmissible legal conclusions. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 9. *See supra* at 11. |
| 68. | Lens Decl. Ex. 94<br><br>(Clifford Meth, "The Gene Colan Interview" (June 17, 1995), reprinted in *The Invincible Gene Colan* 18, 181 (C. Meth ed., 2010).) | Irrelevant (Fed. R. Evid. 401).<br><br>Hearsay (Fed. R. Evid. 802). The alleged statements contained in the article are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be | Contrary to Defendant's objection, Gene Colan's statement that he has earned a decent living in his 50 years working in comics is **relevant** to rebut Defendant's suggestion that freelance artists were underpaid or struggling financially.  And the statement is not inadmissible **hearsay**.  Under Rule 803(3), it can be admitted as a statement concerning Colan's then-existing mental and |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (COLAN-0061 – COLAN-0067) | entered into evidence for the truth of the matter asserted therein.") (citations omitted). | emotional condition. *See, e.g., Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 91-92 (E.D.N.Y. 2020) (affidavit reflecting plaintiff's "emotional state" at a particular time admissible under 803(3)); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 298-99 (S.D.N.Y. 2001) (finding consumer statements "that they were confused" admissible "to show the customers' state of mind"). |
| 69. | Lens Decl. Ex. 95<br><br>("INTERVIEW: JIM STERANKO" and "HE COULDN'T WAIT," published in *Fantastic Fanzine* No. 11, pgs. 11, 31 (1970).)<br><br>(STERANKO-0165 – STERANKO-0184) | <u>Hearsay (Fed. R. Evid. 802)</u>. The alleged statements  contained in the two articles are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). | Because this exhibit was published in 1970, the statements in it are admissible under Rule 803(16)'s exception for ancient documents, and Defendant's **hearsay** objection lacks merit. *See Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay); *TufAmerica*, 162 F. Supp. 3d at 321 n. 33 ("[T]he Billboard Article is over twenty-years old and is thus both admissible under the 'ancient document' hearsay exception and self-authenticating."). |
| 70. | Lens Decl. Ex. 96<br><br>(Martin Goodman Letter [To Whom it May Concern] dated March 20, 1967)<br><br>(2021MARVEL-0069166) | <u>Irrelevant (Fed. R. Evid. 401)</u>.<br><br><u>Hearsay (Fed. R. Evid. 802)</u>.<br><br><u>Inadmissible Legal Conclusion</u>.<br><br>The letter in question is not admissible to substantively establish that Charles Goodman gave Martin Goodman the authority with regard to the subject matter of the statement. | Contrary to Defendant's suggestion, this letter is **relevant** to show that Martin Goodman had and exercised control over Marvel, including by delegating his son to act as its agent.<br><br>Nor is Goodman's statement concerning authority an **inadmissible legal conclusion**. *See, e.g., Hagen*, 485 F. Supp. 2d at 627 (finding fact witness's "testimony regarding Hagen's *authority* to sign Quantum checks . . . is undoubtedly |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | admissible"). <br><br> Finally, because this exhibit is dated 1967, the statements in it are admissible under Rule 803(16)'s exception for ancient documents, and Defendant's **hearsay** objection lacks merit. |
| 71. Lens Decl. Ex. 97 <br><br> (Goodman Licensing Schedules containing the header "Simon v. Goodman" and captions "SCHEDULE 3–A, Miscellaneous Contracts Concerning Captain America", "SCHEDULE 3–B. Contracts with Krantz Films, Inc. on Standard Form Concerning Captain America", and "SCHEDULE 3–C. Contracts with Magazine Management on Standard Form Concerning Captain America") <br><br> (2021MARVEL-0039774, 2021MARVEL-0039824, and 2021MARVEL-0039825) | <u>Lacks Foundation (Fed. R. Evid. 602) & Improper Summary</u>. <br><br> Plaintiff has not established a proper foundation for the admission of summaries of the documents listed in Exhibit 97. <br><br> <u>Hearsay (Fed. R. Evid. 802)</u>. As these alleged contract "schedules" are offered for the truth of the matters stated therein, this Exhibit contains inadmissible hearsay, not subject to any exception. <br><br> <u>Irrelevant (Fed. R. Evid. 401)</u>. | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 2. *See supra* at 3-4. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 72. | Lens Decl. Ex. 98<br><br>(Kirby's MoL ISO Opp to MSJ dated March 25, 2011, filed in *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 1:10-cv-00141 (CM) (KF) (S.D.N.Y.), ECF 96.) | <u>Irrelevant (Fed. R. Evid. 401)</u>.<br><br><u>Legal memoranda are not evidence</u>. The legal memorandum filed in a separate case, on behalf of different parties, is at best an opinion about the evidence at a particular point in time, which would confuse the jury by presenting them with incomplete facts and would force them to speculate as to the meaning and basis without providing the complete context.  Accordingly, the legal memorandum should be excluded by the Court under Rules 401 and 403. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). | MCI offers this document—a memorandum of law the Kirby's submitted in opposition to MCI's motion for summary judgment in *Kirby*—simply to show that Defendant's counsel unsuccessfully made the exact same argument regarding check legends in *Kirby*.  Because it is not offered as substantive evidence, Defendant's objections miss the mark. |
| 73. | Lens Decl. Ex. 99<br><br>(Magic Comics Excerpts) | <u>Authenticity (Fed. R. Evid. 901)</u>. Plaintiff has not authenticated the documents beyond stating that the Exhibit "is a composite of true and correct images extracted from publicly available websites that depict excerpts of [the comics]" depicted therein. | Defendant's **authenticity** objection is meritless, because MCI can admit copies of the comics themselves at trial, which could be readily authenticated by persons familiar with them and/or under Rule 901(b)(8) given their status as ancient documents.  *See, e.g., Wexler*, 2022 WL 743431, at *11 ("Hearsay evidence is admissible at the summary judgment stage if the contents would otherwise be admissible at trial."). |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 74. | Lens Decl. Ex. 100<br><br>(*Doctor Strange* Vol. 1, No. 181 (July 1969).) | <u>Irrelevant (Fed. R. Evid. 401).</u> The allusion to a potential origin story in a particular comic book issue is immaterial to whether Defendant created the Doctor Strange character. | Defendant's suggestion that this exhibit—a Doctor Strange comic in which Doctor Strange's adversary refers to him as "Mandrake"—is **irrelevant** ignores the fact that Defendant put the origins of Doctor Strange at issue by suggesting, without support, that a bare sketch Steve Ditko purportedly drew in 1946 somehow depicted the Doctor Strange character who would first appear two decades later in Marvel's comics.  While MCI agrees that Defendant's arguments are immaterial to whether Ditko's contributions to Doctor Strange were done on a work-for-hire basis, this evidence is nonetheless relevant to rebut Defendant's argument about the purported similarities between the 1946 facial sketch and the visage of Doctor Strange, which—consistent with Roy Thomas's testimony—are shared by a great number of early comic book magicians all of whom drew inspiration from the character Mandrake the Magician who first appeared in a newspaper strip in 1934. |

Dated: August 11, 2023

**O'MELVENY & MYERS LLP**

By: _____/s/ Daniel M. Petrocelli_____
      Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Matthew Kaiser*
mkaiser@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Allen Burton
aburton@omm.com
Danielle Feuer
dfeuer@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

* Admitted *pro hac vice*
*Attorneys for Marvel Characters, Inc.*