UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVEL CHARACTERS, INC.,<br><br>                  Plaintiff,<br>v.<br><br>PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>                  Defendant. | Case No.: 1:21-cv-07957-LAK<br><br>Hon. Lewis A. Kaplan<br><br>**DEFENDANT AND COUNTERCLAIMANT PATRICK S. DITKO'S EVIDENTIARY OBJECTIONS TO ADDITIONAL MATERIAL OFFERED BY MARVEL CHARACTERS, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| PATRICK S. DITKO, in his capacity as Administrator of the Estate of Stephen J. Ditko,<br><br>                  Counterclaimant,<br>v.<br><br>MARVEL CHARACTERS, INC. and DOES 1-10, inclusive,<br><br>                  Counterclaim-Defendants. | |

Defendant and Counterclaimant Patrick S. Ditko, as Administrator of the Estate of Steven J. Ditko (the "Estate") respectfully submits the following Evidentiary Objections to the purported additional evidence offered by Plaintiff Marvel Characters, Inc.'s ("MCI" or "Plaintiff") in support of MCI's Motion for Summary Judgment and MCI's Opposition to the Estate's Motion for Summary Judgment and attached as Exhibits 101–115 to the supplemental Declaration of Molly M. Lens (Dkt. No. 103).

| Material Objected To: | Grounds for Objection: |
|---|---|
| 75.  Lens Decl. Ex. 101<br><br>(January 20, 2023 Roy Thomas Deposition Excerpts)<br><br>(108:17-109:14, 112:20-114:19, 125:18:126:1, 329:9-21, 330:3-334:5) | <u>Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701)</u>.  Roy Thomas ("Thmas") is not a percipient witness with respect to the creation of Stephen Ditko's ("Ditko") works or relationship with Magazine Management Co. ("MMC") in the relevant 1962-1965 period (the "Period"). No reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12. Lay witness testimony must be grounded in observation or other first-hand personal experience. Here, Mr. Thomas' testimony lacks foundation and amounts to speculation. By Mr. Thomas' own admission in the testimony cited by Plaintiff, "the system or method for creating comics at Marvel in the 1960s, prior to [his] joining in 1965, differed from that in place when [he] joined in '65[.]" (*See* 331:1-15 ["it had evolved somewhat obviously from the early '60s"].) To the extent Mr. Thomas testified that processes were static beyond the period, he admits that he is reliant on what others have told him. The highlighted testimony contains statements which are conclusions without evidentiary foundation. Mr. Thomas testified "He probably did" when asked "do you have any recollection of Gene Colan's other artwork for Marvel during the relevant period being rejected?" (108:17-109:14), meaning any testimony on this subject lacks foundation and amounts to speculation. *See also* 109:2-14 (further speculation ["probably not"] when asked about business operations during the Period.) |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
|  | Improper and Undisclosed Expert Opinion Mr. Thomas purports to give expert testimony and artistic analysis regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. However, Plaintiff has neither disclosed nor designated Mr. Thomas as an expert witness in this case. Of note, Mr. Thomas expatiates on numerous improper hypotheticals for which he has not been designated as an expert and lacks the requisite knowledge and expertise. *See e.g.*, 125:18:126:1.<br><br>Hearsay (Fed. R. Evid. 802); Contradictory Testimony. The excerpted deposition transcript contains inadmissible hearsay. Counsel's reading into the record excerpts from a non-appended exhibit to the deposition (Exhibit 62 AlterEgo magazine article, Rascally Roy Celebrates 40 Years Since Modeling with Millie No. 44, and a few More Marvel Milestones!) is inadmissible hearsay. The same is true for Mr. Thomas recitation of the text. (See e.g., 112:20-114:19) Mr. Thomas' testimony as to the alleged statements of others, including Stan Lee and Gene Colan, is also inadmissible hearsay. That his testimony is riddled with hearsay is itself confirmed by counsel's statements asking what others told him. (See e.g., 330:3-334:5)<br><br>Irrelevant (Fed. R. Evid. 401). Mr. Thomas' testimony discusses other artists and events which did not occur during the Period. Moreover, his testimony shows that even in these situations, there was not a reliable pattern of conduct. *See* 112:20-25.<br><br>Lacks Foundation; Propensity Evidence (Fed. R. Evid. 602, 404). This is an impermissible attempt at introducing propensity evidence. (*See e.g.