# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265

Tel: (310) 246-3333 / Fax: (310) 246-3101
mtoberoff@toberoffandassociates.com

August 30, 2023

**Via ECF**

Hon. Lewis A. Kaplan
United States District Court, SDNY
500 Pearl Street
New York, New York 10007

**Re:** *Marvel Characters, Inc. v. Patrick S. Ditko*, Case No. 1:21-cv-07957-LAK

Dear Judge Kaplan:

I represent Defendant and Counterclaimant Patrick S. Ditko, as Administrator of the Estate of Stephen J. Ditko ("Defendant") in the above-referenced action. Pursuant to the Court's Individual Rules of Practice, I write respectfully to request that the Court disregard Plaintiff Marvel Characters, Inc.'s ("Marvel" or "Plaintiff") improper Reply to Defendant's Response and Counterstatement to Plaintiff's Rule 56.1 Statement of Material Facts (ECF No. 104) ("Reply to Defendants' 56.1 Response"), or alternatively, if the Court is inclined to consider it, that Defendant be permitted to respond succinctly to it. To avoid burdening the Court with further motion practice, and given the disfavor with which motions to strike 56.1 submissions are viewed, Plaintiff submits this letter for the Court's consideration, but stands ready to submit full motion briefing on this issue if the Court deems it appropriate.

## I. Introduction.

Steve Ditko ("Ditko"), who died in 2018, is a celebrated comic book artist and writer, most famous for creating Dr. Strange and co-creating Spider-Man. In 2021, Ditko's Estate exercised his rights under Section 304(c) of the 1976 Copyright Act to recover his joint copyright interest in the stories he co-authored, serving notices of termination of Ditko's express or implied copyright transfers in 1962-1965 to Marvel's predecessor, Magazine Management, when it purchased and published his works. Marvel, a subsidiary of the Walt Disney Company, thereafter initiated the instant litigation in an effort to prevent Ditko's family from reclaiming his joint copyright interest.

On May 19, 2023, Marvel and Defendant filed cross motions for summary judgment (ECF Nos. 67 and 75). In connection with these submissions, both parties filed their respective 56.1 Statements,[1]

---

[1] *See* Plaintiff's Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried in Support of Motion by Marvel Characters, Inc. For Summary Judgment ("Pl.'s 56.1 Statement") and Defendant's Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried in Support of Motion for Summary Judgment by Defendant and Counterclaimant Patrick S. Ditko ("Def.'s 56.1 Statement") (ECF Nos. 69 and 78, respectively).

and a Response to the opposing party's 56.1 Statement.[2] Subsequently, and expressly contrary to all applicable rules and relevant decisions in the Second Circuit, Marvel filed a 383-page Reply to Defendants' 56.1 Response[3]—with brief-like argument headings—in which it purported to introduce new exhibits, add record citations, re-argue its own unsupported characterizations of the record, explicitly or implicitly amend the statements made in its 56.1 Statement, and claimed that, in light of the above, *every* one of Marvel's contentions is "undisputed."

Marvel's Reply to Defendant's 56.1 Response is improper and incorrect. As further set forth below, such a reply is not permitted under the applicable rules, as courts have repeatedly found. Moreover, given the parties' cross-motions for summary judgment, it is effectively also an improper sur-reply. Further, Marvel erroneously insists that each of its 56.1 statements is "undisputed"—which is demonstrably false and, in any event, a question for this Court. Marvel's Reply to Defendants' 56.1 Response is particularly improper and potentially unfairly prejudicial to Defendants because it effectively seeks to amend the majority of its original statements, without providing Defendant an opportunity to respond.

Accordingly, Defendant respectfully requests that the Court entirely disregard Marvel's Reply to Defendant's 56.1 Response. Should the Court be inclined to consider it, however, Defendant asks that he be permitted to respond to it, as set forth below. As explained in Defendant's 56.1 Response and other submissions related to Defendant's Motion for Summary Judgment, there is no genuine dispute as to any material fact preventing summary judgment in Defendant's favor, but Marvel's 56.1 Statement is replete with unsupported mischaracterizations of the record and improper legal argument, and such statements are clearly not "undisputed."

