## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARVEL CHARACTERS, INC.,

               Plaintiff,

    v.

PATRICK S. DITKO, in his capacity as
Administrator of the Estate of Stephen J.
Ditko,

               Defendant.

---

PATRICK S. DITKO, in his capacity as
Administrator of the Estate of Stephen J.
Ditko,

               Counterclaimant,

    v.

MARVEL CHARACTERS, INC. and DOES
1-10, inclusive,

               Counterclaim-Defendants.

Case No.: 1:21-cv-07957-LAK

Hon. Lewis A. Kaplan

**MARVEL CHARACTERS, INC.'S
RESPONSE TO DEFENDANT AND
COUNTERCLAIMANT PATRICK S.
DITKO'S EVIDENTIARY OBJECTIONS
TO ADDITIONAL EVIDENCE OFFERED
BY MARVEL CHARACTERS, INC. IN
SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Marvel Characters, Inc. ("MCI"), by and through its undersigned counsel, respectfully submits this response to Defendant Patrick S. Ditko's evidentiary objections to the additional evidence offered by MCI in support of its motion for summary judgment.  Even though MCI submitted this additional evidence on July 28, 2023 (when MCI also filed the balance of its reply submission), Defendant did not file his evidentiary objections until August 24, 2023.  *See* Dkt. 108.  Because MCI did not previously have an opportunity to respond to Defendant's evidentiary objections, MCI submits its response to such objections now.  *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015) ("[T]he proponent of evidence must have "an opportunity to respond to the [non-moving party's] objections or to supplement the record with additional documentation.").

As explained below, Defendant's evidentiary objections are meritless.  Moreover, much of the evidence to which Defendant objects is irrelevant to MCI's motion for summary judgment.  With his opposition, Defendant attempted to create disputed issues of material fact by attacking the credibility of certain witnesses, *i.e.* claiming that they were purportedly biased in MCI's favor.  As MCI has already explained, courts "may not make credibility determinations" on summary judgment.  *See* Dkt. 101 at 7-9; *see also Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  Rather, on summary judgment, to create a disputed material fact the non-moving party must cite evidence that controverts the testimony in question.  *See* Dkt. 101 at 7-9; *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998) (holding that "if the [defendant] has made a properly supported [summary judgment] motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden"); *see also Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).  While Defendant's bias arguments fail on their face—as Defendant did not submit any actual evidence controverting the witnesses' testimony—MCI

nevertheless submitted evidence to demonstrate that Defendant's credibility attacks lack any factual basis.  Defendant now objects to this evidence.  MCI respectfully submits that the Court need not even consider these objections because the witnesses' credibility is not before the Court but, even if the Court were to consider Defendant's objections, they would fail.