*, 112:20-114:19) The behavior as described does not have a sufficiently reflexive, nonvolitional quality for it to constitute a "habit"; nor has a proper basis been established that Stan Lee or Geme Colam even had such a habit in the first instance. ("But the problem was that Gene had a tendency to start working on stories without bothering to read the whole plot"; "mostly Stan would…"). Moreover, as explained in the Objection to Lens Decl. Ex. 101. *supra,* no reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying. |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| 76. Lens Decl. Ex. 103<br><br>(January 7, 2011 Lawrence D. Lieber Deposition Excerpts from *Marvel Worldwide, Inv. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).)<br><br>(7:17-23, 60:4-9, 63:24-25, 65:3-8, 109:23-110:6) | <u>Hearsay (Fed. R. Evid. 802)</u>. Much of Mr. Lieber's testimony contains hearsay. As an example, Mr. Lieber testifies to alleged conversations he had with his brother (*see* 60:4-9, 63:17-25) and representatives of Marvel (*see* 28:23-29:6)<br><br><u>Inadmissible Legal Conclusions.</u> Mr. Lieber makes statements which incorporate legal conclusions. This includes Mr. Lieber's conclusion that he was an employee of his brother. (See e.g., 7:17-23)<br><br><u>Irrelevant (Fed. R. Evid. 401).</u> How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Ditko and other freelance artists or writers in the Period when "Marvel" was a tiny fledgling business. |
| 77. Lens Decl. Ex. 104<br><br>(December 8, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inv. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).)<br><br>(211:14-17, 212:21-213:2, 289:12-21) | <u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony</u>. Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others (see e.g., 101:10-12.) Stan Lee passed away in 2018. The excerpted transcript does not fall within the hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question and examine Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| | over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. |
| | Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. In fact, Lee testifies as to his poor memory in the very excerpt highlighted by Plaintiff. (See e.g., 289:18 ["I have a bad memory for details."]) <br><br> Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, the best evidence rule applies. *See* Fed. R. Evid. 1002 ("An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise."). <br><br> Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701). Mr. Lee testified "I have no idea. I mean I don't remember this. I -- I don't read the contracts" when asked about contracts and companies associated with POW!, including Silver Creek Pictures and Disney, meaning any testimony on this subject lacks foundation and amounts to speculation. |
| 78. Lens Decl. Ex. 105 <br><br> (May 13, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inv. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).) <br><br> (100:25-102:24) | Hearsay (Fed. R. Evid. 802); Contradictory Testimony. Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others. (*See e.g.,* 101:10-12.) Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit* |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| | *LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020). |
| | Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. |
| | Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. |
| | Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. For example, in the highlighted testimony Lee does not even remember at his 2010 deposition that Mr. Fleisher, who was present, questioned Lee in his 2003 deposition. ((See e.g., 101:18-22).<br><br>Inadmissible Legal Conclusion. Mr. Lee's testimony contains inadmissible legal conclusions. (*See e.g.*, 101:13-17 [Lee testifying as to his belief regarding who owned the characters].)<br><br>Irrelevant (Fed. R. Evid. 401). Lee testifying as to his belief that Marvel "owned the characters" is largely irrelevant to the issues in this case. Termination under 17 U.S.C. § 304 (c) assumes copyright ownership by a transferee, otherwise there would be no reason to terminate.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, including arguments contained in filings from another lawsuit, the best evidence rule applies. (*See e.g.*, 101:5-9 ["According to my contract…"]) |