## II. **Marvel's Improper Reply to Defendant's 56.1 Response.**

    A. Marvel's Reply to Defendant's 56.1 Response Is Not Permitted.

The rules are clear that a party is required to provide statements pursuant to Local Rule 56.1, and the non-moving party is required to provide a response to the other side's 56.1 statements—but the moving party is not permitted to file a reply to the non-moving party's response.[4] The Court's Individual Rules of Practice state that "[e]xcept as otherwise provided [therein,] procedures are governed by the Local Rules of this Court and the Federal Rules of Civil Procedure."[5]

"Courts in this District have concluded that a reply Rule 56.1 statement constitutes a procedurally improper attempt to have the last word in a manner that is not contemplated by the local

---

[2] *See* Defendant Patrick S. Ditko's Response to Marvel's Local Rule 56.1 Statement of Material Facts ("Def.'s Resp. to Pl.'s 56.1 Statement") and Plaintiff Marvel Characters, Inc.'s Opposition to Defendant Patrick S. Ditko's Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried in Support of His Motion for Summary Judgment ("Pl.'s Resp. to Def.'s 56.1 Statement") (ECF Nos. 89 and 93, respectively).

[3] *See* Plaintiff Marvel Characters, Inc.'s Reply Local Rule 56.1 Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried in Support of Its Motion for Summary Judgment ("Pl.'s Reply to Def.'s Resp. to Pl.'s 56.1 Statement"), ECF No. 104.

[4] Local Rules of the United States District Courts for the Southern and Eastern District of New York, Rule 56.1(a) & (d) ("Local Civil Rule 56.1") (effective Oct. 15, 2021).

[5] *See* Individual Rules of Practice of Judge Kaplan at 1 (Rev. Apr. 18, 2020).

rules. … [T]he local rule does not authorize the filing of such a reply."[6] "A reply 56.1 statement is particularly unnecessary where, as here, the Court is considering cross-motions, and thus [each party] had the opportunity to respond to the other party's statements."[7] Marvel had an opportunity to, and did file a Response to Defendant's 56.1 statement (ECF No. 93) and Defendant did not "reply" to Marvel's Response. "A reply thus gives [Marvel] a third shot at commenting on the facts in this case."[8] "In fact, a reply would amount to a fourth chance for [Marvel] to establish the relevant facts as [Marvel] included a Statement of Additional Material Facts in its Counterstatement to Defendants' Rule 56.1 Statement."[9] Despite contending that "Defendant [did] not address [particular] fact[s], much less dispute [them,]" Marvel felt compelled to file its improper sur-reply.[10] "Given these circumstances, [Marvel]'s reply is not only unnecessary; it undermines the purpose of Local Rule 56.1, which is 'to streamline the consideration of summary judgment motions.'"[11] Indeed, "[t]he Court is capable of determining whether [a party] improperly disputed a fact without needing [the other party] to file a procedurally improper document explaining as much."[12]

Accordingly, this Court should disregard in its entirety Marvel's Reply to Defendant's 56.1 Response.

B.　<u>Marvel's Reply to Defendant's 56.1 Response Is Particularly Prejudicial to Defendant</u>.

Although Defendant does not wish to burden this Court with an analysis of the myriad substantive issues with Marvel's Reply to Defendant's 56.1 Response, Defendant provides the below short discussion of a representative example of the particularly prejudicial nature of this improper Reply in case it is helpful to the Court in concluding that the Reply should be disregarded. In the event that the Court determines it will consider Marvel's Reply to Defendant's 56.1 Response, Defendant asks that they be permitted to respond to it.

"In deciding Defendants' motions for summary judgment, the Court will ignore all portions of Plaintiffs' Rule 56.1 Statement that contain improper legal argument and unsupported assertions."[13] "Moreover, a Rule 56.1 statement should not be considered if it is not based on personal knowledge, contains inadmissible hearsay, is conclusory or argumentative or does not cite to supporting

---

[6] *Mayaguez S.A. v. Citibank, N.A.*, No. 16 Civ. 6788 (PGG) (JLC), 2022 WL 901627, at *9 (S.D.N.Y. Mar. 25, 2022) (citation and quotations omitted), *adopting report and recommendation in relevant part*, 2021 WL 1799653 (Apr. 30, 2021); *see also G.S. v. Pleasantville Union Free Sch. Dist.*, No. 19 Civ. 6508 (CS), 2020 WL 4586895, at *1 n.2 (S.D.N.Y. Aug. 10, 2020); *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2019 WL 4735876, at *1 n.3 (S.D.N.Y. Sept. 27, 2019), *reconsideration denied*, No. 16 Civ. 6525 (PKC), 2020 WL 1165778 (S.D.N.Y. Mar. 11, 2020) (holding that a party engaged in "improper Rule 56.1 practices" by filing a reply to the other party's response to its 56.1 statement); *Capital Records, LLC v. Vimeo, LLC*, No. 09 Civ. 10101 (RA), 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018) ("Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1 statement of undisputed facts.").

[7] *G.S.*, 2020 WL 4586895 at *1 n.2 (brackets omitted).