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 75. | Lens Decl. Ex. 101 (January 20, 2023 Roy Thomas Deposition Excerpts) (108:17-109:14, 112:20-114:19, 125:18:126:1, 329:9-21, 330:3-334:5) | <u>Lacks Foundation (Fed. R. Evid. 602); Speculation (Fed. R. Evid. 701).</u> Roy Thomas ("Thomas") is not a percipient witness with respect to the creation of Stephen Ditko's ("Ditko") works or relationship with Magazine Management Co. ("MMC") in the relevant 1962-1965 period (the "Period"). No reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶¶ 57, 61, 110-12. Lay witness testimony must be grounded in observation or other first-hand personal experience. Here, Mr. Thomas' testimony lacks foundation and amounts to speculation. By Mr. Thomas' own admission in the testimony cited by Plaintiff, "the system or method for creating comics at Marvel in the 1960s, prior to [his] joining in 1965, differed from that in place when [he] joined in '65[.]" (See 331:1-15 ["it had evolved somewhat obviously from the early '60s"].) To the extent Mr. Thomas testified that processes were static beyond the period, he admits that he is reliant on what others have told him. The highlighted testimony contains statements which are conclusions without evidentiary foundation. Mr. Thomas testified "He probably did" when asked "do you have any recollection of Gene Colan's other artwork for Marvel during | Defendant objects to the **foundation** of Thomas's testimony and claims it is **speculation**, yet he does not identify any testimony from Thomas that is not based on his personal knowledge. Nor could he. Thomas is one of the few living witnesses with personal knowledge of Marvel's operations during the relevant time period, and was properly disclosed by MCI as a witness with relevant knowledge in its initial Rule 26(a) disclosures. The excerpted testimony in this exhibit confirms that Thomas testified based on his personal knowledge and experience working at Marvel.<br><br>Nor is there any merit to Defendant's general attack on Thomas's ability to offer **relevant** testimony in this case. As Thomas himself explained:<br><br>Steve Ditko was one of Marvel's freelance artists when I joined Marvel. I had the pleasure of working with him at Marvel, including dialoguing two Doctor Strange stories that he worked on. I was also familiar with Steve Ditko's work for Marvel (and others) even before I had the chance to work with him. As an avid reader of comics and editor of *Alter Ego*, I followed his work on Marvel titles such as *Strange Tales*, *Tales to Astonish*, *Tales of Suspense*, and *Journey into Mystery*. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | the relevant period being rejected?" (108:17-109:14), meaning any testimony on this subject lacks foundation and amounts to speculation. See also 109:2-14 (further speculation ["probably not"] when asked about business operations during the Period.)<br><br>Improper and Undisclosed Expert Opinion. Mr. Thomas purports to give expert testimony and artistic analysis regarding Dr. Strange, Mandrake the Magician and the comic book industry during an undisclosed period. However, Plaintiff has neither disclosed nor designated Mr. Thomas as an expert witness in this case. Of note, Mr. Thomas expatiates on numerous improper hypotheticals for which he has not been designated as an expert and lacks the requisite knowledge and expertise. See e.g., 125:18:126:1.<br><br>Hearsay (Fed. R. Evid. 802); Contradictory Testimony. The excerpted deposition transcript contains inadmissible hearsay. Counsel's reading into the record excerpts from a non- appended exhibit to the deposition (Exhibit 62 AlterEgo magazine article, Rascally Roy Celebrates 40 Years Since Modeling with Millie No. 44, and a few More Marvel Milestones!) is inadmissible hearsay. The same is true for Mr. Thomas recitation of the text. (See e.g., 112:20-114:19) Mr. Thomas' testimony as to the alleged statements of others, including Stan Lee and Gene Colan, is also inadmissible hearsay. That his | Thomas Decl., Dkt. 72, ¶¶ 10-11; *see also id.* ¶¶ 16-17 ("During the early 1960s, I understood that Steve Ditko was performing most, if not all, of his work for Marvel. In fact, with the exception of occasional one-off assignments from smaller publishers, I am not aware of Ditko doing any work for other companies besides Marvel from 1963 to 1965.  When I began working at Marvel in July 1965, I observed first-hand how busy Lee kept Ditko, as Ditko juggled work on *Strange Tales* and *The Amazing Spider-Man*").  Indeed, Thomas worked on two Doctor Strange stories with Ditko himself.  *See* Toberoff Ex. 17 at 263:6-265:4.<br><br>Moreover, contrary to Defendant's misleading assertion, Thomas did not "admit" that "the system or method for creating comics at Marvel in the 1960s, prior to [his] joining in 1965, differed from that in place when [he] joined in '65."  Just the opposite, he testified that Marvel's "system for creating comics" when he joined in July 1965, was "still the same."  He further explained that in 1965 there were "mostly the same people, even" working at Marvel as in the early 1960s, and that "Stan had been the editor during that entire period" and "[t]he artists and other writers, if there had been any, they all reported to Stan[, a]nd it seemed like that had been the way it had been for at least the last several years."  *See* Lens Decl. Ex. 101 at 331:1-334:5; Thomas Decl. ¶ 7 ("When I joined Marvel in July of 1965, I understood that Marvel had an established framework that |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | testimony is riddled with hearsay is itself confirmed by counsel's statements asking what others told him. (See e.g., 330:3-334:5)<br><br>Irrelevant (Fed. R. Evid. 401). Mr. Thomas' testimony discusses other artists and events which did not occur during the Period. Moreover, his testimony shows that even in these situations, there was not a reliable pattern of conduct. See 112:20-25.<br><br>Lacks Foundation; Propensity Evidence (Fed. R. Evid. 602, 404). This is an impermissible attempt at introducing propensity evidence. (See e.g., 112:20-114:19) The behavior as described does not have a sufficiently reflexive, nonvolitional quality for it to constitute a "habit"; nor has a proper basis been established that Stan Lee or Gene Colan even had such a habit in the first instance. ("But the problem was that Gene had a tendency to start working on stories without bothering to read the whole plot"; "mostly Stan would…"). Moreover, as explained in the Objection to Lens Decl. Ex. 101. supra, no reasonable trier of fact could believe the witness had personal knowledge of the facts to which he is testifying. | everyone worked within dating back at least as far as 1961 with the dawn of the 'Marvel Age of Comics.' I am aware of this both through my own study of Marvel with *Alter Ego* prior to joining Marvel, through conversations at Marvel after joining, by the established method of creating comics at Marvel when I joined, and through retrospective interviews for publication in the revival *Alter Ego*.").<br><br>Defendant also suggests that Thomas's testimony amounts to **speculation** because he uses the word "probably," but ignores that Thomas proceeds to provide concrete answers and examples following that phrase.  *See* Lens Decl. Ex. 101 at 108:17-109:14.  Indeed, Defendant betrays his foundation and speculation objections by affirmatively relying on Thomas as a percipient witness, thus underscoring that Defendant's objections are meritless.  *See* Dkt. 78 at 4-5, 8, 9, 10, 11, 12, 14-17, 19-35, 44-45 (relying on Thomas testimony).<br><br>Further, Thomas's testimony that Doctor Strange and "Mandrake the Magician" look similar is not **improper expert testimony**, because comparing the look of two comic characters does not require specialized knowledge and training, as Defendant's own counsel clearly knows, since he elicited this testimony from Thomas.  Defendant's objection also ignores that Marvel proffered this testimony to rebut Defendant's suggestion (based exclusively on attorney argument) that a bare 1942 sketch "is" Doctor Strange.  *See* Dkt. 92 at |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | 25-26.  Defendant is similarly off-base in suggesting that Thomas was responding to "improper hypotheticals" in pages of 125:18-126:1 of his deposition.  When asked "what if the writer on the comic was not Stan Lee, was Stan Lee involved at all at this stage?," a non-hypothetical question, Thomas testified that "[Lee's] name was always on there as editor, or later, you know, 'Presents...' or something, but it always indicated he was the editor. He was always the ultimate authority unless Martin Goodman stepped in, and that was mostly on covers." Thomas clearly does not "lack[] the requisite knowledge" to provide this factual testimony.<br><br>Defendant's **hearsay** objection is meritless because Thomas's testimony could be presented in a non-hearsay form by calling him at trial in this case.  *See Savage v. Scripto-Tokai Corp.*, 266 F. Supp. 2d 344, 352 (D. Conn. 2003) (considering hearsay evidence, where it appeared that plaintiffs would "be able to present this evidence in admissible form at trial, either by calling the deponents themselves or establishing their unavailability").  Moreover, courts have routinely recognized that the manner in which Thomas adopted prior statements is proper.  *See* FRE 801(d)(1), Advisory Committee Note ("If the witness admits on the stand that he made the [prior out-of-court] statement and that it was true, he adopts the statement and there is no hearsay problem."); *FDIC v. Gravee*, 966 F. Supp. 622, 635 (N.D. Ill. 1997) (denying motion to strike |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | witness's adoption of prior out-of-court statements because "adoption of the earlier deposition takes it out of the category of inadmissible hearsay"); *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 6 (D.D.C. 1999) ("[W]itness's reference to the prior statement need not be so specific as to require each and every question of a prior deposition or every sentence of a prior statement to be reiterated by the witness during testimony."). <br><br> And, while Defendant claims that Thomas offered "**contradictory testimony**," he cites no purportedly contradictory testimony, nor does he otherwise explain this purported evidentiary objection. <br><br> Contrary to Defendant's **relevance** objection, Thomas's working relationship with Stan Lee and other Marvel freelancers is highly relevant because—as previously noted—Thomas is one of the only living people with personal knowledge of Marvel's practices during the relevant time period.  That some of the testimony does not directly pertain to Steve Ditko—but rather concerns Marvel's well-established general practices—does not make it "irrelevant."  This testimony is also relevant to rebut Defendant's foundation objections and irrelevant and factually incorrect attack on Thomas's credibility because Thomas explains the basis for his personal |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | knowledge and expressly refutes Defendant's assertion that his testimony was purportedly influenced by contractual obligations or incentive payments from Marvel.  *See* Dkt. 104 at 376-82.<br><br>Finally, while Defendant claims that Thomas's testimony concerning Colan's working method with Lee at Marvel amounts to "**propensity evidence**," nothing in Rule 404 or the case law interpreting it provides that testimony about a regular business practice amounts to inadmissible "propensity" evidence.  *See, e.g.*, *Empress Casino Joliet Corp. v. Johnston*, 2014 WL 6735529, at *2 (N.D. Ill. Nov. 28, 2014) (evidence of payment practices are "not impermissible 'propensity' evidence" but merely suggests "a regular business practice").  And Thomas, who worked with both Lee and Colan for years, clearly has **foundation** to testify as to Colan's working relationship with Lee at Marvel.  *See, e.g.*, Lens Decl. Ex. 101 at 112:15-114:19. |