| 79. Lens Decl. Ex. 106<br><br>(November 18, 2003 Stan Lee Deposition Excerpts from *Stan Lee v. Marvel Enterprises, Inc.* No. 02-cv-8945 (S.D.N.Y.).)<br><br>(13:4-14:20, 16:3-19, 17:2-8, 19:1-10, 26:16-28:18, 37:18-38:15) | Hearsay (Fed. R. Evid. 802); Contradictory Testimony. Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others. (See e.g., 27:2-10.) Stan Lee passed away in 2018. The excerpted transcript does not fall within hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Lee. Numerous issues raised by Defendant were not addressed |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| | in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! for $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| | for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, the best evidence rule applies. (See e.g., 27:7-12 ["And I received some sort of a document saying that I had the rights to it."])<br><br>Irrelevant (Fed. R. Evid. 401). Much of Lee's excerpted testimony deals with a different time period (1945) long before the Period, and thereafter his testimony pertains to different works (i.e., "The Fury of the Femizons") and different artists (e.g., John Romita) which have no bearing on this case. |
| 80. Lens Decl. Ex. 107<br><br>(October 13, 1999 Roy Thomas Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman*, No. 97-638 (D. Del.).)<br><br>(9:14-16, 18:7-18, 24:11-25:3, 27:15-29:2, | Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or his relationship with MMC in the Period. Mr. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Mr. Thomas' conclusion that writers understood Marvel's alleged policy lacks foundation and amounts to speculation (See 49:2- |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 37:13-39:7, 42:6-18, 47:17-50:22) | 11 ["I assumed that it was"]). In addition, Mr. Thomas testified that he had difficulty agreeing with the proposition that there was even a "pattern" with regard to how an idea for a new series would typically originate. (See 24:11-25:3 "Well, it could – the problem, of course, is in the word typically, because… it could have – if things like things did happen in other ways as well.") <br><br> Hearsay (Fed. R. Evid. 802). Mr. Thomas' testimony about alleged conversation he had with others is inadmissible hearsay, not subject to any exception. <br><br> Inadmissible Legal Conclusion. Mr. Thomas's testimony contains inadmissible legal conclusions, including as to the effect of purported Marvel policies regarding ownership of characters and other intellectual property. |
| 81.  Lens Decl. Ex. 108 <br><br> (August 20, 1999 Gene Colan Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman,* No. 97-638 (D. Del.).) <br><br> (121:6-20) <br><br> (2021MARVEL-0032787 – 2021MARVEL-0032958) | Hearsay (Fed. R. Evid. 802). The transcript contains hearsay from Gene Colan ("Colan") who passed away in 2011. This testimony was given nearly half a century following the events discussed therein. The excerpted transcript does not fall within the hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Colan. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed testimony given by Colan has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York,* No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020). |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
|  | Irrelevant (Fed. R. Evid. 401). Gene Colan's purported experience working with Stan Lee is of little probative value as, at best, it reflects the dynamic between the two men. |
| 82. Lens Decl. Ex. 109 (Correspondence Dated July 6, 1942 and April 28, 1942 between Fawcett Publications, Inc., Timely Comics, Inc., and Abraham Goodman) (2021MARVEL-0039527 – 2021MARVEL-0039528) | Hearsay (Fed. R. Evid. 802). This 1942 correspondence constitutes inadmissible hearsay, not subject to any exception.<br><br>Irrelevant (Fed. R. Evid. 401). The 1942 consent by Timely Comics, Inc. to Fawcett Publications, Inc. to use the name "Captain Marvel" and 1942 consent by Fawcett Publications, Inc. to Timely Comics, Inc. to register "Marvel Mystery Comics" as the title of a publication, each two decades before the relevant Period no less, have absolutely no relevance to the issues in this case. |
| 83. Lens Decl. Ex. 111 (Excerpts from an interview with Stan Lee published in *Cartoonist Profiles* No. 4 (Nov. 1969).) (2021MARVEL-0070383 – 2021MARVEL-0070386) | Authenticity & Lacks Foundation (Fed. R. Evid. 602, 901). Defendant supplies no evidence sufficient to support a finding that this document is an authentic transcription of an interview with Stan Lee conducted in August 12, 1968. Nor does Plaintiff cite any other evidence or information that could supply an adequate foundation. The date of the interview is not provided, only that the interview was published in November 1969. The interviewer, and editors, if any, are not named.<br><br>Hearsay (Fed. R. Evid. 802). The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). The lack of authenticating information forcloses admission of the exhibit under Rule 803(16) as an ancient document or under Rule 807's residual hearsay exception. |

| Material Objected To: | Grounds for Objection: |
|---|---|