[8] *Mayaguez S.A.*, 2022 WL 901627, at *10 (citation and quotations omitted).

[9] *Mayaguez S.A.*, 2021 WL 1799653 at *8 n.6.

[10] *See* Pl.'s Reply to Def.'s Resp. to Pl.'s 56.1 Statement at 64 ¶ 23, ECF No. 104.

[11] *Mayaguez S.A.*, 2022 WL 901627, at *10 (quoting *Thompson v. Spota*, No. 14-CV-2473 (JMA) (AKT), 2018 WL 6163301, at *16 (E.D.N.Y. Aug. 23, 2018), *report and recommendation adopted*, 2018 WL 4771901 (Sept. 30, 2018).)

[12] *G.S.*, 2020 WL 4586895 at *1 n.2. "Whether any disputed issue of fact exists is for the Court to determine." *Droplets, Inc. v. E*TRADE Fin. Corp.*, No. 12 Civ. 2326, 2015 WL 1062670, at *2 (S.D.N.Y. Mar. 9, 2015) (citing *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989)).

[13] *Emanuel v. Griffin*, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015) (cleaned up).

evidence."[14]

In its Reply to Defendant's 56.1 Response, Marvel effectively seeks to amend its statements, including by adding improper legal argument as well as new citations to the record and entirely new exhibits[15] which Marvel erroneously contends support its statements and should likewise be disregarded. Notwithstanding the well-established principles governing Rule 56.1 statements, Marvel strains to establish in its improper Reply that there is no dispute as to the status of Ditko's works and the validity of the subject terminations by ignoring or misrepresenting the materiality of Defendant's record evidence and by making conclusory *legal* arguments, accompanied by multi-level argument *headers* like those in a brief. Because Defendant has not had an opportunity to respond, Marvel's Reply to Defendant's 56.1 Response is not only improper but potentially unfairly prejudicial to Defendant.

One of the more egregious examples is Marvel's new erroneous and misleading legal argument that Defendant has nothing to terminate under its brief-like heading "DEFENDANT CANNOT FURNISH ANY OF THE PURPORTED 'GRANTS' HE SEEKS TO TERMINATE."[16] Contrary to Marvel's argument, "Section 304(c) of the Copyright Act confers upon authors and their statutory successors the right to terminate 'the exclusive or nonexclusive grant of a transfer *or license* of the renewal copyright or any right under it, executed before January 1, 1978.'"[17] "Whereas under the 1909 Act, only an assignment of statutory copyright had to be in writing, while any license of such copyright could be oral or implied, under the current [1976] Act, exclusive licenses as well as assignments must be in writing."[18] Furthermore, as explained in Defendant's summary judgment briefing,[19] Ditko held a common-law copyright in his unpublished work which became statutory upon publication,[20] and "[c]ourts have generally upheld both oral and implied transfers of common law copyrights."[21] "[S]uch an assignment could be oral or could be implied from the parties' conduct."[22] The same is also "true under the 1909 Act of both exclusive and nonexclusive licenses."[23] Defendant put forth competent evidence from which a reasonable jury may find an express or implied copyright transfer or license, all of which are equally terminable under 17 U.S.C. § 304(c).[24]

---

[14] *Nat'l Coal. on Black Civic Participation v. Wohl*, __ F.Supp.3d __, No. 20 Civ. 8668 (VM), 2023 WL 2403012, at *8 (S.D.N.Y. Mar. 8, 2023) (citation, quotation marks, and brackets omitted).

[15] Declaration of Molly M. Lens (ECF. No. 103), Exs. 100-115 cited in Pl.'s Reply to Def.'s Resp. to Pl.'s 56.1 Statement. For example, Plaintiff cites to new Exhibit 113 to support its "Reply" Statement ¶ 23, ECF No. 104 at 29.

[16] Pl.'s Reply to Def.'s Resp. to Pl.'s 56.1 Statement ECF No. 104 at 165.

[17] *Atticus LLC v. Dramatic Publ'g Co.*, No. 22 Civ. 10147 (DLC), 2023 WL 3135745 (S.D.N.Y. Apr. 27, 2023) (brackets omitted, emphasis added) (citing 17 U.S.C. § 304(c)).

[18] Melville B. Nimmer & David Nimmer, 3 *Nimmer on Copyright* § 10.02[B[5]] (Aug. 2021 rev. ed).

[19] *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mem. Opp. Pl.'s Mot. Summ. J."), ECF No. 92 at 20-21; Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgement ("Def.'s Reply Mem. Supp. Mot. Summ. J."), ECF 98 at 12-13.