| 76. | Lens Decl. Ex. 103<br><br>(January 7, 2011 Lawrence D. Lieber Deposition Excerpts from *Marvel Worldwide, Inc. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).) | <u>Hearsay (Fed. R. Evid. 802).</u> Much of Mr. Lieber's testimony contains hearsay. As an example, Mr. Lieber testifies to alleged conversations he had with his brother (see 60:4-9, 63:17-25) and representatives of Marvel (see 28:23-29:6).<br><br><u>Inadmissible Legal Conclusions.</u> Mr. Lieber makes statements which incorporate legal conclusions. | Defendant's **hearsay** objection is meritless because Lieber's testimony could be presented in a non-hearsay form by calling him at trial in this case.  *See, e.g.*, *Savage v. Scripto-Tokai Corp.*, 266 F. Supp. 2d 344, 352 (D. Conn. 2003) (considering hearsay evidence, where it appeared that plaintiffs would "be able to present this evidence in admissible form at trial, either by |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (7:17-23, 60:4-9, 63:24-25, 65:3-8, 109:23-110:6) | This includes Mr. Lieber's conclusion that he was an employee of his brother. (See e.g., 7:17-23)<br><br>Irrelevant (Fed. R. Evid. 401). How Stan Lee worked with his brother Larry Lieber who he was teaching to write is not representative of "Marvel's" or Lee's relationship with Ditko and other freelance artists or writers in the Period when "Marvel" was a tiny fledgling business. | calling the deponents themselves or establishing their unavailability").<br><br>While Defendant also argues that the testimony contains **legal conclusions**, Lieber's understanding of who he worked for is plainly factual testimony based on Lieber's own personal knowledge and experience working for Marvel before, during, and after the relevant time period.<br><br>Finally, Lieber's testimony about his work with Lee and Marvel is **relevant** to show that Marvel and Stan Lee employed substantially consistent business practices during the relevant time period. It is also relevant because Lieber expressly dispels Defendant's irrelevant and factually incorrect argument that Lieber's *Kirby* testimony was improperly influenced by Marvel or Lee.  *See* Dkt. 104 at 369-79; *id.* at 373-76. |
| 77. | Lens Decl. Ex. 104<br><br>(December 8, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inv. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).)<br><br>(211:14-17, 212:21-213:2, 289:12-21) | Hearsay (Fed. R. Evid. 802); Contradictory Testimony. Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others (see e.g., 101:10-12.) Stan Lee passed away in 2018. The excerpted transcript does not fall within the hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or | Defendant objects to the testimony of Stan Lee, who was Marvel's editor in chief and creative director for decades—including during the relevant time period—but inadvertently cites to pages (101:10-12) from a different Lee transcript, which is addressed *infra* in response to Defendant's Objection 78.  *See infra* 14-18.<br><br>Regardless, contrary to Defendant's claim, Lee's sworn deposition testimony is not inadmissible **hearsay**.  Rather, it is admissible under both Rule 804(b)(1) and Rule 807's hearsay exceptions. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question and examine Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility. | Under Rule 804(b)(1), Lee's prior deposition testimony is admissible because the parties in that case had a similar opportunity and motive to cross-examine Stan Lee.  Indeed, the plaintiff in the prior case—decedents of former freelance artist Jack Kirby—took positions substantially identical to those of Defendant here—*i.e.*, that Kirby's work for Marvel was not done on a work-for-hire basis.  And they were represented by the exact same counsel as Defendant.  Thus, Lee's *Kirby* deposition testimony is admissible under Rule 804(b)(1).  *See, e.g., Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*, 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014) ("With respect to the interpretation of 'predecessor in interest,' courts have adopted a 'realistically generous [approach] over one that is formalistically grudging,' admitting testimony where 'it appears in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination.'") (*quoting Lloyd v. Am. Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)); *Rao v. Rodriguez*, 2017 WL 1753489, at *2 (E.D.N.Y. May 1, 2017).<br><br>Lee's sworn deposition testimony is separately admissible under Rule 807's residual hearsay exception.  Courts routinely admit sworn testimony of deceased witnesses in prior cases involving similar subject matter.  *See Robinson v. Shapiro*, 646 F.2d 734, 742 (2d Cir. 1981) (admitting testimony of deceased witness where |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! For $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW!'s compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. | there was "no dispute that the evidence was material, nor can there be any serious argument that the statement was not 'more probative on the point for which it (was) offered' than other reasonably available evidence"); *Secs. Investor Protection Corp. v. Bernard L. Madoff Investment Secs. LLC*, 610 B.R. 197, 228-30 (S.D.N.Y. 2019) (admitting decedent's testimony from unrelated criminal trial under the residual exception); *Lisker v. City of L.A.*, 2012 WL 3610234, at *1-2 (C.D. Cal. Aug. 20, 2012) (deposition testimony of witnesses from prior case who were deceased at time of later case was admissible under residual clause); *see also King v. Armstrong World Indus., Inc.*, 906 F.2d 1022, 1025-26 (5th Cir. 1990) (affirming admission of 1975 deposition of deceased individual in case between unrelated parties touching on same general subject matter); *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 163 (S.D.N.Y. 2009) (admitting testimony of witnesses under residual exception, noting that they had "testified in court, before a jury, under oath and penalty of perjury, in a highly-scrutinized, public proceeding").<br><br>Admission under the residual hearsay exception is all the more warranted here, given the unity of interests between the Kirbys and Defendant, and the fact that they were represented by the same counsel, who had every incentive to vigorously cross-examine Lee.  Steve Ditko and Stan Lee both passed away in 2018, and Ditko could have served purported termination notices for nearly a |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, *not* "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. In fact, Lee testifies as to his poor memory in the very excerpt highlighted by Plaintiff. (See e.g., 289:18 ["I have a bad memory for details."])<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, the best evidence rule applies. See Fed. R. Evid. 1002 ("An original writing … is required in order to prove its content unless these rules or a federal statute provides otherwise.").<br><br>Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701). Mr. Lee testified "I have no idea. I mean I don't remember this. I -- I don't read the contracts" when asked about contracts and companies associated with POW!, including Silver Creek Pictures and Disney, meaning any testimony | decade prior to his death.  MCI should not be precluded from using Lee's highly probative and directly relevant sworn deposition testimony just because Steve Ditko elected not to file notices of termination during his lifetime.<br><br>Defendant's argument that Lee was purportedly "**biased**" is both irrelevant on summary judgment (given Defendant's failure to offer any evidence controverting Lee's testimony) and factually incorrect.  Courts "may not make credibility determinations" on summary judgment. *Jaegly v. Couch*, 439 U.S. 149, 151 (2d Cir. 2006). Defendant thus "cannot defeat summary judgment . . . merely by impugning [witnesses'] honesty." *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999); *Island Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact."). Indeed, despite similar attacks on Stan Lee's purported credibility, the Second Circuit relied extensively on Stan Lee's deposition testimony in the *Kirby* case.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 141 (2d Cir. 2013).<br><br>Moreover, the only purportedly "**inconsistent**" testimony identified by Defendant relates to the content of legends stamped on the back of Marvel check in the 1960s.  MCI does not rely on this testimony.  And, in any event, testimony on content of those legends is immaterial, as the |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | on this subject lacks foundation and amounts to speculation. | Second Circuit's decision in *Kirby* confirms. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013) ("[W]e decline to infer from Marvel's suspenders that it had agreed to give Kirby its belt.").<br><br>Defendant's **best evidence**, **foundation**, and **speculation** objections fare no better. Lee is not testifying about the operative terms of the contracts, so the best evidence rule does not apply. And Defendant's foundation and speculation objections ignore that MCI cited this testimony in response to Defendant's irrelevant and factually incorrect credibility attacks on summary judgment (given that Defendant did not submit any evidence controverting Lee's testimony). Defendant argues that Lee's 2010 *Kirby* testimony was purportedly influenced by business dealings with Disney in the years prior to the *Kirby* case. But Lee actually affirmed his 2003 *Lee* testimony in his 2010 *Kirby* deposition, thereby showing that his testimony pre-dates the events that Defendant argues purportedly influenced Lee. *See* Dkt. 104 at 350-63. |