| | Irrelevant (Fed. R. Evid. 401). Stan Lee's purported experience working with Gene Colan is of little probative value, as, at best, it reflects the dynamic which occurred between the two. This conclusion is confirmed in the very same paragraph, where Lee explains that "In the case of Jack Kirby," "[Lee didn't] know what the heck the story [was] going to be." |
| 84. Lens Decl. Ex. 112<br><br>("'So You Want A Job, Eh?' The Gene Colan Interview," published in *Alter Ego* Vol. 1, No. 6 (Autumn 2000))<br><br>(2021MARVEL-0071054 – 2021MARVEL-0071065) | Hearsay (Fed. R. Evid. 802). This document contains hearsay from Gene Colan who passed away in 2011. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that this article has the indicia of trustworthiness needed to admit it under Rule 807. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590 (S.D.N.Y. 2002). This 2000 letter was written nearly half a century following the events discussed therein. The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br>Irrelevant (Fed. R. Evid. 401). Gene Colan's purported experience working with Stan Lee is of little probative value as, at best, it reflects the dynamic between the two. Moreover, the statement cited, though brief, reflects a fluid working relationship wherein the two men would not always follow the same routine ("Other times, he…."). |
| 85. Lens Decl. Ex. 113<br><br>(Excerpts from *Journey into Mystery* Vol. 1, No. 98 (Nov. 1963).)<br><br>(2021MARVEL-0130300 – | Hearsay (Fed. R. Evid. 802). Inadmissible Legal Conclusion. Irrelevant (Fed. R. Evid. 401). The notice contained in the excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. The copyright registration of the comic book magazine rather than the copyright notice is the operative document, and Martin Goodman is not listed as the copyright claimant on such registration. Lens. Decl. Ex. 24C at 127, Dkt. 74-30 |

| Material Objected To: | Grounds for Objection: |
|---|---|
| 2021MARVEL-0130301) | (copyright certificate listing only Atlas Magazines, Inc. as copyright claimant) The content of this copyright notice has no bearing on the issues in this case. See e.g., James E. Hawes & Bernard C. Dietz, *Copyright Registration Practice* § 26:8 (May 2023 rev. ed) ("The name given in the notice as owner of the copyright, and the name given in the application as claimant, may be different.") Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.09[B] (Aug. 2021 rev. ed) |
| 86. Lens Decl. Ex. 114 (Excerpts from *Daredevil Annual* Vol. 1, No. 1 (Sept. 1967).) | Hearsay (Fed. R. Evid. 802). Inadmissible Legal Conclusion. Irrelevant (Fed. R. Evid. 401). The notice contained in the excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. The copyright registration of this comic book magazine rather than the copyright notice is the operative document, and Martin Goodman is not listed as the copyright claimant on such registration. Plaintiff failed to introduce the copyright certificate for this work, presumably for that reason. (Indeed, it has not produced the copyright certificates for any edition of Daredevil Annual). Hower, the publicly available renewal registration (Reg. No. RE0000714660, Dec. 29, 1995; Renewal registration for Reg. No. B00000361058, June 29, 1967) lists only Olympia Publications, Inc. ("Title: Daredevil (annual issue) Vol. 1, no. 1, Sept. 1967. By Olympia Publications, Inc."; "Names: Olympia Publications, Inc. Marvel Characters, Inc.") The content of this copyright notice has no bearing on the issues in this case. See e.g., James E. Hawes & Bernard C. Dietz, *Copyright Registration Practice* § 26:8 (May 2023 rev. ed) ("The name given in the notice as owner of the copyright, and the name given in the application as claimant, may be different.") Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.09[B] (Aug. 2021 rev. ed) |
| 87. Lens Decl. Ex. 115 ("All in the Marvel Family," a transcription of the Merry Marvel | Hearsay (Fed. R. Evid. 802). Inadmissible Legal Conclusion. Irrelevant (Fed. R. Evid. 401 & 403). The statement contained in excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. |

| **Material Objected To:** | **Grounds for Objection:** |
|---|---|
| Marching Society's 1965 album, "The Voices of Marvel," published in *Comic Book Artist* No. 18 (Mar. 2002).) (2021MARVEL-0080224 – 2021MARVEL-0080294) | Additionally, these statements are unduly prejudicial as they portray the decedent as cowardly or otherwise ascribe non-relevant negative traits to him ("Why it's Steve Ditko. He heard you're making a record and he's got mike fright!"). (If anything, these song lyrics support the contention that Steve Ditko was a private individual who was not inclined to discuss business.) |