[20] *See e.g., Siegel v. Warner Bros. Ent'mt Inc.*, 658 F. Supp. 2d 1036 at 1084-91 (C.D. Cal. 2009) (confirming termination under 17 U.S.C. § 304(c) of transfer of common law copyright (statutory upon publication) to Superman strips).

[21] *Nimmer on Copyright* § 10.03[B][1]; *TCA Television Corp. v. McCollum*, 151 F. Supp. 3d 419, 428 (S.D.N.Y. 2015) ("courts in this Circuit have ruled that assignments of common law copyright need not be in writing.")

[22] *McCollum*, 151 F.Supp.3d at 438 (citing *Siegel,* 658 F.Supp.2d at 1086.)

[23] *Nimmer on Copyright* § 10.03[B].

[24] *See e.g., Siegel v. Warner Bros. Ent'mt Inc.*, 658 F. Supp. 2d 1036 at 1084-91 (C.D. Cal. 2009) (confirming § 304(c) termination of transfer of common law copyright (statutory upon publication) to Superman strips); *Fred Fisher Music Co. v. M. Witmark & Sons* , 318 U.S. 643, 657, 63 S.Ct. 773 (1943) (holding such grants enforceable); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428 (9th Cir.1996).

Hon. Lewis A. Kaplan                                                                                                                August 30, 2023

      Marvel also tries to sidestep a multitude of record evidence evincing Ditko's express assignment of the "copyright" and "renewal copyright" in his work via endorsement of the explicit assignment legends on the back of Magazine Management's checks.[25] In so doing, Marvel ignores that "cases under the 1909 Act h[o]ld that if all written copies of the instrument of transfer have been lost, oral evidence as to the fact of a written conveyance will be admissible."[26] Marvel's best evidence objection is therefore without merit.[27] As explained more fully in Defendant's Response to Marvel's Local Rule 56.1 Statement, Ditko cashed the checks which can no longer be obtained as Marvel failed to produce any such checks as requested, claiming it has none.[28] Defendant respectfully submits that it has satisfied its burden under Fed. R. Evid. 1004, and that the weight and sufficiency of its secondary evidence of Marvel's check legends to freelancers like Ditko, containing explicit copyright assignment language, is for the trier of fact to decide. Finally, Marvel's ironic argument that there is no express or implied transfer or license to terminate is not only contrary to law, it negates Marvel's interests. It would mean that if its revisionist work-for-hire (for shell companies) defense fails as it must, Marvel has no rights to Ditko's material, whereas under Defendant's statutory termination Marvel retains non-exclusive U.S. rights, rights in all foreign territories, and in all prior derivative works worldwide.[29]

      In light of the additional citations and arguments in Marvel's Reply to Defendant's 56.1 Response, Defendant would be potentially unfairly prejudiced by the Court's consideration of such inaccurate contentions, to which Defendant has not had an opportunity to respond. Accordingly, Defendant respectfully request that the Court disregard Marvel's Reply to Defendant's 56.1 Response (ECF No. 104)—but, if the Court were to consider it, that Defendant be permitted to respond to it.

                                               Respectfully submitted,

                                               By:     */s/ Marc Toberoff*
                                                        Marc Toberoff

                                             TOBEROFF & ASSOCIATES, P.C.
                                             mtoberoff@toberoffandassociates.com
                                             23823 Malibu Road, Suite 50-363
                                             Malibu, CA 90265

                                             *Attorneys for Patrick S. Ditko*

cc: All Counsel of Record (via ECF).

---

[25] See Def.'s Resp. to Pl.'s 56.1 Statement ¶¶ 2-6, 53-58, ECF No. 89.
[26] Paul Goldstein, *Copyright* § 5.2.1.2 (3d ed. 2023 Supp.); *see also* Nimmer on Copyright § 10.03[A]; *see also Filtron Mfg. v. Fil-Coil Co.*, 215 U.S.P.Q. 866, 869 (E.D.N.Y. 1981) (A putative owner who fails to show acknowledgment of an instrument of transfer can prove the transfer through appropriate testimony and documentary evidence.)
[27] *See* Pl.'s Reply to Def.'s Resp. to Pl.'s 56.1 Statement ¶ 57, ECF No. 104 at 168-70.
[28] Def.'s Resp. to Pl.'s 56.1 Statement ¶ 56, ECF No. 89; *see also* Pl.'s Resp. to Def.'s 56.1 Statement, ECF No. 93 ("**Undisputed** that from 1962 to 1965 Lee was likely paid with checks drawn on Magazine Management accounts, though no checks from relevant time period exist") (emphasis in original).
[29] *See* Def.'s Mem. Supp. Mot. Summ. J., ECF 76 at 9 n.1, 14-15.