| 78. | Lens Decl. Ex. 105<br><br>(May 13, 2010 Stan Lee Deposition Excerpts from *Marvel Worldwide, Inv. v. Lisa R. Kirby*, No. 10-141-CMKF (S.D.N.Y.).) | <u>Hearsay (Fed. R. Evid. 802); Contradictory Testimony.</u> Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others (see e.g., 101:10-12.) Stan Lee passed away in 2018. The excerpted transcript does not fall within the hearsay exception for former testimony given by an | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 77. *See supra* 10-14.<br><br>Further, while Defendant also argues that the testimony contains **hearsay** because it "contains [Lee's] recitation of out-of-court statements allegedly made by himself and others," Defendant |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| (100:25-102:24) | unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question and examine Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, | does not point to any statements *by others*. Lee merely adopted and reaffirmed his prior statements that he "always felt the company" owned the characters. Courts have routinely recognized that the manner in which Lee adopted prior statements is proper. *See* FRE 801(d)(1), Advisory Committee Note ("If the witness admits on the stand that he made the [prior out-of-court] statement and that it was true, he adopts the statement and there is no hearsay problem."); *FDIC v. Gravee*, 966 F. Supp. 622, 635 (N.D. Ill. 1997) (denying motion to strike witness's adoption of prior out-of-court statements because "adoption of the earlier deposition takes it out of the category of inadmissible hearsay"); *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 6 (D.D.C. 1999) ("[W]itness's reference to the prior statement need not be so specific as to require each and every question of a prior deposition or every sentence of a prior statement to be reiterated by the witness during testimony.").<br><br>Lee's testimony concerning ownership of Marvel characters is independently admissible as a statement against pecuniary interest by Lee, who passed away in 2018. *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 992 n.14 (C.D. Cal. 2015) (admitting hearsay statement over the public performance of Happy Birthday "because it is reasonable to infer that [the creator] was aware of the potential |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! For $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101.<br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely | consequences of disclaiming her rights to the Happy Birthday lyrics while talking to a reporter about her sister's lawsuit over the rights to another element of the same song"); *Reich v. New Mt. Pleasant Bakery, Inc.*, 1993 WL 372270, at *7 n.6 (N.D.N.Y. Sept. 13, 1993) (employees' statements that they were fully compensated for work for employer admissible under Rule 804(b)(3) as statements against pecuniary interest).<br><br>Further, MCI offered this testimony in response to Defendant's irrelevant and factually incorrect credibility attacks on summary judgment (given that Defendant did not submit any evidence controverting Lee's testimony).  Defendant argues that Lee's 2010 *Kirby* testimony was purportedly influenced by business dealings with Disney in the years prior to the *Kirby* case.  But Lee actually affirmed his 2003 *Lee* testimony in his 2010 *Kirby* deposition, thereby showing that his testimony pre-dates the events that Defendant argues purportedly influenced Lee.  *See* Dkt. 104 at 350-63.<br><br>Defendant also incorrectly argues that Lee's testimony contains **legal conclusions** and is **irrelevant**.  To the contrary, the testimony concerns Stan Lee's understanding—based on his personal experience as editor-in-chief and later publisher of Marvel for many decades—of who owned the characters.  That Lee "always felt" Marvel owned all of the characters—including |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105. For example, in the highlighted testimony Lee does not even remember at his 2010 deposition that Mr. Fleisher, who was present, questioned Lee in his 2003 deposition. (See e.g., 101:18-22).<br><br>Inadmissible Legal Conclusion. Mr. Lee's testimony contains inadmissible legal conclusions. (*See e.g.*, 101:13-17 [Lee testifying as to his belief regarding who owned the characters].)<br><br>Irrelevant (Fed. R. Evid. 401). Lee testifying as to his belief that Marvel "owned the characters" is largely irrelevant to the issues in this case. Termination under 17 U.S.C. § 304 (c) assumes | any work he or Marvel freelancers contributed to during the time period—is plainly relevant.<br><br>Finally, it is unclear why Defendant believes that the **best evidence rule** applies here.  In any event, because Lee's testimony is not being offered to prove the content of any writings, the best evidence rule does not apply.  *See Diamondstar Ent. Holdings, LLC v. THH, LLC*, -- F.Supp.4th --, 2022 WL 16951838, at *7 (C.D. Cal. Nov. 15, 2022) ("The 'best evidence' rule, embodied in Fed. R. Evid. 1002, comes into play only when the Terms of a Writing are being established."). |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | copyright ownership by a transferee, otherwise there would be no reason to terminate.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, including arguments contained in filings from another lawsuit, the best evidence rule applies. (*See e.g.*, 101:5-9 ["According to my contract…"]). | |
| 79. | Lens Decl. Ex. 106<br><br>(November 18, 2003 Stan Lee Deposition Excerpts from *Stan Lee v. Marvel Enterprises, Inc.* No. 02-cv-8945 (S.D.N.Y.).)<br><br>(13:4-14:20, 16:3-19, 17:2-8, 19:1-10, 26:16-28:18, 37:18-38:15) | Hearsay (Fed. R. Evid. 802); Contradictory Testimony. Stan Lee's testimony contains his recitation of out-of-court statements allegedly made by himself and others. (See e.g., 27:2-10.) Stan Lee passed away in 2018. The excerpted transcript does not fall within the hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question and examine Lee. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed, | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection Nos. 77 and 78. *See supra* 10-18.<br><br>Further, while Defendant argues that Lee's testimony is **irrelevant**, Lee's prior consistent testimony from 2003 undercuts Defendant's irrelevant and factually incorrect argument that Lee's 2010 testimony was somehow improperly motivated by business dealings with Disney in the years leading up to the *Kirby* litigation. *See* Dkt. 104 at 350-63. And Defendant's suggestion that testimony concerning "different artists," including John Romita, is automatically irrelevant is belied by Defendant's (improper) affirmative reliance on evidence concerning Romita and other "different artists." *See, e.g.*, Dkt. 80, Exs. 3, 8-11, 13, 21, 37-38, 43, 45, 47, 51-52; *see also* Dkt. 95, Objs. 5-14, 16, 20-23, 42-43, 46-49. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | self-serving testimony given by Lee has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Mr. Lee has made numerous self-contradictory statements over the years regarding the creation of Marvel characters. Lee is well-known to have used his position as Marvel's Editor in the 1960's (and as the relative Martin Goodman, its owner) to credit himself as the creator or co-creator of virtually everything Marvel published when that was surely not the case. Lee's deep financial ties to both Marvel *and* later to Marvel's parent, Disney, coupled with the contradictions between his testimony in the *Kirby* case and his prior authenticated statements, raise serious concerns about his memory and credibility.<br><br>Lee established POW! in 2001 to produce films and television, and POW! had a "first look" deal with Disney since 2006. AMF ¶ 97. Yet, in over a decade POW! did not produce a single film or scripted live-action TV show, only a small, animated show. *Id.* ¶ 98. Nonetheless, on December 31, 2009, shortly after the Kirby family served statutory notices of termination on Marvel and just before Marvel filed its lawsuit against them, Disney bought a 10% stake in POW! For | |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | $2,500,000. *Id.* ¶ 99. On December 18, 2009, Disney *also* gratuitously extended Lee's deal to January 1, 2015, even though it had just been extended the year before and was not due to expire, and in that extension Disney *quadrupled* POW's compensation. *Id.* ¶ 100. Under this amendment, POW! was to receive a minimum of $11,000,000 over five years, even if it produced no films or television shows whatsoever. *Id.* ¶ 101. <br><br>Lee's bias and motive to help Marvel at all costs is exemplified by his contradictory testimony on many key points. For instance, Lee testified on direct examination that Marvel's checks always had "work for hire" language on the back and on June 11, 2007 Lee signed under oath an affidavit for Marvel stating: "I received checks from Timely and its successors that bore a legend acknowledging that the payment was for 'works for hire'" for works published in the 1950s and 1960s, and that he "can recall no checks that [he] received that did not bear this legend." *Id.* ¶ 102. This contradicts all the record evidence. *Id.* ¶ 103. On cross, Lee was forced to admit that, as late as 1974, Marvel's checks contained "assignment" language, <u>*not*</u> "work for hire" language and that he did not know when the "work for hire" legend first appeared. *Id.* ¶ 104; *see Adams v. Master Carvers of Jamestown, Ltd.*, 91 Fed. Appx. 718, 725 (2d Cir. 2004) ("inconsistencies" in testimony "raise a genuine issue of material fact as to the credibility of the defendants' assertions"). Lee has also | |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | repeatedly acknowledged in many authenticated statements that he has a very poor memory. AMF ¶ 105.<br><br>Best Evidence Rule (Fed. R. Evid. 1002). Because Mr. Lee's testimony concerns the content of alleged agreements and other documents, the best evidence rule applies. (See e.g., 27:7-12 ["And I received some sort of a document saying that I had the rights to it."])<br><br>Irrelevant (Fed. R. Evid. 401). Much of Lee's excerpted testimony deals with a different time period (1945) long before the Period, and thereafter his testimony pertains to different works (i.e., "The Fury of the Femizons") and different artists (e.g., John Romita) which have no bearing on this case. | |
| 80. | Lens Decl. Ex. 107<br><br>(October 13, 1999 Roy Thomas Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman*, No. 97-638 (D. Del.).)<br><br>(9:14-16, 18:7-18, 24:11-25:3, 27:15-29:2, 37:13-39:7, 42:6-18, 47:17-50:22) | Lacks Foundation / Speculation (Fed. R. Evid. 602 & 701).<br><br>Irrelevant (Fed. R. Evid. 401).<br><br>Mr. Thomas is not a percipient witness with respect to the creation of Ditko's Works or his relationship with MMC in the Period. Mr. Thomas did not start working at MMC as an assistant until the summer of 1965, long after Spider-Man (1962) and Dr. Strange (1946, 1963) had been co-created and created, respectively, by Ditko. AMF ¶ 57, 61, 110-12. Mr. Thomas' conclusion that writers understood Marvel's alleged policy lacks | Defendant's objections lack merit for the reasons outlined in MCI's Response to Defendant's Objection No. 75. *See supra* 4-9.<br><br>Further, MCI offered this testimony in response to Defendant's irrelevant credibility attacks on summary judgment. Thomas's prior consistent testimony from this 1999 deposition about his work with Lee and Marvel is **relevant** not only because it relates to how Thomas and other Marvel freelance artists understood their working relationship with Marvel during the relevant time period, but also because it refutes Defendant's irrelevant and factually incorrect argument that |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | foundation and amounts to speculation (See 49:2-11 ["I assumed that it was"]). In addition, Mr. Thomas testified that he had difficulty agreeing with the proposition that there was even a "pattern" with regard to how an idea for a new series would typically originate. (See 24:11-25:3 "Well, it could – the problem, of course, is in the word typically, because… it could have – if things like things did happen in other ways as well.") <br><br> <u>Hearsay (Fed. R. Evid. 802).</u> Mr. Thomas' testimony about alleged conversation he had with others is inadmissible hearsay, not subject to any exception. <br><br> <u>Inadmissible Legal Conclusion.</u> Mr. Thomas's testimony contains inadmissible legal conclusions, including as to the effect of purported Marvel policies regarding ownership of characters and other intellectual property. | Thomas's testimony in *Kirby* and in this case were purportedly influenced by contractual obligations and incentive payments that post-date his 1999 deposition. *See* Dkt. 104 at 376-80. <br><br> While Defendant also argues that the testimony contains **legal conclusions**, Thomas's understanding of Marvel's policies with respect to intellectual property is plainly factual testimony based on his own personal knowledge and experience working for Marvel both during and after the relevant time period. |
| 81. | Lens Decl. Ex. 108 <br><br> (August 20, 1999 Gene Colan Deposition Excerpts from *Marvel Entertainment Group, Inc. v. Marvin Wolfman*, No. 97-638 (D. Del.).) <br><br> (121:6-20) <br><br> (2021MARVEL-0032787 – | <u>Hearsay (Fed. R. Evid. 802).</u> The transcript contains hearsay from Gene Colan ("Colan") who passed away in 2011. This testimony was given nearly half a century following the events discussed therein. The excerpted transcript does not fall within the hearsay exception for former testimony given by an unavailable witness. Rule 804(b)(1) provides that where "the declarant is unavailable as a witness," "[t]estimony that ... was given as a witness at a trial, hearing, or lawful deposition ... and ... is now offered against a party who had ... an opportunity ... to develop [that | Gene Colan's testimony is admissible under Rule 807's residual **hearsay** exception because it is sworn deposition testimony given in 1999, well before this litigation or the *Kirby* litigation had commenced.  The testimony is also corroborated by Roy Thomas and Stan Lee, *see, e.g.*, Lens Decl. Ex. 101 at 112:15-114:19; Lens Decl. Ex. 111 at 3, and is entirely consistent with their accounts of how Lee and Colan worked together at Marvel. *See Robinson*, 646 F.2d at 742 (admitting testimony of deceased witness where there was |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 2021MARVEL-0032958) | testimony] by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay." Fed. R. Evid. 804(b)(1). Defendant did not have the opportunity to question Colan. Numerous issues raised by Defendant were not addressed in the case for which the deposition was taken. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that the undetailed testimony given by Colan has the indicia of trustworthiness needed to admit it under Rule 807. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686RPKRER, 2022 WL 409618, at *7 (E.D.N.Y. Feb. 10, 2022); *United States v. Acquest Transit LLC*, No. 09CV55S, 2020 WL 2933168, at *13 (W.D.N.Y. June 3, 2020).<br><br>Irrelevant (Fed. R. Evid. 401). Gene Colan's purported experience working with Stan Lee is of little probative value as, at best, it reflects the dynamic between the two men. | "no dispute that the evidence was material, nor can there be any serious argument that the statement was not 'more probative on the point for which it (was) offered' than other reasonably available evidence").<br><br>This testimony is also **relevant** because it shows that Defendant's irrelevant and erroneous argument that Toberoff Exhibit 97 "exemplif[ies]" how Lee worked with Colan (or any other Marvel artist) is not supported by any evidence. |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| 82. | Lens Decl. Ex. 109 (Correspondence Dated July 6, 1942 and April 28, 1942 between Fawcett Publications, Inc., Timely Comics, Inc., and Abraham Goodman) (2021MARVEL-0039527 – 2021MARVEL-0039528) | <u>Hearsay (Fed. R. Evid. 802).</u> This 1942 correspondence constitutes inadmissible hearsay, not subject to any exception. <u>Irrelevant (Fed. R. Evid. 401).</u> The 1942 consent by Timely Comics, Inc. to Fawcett Publications, Inc. to use the name "Captain Marvel" and 1942 consent by Fawcett Publications, Inc. to Timely Comics, Inc. to register "Marvel Mystery Comics" as the title of a publication, each two decades before the relevant Period no less, have absolutely no relevance to the issues in this case. | Defendant's **hearsay** objection fails because these 1942 documents are ancient documents under Rule 803(16). *See Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 321 n. 33 (S.D.N.Y. 2016) ("Billboard Article is over twenty-years old and is thus both admissible under the 'ancient document' hearsay exception and self-authenticating"). The documents are also **relevant** to dispel Defendant's irrelevant and erroneous purported "fact"—that is, argument unsupported by any evidence—that "Goodman had little respect for intellectual property," as it reflects a mutual agreement between Marvel and a competitor comic publisher over intellectual property issues. *See* Dkt. 104 at 178-80. |
| 83. | Lens Decl. Ex. 111 (Excerpts from an interview with Stan Lee published in Cartoonist Profiles No. 4 (Nov. 1969).) (2021MARVEL-0070383 – 2021MARVEL-0070386) | <u>Authenticity & Lacks Foundation (Fed. R. Evid. 602, 901).</u> Defendant supplies no evidence sufficient to support a finding that this document is an authentic transcription of an interview with Stan Lee conducted in August 12, 1968. Nor does Plaintiff cite any other evidence or information that could supply an adequate foundation. The date of the interview is not provided, only that the interview was published in November 1969. The interviewer, and editors, if any, are not named. | Defendant's **hearsay** objection ignores that this interview with Stan Lee is consistent with both Thomas's and Colan's sworn deposition testimony about Colan's working relationship with Lee at Marvel, *see, e.g.*, Lens Decl. Ex. 101 at 112:20-114:19; Lens Decl. Ex. 108 at 121:6-20, and can be relied on by the Court in admitting that sworn deposition testimony under Rule 807's residual hearsay exception, as discussed in MCI's Response to Defendant's Objection Nos. 80 & 81, even if it is not independently admissible. *See supra* 21-23. |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | Hearsay (Fed. R. Evid. 802). The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted). The lack of authenticating information forecloses admission of the exhibit under Rule 803(16) as an ancient document or under Rule 807's residual hearsay exception.<br><br>Irrelevant (Fed. R. Evid. 401). Stan Lee's purported experience working with Gene Colan is of little probative value, as, at best, it reflects the dynamic which occurred between the two. This conclusion is confirmed in the very same paragraph, where Lee explains that "In the case of Jack Kirby," "[Lee didn't] know what the heck the story [was] going to be." | Further, because this interview was published in 1969, the statements in it are admissible under Rule 803(16)'s exception for ancient documents and it has **foundation** and can be **authenticated** under Rule 901(b)(8). *See Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay); *TufAmerica*, 162 F. Supp. 3d at 321 n. 33 ("Billboard Article is over twenty-years old and is thus both admissible under the 'ancient document' hearsay exception and self-authenticating").<br><br>This interview is also **relevant** because it shows that Defendant's irrelevant and erroneous argument that Toberoff Exhibit 97 "exemplif[ies]" how Lee worked with Colan (or any other Marvel artist) is not supported by any evidence. |
| 84. | Lens Decl. Ex. 112<br><br>("'So You Want A Job, Eh?' The Gene Colan Interview," published in Alter Ego Vol. 1, No. 6 (Autumn 2000))<br><br>(2021MARVEL-0071054 – | Hearsay (Fed. R. Evid. 802). This document contains hearsay from Gene Colan who passed away in 2011. The only potential hearsay exception that could apply here is the residual hearsay exception under Rule 807. But Plaintiff cannot demonstrate that this article has the indicia of trustworthiness needed to admit it under Rule 807. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. | Defendant's **hearsay** objection ignores that this interview with Gene Colan is consistent with both Thomas's and Colan's sworn deposition testimony about Colan's working relationship with Lee at Marvel, *see, e.g.*, Lens Decl. Ex. 101 at 112:20-114:19; Lens Decl. Ex. 108 at 121:6-20, and can be relied on by the Court in admitting that sworn deposition testimony under Rule 807's residual |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| 2021MARVEL-0071065) | Supp. 2d 590 (S.D.N.Y. 2002). This 2000 letter was written nearly half a century following the events discussed therein. The alleged statements contained in the "interview" are introduced for the truth of the matter asserted and are hearsay, not subject to any hearsay exception. *See e.g., United States v. Buck*, No. 13 CR. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) ("Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein.") (citations omitted).<br><br>Irrelevant (Fed. R. Evid. 401). Gene Colan's purported experience working with Stan Lee is of little probative value as, at best, it reflects the dynamic between the two. Moreover, the statement cited, though brief, reflects a fluid working relationship wherein the two men would not always follow the same routine ("Other times, he…."). | hearsay exception, as discussed in MCI's Response to Defendant's Objection Nos. 80 & 81, even if it is not independently admissible. *See supra* 21-23.<br><br>Further, the statements made in this interview are **relevant** to refuting Defendant's irrelevant and erroneous argument that Toberoff Exhibit 97 "exemplif[ies]" how Lee worked with Colan (or any other Marvel artist). |
| 85. Lens Decl. Ex. 113<br><br>(Excerpts from Journey into Mystery Vol. 1, No. 98 (Nov. 1963).)<br><br>(2021MARVEL-0130300 – 2021MARVEL-0130301) | Hearsay (Fed. R. Evid. 802). Inadmissible Legal Conclusion. Irrelevant (Fed. R. Evid. 401). The notice contained in the excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. The copyright registration of the comic book magazine rather than the copyright notice is the operative document, and Martin Goodman is not listed as the copyright claimant on such | Defendant's **hearsay** objection fails as this 1963 comic book is an ancient document under Rule 803(16). *See Martha Graham*, 380 F.3d at 643 (letters authenticated as ancient documents excepted from hearsay); *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 321 n. 33 (S.D.N.Y. 2016) ("Billboard Article is over twenty-years old and is thus both admissible under the 'ancient document' hearsay exception and self-authenticating"). |

| | Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|---|
| | | registration. Lens. Decl. Ex. 24C at 127, Dkt. 74-30 (copyright certificate listing only Atlas Magazines, Inc. as copyright claimant) The content of this copyright notice has no bearing on the issues in this case. *See e.g.*, James E. Hawes & Bernard C. Dietz, Copyright Registration Practice § 26:8 (May 2023 rev. ed) ("The name given in the notice as owner of the copyright, and the name given in the application as claimant, may be different.") Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright § 7.09[B] (Aug. 2021 rev. ed) | Further, the comic is **relevant** to refute Defendant's irrelevant and erroneous argument that "[t]here is no evidence that Goodman served as the publisher" of Atlas Magazines, Inc., as it reflects that the comic was published by Atlas with "Martin Goodman, Publisher." *See* Dkt. 104 at 28-30.<br><br>And despite Defendant's unsupported assertion to the contrary, the fact that Martin Goodman was Atlas Magazines, Inc.'s publisher is a statement of fact, not a **legal conclusion**. |
| 86. | Lens Decl. Ex. 114 (Excerpts from Daredevil Annual Vol. 1, No. 1 (Sept. 1967).) | <u>Hearsay (Fed. R. Evid. 802)</u>. <u>Inadmissible Legal Conclusion</u>. <u>Irrelevant (Fed. R. Evid. 401)</u>. The notice contained in the excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. The copyright registration of this comic book magazine rather than the copyright notice is the operative document, and Martin Goodman is not listed as the copyright claimant on such registration. Plaintiff failed to introduce the copyright certificate for this work, presumably for that reason. (Indeed, it has not produced the copyright certificates for any edition of Daredevil Annual.) Hower, the publicly available renewal registration (Reg. No. RE0000714660, Dec. 29, 1995; Renewal registration for Reg. No. B00000361058, June 29, 1967) lists only Olympia | Defendant's objections fail for the same reasons outlined in MCI's Response to Defendant's Objection No. 85. *See supra* 26-27.<br><br>Further, the comic is **relevant** to refute Defendant's irrelevant and erroneous claim in Defendant's "Additional Fact" 96 that "Lee and Colan published a comic book story," when the copyright notice reflects that it was published by Olympia Publications Inc., with Martin Goodman as publisher. *See* Dkt. 104 at 348-50. Colan, in other words, did not "publish[]" the comic book story. |

| | **Defendant's Objection** | **Grounds for Defendant's Objection** | **MCI's Response** |
|---|---|---|---|
| | | Publications, Inc. ("Title: Daredevil (annual issue) Vol. 1, no. 1, Sept. 1967. By Olympia Publications, Inc."; "Names: Olympia Publications, Inc. Marvel Characters, Inc.") The content of this copyright notice has no bearing on the issues in this case. *See e.g.,* James E. Hawes & Bernard C. Dietz, *Copyright Registration Practice* § 26:8 (May 2023 rev. ed) ("The name given in the notice as owner of the copyright, and the name given in the application as claimant, may be different.") Melville B. Nimmer & David Nimmer, 2 *Nimmer on Copyright* § 7.09[B] (Aug. 2021 rev. ed) | |
| 87. | Lens Decl. Ex. 115 ("All in the Marvel Family," a transcription of the Merry Marvel Marching Society's 1965 album, "The Voices of Marvel," published in Comic Book Artist No. 18 (Mar. 2002).) (2021MARVEL-0080224 – 2021MARVEL-0080294) | Hearsay (Fed. R. Evid. 802). Inadmissible Legal Conclusion. Irrelevant (Fed. R. Evid. 401 & 403). The statement contained in excerpted publication is hearsay, and is inadmissible to prove ownership, authorship, or the legal relationship among the shell companies, MMC, and Martin Goodman. Additionally, these statements are unduly prejudicial as they portray the decedent as cowardly or otherwise ascribe non- relevant negative traits to him ("Why it's Steve Ditko. He heard you're making a record and he's got mike fright!"). (If anything, these song lyrics support the contention that Steve Ditko was a private individual who was not inclined to discuss business.) | Defendant's **hearsay** argument ignores that this exhibit is not being offered for the truth of the matter asserted (i.e., MCI does not contend it is true that Steve Ditko "*is* Spider-Man" or that Stan Lee or Artie Simek actually believed that). Instead, this exhibit is **relevant** to refute Defendant's irrelevant and erroneous argument that Toberoff Exhibit 97 "exempli[es]" how Lee worked with Marvel artists such as Gene Colan. As this exhibit shows, Marvel sometimes published satirical pieces poking fun at Stan Lee or Marvel freelancers and otherwise emphasizing Marvel's jovial working environment.  *See* Dkt. 104 at 348-50.  Defendant's contentions that this exhibit contains **impermissible legal conclusions** is particularly curious because, again, MCI is not suggesting that anything in the exhibit it true or |

| Defendant's Objection | Grounds for Defendant's Objection | MCI's Response |
|---|---|---|
| | | correct.  To the contrary, the whole point is that it's satirical—just like Toberoff Exhibit 97.<br><br>Further, Defendant's objection that this exhibit is **"unduly prejudicial"** under FRE 403 strains credulity, both because it is not offered for its truth, and because the Court is more than capable of ensuring the evidence is only used for a proper, non-prejudicial purpose.  In addition, many courts have held that Rule 403 objections are inappropriate at summary judgment.  *See, e.g.,* *Crye Precision LLC v. Bennettsvile Printing*, 2017 WL 10978562, at *1 (E.D.N.Y. Feb. 7, 2017) (denying motion to strike summary judgment evidence as "several district courts within the Second Circuit" "endors[e]" the view that "the balancing process contemplated by [FRE 403] is best undertaken at the trial itself") (internal citations and quotations omitted). |

Dated: September 6, 2023

**O'MELVENY & MYERS LLP**

By: */s/      Daniel M. Petrocelli*
      Daniel M. Petrocelli

Daniel M. Petrocelli*
dpetrocelli@omm.com
Molly M. Lens
mlens@omm.com
Matthew Kaiser*
mkaiser@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Allen Burton
aburton@omm.com
Danielle Feuer
dfeuer@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

* Admitted *pro hac vice*

*Attorneys for Marvel Characters, Inc.*